## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LORI OSTENFELD, DEBORAH
GESCHWIND, MARGARET MURPHY, and
JUDY STILWILL, individually and on behalf
of all others similarly situated,

        Plaintiffs,

    v.

THE LAUNDRESS, LLC,

        Defendant.

Case No. 1:22-cv-10667-JMF

HONORABLE JESSE M. FURMAN

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

**WINSTON & STRAWN LLP**

Ronald Y. Rothstein (*pro hac vice*)
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Jared R. Kessler (*pro hac vice*)
200 S. Biscayne Blvd.
Suite 2400
Miami, FL 33131
jrkessler@winston.com
Telephone: (305) 910-0654
Facsimile: (305) 910-0505

Rebecca Loegering (*pro hac vice*)
2121 N. Pearl Street
Suite 900
Dallas, TX 75201
rloegering@winston.com
Telephone: (214) 453-6500
Facsimile: (214) 453-6400
ATTORNEYS FOR DEFENDANT

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 4

III.    LEGAL STANDARD ............................................................................................ 5

    A.    Rule 12(b)(1) .............................................................................................. 5

    B.    Rule 12(b)(6) .............................................................................................. 5

    C.    Rule 9(b) .................................................................................................... 6

IV.    ARGUMENT ....................................................................................................... 6

    A.    Plaintiffs' Claims Based on The Laundress's Product Packaging Are Moot. ........... 6

    B.    Plaintiffs' New York and California Statutory Claims Must Be Dismissed. ............ 8

        1.    Plaintiffs do not plausibly allege false or misleading conduct. ....................... 9

        2.    Plaintiffs' omissions-based claims fail. ......................................... 10

        3.    Plaintiffs fail to establish standing under NYGBL §§ 349 and 350. .............. 13

        4.    Murphy's California statutory claims fail under Rule 9(b). .......................... 14

    C.    Plaintiffs' Warranty Claims Should Be Dismissed ................................................. 15

        1.    Plaintiffs' express warranty claim should be dismissed. ............................... 15

        2.    Plaintiffs Stilwill and Geschwind's express warranty claims and Geschwind's implied warranty claim must be dismissed because they failed to provide pre-suit notice. ................................................. 16

        3.    Plaintiff Murphy's implied warranty claim should be dismissed because she does not allege privity with The Laundress. ............................... 17

        4.    The Court lacks subject matter jurisdiction over Plaintiffs' MMWA claim ................................................................................................... 17

    D.    Plaintiffs' Product Defect Claims Should Be Dismissed ........................................ 18

        1.    Plaintiffs fail to plausibly plead proximate cause. .......................................... 18

        2.    Plaintiffs do not plausibly allege a duty to warn ............................................ 20

    E.    Plaintiffs' Claim for Unjust Enrichment Fails. ...................................................... 21

        1.    Plaintiffs' claim for unjust enrichment fails under Rule 9(b). ....................... 22

        2.    Plaintiffs' claim for unjust enrichment is duplicative of other claims ............ 22

    F.    Plaintiffs Are Not Entitled to Restitution or Disgorgement ................................... 23

    G.    Plaintiffs Are Not Entitled To Medical Monitoring ............................................... 23

V.    CONCLUSION .................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*,
   616 F. Supp. 3d 291 (S.D.N.Y. 2022) ..................................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................6

*Baird v. Samsung Elecs. Am., Inc.*,
   522 F. Supp. 3d 679 (N.D. Cal. 2021), *appeal dismissed*, No. 21-15818, 2022
   WL 1438516 (9th Cir. Feb. 22, 2022) .................................................................................10

*Bayne v. Target Corp.*,
   No. 1:21-cv-05938 (MKV), 2022 WL 4467455 (S.D.N.Y. Sept. 23, 2022) ..........................17

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) .............................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................5

*Benoit v. Saint-Gobain Performance Plastics Corp.*,
   959 F.3d 491 (2d Cir. 2020) .................................................................................................25

*BK Trucking Co. v. Paccar, Inc.*,
   No. CV 15-2282, 2016 WL 3566723 (D.N.J. June 30, 2016) .................................................16

*Brown v. Sandimo Mat.*,
   250 F.3d 120 (2d Cir. 2001) .................................................................................................23

*Caronia v. Philip Morris USA, Inc.*
   22 N.Y.3d 439 (N.Y. 2013) ..................................................................................................25

*Castillo v. Toll Bros.*,
   130 Cal. Rptr. 3d 150 (Cal. App. 4th 2011) ..........................................................................22

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
   No. 22-CV-02716-CM, 2022 WL 14061542 (S.D.N.Y. Oct. 24, 2022) ..................................6

*Charlton v. LG Energy Sol. Mich., Inc.*,
   2023 WL 1420726 (S.D. Cal. Jan. 31, 2023) ...........................................................................7

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021) ...................................................................................17

*Cooper v. Anheuser-Busch LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021)................................................................16

*Crayton v. Rochester Med. Corp.*,
  2011 WL 475009 (E.D. Cal. Feb. 4, 2011)......................................................19

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)............................................................................13

*Cummings v. FCA US LLC*,
  401 F.Supp.3d 288 (S.D.N.Y. 2019)...............................................................17

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010).............................................................................9

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
  423 F. Supp. 2d 173 (S.D.N.Y. 2006).............................................................10

*Ebin v. Kangadis Food Inc.*,
  No. 13 Civ. 2311(JSR), 2013 WL 3936193 (S.D.N.Y. July 26, 2013) ...................18

*Fargas v. Cincinnati Mach., LLC*,
  986 F. Supp. 2d 420 (S.D.N.Y. 2013).............................................................18

*FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*,
  No. 19-CV-10497 (JMF), 2021 WL 37709 (S.D.N.Y. Jan. 5, 2021), *cert.
  denied*, No. 19-CV-10497 (JMF), 2021 WL 1392849 (S.D.N.Y. Apr. 13,
  2021) ...................................................................................................6

*Fellner v. Tri-Union Seafoods, LLC*,
  2010 WL 1490927 (D.N.J. Apr. 13, 2010) ......................................................20

*Fink v. Time Warner Cable*,
  837 F. Supp. 2d 279 (S.D.N.Y. 2011)..............................................................10

*Fishon v. Peloton Interactive, Inc.*,
  No. 19 Civ. 11711 (LJL), 2021 WL 2941820 (S.D.N.Y. July 12, 2021) ...............14

*Floyd v. Am. Honda Motor Co., Inc.*,
  966 F.3d 1027 (9th Cir. 2020) ........................................................................17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
  528 U.S. 167 (2000).......................................................................................5

*In re Fyre Festival Lit.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019)..............................................................14

*In re GE/CBPS Data Breach Litig.*,
    No. 20 CIV. 2903 (KPF), 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ...............................14

*Goodman v. Internet, Inc.*,
    No. 2:22-CV-02926 (WJM), 2023 WL 2368123 (D.N.J. Mar. 6, 2023) ...............................22

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (N.Y. Ct. App. 2002)......................................................................................13

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................................................15, 21

*Hamilton v. Gen. Mills, Inc.*,
    No. 6:16-CV-382-MC, 2016 WL 4060310 (D. Or. July 27, 2016) ...........................................7

*Harris v. Pfizer, Inc.*,
    586 F. Supp.3d 231 (S.D.N.Y. 2022)..................................................................11, 13, 22

*Hindermyer v. B. Braun Med. Inc.*,
    419 F. Supp. 3d 809 (D.N.J. 2019) .........................................................................................18

*John v. Whole Foods Market Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017)......................................................................................................5

*Johnson v. Priceline.com, Inc.*,
    711 F.3d 271 (2d Cir. 2013)......................................................................................................5

*Jovine v. Abbott Lab'ys, Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla. 2011) ..................................................................................6, 7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................................14

*Krajewski v. Enderes Tool Co.*,
    469 F.3d 705 (8th Cir. 2006) ...................................................................................................19

*Kury v. Abbott Lab'ys, Inc.*,
    2012 WL 124026 (D.N.J. Jan. 17, 2012) .................................................................................7

*Langner v. Boston Sci. Corp.*,
    492 F. Supp. 3d 925 (D. Neb. 2020) .......................................................................................16

