**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LORI OSTENFELD, DEBORAH GESCHWIND, MARGARET MURPHY and JUDY STILWILL, individually and on behalf of all others similarly situated,<br><br><br><br>Plaintiffs,<br><br>v.<br><br>THE LAUNDRESS, LLC,<br><br>Defendant. | Case No.: 1:22-cv-10667-JMF<br><br><br>The Honorable Jesse M. Furman |

**PLAINTIFFS' MEMORANDUM OF LAW**
**OPPOSING DEFENDANT'S MOTION TO DISMISS**

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
Paul Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste. 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson*
Christopher T. Aumais*
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com
cta@ggallp.com

**ATTORNEYS FOR PLAINTIFFS**
**AND THE PROPOSED CLASSES**

*Pro hac vice forthcoming*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

FACTUAL ALLEGATIONS ...............................................................................3

    A.  Laundress Misleadingly Promoted the Products............................................3

    B.  Laundress Recalled Products Contaminated with Deadly Bacteria ..............3

    C.  Plaintiffs Were Damaged and Injured After Purchasing and Using Products .............3

LEGAL STANDARDS ........................................................................................5

    A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rule 12(b)(1)) ...............5

    B.  Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6)) ...................5

    C.  Pleading Fraud (Rule 9(b)).............................................................................5

ARGUMENT ........................................................................................................6

    A.  A Choice of Law Determination Would Be Premature .................................6

    B.  The Recall Does Not Moot Plaintiffs' Claims ..............................................7

    C.  Plaintiffs State Consumer Protection Claims (Counts I, IX, X, XI) ...........10

        1.  Plaintiffs Plausibly Allege Affirmative False or Misleading Conduct ...................10

        2.  Plaintiffs Plausibly Allege Actionable Omissions....................................12

        3.  Plaintiffs Allege Standing under NYGBL .............................................15

        4.  Plaintiff Murphy Alleges Her California Statutory Claims With Particularity........................................................................................16

    D.  Plaintiffs State Express and Implied Warranty Claims (Counts II, III, IV).................17

        1.  Plaintiffs Allege Laundress Breached an Express Warranty ...................17

        2.  Plaintiffs Stilwill and Geschwind Provided Adequate Notice to Laundress ..........17

        3.  Plaintiff Murphy's Implied Warranty Claims Does Not Require Privity ...............19

        4.  CAFA Provides Subject Matter Jurisdiction Over the MMWA Claim

(Count IV) ................................................................................................................19

E. Plaintiffs State Their Product Defect Claims (Counts V, VI, VII)................................20

   1. Plaintiffs Allege Proximate Cause .........................................................................20

   2. Plaintiffs Allege a Duty to Warn ...........................................................................21

F. Plaintiffs State an Unjust Enrichment Claim (Count VIII) ...........................................22

G. Plaintiffs Are Entitled to Pursue Restitution and Disgorgement ..................................23

H. Plaintiffs Allege the Necessity of Medical Monitoring ................................................24

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abu Dhabi Inv. Auth. v. Citigroup, Inc.*,
   No. 12 CIV 283, 2013 WL 789642 (S.D.N.Y. Mar. 4, 2013) .................................................. 6

*Adam v. Barone*,
   41 F.4th 230, 234-35 (3d Cir. 2022) ........................................................................................ 9

*Baker v. Saint-Gobain Performance Plastics Corp.*,
   232 F. Supp. 3d 233 (S.D.N.Y. 2017)..................................................................................... 24

*Bardsley v. Nonni's Foods LLC*,
   No. 20 CIV 2979, 2023 WL 3570550 (S.D.N.Y. May 18, 2023)............................................. 8

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) .............................................................................................. 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................. 5

*Benoit v. Saint-Gobain Performance Plastics Corp.*,
   959 F.3d 491 (2d Cir. 2020).................................................................................................. 25

*Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*,
   655 F. App'x 9 (2d Cir. 2016)................................................................................................. 7

*Cacciola v. Selco Balers, Inc.*,
   127 F. Supp. 2d 175 (E.D.N.Y. 2001). ................................................................................... 6

*Candelaria v. Conopco, Inc.*,
   No. 21-CIV-6760, 2023 WL 2266047 (E.D.N.Y. Feb. 28, 2023) ........................................... 21

*Capax Discovery, Inc. v. AEP RSD Investors, LLC*,
   285 F. Supp. 3d 57 (W.D.N.Y. 2018) .................................................................................... 24

Caronia v. Philip Morris USA, Inc.,
   5 N.E.3d 11 (N.Y. 2013).......................................................................................................... 24

*Carter v. Healthport Technologies, LLC*,
   822 F.3d 47 (2d Cir. 2016)...................................................................................................... 5

Chafin v. Chafin,
   133 S. Ct. 1017 (2013 .............................................................................................................. 8

*Charlton v. LG Energy Sol. Mich., Inc.*,
   No. 21-CIV-0214, 2023 WL 1420726 (S.D. Cal. Jan. 31, 2023) ............................................ 10

*Clinger v. Edgewell Pers. Care Brands, LLC*,
   No. 3:21-CIV-1040, 2023 WL 2477499 (D. Conn. Mar. 13, 2023) ........................................ 25

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d Cir. 2007) ................................................................................................ 10

*Colpitts v. Blue Diamond Growers*,
   527 F. Supp. 3d 562 (S.D.N.Y. 2021) ................................................................................ 19

*Cooper v. Anheuser-Busch LLC*,
   No. 20-CIV -7451 (S.D.N.Y. filed on Sept. 11, 2020) ........................................................ 19

*Corso v. Fischer*,
   983 F. Supp. 2d 320 (S.D.N.Y. 2015) .................................................................................. 7

*Cruz v. FXDirectDealer*, LLC,
   720 F.3d 115 (2d Cir. 2013) ................................................................................................ 15

*Di Prospero v. R. Brown & Sons, Inc.*,
   110 A.D.2d 250 ...................................................................................................................... 8

*Farina v. Metro. Transportation Auth.*,
   409 F. Supp. 3d 173 (S.D.N.Y. 2019) ................................................................................ 23

*Fasolas v. Bobcat of New York, Inc.*,
   53 N.Y.S.3d 61 (2nd Dep't 2017) ...................................................................................... 20

*Fink v. Time Warner Cable*,
   837 F. Supp. 2d 279 (S.D.N.Y. 2011) ................................................................................ 12

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   640 F. Supp. 2d 300 (S.D.N.Y. 2009) .................................................................................. 6

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................................... 17

*Gonzalez v. Costco Wholesale Corp.*,
   No. 16 CIV-2590, 2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) ...................................... 11

*Grassis v. Johns-Manville Corp.*,
   591 A.2d 671 (N.J. Super. Ct. App. Div. 1991) ................................................................ 20

*Grossman v. Simply Nourish Pet Food Co. LLC*,
 516 F. Supp. 3d 261 (E.D.N.Y. 2021) ..................................................................... 18

*Guariglia v. Procter & Gamble Co*.,
 No. 215-CIV-04307, 2018 WL 1335356 (E.D.N.Y. Mar. 14, 2018) ......................... 13

*Harris v. Pfizer, Inc.*,
 586 F. Supp. 3d 231 (S.D.N.Y. 2022 ..................................................................... 23

*Hesse v. Godiva Chocolatier, Inc.*,
 463 F. Supp. 3d 453 (S.D.N.Y. 2020) ..................................................................... 17

*Holman v. Ali Indus., LLC.*,
 No. 4:22-CIV-4133-NKL, 2023 WL 3632769 (W.D. Mo. May 24, 2023) ................ 18

*Humphrey v. Diamant Boart, Inc.*,
 556 F. Supp. 2d 167 (E.D.N.Y. 2008). ..................................................................... 22

*In re AXA Equitable Life Ins. Co. COI Litig.*,
 595 F. Supp. 3d 196 (S.D.N.Y. 2022) ....................................................................... 6

*In re Big Heart Pet Brands Litig.*,
 No. 18-CIV-00861, 2019 WL 8266869 (N.D. Cal. Oct. 4, 2019) ............................. 14

*In re Fyre Festival Lit.*,
 399 F. Supp. 3d 203 (S.D.N.Y. 2019) ..................................................................... 16

*In re Mattel, Inc.*,
 588 F. Supp. 2d 1111 (C.D. Cal. 2008) ..................................................................... 25