*Mance v. Mercedes-Benz USA*,
    901 F. Supp. 2d 1147 (N.D. Cal. 2012) ..................................................................................16

*Mascola v. Sears, Roebuck & Co.*,
    No. CIV.A. 04-3322 (WHW), 2008 WL 4601905 (D.N.J. Oct. 15, 2008) ............................19

*McCrary v. Elations Co., LLC*,
No. EDCV 13-0242 JGB (OPx), 2013 WL 6403073 (C.D. Cal. July 12, 2013).....................8

*Mendez v. Shah*,
28 F. Supp. 3d 282 (D.N.J. 2014) .........................................................................................20

*Monroe v. Medtronic, Inc.*,
511 F. Supp. 3d 26 (D. Mass. 2021) ....................................................................................19

*Moran v. Edgewell Personal Care, LLC*,
No. 21-cv-07669-RS, 2022 WL 3046906 (N.D. Cal. Aug. 2, 2022).....................................17

*Neenan Co., LLLP v. Gerhold Concrete Co., Inc.*,
No. 8:18CV90, 2021 WL 7448875 (D. Neb. Apr. 13, 2021) ................................................16

*New World Solutions, Inc. v. NameMedia Inc.*,
150 F. Supp. 3d 287 (S.D.N.Y. 2015)....................................................................................9

*Olson v. Major League Baseball*,
29 F.4th 59 (2d Cir. 2022) .....................................................................................................6

*Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp.*,
549 F. Supp. 3d 276 (E.D.N.Y. 2021) ..................................................................................10

*Punian v. Gillette Co.*,
No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ...........................9, 15

*RCA Trademark Management SAS v. VOXX Intern. Corp.*,
2015 WL 5008762 (S.D.N.Y. 2015)........................................................................................9

*Ribeiro v. Baby Trend, Inc.*,
No. 8:12CV204, 2017 WL 11485740 (D. Neb. Apr. 12, 2017) ............................................20

*Riva v. Pepsico*,
82 F. Supp. 3d 1045 (N.D. Cal. 2015) .............................................................................24, 25

*Rodas v. Porsche Cars N. Am., Inc.*,
No. CV-14-3747-PSG-MRWx, 2015 WL 12762064 (C.D. Cal. Feb. 13, 2015) .............20, 21

*Rosa v. City of Seaside*,
675 F. Supp. 2d 1006 (N.D. Cal. 2009), *aff'd sub nom.*, *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012) ................................................................................19, 20

*Rovid v. Graco Children's Prod. Inc.*,
No. 17-CV-01506-PJH, 2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) ................................19

*Rugg v. John & Johnson*,
No. 17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018)
.................................................................................................................9, 10, 14, 16

*SCM Corp. v. Xerox Corp.*,
507 F.2d 358 (2d Cir. 1974).....................................................................23

*Shara v. Maine-Endwell Cent. Sch. Dist.*,
46 F. 4th 77 (2d Cir. 2022) ......................................................................20

*Shetel Ind. LLC v. Adin Dental Implant Sys., Inc.*,
2021 WL 1108666 (E.D.N.Y. 2021).........................................................23

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016).......................................................11

*Sloan v. Gen. Motors LLC*,
No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ......11, 12, 13

*Suero v. NFL*,
2022 WL 17985657 (S.D.N.Y. Dec. 16, 2022) ...........................................8

*Theer v. Philip Carey Co.*,
628 A.2d 724 (N.J. 1993)..........................................................................24

*Trimble v. ASARCO Inc.*,
83 F. Supp. 2d 1034 (D. Neb. 1999) .........................................................24

*Vicente v. DePuy Syntheses Co.*,
570 F. Supp. 3d 232 (D.N.J. 2021) ......................................................18, 21

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015) (Furman, J.)....................................18

*Welch v. TD Ameritrade Holding Corp.*,
No. 07 CIV. 6904 (RJS), 2009 WL 2356131 (S.D.N.Y. July 27, 2009) ...............22

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ..................................................................11

*Youngman v. Robert Bosch LLC*,
923 F. Supp. 2d 411 (E.D.N.Y. 2013) .......................................................18

**Statutes**

15 U.S.C. § 2310(d)(3) .............................................................................17

CAFA ......................................................................................................18

Cal. Civ. Code § 1782 ................................................................................................15

California's Unfair Competition Law .............................................................. *passim*

Florida Deceptive and Unfair Trade Practices Act ......................................................7

NYGBL § 349 ................................................................................................ *passim*

NYGBL § 350 ................................................................................................1, 10, 13

NYGBL § 359 ................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................................3, 6, 14, 22

Fed. R. Civ. P. 12(b)(1) ....................................................................................5, 8

Fed. R. Civ. P. 12(b)(6) .........................................................................................5

Laundress, Recall FAQs, available at https://www.thelaundressrecall.com/faqs .......................6, 8

U.S. Const., art. III ...............................................................................................5

<u>**MEMORANDUM OF LAW**</u>

## I.   INTRODUCTION

On December 1, 2022, Defendant The Laundress LLC ("The Laundress") issued a Safety Notice and initiated a voluntary recall because it discovered its household cleaning products (the "Products") were potentially contaminated with *Burkholderia cepacia* complex, *Klebsiella aerogenes* and multiple different species of *Pseudomonas*. The Safety Notice and recall were coordinated with the Consumer Product Safety Commission ("CPSC") and relate to approximately 8 million units of Products manufactured between January 2021 and September 2022. Although people with healthy immune systems are usually not affected by the bacteria, The Laundress advised all purchasers, like Plaintiffs Ostenfeld, Geschwind, Murphy, and Stilwill (together, "Plaintiffs"), to "stop using the recalled products" and offered a full refund.

Based on the newfound potential for contamination, Plaintiffs accuse The Laundress of a sweeping campaign of deception. They baldly claim that, for years, The Laundress falsely or misleadingly labelled its Products as "nontoxic," "biodegradable," and "allergen-free" and made omissions concerning the potential risk of bacterial contamination. Three plaintiffs (Ostenfeld, Murphy, and Stilwill) also claim various physical injuries which they conclusorily attribute to alleged design, manufacturing, and warning defects in The Laundress's Products.

Premised on these allegations, Plaintiffs make claims against The Laundress for: (Count I) violation of New York General Business Law ("NYGBL") sections 349 and 350, (Count II) breach of express warranty, (Count III) breach of implied warranties, (Count IV) violation of the Magnuson-Moss Warranty Act, (Count V) design defect, (Count VI) manufacturing defect, (Count VII) warning defect, (Count VIII) unjust enrichment, (Count IX) violation of the unlawful conduct prong of California's Unfair Competition Law ("UCL"), (Count X) violation of the unfair and

fraudulent prongs of the UCL, and (Count XI) violation of California's False Advertising Law ("FAL").[1] Each of these claims should be dismissed.

To start, Plaintiffs' claims based on The Laundress's packaging (Counts I, II, III, IV, VIII, IX, X, XI) and seeking damages that amount to a full or partial refund of the sums Plaintiffs spent to purchase the Products, are moot. Underpinning each of these claims are Plaintiffs' objections to statements on, or allegedly omitted from, The Laundress's Products' packages. But it is undisputed that The Laundress, as part of its voluntary recall, made a standing offer to consumers of a full refund for their Products. By seeking damages that are nothing more than refunds, Plaintiffs attempt to pursue through the judicial process a remedy already offered to them by The Laundress.

Plaintiffs' statutory consumer protection claims (Counts I, IX, X, and XI), accusing The Laundress of deception based on purported misrepresentations and omissions, should be dismissed. As to misrepresentations, these claims are based on statements on the Products that they are "non-toxic," "biodegradable," and "allergen-free." These statements are deceptive, Plaintiffs posit, because of the potential bacterial contamination in the Products. But this claim should be dismissed because Plaintiffs do not claim that bacteria in the Products (if it is present at all) renders the Products toxic, not biodegradable, or that the bacteria are allergens. Where these claims are based on purported omissions concerning the potential for contamination, the critical inquiry is The Laundress's knowledge *at the time* Plaintiffs purchased the Products. But Plaintiffs do not plausibly allege The Laundress had knowledge of potential contamination at any time before it issued its public Safety Notice and initiated a recall (i.e., after Plaintiffs purchased the Products).