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
 591 F. Supp. 2d 259 (S.D.N.Y. 2008) ............................................................. 8, 20, 21

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*,
 No. 20-CIV-03184, 2021 WL 3191733 (N.D. Cal. July 28, 2021) ...................... 11, 12

*In re: Gen. Motors LLC Ignition Switch Litig.*,
 No. 14-MC-2543, 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ............................... 14

*Irvine v. Kate Spade & Co.*,
 No. 16-CV-7300, 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ............................. 10

*Ivory v. Int'l Bus. Machines Corp.*,
 116 A.D.3d 121 (3d Dep't 2014) ............................................................................. 24

*Jian Wu v. Ean Holdings, LLC*,
    No. 5:13-CIV-00188, 2014 WL 117338 (N.D. Cal. Jan. 10, 2014) .......................................... 22

*Jovine v. Abbott Lab'ys, Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla 2011) .................................................................................... 9

*Karlin v. IVF America, Inc.*,
    712 N.E.2d 662 (N.Y. 1999) ................................................................................................... 10

*Knox v. Service Employees*,
    132 S. Ct. 2277 (2012) ........................................................................................................... 7

*Kommer v. Ford Motor Co.*,
    No. 17-CIV-029, 2018 WL 3727353 (N.D.N.Y. Aug. 6, 2018) ................................................. 13

*Kowalsky v. Hewlett-Packard Co.*,
    No. 10-CIV-02176, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ......................................... 14

*Langner v. Boston Sci. Corp.*,
    492 F. Supp. 3d 925 (D. Neb. 2020) ...................................................................................... 18

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir.1997) ................................................................................................... 6

*Locust Valley Water Dist. v. Dow Chem. Co.*,
    465 F. Supp. 3d 235 (E.D.N.Y. 2020); ................................................................................... 20

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
    419 F. Supp. 3d 668 (S.D.N.Y. 2019) ..................................................................................... 8

*Monbo v. Nathan*,
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) ...................................................................................... 6

*Morales v. Toyota Motor Sales, U.S.A., Inc.*,
    494 F. Supp. 3d 709 (C.D. Cal. 2020) .................................................................................... 19

*Nebraska Plastics, Inc. v. Holland Colors Am., Inc.*,
    No. 4:01-CIV-603, 2003 WL 22519410 (D. Neb. Nov. 7, 2003) ............................................. 17

*Obertman v. Electrolux Home Care Prod., Inc.*,
    482 F. Supp. 3d 1017 (E.D. Cal. 2020) .................................................................................. 13

*Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp.*,
    549 F. Supp. 3d 276 (E.D.N.Y. 2021) ..................................................................................... 12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995). ........................................................................................ 10

*Porsch v. LLR, Inc.*,
  380 F. Supp. 3d 418 (S.D.N.Y. 2019).................................................................. 9

*Prudential Oil Corp. v. Phillips Petroleum Co.*,
  418 F.Supp. 254 (S.D.N.Y. 1975) ...................................................................... 24

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013).................................................................. 11

*Reynolds v. Lifewatch, Inc.*,
  136 F. Supp. 3d 503 (S.D.N.Y. 2015).................................................................. 9

*Rodas v. Porsche Cars N. Am., Inc.*,
  No. CIV-143747, 2015 WL 12762064 (C.D. Cal. Feb. 13, 2015 ........................ 22

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir.2007 ................................................................................... 5

*Rothschild v. Gen. Motors LLC*,
  No. 19-CIV-05240, 2020 WL 13581659 (E.D.N.Y. Sept. 30, 2020) ................... 8

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (Cal. Ct. App. 2015) .................................................... 13

*Segedie v. Hain Celestial Grp., Inc.*,
  No. 14-CIV-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) ......................... 11

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012)................................................................. 5

*Smith v. Railworks Corp.*,
  No. 10 CIV. 3980, 2011 WL 2016293 .................................................................. 7

*Speedmark Transp., Inc. v. Mui*,
  778 F. Supp. 2d 439 (S.D.N.Y. 2011)................................................................. 7

*St. John's Univ., N.Y. v. Bolton*,
  757 F. Supp. 2d 144 (E.D.N.Y. 2010) ............................................................... 23

*Tomassini v. FCA U.S. LLC*,
  No. 3:14-CIV-1226, 2015 WL 3868343 (N.D.N.Y. June 23, 2015) ................... 14

*United States v. Wells Fargo Bank, N.A.*,
  972 F. Supp. 2d 593 (S.D.N.Y. 2013)........................................................................... 6

*Vicente v. DePuy Syntheses Co.*,
  570 F. Supp. 3d 232 (D.N.J. 2021) ............................................................................. 22

*Volin v. Gen. Elec. Co.*,
  189 F. Supp. 3d 411 (D.N.J. 2016) ............................................................................. 17

*Williams v. Gerber Products, Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................................... 10, 11

## INTRODUCTION

The Laundress, LLC ("Laundress") made high-end cleaning and detergent Products that it sold at premium prices. The Products were supposed to be nontoxic and help consumers clean their clothes and homes but were instead contaminated with deadly bacteria. In December 2022, Laundress admitted that, since at least January 2021, the Products contained *Burkholderia cepacia* complex, *Klebsiella aerogenes* and multiple different species of *Pseudomonas*, antibiotic resistant bacteria widely known to cause severe health issues and death. ¶ 2.[1] As a result, Laundress recalled every Product it had manufactured (eight million units) and instructed consumers to dispose of the Products without emptying the contents, indicating a contamination danger so severe that the Products could not be safely opened. Plaintiffs plausibly allege that Laundress sold millions of contaminated Products to unwitting consumers while highlighting "nontoxic" Product attributes and without disclosing the known contamination risk.

Plaintiffs purchased recalled and contaminated Products based on Laundress's misleading advertising and omissions, suffering injuries and damages as a result. ¶¶ 8-12, 92-102. Plaintiffs Murphy, Ostenfeld, and Stilwill were physically injured after using the contaminated products and developed symptoms consistent with exposure to bacterial contamination. *See, e.g.*, ¶ 96 (Plaintiff Murphy and her family experienced respiratory infections, skin rashes and hives); ¶99 (Plaintiff Ostenfeld developed respiratory problems and skin irritation after using the recalled Products); ¶102 (Plaintiff Stilwill developed respiratory and sinus injuries after using the recalled Products). All Plaintiffs suffered economic damages, with Plaintiff Geschwind spending additional money and discarding property to remediate the contamination.

---

[1]      "¶___ or "¶¶___" refer to paragraphs in the Consolidated Class Action Complaint (Dkt. 16).

Laundress now moves to dismiss the Complaint on various grounds, including that its recall moots eight of the Plaintiffs' claims. Laundress has not come forward with evidence about the dollar amount of recalled Products it sold and the amount of refunds it provided to impacted consumers. If, in fact, Laundress had that type of proof, it would have come forward with a summary judgment motion demonstrating that it refunded the entire purchase price paid by consumers. Instead, Laundress is asking this Court to reject Plaintiffs' allegation that "[Laundress's] recall of the Products does not provide an adequate remedy for Plaintiffs and the proposed Classes." ¶¶ 83-89. But that argument goes far beyond the purpose of a motion to dismiss and must await another day. It also disregards authority from the Supreme Court, the Second Circuit, and courts throughout the country holding that an unaccepted offer (including a refund offer) cannot moot individual and class claims.

In its Rule 12(b)(6) motion, Laundress distorts and ignores applicable law and the Complaint's detailed factual allegations. For the consumer protection claims, Plaintiffs plausibly allege actionable unlawful and unfair conduct, affirmative "nontoxic" misrepresentations, and omissions concerning the Products' contamination risk. For the warranty claims, Laundress's "nontoxic" labeling provides an actionable affirmation of fact or promise creating an express warranty. Laundress represented that the Products were "nontoxic" when, in fact, the Products contained toxic bacteria that could kill.

Significantly, Laundress does not seek to dismiss Plaintiffs Ostenfeld and Stilwill's implied warranty claims or dispute that the contamination rendered the Products nonmerchantable. Rather, Laundress seeks to dismiss Plaintiff Geschwind and Murphys's warranty claims based on mistaken notice and privity arguments. Laundress also incorrectly argues CAFA cannot provide supplemental jurisdiction for Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim, and as

a result, the MMWA claims proceed with Plaintiffs' plausibly alleged warranty claims. For the products liability claims, Plaintiffs plead an inference of causation and duty to warn under the modest threshold required for notice pleading. Finally, Plaintiffs allege an entitlement to medical monitoring as a remedy for claims arising from personal injury and property damage, and Plaintiffs permissibly plead an alternative claim for unjust enrichment and requests for equitable relief.