---

[1] In addition to raising claims individually, Plaintiffs also purport to bring Counts I-IV and VIII on behalf of a putative nationwide "Economic Injury Class," Counts V-VII on behalf of a putative nationwide "Physical Injury Class," and Counts IX-XI on behalf of a putative "California Subclass." *See* Compl. ¶¶ 125, 136, 146, 157, 169, 185, 196, 208, 217, 224, 233.

So too should Plaintiffs' claims for breach of express warranty (Count II) and breach of implied warranty (Count III) be dismissed. For one, Plaintiffs do not plausibly allege a breach of The Laundress's purported express warranties that its Products are "nontoxic," "biodegradable," and "allergen-free." Plaintiffs Stilwill and Geschwind's express warranty claims and Geschwind's implied warranty claim must be dismissed for the additional reason that they cannot allege pre-suit notice to The Laundress. And Plaintiff Murphy's implied warranty claim must be dismissed because she lacks privity with The Laundress. Finally, Plaintiffs' claim under the Magnuson-Moss Warranty Act ("MMWA") (Count IV)— brought on behalf of a putative class—must be dismissed because Plaintiffs fail to satisfy the jurisdictional prerequisite of naming 100 plaintiffs in their Complaint.

Plaintiffs' claims for design defect (Count V), manufacturing defect (Count VI), and warning defect (Count VII) must be dismissed because Plaintiffs do not plausibly allege the purported defects in the Products are the proximate cause of their claimed injuries. And Plaintiffs' warning defect claim also fails because Plaintiffs do not plausibly allege The Laundress's knowledge of a defect when the Products were designed, manufactured, or sold to Plaintiffs.

Plaintiffs' unjust enrichment claim (Count VIII) should be dismissed because it is based on purportedly fraudulent conduct but does not satisfy Rule 9(b)'s pleading standards and because it is duplicative of Plaintiffs' other causes of action.

Finally, requests for equitable relief should be stricken. As an initial matter, Plaintiffs are not entitled to restitution or disgorgement because they fail to allege that they have no adequate remedy at law (they do have an adequate remedy, as they are seeking money damages). So too should Plaintiffs' request for a rarely imposed medical monitoring protocol should be rejected. Medical monitoring is not available uniformly in courts around the country and, even in

jurisdictions in which it is permitted, courts refuse to award medical monitoring absent a showing of a distinctive increased risk for future harm. Such conditions are absent here and Plaintiffs are not entitled to the extraordinary relief of medical monitoring that they seek.

## II.   BACKGROUND

Plaintiffs each claim they purchased various Products[2] subject to The Laundress's recall. *See* Consolidated Complaint (the "Complaint" or "Compl.") ¶¶ 92-103. Although they do not disclose precisely when they purchased the Products (including whether their purchases were prior to or within The Laundress's recall period), Plaintiffs contend they suffered economic injuries attributable to The Laundress's allegedly deceptive advertising and marketing of the Products because "Plaintiffs would not have purchased the Products had they known that they were contaminated with, or at risk of being contaminated, with bacteria." Compl. ¶ 20. Specifically, Plaintiffs allegedly purchased the Products relying on The Laundress's representations that they were "[n]ontoxic, biodegradable, and allergen free" as "well as omissions regarding bacterial contamination, the risk of bacterial contamination, or the systemic flaws in Defendant's Product design and manufacturing leading to bacterial contamination." *See* Compl. ¶¶ 92, 95, 98, 101.

In addition to seeking damages for allegedly deceptive advertising, Plaintiffs Stilwill, Ostenfeld, and Murphy attribute various personal injuries to alleged design, manufacturing, and warning defects in the Products. *See* Compl. ¶¶ 96, 97, 99, 100, 102, 103. Though no Plaintiff alleges she purchased a Product that actually contained bacteria, each of these Plaintiffs identify ailments they conclusorily attribute to The Laundress's Products. Murphy alleges that she and her family "began experiencing respiratory infections, skin infections, rashes, and hives" sometime "between 2021 and 2022[.]" Compl. ¶ 96. Without alleging any testing or diagnosis, Murphy

---

[2] Plaintiffs define the term "Product(s)" to refer to more than 250 different The Laundress products. *See* Compl. ¶ 1 n.1.

contends these injuries are "associated with" unspecified "bacterial contamination." *Id*. at ¶ 96. Ostenfeld, "an immunocompromised individual," began experiencing "difficulty breathing, wheezing, and congestion, and shortness of breath[.]" *Id*. at ¶ 99. These symptoms, she states, are "associated with and were caused by bacterial contamination." *Id*. And Stilwill, who does not allege when she used the Products, claims she had a "severe sinus congestion and infection" and underwent sinus surgery in June 2022. *Id*. at ¶ 102. Her infection, she claims, was "cultured and shown to be *Pseudomonas aeruginosa*." *Id*.

## III.   LEGAL STANDARD

### A.  Rule 12(b)(1)

A court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and a district court lacks subject matter jurisdiction over the suit. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 212–13 (2000). When, as here, a "Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it" the "task of the district court is to determine whether the Pleading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *John v. Whole Foods Market Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).

### B.  Rule 12(b)(6)

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[a] complaint must contain sufficient factual matter accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*).
"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### C.  Rule 9(b)

Claims sounding in fraud must satisfy the pleading standards of Rule 9(b). *Olson v. Major
League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Additionally, "plaintiffs must allege facts that
give rise to a strong inference of fraudulent intent." *Charles Equip. Energy Sys., LLC v. INNIO
Waukesha Gas Engines, Inc.*, No. 22-CV-02716-CM, 2022 WL 14061542, at *2 (S.D.N.Y. Oct.
24, 2022). A claim subject to Rule 9(b) "must allege the time, place, speaker, and sometimes even
the content of the alleged misrepresentation." *FAT Brands Inc. v. PPMT Cap. Advisors, Ltd.*, No.
19-CV-10497 (JMF), 2021 WL 37709, at *10 (S.D.N.Y. Jan. 5, 2021), *cert. denied*, No. 19-CV-
10497 (JMF), 2021 WL 1392849 (S.D.N.Y. Apr. 13, 2021).

## IV.   ARGUMENT

### A.  Plaintiffs' Claims Based on The Laundress's Product Packaging Are Moot.

As Plaintiffs concede, on December 1, 2022, The Laundress "recalled all existing
Products[.]" Compl. ¶ 3 (emphasis removed). That recall included a standing offer of a full refund
to consumers.[3] Against the full refund offer, Plaintiffs' claims seeking damages for buying, or
overpaying for, Products they would not have purchased but for The Laundress's alleged
misrepresentations and omissions (Counts I, II, III, IV, VIII, IX, X, and XI) are moot. Courts
around the country have concluded that plaintiffs cannot plausibly allege that they "suffered
damages insofar as the amount [they] paid for the [products at issue]," when a defendant has issued
a recall. *See Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011).

---

[3] *See* The Laundress, Recall FAQs, available at https://www.thelaundressrecall.com/faqs ("Consumers with impacted
products will receive a full reimbursement"). Plaintiffs refer to The Laundress Recall FAQs. *See* Compl. ¶ 86.

The *Jovine* decision is instructive. There, a plaintiff sued a manufacturer alleging he purchased contaminated infant formula, which the manufacturer later recalled. *Id*. at 1335. The plaintiff alleged he would not have purchased the formula if he knew of the risks of potential contamination. *Id*. at 1344. The Court dismissed a claim under the Florida Deceptive and Unfair Trade Practices Act, finding he failed to allege damages in light of the manufacturer's offer to provide him a full refund through the recall process. *Id*. *Jovine* is not an outlier; numerous other courts around the country have similarly dismissed claims alleging purchase-price damages where a defendant offered to refund the purchase price. *See, e.g., Charlton v. LG Energy Sol. Mich., Inc.*, 2023 WL 1420726, at *5 (S.D. Cal. Jan. 31, 2023) (dismissing claims when CPSC monitored recall program addressed Plaintiff's claims and rendered injury moot); *Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *5 (D. Or. July 27, 2016) (finding plaintiff's injury mooted by refund offer); *Kury v. Abbott Lab'ys, Inc*., 2012 WL 124026, at *5 n.2 (D.N.J. Jan. 17, 2012) ("the mere tender of relief moots her claim for the purchase price of the Similac products").