The Court should deny Laundress's motions and permit discovery.

## FACTUAL ALLEGATIONS

### A.    Laundress Misleadingly Promoted the Products

Laundress set itself apart through widespread marketing emphasizing its purported natural, non-toxic, and eco-friendly cleaning Products, including labels stating "Non-toxic, biodegradable, and allergen-free." ¶ 32. Laundress's branding as the premium, non-toxic, and natural alternative was found on labeling (¶¶ 32, 35-38), its website (¶¶ 30, 33), on social media (¶ 33, 34), and other promotional channels (¶ 30-31). Laundress's marketing allowed it to charge super-premium prices for Products, with one gallon of Laundress Signature Detergent costing approximately $94 per unit versus one gallon of Tide Original laundry detergent, which sells for approximately $37. ¶ 29.

Despite its promotions, Laundress well-understood that its Products—which lack preservatives and contain unique blends of organic materials—were highly susceptible to bacterial contamination. ¶¶ 49, 50, 52-57. Despite understanding the peculiar risks to its Products, Laundress knowingly failed to implement adequate Product designs and manufacturing processes to ameliorate the contamination risk and ignored consumer reports of infection, knowingly placing eight million contaminated, or likely contaminated, Products into the market without regard to consumer safety and health. ¶¶ 3-6, 58-73. Laundress misled consumers regarding its Products and failed to disclose the contamination risk to selfishly protect its bottom line and to avoid a Product

design and manufacturing overhaul. ¶¶ 4-6, 72-73, 77. In December 2022, Laundress could no longer conceal the catastrophic issues plaguing its Products, resulting in a massive recall and intervention by the Consumer Product Safety Commission ("CPSC").  ¶¶ 7, 79-82, 90.

**B.      Laundress Recalled Products Contaminated with Deadly Bacteria**

In December 2022, Laundress recalled approximately eight million Products. Laundress revealed the Products can contain *Burkholderia cepacia* complex, *Klebsiella aerogenes* and multiple different species of *Pseudomonas* (deadly, antibiotic resistant bacteria) and further revealed it had received eleven reports of *Pseudomonas* infections. ¶ 80. Laundress admitted that the contamination impacted Products manufactured between January 2021 and September 2022, recalled every existing Product (even Products produced before that time), and ceased all sales. *Id.*

Laundress's recall was too little, too late and did not prevent physical injuries or provide an adequate remedy for Laundress's knowing misconduct. ¶¶ 83-88. Among other things, the recall required proof of purchase (even though most of the Products would have been previously discarded) and did not provide compensation for physical injuries or remediation efforts. *Id.*

**C.      Plaintiffs Were Damaged and Injured After Purchasing and Using the Products**

Plaintiffs suffered injuries and damages after purchasing and using contaminated Products. ¶ 5. Prior to purchase, Plaintiffs reviewed and relied on Laundress's misleading advertising, including labels stating that the Products were "nontoxic," as well as omissions regarding contamination. ¶¶ 8-12, 92-101. After using the Products, Plaintiffs Ostenfeld, Murphy, and Stilwill suffered physical injuries to their skin, sinuses, and respiratory symptoms. ¶¶ 95-101. Although Plaintiff Geschwind has not experienced physical injuries at this time, she—like the other Plaintiffs—was duped into buying worthless, dangerous Products, and she spent money remediating the contamination, including disposing of hundreds of dollars of property. ¶¶ 92-94.

Based on Laundress's misconduct, Plaintiffs bring claims individually and on behalf of three proposed Classes for: violating the NYGBL; breach of express warranty; breach of implied warranty (not disputed by Laundress for Plaintiffs Ostenfeld and Stilwill); violating the MMWA; Design Defect; Manufacturing Defect; Failure to Warn; unjust enrichment; violating California's Unfair Competition Law ("UCL"); and violating California's False Advertising Law ("FAL").

## LEGAL STANDARDS

### A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rule 12(b)(1))

Where, as here, a Rule 12(b)(1) motion consists of a facial challenge directed at the complaint, "the plaintiff has no evidentiary burden." *Carter v. Healthport Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). The court should determine whether the plaintiff "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue[,]" accept the complaint's allegations as true, "and draw[] all reasonable inferences in favor of the plaintiff." *Id.*

### B.      Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

A court should deny a Rule 12(b)(6) motion where the complaint states a claim for relief "plausible on its face." *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *3 (S.D.N.Y. Apr. 28, 2021). A claim is plausible when the complaint contains a "reasonable inference that the defendant is liable for the misconduct alleged[.]" *Id.* at *3. A court "must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.'" *Id.*

### C.      Pleading Fraud (Rule 9(b))

For Rule 9(b), a plaintiff must "(1) specify the statements . . . , (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 615 (S.D.N.Y. 2013)

(Furman J.). "[T[he heightened pleading requirements of Rule 9(b) may be relaxed 'when the facts underlying the fraud are peculiarly within [the] opposing party's knowledge.'" *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 310 (S.D.N.Y. 2009).

## ARGUMENT

### A.   A Choice of Law Determination Would Be Premature

The Court should defer conducting a definitive choice of law analysis until Plaintiffs can develop a factual record concerning the contacts between their claims and New York, Laundress's principal place of business. A federal court sitting in diversity jurisdiction applies the choice of law rules of a court of general jurisdiction in the forum state. *See In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 238 (S.D.N.Y. 2022) (Furman, J.). For warranty claims, New York courts apply a "center of gravity" analysis. *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir.1997).[2] For products liability claims, "New York courts apply an 'interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied[.]'" *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001).[3] For an unjust enrichment claim, a court must decide whether to apply the "center of gravity" or the "interest analysis" test, depending on whether the claim sounds in tort or contract. *Monbo v. Nathan*, 623 F. Supp. 3d 56, 110 (E.D.N.Y. 2022) (internal citation omitted).

The choice of law rules governing Plaintiffs' claims involve numerous, fact-intensive

---

[2]       "Under this approach, courts may consider . . . the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. New York courts may also consider public policy 'where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests.' [T]he places of contracting and performance, are given the heaviest weight in this analysis. *Lazard Freres & Co.*, 108 F.3d at 1539 (internal citations omitted).

[3]       "This interest analysis requires the court to determine whether the purpose of the legal standards at issue is to regulate conduct or to allocate losses, and to identify the significant contacts among the parties and the states involved." *Cacciola*, 127 F. Supp. 2d at 184. "This interest analysis is fact intensive and 'flexible.' While the place where the injury was felt is an important factor, it is not conclusive." *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12 CIV. 283 GBD, 2013 WL 789642, at *6 (S.D.N.Y. Mar. 4, 2013) (internal citations and quotation omitted).

considerations. Although Laundress argues for the application of laws of Plaintiffs' home-states (Def. Br. at 15 n.11; 18 n.15), Plaintiffs allege substantial contacts between their claims and New York, including that "Laundress created and/or authorized the false and misleading representations and omissions from New York," and Laundress—from its New York headquarters—developed, manufactured, distributed, and recalled the Products. ¶ 23-24. The Complaint establishes that the challenged misconduct originated from in New York with oversight by Laundress's management, meriting further factual development and deferral of a choice of law analysis.[4]

Courts in similar procedural postures have deferred a choice of law analysis until discovery so the parties can present facts germane to the requisite choice of law elements. *See Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd*., 655 F. App'x 9, 13 (2d Cir. 2016) (collecting cases); *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (declining to conduct "center of gravity" analysis on a motion to dismiss) (collecting cases); *Smith v. Railworks Corp*., No. 10 CIV. 3980 NRB, 2011 WL 2016293, at *6 (S.D.N.Y. May 17, 2011) ("[C]ourts often decline to make a choice of law determination at the motion to dismiss stage.").

## B.     The Recall Does Not Moot Plaintiffs' Claims

Without providing any evidence, Laundress wrongly suggests that its recall refund offer provides full relief for, and moots, Plaintiffs' warranty, unjust enrichment, and statutory consumer protection claims. "A defendant seeking to have a claim dismissed as moot bears a 'heavy burden.'" *Corso v. Fischer*, 983 F. Supp. 2d 320, 329 (S.D.N.Y. 2015) (citation omitted). A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez* , 577 U.S. 153, 161 (2016) (citation omitted).