Plaintiffs claim the Products are "worthless" and that, but for The Laundress's allegedly false and deceptive misrepresentations and omissions, they would not have purchased or used the Products. Compl. ¶¶ 93, 97, 100, 103. Plaintiffs Ostenfeld, Murphy, and Stilwill do not claim damages arising from The Laundress's packaging beyond the sums they paid to purchase the Products. Nevertheless, these plaintiffs inexplicably allege that The Laundress's full-refund offer "does not provide adequate relief." Compl. ¶¶ 97, 100, 103. Although Plaintiffs complain that "to receive compensation, consumers are required to have proof of purchase, either proof of direct purchase off [The Laundress's] website, a receipt, and/or a picture of the Product's UPC and date code," Compl. ¶ 83, no Plaintiff alleges that this proof-of-purchase requirement has prevented her from receiving a full refund. *See generally*, Compl. Plaintiffs lack standing because they cannot

7

plausibly allege any injury arising from The Laundress's alleged conduct insofar as they do not claim damages beyond what has already been offered to them by The Laundress's recall.[4] In other words, The Laundress has offered to provide a full remedy for the only injury Plaintiffs allegedly suffered and the Court should dismiss their claims under Rule 12(b)(1).

### B.  Plaintiffs' New York and California Statutory Claims Must Be Dismissed.

Beyond mootness, *see supra* IV.A, there are additional reasons to dismiss Plaintiffs' claims under NYGBL §§ 349 and 359 (Count I) and California's UCL (Count IX and X) and FAL (Count XI). These claims are premised on The Laundress's allegedly "false and misleading labeling and promotion of the Products, as well as the omissions and non-disclosures[.]" Compl. ¶ 132; *see id*. at ¶¶ 216-238. Plaintiffs allege The Laundress "misleadingly represented on Product labels that the Products were "[n]ontoxic, biodegradable, and allergen-free" when the Products "were contaminated with, or at unreasonable risk of being contaminated with" bacteria. *Id*. at ¶ 5.[5]

To assert a claim under GBL §§ 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

---

[4] Perhaps recognizing the mootness of her claims seeking refund damages, Plaintiff Geschwind claims that she suffered additional damages because she "purchased alternative laundry and cleaning products, rewashed all the laundry in her home, and cleaned out all the closets in her home" and "disposed of hundreds of dollars' worth of hangers and containers used to store contaminated clothing." Compl. ¶ 93. It is not clear that Geschwind attributes these alleged damages to The Laundress's purportedly deceptive conduct, but, nevertheless, such an attribution is implausible. Geschwind does not allege any facts to support an inference that The Laundress's conduct caused her arbitrary decision to discard her personal property. Neither The Laundress's Safety Notice nor its recall website instruct consumers to dispose of any items that had come into contact with the allegedly contaminated Products. *See* The Laundress, Recall FAQs, available at https://www.thelaundressrecall.com/faqs. Consequently, Geschwind's allegations of property damage do not alter the mootness of her claims based on The Laundress's packaging.

[5] Plaintiffs also point to The Laundress's "widespread advertising campaign highlighting the Products' purported natural, non-toxic, eco-friendly, and green attributes" as well as statements allegedly appearing on The Laundress's website and social media accounts. *See, e.g.,* Compl. ¶¶ 29, 30, 33, 34. No Plaintiff, however, alleges that she reviewed or relied upon any representation appearing on The Laundress's website or social media prior to purchasing the Products. *See generally*, Compl. Accordingly, none of these statements can underpin Plaintiffs' claims. *See Suero v. NFL*, 2022 WL 17985657 at *13 (S.D.N.Y. Dec. 16, 2022) (recommending dismissal of GBL claims and noting that "Plaintiffs here do not allege that they ever saw the . . . website, much less that they were exposed to the statements that they now challenge under GBL §§ 349 and 350."); *McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB (OPx), 2013 WL 6403073, at *8 (C.D. Cal. July 12, 2013) ("the SAC does not allege that [Plaintiff] looked at or relied on anything on Defendant's website before purchasing [the product]. Thus, Plaintiff . . . does not have standing to bring claims based on [ ] those statements.").

suffered injury as a result of the allegedly deceptive act or practice." *RCA Trademark Management SAS v. VOXX Intern. Corp.*, 2015 WL 5008762, at *3 (S.D.N.Y. 2015). Similarly, claims premised upon deception or false advertising under California's UCL (Count X)[6] and FAL (Count XI) require a plaintiff to plausibly allege that a statement misleads a reasonable consumer acting reasonably under the circumstances. *See Rugg v. John & Johnson*, No. 17-cv-05010-BLF, 2018 WL 3023493, *2 (N.D. Cal. June 18, 2018).

### 1. Plaintiffs do not plausibly allege false or misleading conduct.

For purposes of NYGBL §§ 349 or 350, "deceptive acts or practices . . . are 'limited to those likely to mislead a reasonable consumer acting under the circumstances.'" *New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 329–30 (S.D.N.Y. 2015). Similarly, a claim under the unfair and fraudulent prongs of California's UCL (Count X) and FAL (Count XI) require Plaintiffs to plausibly allege that a challenged statement would mislead a reasonable consumer acting reasonably under the circumstances. *See Rugg*, 2018 WL 3023493 at *2. Plaintiffs fail, however, to allege (plausibly or otherwise) that The Laundress's representations that its Products are "nontoxic," "biodegradable," and "allergen-free" are false or likely to mislead.

With respect to "nontoxic," no Plaintiff alleges she purchased a Product containing (as opposed to having a *risk of* containing) bacteria. *See* Compl. And Plaintiffs do not allege what levels of bacteria would render the Products toxic such that the statement "nontoxic" was false or misleading. The Safety Notice,[7] issued in conjunction with the CPSC, makes clear that "[p]eople

---

[6] Count IX is asserted under the illegal conduct prong of the UCL but turns on the same conduct underpinning counts X and XI. *See Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) ("Because the Court finds that Plaintiff did not plausibly allege any statutory violations, the Court also finds that Plaintiff fails to plausibly allege violation of the unlawful prong of the UCL.")

[7] The Court may consider The Laundress's Safety Notice and recall because Plaintiffs have incorporated by reference those documents in the Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by

with healthy immune systems are usually not affected by the bacteria." *See* Safety Notice. Nor do Plaintiffs plausibly allege deception as to the "biodegradable" or "allergen-free" statements. Plaintiffs do not allege, for example, that the potential presence of bacteria renders the Products not biodegradable or that the bacteria (if present at all) are allergens. *See id*.

Courts routinely dismiss NYGBL claims when plaintiffs fail to plausibly plead that a defendant's statements rise to the level of deceptive to a reasonable consumer. *See, e.g., Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283–84 (S.D.N.Y. 2011); *Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp*., 549 F. Supp. 3d 276, 282–84 (E.D.N.Y. 2021) (dismissing §§ 349 and 350 claims because plaintiffs failed to allege that the labeling on defendant's product was not accurate). The same is true of claims under the UCL and FAL. *See Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (affirming dismissal of claims because "no reasonable consumer would assume that Diet Dr. Pepper's use of the term 'diet' promises weight loss or management.*"); Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 687 (N.D. Cal. 2021), *appeal dismissed*, No. 21-15818, 2022 WL 1438516 (9th Cir. Feb. 22, 2022). This case should be no different.

### 2. Plaintiffs' omissions-based claims fail.

Aside from statements on the Products' packaging, Plaintiffs also base their claims on the allegation that The Laundress made deceptive omissions "regarding bacterial contamination, the risk of bacterial contamination, or the systemic flaws in Defendant's Product design and manufacturing leading to bacterial contamination." Compl. ¶¶ 92, 95, 98, 101.[8]

---

reference in the complaint."); *see also Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (court may take judicial notice of a party's website in deciding a 12(b)(6) motion).
[8] Count XI, Plaintiff Murphy's claim under FAL, does not appear to be based upon The Laundress's purported omissions. Compl. ¶¶ 235-237. If, however, this claim is somehow read to include omissions, it fails for the same reasons as Count IX and Count X.