---

[4]     Except for Plaintiff Murphy's California consumer protection claims, Plaintiffs analyze their claims under New York substantive law. Plaintiffs have provided applicable California, Nebraska, and New Jersey law in footnotes. Plaintiffs adequately allege all their claims under New York and their respective home-states' laws.

"As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (citation omitted); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("[A]n identifiable trifle will suffice."). Laundress fails to meet this very exacting standard.

Laundress's mootness argument fails because its refund offer does not provide a fraction of the relief Plaintiffs' individual and class claims allow. *See Rothschild v. Gen. Motors LLC*, No. 19-cv-05240-DLI-RLM, 2020 WL 13581659, at *5 (E.D.N.Y. Sept. 30, 2020) ("Although the Special Coverage Adjustment offers reimbursement and repairs . . . , it does not offer the complete remedy that Plaintiff seeks.") (collecting cases). Plaintiffs' NYGBL claims provide actual or statutory damages (whichever is greater), potential treble damages, and the recovery of attorney fees. *See* NYGBL §§ 349(h) and NY GBL 350-e. "Actual damages" are not limited to the purchase price but encompass "physical, emotional, pecuniary or reputational harm, or the impairment of a recognized legal right." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (citation omitted). Likewise, Plaintiffs' warranty claims provide consequential damages, including "injury to person or property[.]" *Di Prospero v. R. Brown & Sons, Inc.*, 110 A.D.2d 250, 251 (3d Dep't 1985) (citing NY UCC 2-715(2)(b)).[5]

Here, Laundress's refund program does not provide this relief. At best, the refund program only covers the purchase price of the Products (with proof of purchase), but does not include actual, statutory, and treble damages; compensation for property damage and personal injury (including medical monitoring); or attorneys' fees, all of which Plaintiffs are pursuing. *See Bardsley v. Nonni's Foods LLC*, No. 20 CIV. 2979 (NSR), 2023 WL 3570550, at *5 (S.D.N.Y. May 18, 2023)

---

[5]      Warranty claims brought in California, New Jersey, and Nebraska also provide for the recovery of consequential damages including personal injury and property damage. Cal. Com. Code § 2715(2)(b); Nev. Rev. St. UCC § 2-715(2)(b); N.J.S.A. 12A:2-715(2)(b).

(calculating potential damages under NYGBL were $550 per box of allegedly deceptive food product sold).[6] In any event, the Court should defer deciding, based solely on the Complaint, that Laundress's recall efforts have provided full relief mooting Plaintiffs' individual and class claims but instead await development of a factual record. *See Reynolds v. Lifewatch, Inc*., 136 F. Supp. 3d 503, 5-1315 (S.D.N.Y. 2015). ("[T]he extent to which the refund campaign has fully compensated . . . the putative class members is an open question.").

Even if Laundress was offering full relief (it is not), Laundress's unaccepted refund offers fail to moot Plaintiffs' individual and class claims. In *Campbell-Ewald Co.*, the Supreme Court held that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted" and "[a]n unaccepted settlement offer . . . does not moot a plaintiff's case." 577 U.S. at 165. Courts have extended *Campbell-Ewald*'s holding to include refunds like those offered by Laundress here. *See, e.g.*, *Adam v. Barone*, 41 F.4th 230, 234-35 (3d Cir. 2022); *Porsch v. LLR, Inc*., 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("LLR's voluntary refund program does not deprive Porsch of Article III standing.").

*Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla 2011), a case relied on by Laundress and predating *Campbell-Ewald Co.*, is not instructive and does not address Article III mootness principles. There, although the Court found that the defendant had engaged in unfair conduct actionable under Florida's consumer protection statute, the court found that the plaintiff did not allege damages because the defendant was voluntarily refunding the purchase price of the product, the most the plaintiff could recover. *Id.* at 1343-44. By contrast, Plaintiffs are entitled to relief far beyond the purchase price of the Product, and Plaintiffs have a live case or controversy

---

[6]     The Court should reject Laundress's fact-based argument that Plaintiff Geschwind's decision to spend money to remediate a contamination, including discarding hundreds of dollars of worth of potentially contaminated property, was "arbitrary." Def. Br. at 8 n.4. Instead, the Court should infer that Plaintiff Geschwind acted reasonably to protect herself from deadly bacteria and the remediation efforts are recoverable as actual damages.

under *Campbell-Ewald Co.*, Laundress's recall notwithstanding.[7]

## C.     Plaintiffs State Consumer Protection Claims (Counts I, IX, X, XI)

Under NYGBL § 349 or § 350, a defendant must have engaged in (1) "consumer-oriented" conduct that is (2) materially misleading and (3) causes injury to the plaintiff. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012). Justifiable reliance is not required (*id.* at 941-42), and "Rule 9(b) plainly does not apply[.]" *Irvine v. Kate Spade & Co.*, No. 16-CV-7300 (JMF), 2017 WL 4326538, at *2 (S.D.N.Y. Sept. 28, 2017).[8] Claims under the UCL and FAL are also governed by a "reasonable consumer" standard. *Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008). A plaintiff must allege "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020).

### 1.     Plaintiffs Plausibly Allege Affirmative False or Misleading Conduct[9]

Plaintiffs allege affirmative misleading misconduct by Laundress. Under NYBGL 349-50, the alleged deceptive act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). "[W]hether a particular act or practice is deceptive is usually a question of

---

[7]     Laundress's other Article III cases are also distinguishable. *Charlton v. LG Energy Sol. Mich., Inc.*, No.: 3:21-cv-02142-RBM-JLB, 2023 WL 1420726, at *5 (S.D. Cal. Jan. 31, 2023) (considering replacement recall, not refund offers); *Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *5 (D. Or. July 27, 2016) (finding refund offer provided complete relief without considering impact of *Campbell-Ewald Co.*); *Kury v. Abbott Lab'ys, Inc.*, No. 11–803 (FLW), 2012 WL 124026, at *5 n.2 (D.N.J. Jan. 17, 2012) (same).

[8]     The standards for NYGBL §§ 349 and 350 are "substantively identical" except GBL § 350 applies to false advertising. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (Furman, J.). Under NYGBL § 350-a (1), the term "false advertising" means advertising, including labeling, of a commodity[.]"

[9]     Laundress does not directly challenge Plaintiff Murphy's UCL claim to the extent it alleges "unfair" conduct. The UCL's "unfair" prong prohibits business practices the offend an established public policy or are immoral, unethical, oppressive, unscrupulous or substantially injurious. *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019)). The unfair prong also applies where "the consumer injury is substantial," not "outweighed by any countervailing benefits to consumers[,]" and "is not an injury the consumers themselves could reasonably have avoided." *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014). Plaintiff Murphy comfortably alleges that type of misconduct here. *E.g.*, ¶ 6.

fact." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) ("It is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients."); *Gonzalez v. Costco Wholesale Corp.*, No. 16CV2590NGGJO, 2018 WL 4783962, at *10 (E.D.N.Y. Sept. 29, 2018) ("[W]hether . . . a reasonable consumer would not expect 'environmentally responsible' products to contain the allegedly toxic ingredients, are not determinations that the court will make at the motion to dismiss stage.").

Likewise, under the UCL and FAL, false statements can deceive the public, along with ostensibly true statements that have a "capacity, likelihood or tendency to deceive or confuse." *Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008). As with NYGBL claims, "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact." *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-CV-03184-HSG, 2021 WL 3191733, at *7-8 (N.D. Cal. July 28, 2021) (finding "non-toxic" labeling actionable where the relevant products "contain[ed] ingredients that are toxic to humans[.]") (citing *Williams*, 552 F.3d at 938); *Bush v. Rust-Oleum Corp.*, No. 20-CV-03268-LB, 2021 WL 24842, at *2 (N.D. Cal. Jan. 4, 2021) ("The plaintiff alleges that Rust-Oleum's labeling the products as non-toxic . . . is deceptive . . . when . . . they can cause harm to humans[.]").