To assert an omissions-based claim under NYGBL §§ 349 or 350, Plaintiffs must allege (1) the defendant alone possessed the omitted information, (2) the omitted information is relevant to the consumer, and (3) the defendant failed to provide the omitted information. *See In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016); *Harris v. Pfizer, Inc.*, 586 F. Supp.3d 231, 242 (S.D.N.Y. 2022). California's UCL is somewhat different. There, an omission-based claim requires a duty to disclose, which arises when (1) parties are in a fiduciary relationship; (2) the defendant had exclusive knowledge of material facts; (3) the defendant actively conceals a material fact; or (4) the defendant makes partial representations but also suppresses some material facts. *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *4 (N.D. Cal. Aug. 1, 2017); *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1141 (9th Cir. 2012).

The key to both statutory schemes, however, "is that the defendant 'possess' the information that the plaintiff claims it improperly withheld." *In re Sling*, 202 F. Supp. 3d at 359. "Thus, plaintiffs pursuing an omission-based claim must 'plausibly allege that the defendant[] had knowledge of the material information and failed to disclose or actively concealed such information." *Id*. Critically, Plaintiffs' omissions-based claims require that The Laundress was aware ***at the time of sale*** of the information that was allegedly withheld. *See id*. ("Because this Court is left speculating as to whether [defendant] had knowledge of the information Plaintiffs allege it failed to disclose at the time Plaintiffs made their purchases, Plaintiffs have failed to adequately plead that they were victims of a deceptive or misleading act or practice"); *see also Harris v. Pfizer, Inc*., 586 F. Supp. 3d 231, 242 (S.D.N.Y. 2022) (dismissing NYGBL claims because plaintiff's conclusory allegations were not "sufficient to plausibly establish that Pfizer knew about any nitrosamine contamination in the medication that the plaintiffs purchased at the

11

time they purchased it"); *Sloan*, 2017 WL 3283998, at *5 ("Under California law a fraudulent omission claim requires proof that a defendant was aware of the defect at the time of sale to establish defendant had a duty to disclose."). Plaintiffs' omission-based claims fail this test. They cannot plausibly allege facts from which it can be inferred that The Laundress knew ***at the time*** Plaintiffs purchased the Products—or, for that matter, any time before issuing a Safety Notice and Product recall—that the Products may potentially contain bacteria.

Plaintiffs cite The Laundress's Safety Notice as evidence of its knowledge. There, The Laundress stated it was "aware of 11 consumers who have reported Pseudomonas infections" and was "investigating these reports to see if there is any connection to the recalled products." Compl. ¶ 60; *see also* Safety Notice. But the Safety Notice and the 11 reports it references do not support an inference of The Laundress's knowledge ***at the time*** of Plaintiffs' purchases.[9] To start, the Safety Notice came ***after*** Plaintiffs purchased the Products. And it does not indicate nor do Plaintiffs allege the timing of the 11 reports it referenced. The plain language of the Safety Notice says only that The Laundress is "investigating" the reports "to see if there is any connection." *Id*. It does not, as Plaintiffs suggest, attribute the 11 reports to specific bacterial contamination. *See id*. Furthermore, Plaintiffs do not contend that 11 reports, out of 8 million units sold, is unusual such that The Laundress should be on notice of a specific problem. *See Sloan*, 2017 WL 3283998 *7 (noting consumer complaints "would not establish that GM knew that the Low-Tension Oil Rings caused the excessive consumption").

Aside from pointing to The Laundress's Safety Notice, Plaintiffs claim the "risks of bacterial contamination" were "known and extensively studied ***in the manufacturing industry***

---

[9] Plaintiffs are vague as to the timing of their respective purchases of The Laundress's Products. Throughout the Complaint, they allege only that they purchased the Products "[d]uring the Class Period," Compl. ¶¶ 8, 92, 95, 98, and 101, which is defined by Plaintiffs as "the applicable statutes of limitations for Plaintiffs' claims." *Id*. at n.2.

long before the [potential] contamination here." Compl. ¶ 53 (emphasis added). "*[G]enerally*," plaintiffs claim, "all products containing water and organic/inorganic compounds . . . are exposed to microbial contamination." *Id*. at ¶ 54 (emphasis added). But generic allegations about "products containing water" do not give rise to a plausible inference that The Laundress **knew** its Products were potentially contaminated with *Burkholderia cepacian* complex, *Klebsiella aerogenes*, or multiple species of *Pseudomonas **at the time*** Plaintiffs made their purchases. Plaintiffs go on to claim that "[b]acterial contamination has resulted in product recalls for decades." *Id*. at ¶ 55; *see id*. at ¶ 90 (discussing purported recalls by companies other than The Laundress). Plaintiffs do not, however, plausibly allege any tie between other companies' recalls and The Laundress's knowledge of alleged defects in its Products at the time of Plaintiffs' purchases.

Without plausible allegations supporting an inference that The Laundress knew its Products were potentially contaminated with *Burkholderia cepacian* complex, *Klebsiella aerogenes*, or multiple species of *Pseudomonas **at the time*** of Plaintiffs' purchases, Plaintiffs' omission-based claims must be dismissed. *See Harris v. Pfizer, Inc*., 586 F. Supp. 3d 231, 242 (S.D.N.Y. 2022) (dismissing NYGBL § 349 claim because the complaint did "not plausibly allege that Pfizer knew about the nitrosamine contamination before it issued its recall."); *Sloan*, 2017 WL 3283998 at *6.

### 3. Plaintiffs fail to establish standing under NYGBL §§ 349 and 350.

Plaintiffs cannot bring a claim under §§ 349 and 350 unless they show the "transaction in which [they were] deceived . . . occur[red] in New York." *See Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324-25 (N.Y. Ct. App. 2002) (§ 349 reveals an intent "to protect consumers in their transactions that take place in New York State. It was not intended to police the out-of-state transactions of New York companies[.]"). To determine whether Plaintiffs satisfied the territorial requirement of §§ 349 and 350, the Court must "focus on the location of transaction," i.e., whether the transaction occurred in New York. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115,

122 (2d Cir. 2013); *Fishon v. Peloton Interactive, Inc*., No. 19 Civ. 11711 (LJL), 2021 WL 2941820, at *3-5 (S.D.N.Y. July 12, 2021) (dismissing claim under § 349 because plaintiff failed to sufficiently allege the territorial requirement).

That The Laundress is headquartered in, and Plaintiff Geschwind is a resident of, New York does not save this claim. *See* Compl. ¶ 16. The mere fact that a party is a New York citizen is insufficient to satisfy the territoriality requirement. *See, e.g.*, *id*.; *In re GE/CBPS Data Breach Litig*., No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) ("it is irrelevant to this analysis that . . . [the defendant] is a New York corporation."). To be sure, no Plaintiff pled any facts from which it can be inferred that her transactions occurred in New York. *See* Compl. ¶¶ 92 (Geschwind allegedly bought the Products "on TheLaundress.com"); ¶ 95 (Murphy allegedly bought online at "FabFitFun.com"); ¶ 98 (Ostenfeld allegedly bought "on TheLaundress.com"); ¶ 101 (Stilwill allegedly purchased the Products "from" an unspecified "The Container Store"). Because Plaintiffs do not allege transactions in New York, they lack standing under §§ 349 or 350. *See In re Fyre Festival Lit*., 399 F. Supp. 3d 203, 223–24 (S.D.N.Y. 2019) (dismissing § 349 claims by New York and non-New York plaintiffs lacking New York ties).

### 4. Murphy's California statutory claims fail under Rule 9(b).

Murphy's claims must be dismissed for another reason: she fails to plead her claims with the specificity required by Rule 9(b). *See Rugg*, 2018 WL 3023493 at *4 (N.D. Cal. June 18, 2018) (holding that plaintiffs' complaint did not plead with particularity by identifying 32 products allegedly mislabeled as "hypoallergenic" and identifying 79 problematic ingredients, but failing to specify which of the products contained which of the ingredients); *see also Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) (heightened pleading standards apply to claims for California's consumer protection statutes that are grounded in fraud). Murphy does not allege with specificity each product she purchased, when she purchased the products, what

representations she was exposed to, or when and where she was exposed to those representations. *See* Compl. ¶ 95 (noting she purchased Products "including—***but not limited to***—the Delicate Wash, the Crease Relief Spray, and the Signature Detergent.") (emphasis added). For this reason, Murphy's California statutory claims must be dismissed.[10]

### C.  Plaintiffs' Warranty Claims Should Be Dismissed

Plaintiffs' warranty claims (Counts II, III, and IV)[11] are moot for the reasons discussed above. *See supra* IV.A. But there are additional reasons for dismissal.