Here, Plaintiffs allege that Laundress's "non-toxic" labeling, as well as its widespread marketing campaign highlighting purported natural and non-toxic attributes, were affirmatively misleading. ¶¶ 29-38.[10] A reasonable consumer could interpret "non-toxic" to mean: (1) not posing "a risk of harm;" (2) not "containing or being poisonous;" (3) not "exhibiting symptoms of infection or toxicosis;" (4) not "extremely harsh, malicious, or harmful;" and/or (5) not "relating

---

[10]        Contrary to Laundress's assertion (Def. Br. at 8 n.5), Plaintiffs plausibly allege reliance on Laundress's widespread marketing campaign, which included the purported nontoxic attribute as a central selling point. ¶¶ 92-101.

to or being an asset that has lost so much value that it cannot be sold on the market." *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 2021 WL 3191733, at *8. [11] The Products did not live up to those reasonable interpretations because they were contaminated with, or were at unreasonable risk of being contaminated with, a highly dangerous cocktail of bacteria. ¶¶ 5, 38-39, 41-49.  At this early stage of the litigation, Plaintiffs allege affirmative misrepresentations.[12]

Laundress argues that "Plaintiffs do not allege what levels of bacteria would render the Products toxic[.]" Def. Br. at 9. However, the Complaint is unequivocal that the Products should not contain, or be at substantial risk of containing, any detectable levels of *Aeruginosa*, *Klebsiella*, or *Burkholderia*, a proposition that Laundress wholeheartedly agreed with before this litigation because it recalled every Product in the market (in some instances, twice over) and has halted sales for seven months. ¶¶ 50-82, 190 ("[U]nder no circumstances should the Products have been contaminated with bacteria."). The Court should reject Laundress's premature, fact-based toxicity argument especially when Laundress viewed the Products as so toxic it instructed consumers to discard them without emptying the contents prior to disposal. ¶¶ 80-81.[13]

### 2. Plaintiffs Plausibly Allege Actionable Omissions[14]

Plaintiffs allege a plausible inference of Laundress's knowledge of contamination or risk of contamination when Plaintiffs purchased the Products. Under the NYGBL, omissions are actionable "where the business alone possesses material information that is relevant to the

---

[11]     *See also* https://www.merriam-webster.com/dictionary/toxic#h1 (defining "toxic").

[12]     Because Plaintiff Murphy alleges a violation of the FAL, she alleges a UCL claim for unlawful conduct.

[13]     Laundress's scattershot string-cite (Def. Br. at 10) involves alleged misrepresentations that are far different from the straight-forward "non-toxic" misrepresentation alleged here. *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283–84 (S.D.N.Y. 2011) (the quality of high-speed internet service); *Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp.*, 549 F. Supp. 3d 276, 282–84 (E.D.N.Y. 2021) (acetaminophen doses in children's and infant pain relievers); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (overbroad definition of the word "diet"); *Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 682 (N.D. Cal. 2021) (discontinuation of YouTube access).

[14]     Laundress does not argue that NYGBL, UCL, and FAL require knowledge to state an affirmative misrepresentation claim.

consumer and fails to provide this information[,]" *Oswego*, 85 N.Y.2d at 26, or "when the Defendant actively conceals a material fact from the Plaintiff." *Guariglia v. Procter & Gamble Co*., No. 215CV04307ADSSIL, 2018 WL 1335356, at *9 (E.D.N.Y. Mar. 14, 2018). Under the UCL and FAL, an omission must be either be contrary to a representation actually made or concern facts the defendant was obliged to disclose, *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164, 1173 (Cal. Ct. App. 2015), with a duty to disclose arising when the defendant had exclusive knowledge of material facts not known to the plaintiff; when the defendant actively conceals a material fact; and when the defendant makes partial representations but also suppresses some material facts. *See Falk v. General Motors Corp*., 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).

For NYGBL, the UCL, and the FAL, the defendant's knowledge of the defect may be alleged generally. *See* Fed. R. Civ. P 9(b); *Obertman v. Electrolux Home Care Prod., Inc.*, 482 F. Supp. 3d 1017, 1022 (E.D. Cal. 2020) ("[D]efendant's 'knowledge need only be alleged generally, with non-conclusory, plausible allegations.'"); *Kommer v. Ford Motor Co*., No. 17-cv-029-LEK-DJS, 2018 WL 3727353, at *3 (N.D.N.Y. Aug. 6, 2018) ("[C]laims brought pursuant to §§ 349 and 350 . . .  need only meet the bare-bones notice-pleading requirements of Rule 8(a)."); *McCracken v. Verisma Sys., Inc*., 131 F. Supp. 3d 38, 46 (W.D.N.Y. 2015) ("Deceptive conduct that does not rise to the level of actionable fraud, may nevertheless form the basis of a claim under [NYGBL], which . . . relaxes the heightened standards required for a fraud claim.").

Here, Plaintiffs allege Laundress knew of and ignored the contamination or contamination risk based on: Laundress's sophistication, proprietary knowledge, and internal quality assurance programs (¶¶ 50-53); the nature of the Products' ingredients including citrus-base scents and essential oils (¶¶ 56); eleven reports of *Pseudomonas* infections from Laundress consumers (¶¶ 3-4); the suspicious timing of the December 2022 recall, (¶ 7); the breadth of the recall and  CPSC

involvement (¶ 68); Laundress's equivocation and misleading disclosures (¶ 71); Laundress's subsequent disclosure and recall stemming from ethylene oxide contamination (¶¶ 69-71); Laundress's motives to conceal or downplay the contamination (¶ 73); and Laundress's continuing inability to resume sales of the Products seven months after the recall (¶¶ 4, 62). All told, the Complaint plausibly alleges that Laundress knew of catastrophic issues that led to the contamination of over eight million products, including the Products purchased by Plaintiffs.

Courts deny motions to dismiss based on direct and circumstantial allegations of knowledge like those alleged by Plaintiffs. *see In re Big Heart Pet Brands Litig.*, No. 18-CV-00861-JSW, 2019 WL 8266869, at *20 (N.D. Cal. Oct. 4, 2019) ("Plaintiffs allege the Defendant's pre-release testing included a laboratory analysis of ingredients . . . . [and] incidents about contaminated meat products from Defendant's supplier[.]"); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *20 (S.D.N.Y. July 15, 2016) ("New GM may have known, via knowledge imputed from Old GM employees and documents, about the ignition defects by at least spring 2010, when the first California Plaintiff purchased his car."); *Tomassini v. FCA U.S. LLC*, No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343, at *7 (N.D.N.Y. June 23, 2015) ("[T]he fact that nearly one hundred and thirty consumers filed complaints . . . and . . . Transport Canada opening an investigation . . . constitute additional circumstantial evidence of Defendant's knowledge."); *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *5 (N.D. Cal. Aug. 10, 2011) ("[T]he testing here, coupled with the consumer complaints, raises a reasonable inference that HP was aware[.]").

Laundress erroneously contends that Plaintiffs only sets forth "generic allegations." Def. Br. at 12-13. When viewed in totality and in the light most favorable to Plaintiffs (as they must), the knowledge-directed allegations are detailed and comfortably meet Plaintiffs' notice pleading

burden. Plaintiffs allege that Laundress knew of and failed to disclose the contamination and risk of contamination during the Class Period (despite a duty to do so). *See* ¶¶ 50-78. Those allegations suffice at the pleadings phase of the case. Laundress also attempts to downplay consumer reports of infection and exploit its exclusive knowledge of the timing of those reports to avoid the omission-based claims. Def. Br. at 12. However, injury reports plus other detailed allegations overcome Laundress's motion to dismiss. *See Kowalsky*, 2011 WL 3501715, at *5.

### 3.    Plaintiffs Allege Standing Under NYGBL

Laundress's argument that Plaintiffs lack standing to assert NYGBL claims fails for both out-of-state and in-state Plaintiffs. In *Cruz v. FXDirectDealer*, LLC, 720 F.3d 115 (2d Cir. 2013), the Second Circuit determined that "a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349." *Cruz*, 720 F.3d at 123. The Second Circuit then determined that the out-of-state plaintiff had standing to assert a NYGBL claim based upon payments and communications being sent to the defendant in New York. *Id.*

Here, Laundress is a New York-based entity, and Plaintiffs allege that Laundress's sales and financial documents are located in New York; Laundress created and/or authorized the false and misleading representations and omissions in New York; and Laundress collaborated in manufacturing, distributing, and recalling the Products in New York.  ¶¶ 21-24. Thus, there is a plausible basis to believe that the challenged transactions occurred in New York, and it would be premature to dismiss out-of-state Plaintiffs' NYGBL claims based on a lack of standing.