#### 1.  Plaintiffs' express warranty claim should be dismissed.

Plaintiffs allege that The Laundress expressly warranted its Products were "[n]ontoxic, biodegradable, and allergen-free'" and "did not contain bacteria such as *Burkholderia cepacian* complex, *Klebsiella aerogenes* and multiple different species of *Pseudomonas*." Compl. ¶ 137. These warranties were breached, Plaintiffs claim, "in that the [Products] were contaminated with bacteria or at unreasonable risk of being contaminated with bacteria." *Id*. at ¶ 139.

As an initial matter, Plaintiffs do not—and cannot—identify any instance in which The Laundress represented that its Products "did not contain bacteria [.]" *See id*. For this simple reason, this statement—which is not alleged to appear on the Products or elsewhere—cannot plausibly be a basis of the Parties' transaction or an actionable express warranty. *See*, *e.g.*, *Antifun Ltd. T/A*

---

[10] To the extent Plaintiff Murphy's claim under the unlawful prong of UCL (Count IX) is premised on purported violations of the UCL and the FAL, it fails for the same reasons. *See*, *e.g.*, *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (finding that when a plaintiff's claim under the unlawful prong of the UCL is premised on violations of the FAL and CLRA but that the plaintiff did not plausibly allege any statutory violations, the plaintiff fails to plausibly allege violation of the unlawful prong of the UCL). And though her UCL claim refers to the CLRA, Murphy does not raise a claim in the Complaint for violation of that statute. Nor could she, as she failed to provide the requisite pre-suit notice under the CLRA. *See* Cal. Civ. Code § 1782.

[11] New York's choice of law test "requires the application of the law of the state of purchase to . . . claims for breach of warranty[.]" *In re Grand Theft Auto Video Game Consumer Litig*., 251 F.R.D. 139, 149 (S.D.N.Y. 2008). As noted above, Plaintiffs do not allege the geographic location of their respective transactions. *See supra* II. Nevertheless, and without waiving the argument that Plaintiffs fail to carry their burden to establish territoriality for their NYGBL claim, The Laundress assumes for purposes of Plaintiffs' warranty claims that their purchases occurred in their respective home states.

*Premium Vape v. Wayne Indus. LLC*, 616 F. Supp. 3d 291, 311 (S.D.N.Y. 2022) (identifying the elements of a breach of warranty claim under New York law, including "the existence of a material statement amounting to a warranty"); *Neenan Co., LLLP v. Gerhold Concrete Co., Inc.*, No. 8:18CV90, 2021 WL 7448875, at *10–11 (D. Neb. Apr. 13, 2021) (" a seller creates an express warranty by: 1(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods …."); *BK Trucking Co. v. Paccar, Inc.*, No. CV 15-2282 (JBS/AMD), 2016 WL 3566723, at *5 (D.N.J. June 30, 2016) ("[t]o state a claim for breach of express warranty, a plaintiff must show: "(1) that [the defendant] made an affirmation, promise or description about the product"); *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1153 (N.D. Cal. 2012) ("a plaintiff must allege: (1) the exact terms of the warranty[.]").

Next, and for reasons similar to why Plaintiffs fail to plead deception, Plaintiffs do not plausibly allege a breach of The Laundress's purported express warranties that its Products are "nontoxic," "biodegradable," and "allergen-free." *See supra* at IV.B; *see also Rugg*, 2018 WL 3023493, at *4 (dismissing breach of warranty claim because it depended on plaintiffs' implausible definition of challenged statement). This independent reason requires dismissal.

### 2. Plaintiffs Stilwill and Geschwind's express warranty claims and Geschwind's implied warranty claim must be dismissed because they failed to provide pre-suit notice.

Plaintiffs Stilwill and Geschwind's express warranty claims must be dismissed because they do not allege pre-suit notice. The laws of Nebraska and New York require plaintiffs to provide pre-suit notice of a breach of express warranty. Without it, their claims must be dismissed. *See Langner v. Boston Sci. Corp.*, 492 F. Supp. 3d 925, 935-36 (D. Neb. 2020) (dismissing express warranty claim for lack of pre-suit notice); *Cooper v. Anheuser-Busch LLC*, 553 F. Supp. 3d 83, 112 (S.D.N.Y. 2021) (same). The same is true for Geschwind's implied warranty claim. *See*

*Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 591 (S.D.N.Y. 2021) (dismissing breach of implied warranty claim due to lack of pre-suit notice).

### 3.  Plaintiff Murphy's implied warranty claim should be dismissed because she does not allege privity with The Laundress.

California law requires privity between a plaintiff and a defendant for implied warranty claims. *See Moran v. Edgewell Personal Care, LLC*, No. 21-cv-07669-RS, 2022 WL 3046906, at *6 (N.D. Cal. Aug. 2, 2022). Plaintiff Murphy alleges she purchased her The Laundress Products from FabFitFun.com and other e-commerce stores. *See* Compl. ¶ 95. Thus, she lacks privity with The Laundress, and her claim must be dismissed. *See Moran*, 2022 WL 3046906 at *6.

### 4.  The Court lacks subject matter jurisdiction over Plaintiffs' MMWA claim.

The MMWA imposes specific limitations on the exercise of jurisdiction by federal courts. *See* 15 U.S.C. § 2310(d)(3). No claim is cognizable if, among other things, "the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id*. There is no dispute that Plaintiffs' MMWA claim is brought as a class action. *See* Compl. ¶ 157 (bringing claim individually and on behalf of a putative "Economic Injury Class"). But Plaintiffs, numbering only four, fail to meet the jurisdictional threshold of 100 "named plaintiffs." 15 U.S.C. § 2310(d)(3). For this reason, their MMWA claim must be dismissed.[12] *See Floyd v. Am. Honda Motor Co., Inc*., 966 F.3d 1027, 1032 (9th Cir. 2020); *Id*. at 1034 ("a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs."); *Bayne v. Target Corp*., No. 1:21-cv-05938 (MKV), 2022 WL 4467455, at *4 (S.D.N.Y. Sept. 23, 2022) (dismissing MMWA

---

[12] Plaintiffs' MMWA claim should also be dismissed to the extent that their claims for breach of express warranty and breach of implied warranty are dismissed. *Cummings v. FCA US LLC*, 401 F.Supp.3d 288, 315 (S.D.N.Y. 2019) (claims under MMWA "stand or fall with the express and implied warranty claims under state law.").

claim with "fewer than one hundred named plaintiffs"); *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311(JSR), 2013 WL 3936193, *1 (S.D.N.Y. July 26, 2013) (same).[13]

### D.  Plaintiffs' Product Defect Claims Should Be Dismissed

Plaintiffs Ostenfeld, Stilwill, and Murphy assert claims for design defect (Count V), manufacturing defect (Count VI), and warning defect (Count VII).[14] Each should be dismissed.

### 1.  Plaintiffs fail to plausibly plead proximate cause.

Plaintiffs fail to plausibly trace a line of causation between the design, manufacturing, and warning defects they allege in Products and their injuries.[15] In New Jersey, Nebraska, and California, injury alone is not enough to state a product liability claim—Plaintiffs must also allege that the Products' defect or failure to warn was the proximate cause of their harm. *See Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 823–24 (D.N.J. 2019); *Vicente v. DePuy Syntheses Co.*, 570 F. Supp. 3d 232, 241 (D.N.J. 2021) (including causation as one of three "essential"

---

[13] The Laundress recognizes that this Court previously found CAFA provides subject matter jurisdiction over MMWA claims even when plaintiffs cannot satisfy the MMWA's 100-named plaintiff threshold. *See Weisblum v. Prophase Labs, Inc*., 88 F. Supp. 3d 283, 293-94 (S.D.N.Y. 2015) (Furman, J.). The Laundress, however, respectfully submits that more recent jurisprudence compels dismissal.