Even if the out-of-state Plaintiffs do not have standing to assert NYGBL claims (they do), Plaintiff Geschwind's statutory standing cannot reasonably be questioned because she "is, and was at all relevant times, a resident and citizen of New York." ¶ 16. Although Laundress believes

otherwise (at least insofar as the NYGBL claim is concerned),[15] on a motion to dismiss, the Court may reasonably infer that Plaintiff Geschwind purchased the Products in New York.[16]

### 4.     Plaintiff Murphy Alleges Her California Statutory Claims with Particularity

For Rule 9(b), Plaintiff Murphy specifically alleges the relevant Products (expressly and by incorporating Laundress's recall website) (¶ 1 n.1); Laundress's affirmative "nontoxic" labeling misrepresentation, affirmative widespread advertising campaign promoting natural and nontoxic attributes, and omissions; (¶¶ 3-6, 29-38); where and when the misrepresentations and omissions were made (¶¶ 29, 31-35); why Laundress's misrepresentations and omissions were materially misleading (*e.g.*, ¶¶ 39-40); and that she purchased contaminated Products identified in Laundress's recall during the applicable statute of limitations after reviewing and relying on Laundress's affirmative misrepresentations and omissions, including the "nontoxic" labeling misrepresentation.  ¶¶ 95-97. Plaintiff Murphy's allegations are made with requisite particularity. *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 466 (E.D.N.Y. 2013).

Laundress ignores Plaintiff Murphy's allegations and calls for superfluous details regarding "each product she purchased, when she purchased the products, what representations, and when and where she was exposed to the representations." Def. Br. at 14-15. At the outset, Plaintiff Murphy alleges what representations she was exposed to and when and where she was exposed to them. ¶¶ 10, 95-97. Beyond that, Plaintiff Murphy provides sufficient detail regarding her purchases by listing a selection of contaminated Products she purchased during the applicable statute of limitations. ¶ 95. Laundress requests additional details unnecessary at this stage and more appropriately obtained through discovery.

---

[15]     *Compare* Def. Br. at 14 *with* Def. Br. at 15 n.10 *with* Def. Br. at 21 n.16 (contradictorily assuming that for Plaintiffs' warranty and unjust enrichment claims that their purchases occurred in their respective home states)

[16]     *In re Fyre Festival Lit.*, 399 F. Supp. 3d 203, 223–24 (S.D.N.Y. 2019) does not compel a different conclusion. *See* Def. Br. at 15. Unlike Plaintiffs here, the plaintiffs there did not allege New York ties to the transactions.

**D.      Plaintiffs State Express and Implied Warranty Claims (Counts II, III, IV)**

**1.  Plaintiffs Allege Laundress Breached an Express Warranty**

To state a claim for breach of express warranty under New York law, a plaintiff must allege

an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and

becomes part of the basis of the bargain[.]" *Goldemberg v. Johnson & Johnson Consumer*

*Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014); *Fendi Adele S.R.L. v. Burlington Coat*

*Factory Warehouse Corp.*, 689 F.Supp.2d 585, 604 (S.D.N.Y.2010) (describing express warranty

as an affirmation of fact or promise naturally tending to induce a buyer to purchase).[17] Generally,

whether a representation is a promise or description is a question of fact unsuited for dismissal.

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 469 (S.D.N.Y. 2020) (collecting cases).

Here, Laundress's "nontoxic" labeling representation constitutes an affirmation of fact

creating an express warranty. As discussed above (Section C.1), a reasonable consumer would

plausibly interpret the term "nontoxic" to mean—among other things—"incapable of causing

harm," an express affirmation of fact or promise that the Products failed to adhere to due to

widespread contamination. Plaintiffs' proposed definition of nontoxic is hardly implausible as a

matter of law, and the express warranty claim should not be dismissed at this stage of the case.[18]

**2.  Plaintiffs Stilwill and Geschwind Provided Adequate Notice to Laundress**

Plaintiffs Geschwind and Stilwill provided Laundress with adequate warranty notice prior

to filing the Consolidated Class Action Complaint and before ever seeking a warranty remedy in

---

[17]      If the law of Plaintiffs' home-states apply, California, Nebraska, and New Jersey law are identical to New
law regarding the formation of an express warranty. *See Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d at 469
(S.D.N.Y. 2020); *Nebraska Plastics, Inc. v. Holland Colors Am., Inc.*, No. 4:01CV603, 2003 WL 22519410, at *6 (D.
Neb. Nov. 7, 2003); *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 420 (D.N.J. 2016).
[18]      Laundress's authority does not include an analogous alleged warranty. In *Rugg v. Johnson & Johnson*, No.
17-cv-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018), the Court rejected plaintiff's proposed definition of
hypoallergenic as "not contain[ing] any ingredients, in any concentration, which could 'sensitize' the skin, cause
cancer, or have any other negative effect, regardless of whether such effect constitutes an allergic reaction."

this case. To assert a breach of warranty claim under New York law, "the buyer must within a reasonable amount of time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." NY UCC § 2-607(3)(a).[19] The "plaintiff must provide factual allegations—such as the date and method plaintiff sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021). "[R]equiring notice is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy[,]" NY UCC § 2–607, cmt. 4, and "the sufficiency and timeliness of the notice is generally a question for the jury." *Grossman*, 516 F. Supp. 3d at 261.

Here, Plaintiffs Geschwind and Stilwill "provided Laundress's counsel with notice via electronic and certified mail on April 12, 2023, outlining the nature of Laundress's warranties and breaches and making a demand for relief." ¶ 141. Plaintiffs Geschwind and Stilwill also provided Laundress with ample time to remedy its warranty breaches before seeking a warranty remedy for the first time in the operative Complaint, thereby adhering to the plain language and purpose of NY UCC § 2-607(3)(a). *See Holman v. Ali Indus., LLC.*, No. 4:22-CV-4133-NKL, 2023 WL 3632769, at *2–3 (W.D. Mo. May 24, 2023) ("This Court concludes that notice prior to the filing of . . . an amended complaint . . . is sufficient to meet the requirement of pre-suit notice . . . . [N]othing in the statutory language suggests that failure to do so should forever bar such a claim. Whatever opportunity to cure that the counterparty had remains available[.]").[20]

---

[19]     Should Nebraska law apply to Plaintiff Stilwill's claims, Nebraska and New York warranty statutes are identical and the analysis should remain the same. *See* Neb. UCC § 2-607(3)(a).

[20]     Although some cases, including Laundress's cases, refer to UCC 2-607(3)(a) as a "pre-suit" requirement, an interpretation of UCC 2-607(3)(a) that would require a plaintiff to provide notice prior to filing a complaint that does not seek a warranty remedy is illogical and finds no support in the plain language of the statute. Instead, the "pre-suit" language found in Laundress's cases is likely shorthand or stems from the fact that the plaintiffs asserted warranty claims in their original complaints. *Langner v. Boston Sci. Corp.*, 492 F. Supp. 3d 925, 935 (D. Neb. 2020) ("The Court concludes it would  . . . require pre-suit notice as a condition precedent *to filing* a breach of express warranty claim.") (emphasis supplied); *Cooper v. Anheuser-Busch LLC*, No. 20-cv-7451, Dkt. 1 at ¶¶ 98-115 (S.D.N.Y. filed

### 3.  Plaintiff Murphy's Implied Warranty Claim Does Not Require Privity

Contrary to Laundress's argument, Plaintiff Murphy's implied warranty claim does not require privity to the extent it arises from Laundress's "nontoxic" labeling claim (if California law applies). As this Court stated in *Weisblum*, "privity is not required under California law for either breach of warranty claims where, as here, 'the plaintiff relies on written labels or advertisements of a manufacturer[.]'" 88 F. Supp. 3d at 295 (citation omitted).[21]

In this case, Plaintiff Murphy alleges that she "was exposed to the misleading representations including ingredient lists and labeling representations and warranties that the Products were "nontoxic." "Plaintiff Murphy reviewed and relied on Laundress's representations . . . when purchasing and using the Products." ¶ 95. As such, Plaintiff Murphy need not allege privity if California law applies (it does not at this stage).[22]

### 4.  CAFA Provides Subject Matter Jurisdiction Over the MMWA Claim (Count IV)

Laundress incorrectly asserts that this Court lacks jurisdiction over the MMWA claims because Plaintiffs do not satisfy the MMWA's requirements for original federal jurisdiction, including naming 100 plaintiffs. *See* Def. Br. at 17-18. Despite Laundress's position, CAFA provides supplemental jurisdiction over MMWA claims. In *Weisblum*, this Court analyzed opposing authorities concerning CAFA's supplemental jurisdiction over MMWA claims, the scope of CAFA and the MMWA, and the rule of construction that "general grants of jurisdiction

---

on Sept. 11, 2020) (The initial complaint includes warranty claims); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 573-74 (S.D.N.Y. 2021) (no amended complaint filed).