[14] Ostenfeld, Stilwill, and Murphy's claims are governed by the substantive law of their home states—New Jersey, Nebraska, and California. Where, like here, there is a choice-of-law issue in the products liability context, New York courts apply the law of the location of the harm. *See Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411, 417–19 (E.D.N.Y. 2013) (citing *Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 423 (S.D.N.Y. 2004)) (explaining that for choice-of-law purposes, "conduct-regulating rules," for example, negligence claims, are governed by the law of the place of the harm); *see also Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 426–27 (S.D.N.Y. 2013) (applying location of the harm test to 12(b)(6) motion). Here, Plaintiff Ostenfeld is a citizen of New Jersey, Plaintiff Stilwill is a citizen of Nebraska, and Plaintiff Murphy is a citizen of California. *See* Compl. ¶¶ 15, 17, 18 and throughout the Complaint, Plaintiffs contend that the Products are for use in the home. *See* Compl. ¶ 38 (explaining that "consumers (including Plaintiffs)" "are known to fill entire shelves ***at home*** with the Products." (emphasis added); *id*. ¶ 175 ("[T]he Products are designed for . . . cleaning and laundry purposes ***throughout the home***") (emphasis added). Accordingly, the Court should apply New Jersey, Nebraska, and California law to Plaintiffs' claims.

[15] Plaintiffs allege a design defect exists because (1) the Products' design fails the consumer expectation test because the Products did not meet Plaintiffs' safety expectations and (2) the design fails the risk-benefit test because the benefit of the design without "preservatives/biocidal/antimicrobial agents" outweighs "the risk of danger inherent in such design." *See* Compl. ¶¶ 168-183. Plaintiffs allege a manufacturing defect exists because "at the time the Products left Defendant's hands, the Products deviated from Defendant's intended result/design/specifications or deviated from other seemingly identical models in a number of ways" that led to bacterial contamination. *See id.* ¶¶ 168-183. Plaintiffs allege a failure to provide an adequate warning "because Defendant knew of or should have known of the risk that the Products were contaminated with bacteria or were at risk of bacterial contamination based on systemic flaws in Product design or manufacturing." *Id.* ¶¶ 195-206.

elements of a design defect claim under New Jersey law); *Mascola v. Sears, Roebuck & Co.*, No. CIV.A. 04-3322 (WHW), 2008 WL 4601905, at *2 (D.N.J. Oct. 15, 2008) ("Under New Jersey law . . . the plaintiffs bear the burden of proving that the failure to warn was the proximate cause of the plaintiffs' injury"); *Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26, 34 (D. Mass. 2021) (noting that a plaintiff under Nebraska law "must show" that their injuries "were a direct and proximate result of the alleged defect"); *Krajewski v. Enderes Tool Co.*, 469 F.3d 705, 710 (8th Cir. 2006) ("under the rule in Nebraska . . . an allegedly inadequate warning must be the proximate cause of the plaintiff's injury."); *Rovid v. Graco Children's Prod. Inc.*, No. 17-CV-01506-PJH, 2018 WL 5906075, at *14 (N.D. Cal. Nov. 9, 2018) (identifying the elements of a design defect claim, including that "the defect causes injury"); *Crayton v. Rochester Med. Corp.*, 2011 WL 475009 *10 (E.D. Cal. Feb. 4, 2011) (identifying the elements of a manufacturing defect claim, including "the product's defect was a substantial factor in causing the harm.""); *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009), *aff'd sub nom.*, *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012) (identifying the final element of a failure to warn claim as "the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm"). They fail to do so here.

Throughout the Complaint, Plaintiffs lodge elemental recitations, without support, that the alleged defects "proximately caused and were a substantial factor" in causing their injuries. *See, e.g.*, Compl. ¶¶ 182, 193, 205. This mere recital of the elements of their causes of action is insufficient to plausibly plead proximate cause. Further, Plaintiffs only claim that "[d]uring the Class Period, Plaintiffs purchased Products that Defendant later and untimely identified as being at risk of bacterial contamination" and defining the "Class Period" as merely "the applicable statutes of limitations for Plaintiffs' claims." *See* Compl. ¶ 8, n.2. Indeed, as to their specific

purchases, Plaintiffs only allege they purchased products during the "Class Period," not during the relevant recall period. *See, e.g.,* Compl. ¶¶ 95, 98, 101.

Other than boilerplate allegations of causation, Plaintiffs allege no specific facts connecting the dots between the alleged defects in the Products they used and their injuries. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F. 4th 77, 82 (2d Cir. 2022) (noting a plaintiff must provide "more than a 'formulaic recitation of the elements of a cause of action'"). The Court should thus dismiss each of Plaintiffs' product liability claims (Counts V, VI, and VII) for failing to plead facts sufficient to establish proximate causation.

### 2.   Plaintiffs do not plausibly allege a duty to warn.

A failure to warn claim requires Plaintiff to allege facts from which it can be inferred that The Laundress had a duty to warn, that an adequate warning was not provided, and that a breach of the duty (i.e., the absence of a warning) was a proximate cause of her harm. *See Mendez v. Shah*, 28 F. Supp. 3d 282, 299 (D.N.J. 2014); *see, e.g.*, *Ribeiro v. Baby Trend, Inc.*, No. 8:12CV204, 2017 WL 11485740, at *4 (D. Neb. Apr. 12, 2017) ("Manufacturers and sellers are strictly liable if they fail 'either to warn or adequately to warn about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the products [they] sell[ ].'"); *Rosa*, 675 F. Supp. 2d 1006 at 1011) (finding that, among other things, failure to warn claim under California law requires that potential risks of product were known or knowable to defendant at the time of manufacture or distribution, or sale).

In the products liability context, a duty to warn arises when "[D]efendant[s] (or those within the relevant industry) had knowledge of the harmful effects of a product" at the time the product was designed and sold. *Fellner v. Tri-Union Seafoods, LLC*, 2010 WL 1490927, at *5 (D.N.J. Apr. 13, 2010); *see also Rodas v. Porsche Cars N. Am., Inc.*, No. CV-14-3747-PSG-MRWx, 2015 WL 12762064, at *4 (C.D. Cal. Feb. 13, 2015) ("The timing element of the failure

to warn doctrine in the strict liability context is well-settled. A manufacturer or distributor is only liable for failure to disclose risks known or knowable "at the time of manufacture or distribution.").

Here, as discussed above, Plaintiffs do not plead facts to establish that The Laundress knew about the risk of contamination before The Laundress issued the Safety Notice or initiated its recall. *See supra* IV.A. Plaintiffs make only conclusory allegations based on speculative hypotheticals. *See, e.g.*, Compl. ¶¶ 67-68; 202-203. Their attempt to retrofit The Laundress's knowledge to the beginning of the recall period (and to the start of the proposed Class Period) lacks factual support and, thus, Plaintiffs fail to plausibly allege a claim for failure to warn. Courts consistently dismiss failure-to-warn claims in similar circumstances. *See Vicente*, 570 F. Supp. 3d at 244 (dismissing because complaint contained nothing more than conclusory allegation that harm suffered by plaintiffs was due to inadequate warning); *Rodas*, 2015 WL 12762064, at *5-6 (information presented by Plaintiff that allegedly put the defendant on notice of the dangers of the car model do not support Plaintiff's failure to warn claim if it post-dates the manufacture and distribution of the model and dismissing Plaintiff's failure to warn claim). Without plausible allegations of The Laundress's knowledge of the risk of potential bacterial contamination at the time of manufacture or sale, Plaintiffs cannot allege a duty to warn and their claim should be dismissed.