[21]      If California law applies, Plaintiff Murphy will dismiss her implied warranty claim to the extent it involves Laundress's non-labeling misrepresentations.

[22]      Moreover, Plaintiff Murphy's implied warranty claim does not require privity under New York and California law for other reasons, including because she alleges personal injury and because she alleges that she is a third-party beneficiary of Laundress's implied warranty with intermediate retailers. *See* ¶¶ 12, 96, 143; *Morales v. Toyota Motor Sales, U.S.A., Inc.*, 494 F. Supp. 3d 709, 719 (C.D. Cal. 2020) ("As in California, unless plaintiff alleges personal injuries, parties need to be in privity for a claim of implied warranty of merchantability to arise. Nevertheless, Plaintiff 'may overcome a lack of privity by alleging that she is an intended third-party beneficiary of the contracts between [Toyota] and its dealers.'") (internal citations omitted); *Weisblum*, 88 F. Supp. 3d at 296.

may not be relied upon to expand a very specific statute that either grants or limits jurisdiction." 88 F. Supp. 3d at 294-95. The Court concluded where "the jurisdictional prerequisites of CAFA are satisfied, it may exercise subject-matter jurisdiction over a claim under the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met." *Id.* at 295.

Laundress recognizes this Court's prior conclusion but contends that "recent jurisprudence" compels a different result. Def. Br. at 18 n.13. However, the MMWA jurisdictional argument remains the same today as it did when this Court decided *Weisblum*, and most courts have found that CAFA provides supplemental jurisdiction to adjudicate MMWA claims. Therefore, the Court should adhere to *Weisblum*'s well-reasoned holding in this case.[23]

## E.    Plaintiffs State Their Product Defect Claims (Counts V, VI, VII)

### 1.    Plaintiffs Allege Proximate Cause

New York follows the "substantial factor causation test" on Plaintiff's product liability claims. *Locust Valley Water Dist. v. Dow Chem. Co.*, 465 F. Supp. 3d 235, 237, 240 (E.D.N.Y. 2020).[24] Under that test, "an act or omission is regarded as a legal cause of an injury 'if it was a substantial factor in bringing about the injury.'" *Id.* at 240. Substantial factor causation "recognizes that often many acts can be said to have caused a particular injury and requires only that defendant's actions be a substantial factor in producing the injury." *In re Methyl Tertiary Butyl Ether*

---

[23]     Laundress also argues in a footnote that Plaintiffs' MMWA claims should be dismissed to the extent their warranty claims are dismissed. Def. Br. 17 n.12. However, Laundress does not move to dismiss Plaintiffs Ostenfeld and Stillwill's implied warranty claim, and Laundress's other bases to dismiss Plaintiffs' express and implied warranty claims have no merit. As such, the MMWA claims should proceed with Plaintiffs' underlying warranty claims.

[24]     If the Court finds that Plaintiffs' product defect claims are governed by the laws of their home-states, Plaintiffs also plead causation in those jurisdictions. California, New Jersey, and Nebraska, like New York, apply a "substantial factor" causation test for products liability claims. *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997) ("[T]he plaintiff must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury."); *Grassis v. Johns-Manville Corp.*, 591 A.2d 671, 677 (N.J. Super. Ct. App. Div. 1991) ("All that is required is that the plaintiff show that a defendant's conduct or defective product was. . . a substantial factor in bringing the condition about."); *Kudlacek v. Fiat S.p.A.*, 509 N.W.2d 603, 611–12 (Neb. 1994) ("As to proximate causation, we find that the substantial factor standard harmonizes with Nebraska law.").

("MTBE") Prod. Liab. Litig., 591 F. Supp. 2d 259, 266 (S.D.N.Y. 2008). "A plaintiff need not eliminate every other possible cause[.]" *Id.* Moreover, Second Circuit courts are reluctant to dismiss claims for lack of causation at the pleading stage, recognizing that determining causation is a fact-intensive inquiry belonging to a jury. *See, e.g.*, *Candelaria v. Conopco, Inc.*, No. 21-cv-6760-FB-TAM, 2023 WL 2266047, at *2 (E.D.N.Y. Feb. 28, 2023) ("The issue of proximate cause may be determined as a matter of law only where no reasonable person could find causation based on the facts alleged in the complaint[.]") (citation omitted).

Here, Plaintiffs allege "substantial factor" causation. Plaintiffs allege the Products suffered from design, manufacturing, or warning defects, detailing reasonable alternative designs, likely manufacturing issues, and plausible warnings. ¶¶ 9, 50-73, 74-78, 203. Plaintiffs also detail the potential injuries caused by the relevant bacteria, including skin and respiratory injuries. ¶¶ 41-59. Plaintiffs then allege that Plaintiffs suffered injuries after "using contaminated . . . Products," describing skin and respiratory injuries matching identically to injuries known to result from bacterial exposure and infection. ¶¶ 8-12; 95-97 98-100; 101-03. On a motion to dismiss, the Court should credit this detailed series of non-conclusory allegations and infer causation.

In its motion, Laundress is not legitimately requesting necessary causation details to answer and defend Plaintiffs' product liability claims. Instead, Laundress is distorting the notice pleading standard and nitpicking any immaterial information gap (easily determined during discovery) in a bid to escape liability for catastrophic product design, manufacturing, and/or design failures. The Court should reject Laundress's attempt to skirt Plaintiffs' meritorious claims.

### 2. Plaintiffs Allege a Duty to Warn

For purposes of Plaintiffs' failure to warn claim, "[i]t is well-settled that a manufacturer has a duty to warn (1) "against latent dangers resulting from foreseeable uses of its product of

which it knew or should have known[.]" *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167,

179 (E.D.N.Y. 2008). The standard for evaluating "failure-to-warn" liability is "intensely fact-

specific[.]" *Liriano v. Hobart Corp.*, 700 N.E.2d 303, 309 (N.Y. 1998).[25]

      Here, setting aside that allegations of Laundress's actual knowledge establish a duty to

warn (¶¶ 67-78), Plaintiffs allege that the contamination here was so widespread and dangerous

that it required recalling all existing Products, informing consumers to keep the Products closed

prior to disposal, and halting sales for going on seven months. ¶¶ 1, 4, 62. Given that many of the

Products do not contain preservatives and contain bacteria-promoting ingredients, Laundress

should have had stringent quality assurance measures in place to detect Product contamination and

contamination red flags, particularly a contamination as widespread and dangerous as the one here.

¶¶ 56, 175-76. Thus, at this stage of the case, and without the benefit of discovery, the Court should

not determine that Laundress could not have known about the contamination at issue in this case.[26]

## F.    Plaintiffs State an Unjust Enrichment Claim (Count VIII)

      Plaintiffs permissibly assert an unjust enrichment claim in the alternative. Second Circuit

law is clear: "[a]t the pleadings stage, Plaintiff is not required to guess whether it will be successful

on its contract, tort, or quasi-contract claims." *E.g.*, *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp.

---

[25]    A manufacturer's duty to warn is materially identical in New York, California and New Jersey law, while Nebraska law imposes liability on a manufacturer for failure to warn of a risk or hazard without reference to what it knew or should have known about the risk. *Jian Wu v. Ean Holdings, LLC*, No. 5:13-CV-00188-PSG, 2014 WL 117338, at *3 (N.D. Cal. Jan. 10, 2014)   ("[T]he plaintiff must prove that 'the defendant did not adequately warn of a particular risk that was known or knowable[.]'"); *Lara v. Cool Clouds Distribution, Inc.*, No. CV208030SDWLDW, 2021 WL 613842, at *12 (D.N.J. Feb. 16, 2021) ("A manufacturer has a duty to warn about risks or dangers associated with its product that it either knew or 'should have known[.]'"); *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2014 WL 4922901, at *3 (D. Neb. Sept. 29, 2014) ("A manufacturer or other seller is subject to liability for failing either to warn or adequately to warn about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the products it sells.") (citing *Freeman v. Hoffman-La Roche, Inc.*, 618 N.W.2d 827, 841 (Neb. 2000)).