### E.  Plaintiffs' Claim for Unjust Enrichment Fails.

Plaintiffs allege, in Count VIII of the Complaint, that The Laundress "has been unjustly enriched in retaining the revenues derived from Plaintiffs' . . . purchases of the Products" because The Laundress allegedly "misrepresented that the Products (i) would not contain toxic substances and (ii) is generally recognized as safe." Compl. ¶ 214.[16] To start, this claim is moot as discussed

---

[16] New York's choice of law test "requires the application of the law of the state of purchase to . . . claims for unjust enrichment." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008). As noted above, Plaintiffs do not allege the geographic location of their respective transactions. *See supra* II. Nevertheless, and without waiving the argument that Plaintiffs fail to carry their burden to establish territoriality for their NYGBL claim,

above. *See supra* IV.A. Nevertheless, and notwithstanding that the purported "representations" Plaintiffs point to within this cause of action appear nowhere on The Laundress's packaging (or anywhere else), Plaintiffs claim they suffered injuries "because they would not have purchased the Products if the true facts regarding the Products were known" and seek "restitution" from The Laundress. *Id*. at ¶¶ 214 and 215. This claim fails for several reasons.

### 1. Plaintiffs' claim for unjust enrichment fails under Rule 9(b).

Plaintiffs' claim for unjust enrichment sounds in fraud, as they allege that The Laundress "misrepresented that the Products (i) would not contain toxic substances and (ii) is generally recognized as safe." Compl. ¶ 214. But when a misrepresentation is the basis for a claim for unjust enrichment, the allegations must meet the particularity requirements of Rule 9(b). *See Welch v. TD Ameritrade Holding Corp.*, No. 07 CIV. 6904 (RJS), 2009 WL 2356131, at *24 (S.D.N.Y. July 27, 2009) (a claim for unjust enrichment that is "based on the same allegations of intentional misrepresentations and omissions by Defendants that are described throughout the SAC, they are subject to Rule 9(b)."). But Plaintiffs' do not allege the "who, what, when, where and how" of the misrepresentations that form the basis of this claim.

### 2. Plaintiffs' claim for unjust enrichment is duplicative of other claims.

Plaintiffs' claim for unjust enrichment should be dismissed for the simple reason that it is duplicative of their other causes of action. Courts routinely dismiss duplicative unjust enrichment claims. *See Harris v. Pfizer, Inc*., 586 F. Supp. 3d 231, 245-46 (S.D.N.Y. 2022) (noting that unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *Castillo v. Toll Bros*., 130 Cal. Rptr. 3d 150, 179 (Cal. App. 4th 2011) (California does not recognize unjust enrichment as a separate cause of action"); *Goodman v. Internet, Inc.*,

---

The Laundress assumes for purposes of Plaintiffs' unjust enrichment claims that their purchases occurred in their respective home states.

No. 2:22-CV-02926 (WJM), 2023 WL 2368123, at *8 (D.N.J. Mar. 6, 2023) (noting that "New Jersey does not recognize unjust enrichment as an independent tort cause of action" and "a plaintiff cannot sustain an unjust enrichment claim where there is an adequate remedy at law").

### F.   Plaintiffs Are Not Entitled to Restitution or Disgorgement

Plaintiffs' request for the equitable relief of restitution and disgorgement should be stricken. *See* Compl. ¶¶ 215, 231, 238. It is well-established under New York law that equitable relief is only available where plaintiffs lack an adequate remedy at law. *See Brown v. Sandimo Mat.*, 250 F.3d 120, 127 (2d Cir. 2001) (emphasizing that restitution is an equitable remedy and that "before equitable relief will be granted, plaintiffs must show that they have no adequate remedy at law"); *Shetel Ind. LLC v. Adin Dental Implant Sys., Inc.*, 2021 WL 1108666, at *3 (E.D.N.Y. 2021) (rejecting equitable claim because plaintiff also sought actual damages premised on the same conduct, highlighting the existence of an adequate remedy at law). Here, Plaintiffs cannot—and do not—claim they lack a legal remedy. *See generally*, Compl. This is unsurprising, given that they seek actual damages. Put simply, Plaintiffs may not seek restitution or disgorgement while simultaneously seeking money damages premised on the same allegations. *See id*. Their request for equitable relief should be rejected. *See SCM Corp. v. Xerox Corp.*, 507 F.2d 358, 363 (2d Cir. 1974) ("[I]t is basic that equitable relief will not be granted where an adequate remedy at law exists. Money damages if determinable with a reasonable degree of certainty constitute such an adequate remedy").

### G.  Plaintiffs Are Not Entitled To Medical Monitoring

In addition to other equitable remedies to which they are not entitled, *see supra*, Plaintiffs seek "a medical monitoring protocol for Plaintiffs . . . to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Pseudomonas*, *Klebsiella*, and/or

*Burkholderia cepacia*[.]" *See* Compl. p. 55, at subsection (c), Wherefore Clause. This request should be rejected.

To start, as to Plaintiff Stilwill, medical monitoring is not available as a remedy under Nebraska law. *See Trimble v. ASARCO Inc.*, 83 F. Supp. 2d 1034, 1042 (D. Neb. 1999) ("plaintiffs have cited no authority, and the court has found none, which would suggest that Nebraska law recognizes either a cause of action for medical monitoring or a remedy involving the creation of a medical monitoring fund"). With respect to Plaintiff Ostenfeld, New Jersey law makes clear that "medical-surveillance damages may be awarded only if a plaintiff reasonably shows that medical surveillance is required because the exposure caused a distinctive increased risk of future injury and would require a course of medical monitoring independent of any other that the plaintiff would otherwise have to undergo." *Theer v. Philip Carey Co.*, 628 A.2d 724, 732–33 (N.J. 1993). Other than a conclusory statement that she is "still at risk," *see* Compl. ¶ 100, Plaintiff Ostenfeld does not plead any plausible allegations that she is at a "distinctive increased risk of future injury" as a result of the Products' alleged defects or that she will "require a course of medical monitoring" different from what she would otherwise undergo.

Nor is Plaintiff Murphy entitled to medical monitoring. Under California law, courts consider the following factors when considering whether a plaintiff satisfied the high bar required to impose medical monitoring: (1) the significance and extent of the plaintiff's exposure to chemicals, (2) the toxicity of the chemicals, (3) the relative increase in the chance of onset of disease in the exposed plaintiff as a result of the exposure when compared to (a) the plaintiff's chances of developing the disease had she not been exposed and (b) the chances of the members of the public at large of developing the disease, (4) the seriousness of the disease for which plaintiff is at risk, and (5) the clinical value of early detection and diagnosis. *See Riva v. Pepsico*, 82 F.

Supp. 3d 1045 (N.D. Cal. 2015). Plaintiff Murphy makes no allegations addressed to any of these factors and thus her request for medical monitoring should therefore be dismissed. *See id*. (dismissing request for medical monitoring because plaintiffs provided no context as to the significance and extent of exposure to make the ultimate showing that "the need for future monitoring is a reasonably certain consequence of the toxic exposure.").

Medical monitoring is not available for Plaintiff Geschwind either. Under New York law, medical monitoring is not available absent physical injury or property damage. *See Caronia v. Philip Morris USA, Inc*. 22 N.Y.3d 439, 446–48 (N.Y. 2013) ("*Caronia II*") (no claim for medical monitoring absent physical injury or damage to property); *see also Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 501 (2d Cir. 2020) (confirming New York law does not recognize medical monitoring independent of the presence of a claim for personal injury or property damage). It is undisputed that Geschwind does not claim to have suffered physical injuries. *See* Compl. ¶ 11 (noting Geschwind "has not definitely suffered a physical injury at this time[.]"). And to the extent her request for medical monitoring is premised on alleged property damage, such a request is moot given her admission that she has "disposed of" the affected "hangers and containers used to store contaminated clothing." Compl. ¶ 93.

At bottom, medical monitoring is a remedy not often awarded and it is not applicable to the circumstances of this case. Plaintiffs' request for medical monitoring should be rejected.

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs' Complaint should be dismissed.

Dated: June 1, 2023

Respectfully submitted,

*/s/ Ronald Y. Rothstein*

Ronald Y. Rothstein (*pro hac vice*)
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Jared Kessler (*pro hac vice*)
Winston & Strawn LLP
200 South Biscayne Boulevard
Suite 2400
Miami, FL 33131
jrkessler@winston.com
Telephone: (305) 910-0500
Facsimile: (305) 910-0505

Rebecca Loegering (*pro hac vice*)
Winston & Strawn LLP
2121 N. Pearl Street
Suite 900
Dallas, TX 75201
rloegering@winston.com
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

ATTORNEYS FOR THE LAUNDRESS, LLC