[26]    Laundress's authority is distinguishable. *Vicente v. DePuy Syntheses Co.*, 570 F. Supp. 3d 232, 241 (D.N.J. 2021) (dismissal based on conclusory allegations and application of learned intermediary doctrine); *Rodas v. Porsche Cars N. Am., Inc.*, No. CV143747PSGMRWX, 2015 WL 12762064, at *5 (C.D. Cal. Feb. 13, 2015) (Plaintiffs did not allege any fact showing that the defendant knew or could have known about the risk at the time of manufacture).

2d 144, 183-84 (E.D.N.Y. 2010); Fed. R. Civ. P. 8(d) ("A party may set out 2 or more statements of a claim . . . alternatively[.]").

Here, while Plaintiffs' tort and contract-based claim are adequately alleged, it remains uncertain which claims will ultimately succeed following discovery. Plaintiffs' unjust enrichment claim requires Plaintiffs to prove that Laundress acquired money from Plaintiffs inequitably, while Plaintiffs' other claims variously require deception, express affirmations of fact, or personal injuries. It is plausible that Plaintiffs' unjust enrichment claim could succeed where Plaintiffs' other claims fail. Thus, the Court should not dismiss the unjust enrichment claim as duplicative.[27]

## G. Plaintiffs Are Entitled to Pursue Restitution and Disgorgement

It would also be impermissible and premature to dismiss Plaintiffs' request for restitution and disgorgement, which are provided by Plaintiffs' UCL, FAL, and unjust enrichment claims. As an initial consideration, "[a] motion to dismiss is addressed to a 'claim'—not to a form of damages." *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019) ("[A] motion to dismiss a prayer for relief in the form of punitive damages is 'procedurally premature.'"). The Court should thus reject Laundress's argument because it has not moved to strike Plaintiffs' prayer for restitution and disgorgement, and its motion to dismiss is not a permissible vehicle to dispose of Plaintiffs' requests for relief.

---

[27]     Laundress' cases do not support the premature dismissal of Plaintiffs' unjust enrichment claim. See *Harris v. Pfizer, Inc.*, 586 F. Supp. 3d 231, 246 (S.D.N.Y. 2022) (The plaintiffs did not explain how their unjust enrichment claim was distinct from other claims); *Pro. Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 239 Cal. Rptr. 3d 908, 915-16 (Cal. Ct. App. 2018) (recognizing unjust enrichment claim under California law (which should not be applied at this early stage of the case in any event)); *Goodman v. Internet, Inc.*, No. 2:22-CV-02926 (WJM), 2023 WL 2368123, at *8 (D.N.J. Mar. 6, 2023) (recognizing quasi-contractual claim for unjust enrichment under New Jersey law (which again should not be applied at this stage of the litigation)).

Furthermore, it is well-established that a party is not required to elect between legal and equitable relief at the pleadings stage of a case.[28] *Capax Discovery, Inc. c. AEP RSD Investors, LLC*, 285 F. Supp. 3d 57, 593 (W.D.N.Y. 2018); *see also Prudential Oil Corp. v. Phillips Petroleum Co.*, 418 F.Supp. 254, 257 (S.D.N.Y. 1975) ("The mere availability of, and request for more than one remedy, does not satisfy the requirement of inconsistent theories[.]"). As the case develops, Plaintiffs may need to ultimately elect between legal or equitable relief, but for now, Plaintiffs may pursue the equitable forms of relief provided by their claims. Fed. R. Civ. P. 8(d)(3).

## H.    Plaintiffs Allege the Necessity of Medical Monitoring

Laundress improperly requests that the Court "reject" Plaintiffs' request for medical monitoring. Def. Br. at 23-25. Like its challenge to Plaintiffs' request for equitable remedies, Laundress's attempt to dismiss Plaintiffs' request for medical monitoring fails procedurally because a motion to dismiss is not an appropriate means to dispose of a request for a form of relief.

Substantively, Plaintiffs adequately allege that they are entitled to medical monitoring. "Medical monitoring refers to a remedy granted after exposure to a toxic substance that provides testing used for early detection of the signs of disease[.]" *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 250 (S.D.N.Y. 2017) (citation omitted). "The New York Court of Appeals has held that medical monitoring is an element of damages that may be recovered only after a physical injury has been proven, i.e., that it is a form of remedy for an *existing* tort." *Ivory v. Int'l Bus. Machines Corp.*, 116 A.D.3d 121, 130–31 (3d Dep't 2014) (citing *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11 (N.Y. 2013) (emphasis in original)). "*Caronia* also indicates

---

[28] Laundress' authority does not contradict this well-established proposition. *See Brown v. Sandimo Mat.*, 250 F.3d 120, 12 (2d Cir. 2001) (appeal challenging whether the Court properly granted the plaintiffs' motion to strike jury demand at the start of trial); *Shetel Ind. LLC v. Adin Dental Implant Sys., Inc.*, 2021 WL 1108666, at *3 (E.D.N.Y. 2021) (summary judgment motion); 507 F.2d 358, 362-63 (denying preliminary injunction where money damages constituted an adequate at law).

that medical monitoring can be recovered as consequential damages associated with a separate tort alleging property damage." *Ivory*, 116 A.D.3d at 131.[29]

Here, Plaintiffs detail that they were exposed to and injured by a highly dangerous mix of persistent, antibiotic resistant, and deadly bacteria. ¶¶ 41-49, 91-103. Plaintiffs Ostenfeld, Murphy, and Stilwill describe injuries caused by bacterial infection, and Plaintiff Geschwind alleges the realistic prospect of future injury due to exposure as well as property damage. ¶¶ 93-94, 96-97, 99-100, 102-03.[30] Plaintiffs thus allege an entitlement to medical monitoring, particularly at this early stage of the case.[41] *Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040 (JAM), 2023 WL 2477499, at *8 (D. Conn. Mar. 13, 2023) ("At this point in the litigation, these allegations are sufficient to establish that the plaintiffs are at a risk of future injury.") (collecting cases); *Baker v. Deutschland GmbH*, 240 F. Supp. 3d 341, 349-49 (M.D. Pa. 2016) (denying motion to dismiss medical monitoring claim in case involving bacterial exposure).[31]

## CONCLUSION

For the foregoing reasons, The Court should deny Laundress's motion to dismiss.[32]

Dated: June 15, 2023          Squitieri & Fearon, LLP

                         By: */s/ Stephen J. Fearon, Jr.*

---

[29]       In *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 508-09 (2d Cir. 2020) the Second Circuit considered but did not decide whether New York law recognized medical monitoring for property damage.

[30]       Laundress claims Plaintiff Geschwind's alleged property damage does not entitle her to medical monitoring because she threw out potentially contaminated property. Def. Br. at 25. Laundress's fact-based viewpoint has no basis in authority and should be rejected because it would require an individual to increase their risk of exposure to toxic substances rather than take reasonable remediation efforts. In addition, Plaintiff Geschwind plausibly alleges the risk of future injury, her remediation efforts notwithstanding.

[31]       Plaintiffs' allegations likewise support medical monitoring under California and New Jersey law. *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1116–17 (C.D. Cal. 2008) ("[T]he Court notes that several of the factors are addressed by allegations in the SAC, including the toxicity of the chemicals, the seriousness of diseases caused by exposure, and the clinical value of early detection and diagnosis[.]") (some internal citations omitted); *Giordano v. Solvay Specialty Polymers USA, LLC*, 522 F. Supp. 3d 26, 35 (D.N.J. 2021) ("[D]ismissing Plaintiffs' medical monitoring claim would be premature.") (citations omitted). If Nebraska law applies, Plaintiff Stilwill voluntarily dismisses her specific request for medical monitoring but reserves her right to pursue damages for future medical expenses. *See Renne v. Moser*, 241 Neb. 623, 634-35, 490 N.W.2d 193, 200-01 (Neb. 1992).

[32]       Plaintiffs believe all claims and requests for relief are adequately alleged but respectfully request leave to amend if the Court should determine the Complaint is deficient. *See* Fed. R. Civ. P. 15(a)(2).

Stephen J. Fearon, Jr.
Paul V. Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste. 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson*
Christopher T. Aumais*
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com
cta@ggallp.com

**ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASSES**

*Pro hac vice forthcoming*

26