# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

LORI OSTENFELD, DEBORAH GESCHWIND, MARGARET MURPHY and JUDY STILLWILL, individually and on behalf of all others similarly situated,

        Plaintiffs,

        -vs-

THE LAUNDRESS, LLC,

        Defendant.

---

Case No.: 1:22-cv-10667-JMF

The Honorable Jesse M. Furman

---

## PLAINTIFFS' MEMORANDUM OF LAW
## OPPOSING DEFENDANT'S MOTION TO STRIKE

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
Paul Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291
stkeeton@keetonfirm.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste. 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson*
Christopher T. Aumais*
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com
cta@ggallp.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASSES**

*Pro hac vice forthcoming*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL ALLEGATIONS ............................................................................................... 3

   A.  Laundress Misleadingly Promoted the Products.................................................. 3

   B.  Laundress Recalled Products Contaminated with Deadly Bacteria..................... 4

   C.  Plaintiffs and Class Members Were Damaged and Injured After Purchasing the  Products .......... 4

   D.  The Claims and Proposed Classes ....................................................................... 5

LEGAL STANDARD.......................................................................................................... 6

ARGUMENT ....................................................................................................................... 8

   A.  Laundress's Motion to Strike Is Premature and Procedurally Improper ............ 8

   B.  Defendant Has Failed to Demonstrate That Rule 23(b)(3) Class Certification Is Impossible with Further Discovery .......................................................................... 10

      1.  Laundress Fails to Show That Choice-of-Law Issues Make Certification  Impossible 11

      2.  Laundress Fails to Show That Predominance Issues Make Certification Impossible for the Classes ........................................................................................................... 16

   C.  A Nationwide Class Can Be Certified Under NYGBL §§ 349 and 350........................... 21

   D.  The Court Should Not Strike Plaintiffs' Rule 23(c)(4) Class Allegations........................ 22

CONCLUSION.................................................................................................................... 24

## TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Lab'ys v. Frank*,

    No. 17CV6002CBALB, 2018 WL 10529808 (E.D.N.Y. July 3, 2018) .................................. 8

*Abu Dhabi Inv. Auth. v. Citigroup, Inc.*,

    No. 12 CIV. 283 GBD, 2013 WL 789642 (S.D.N.Y. Mar. 4, 2013) ...................................... 14

*Allegra v. Luxottica Retail N. Am.*,

    341 F.R.D. 373 (E.D.N.Y. 2022) ................................................................................... 7, 23

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591 (1997) ............................................................................................................. 12

*Belfiore v. Proctor & Gamble Co.*,

    94 F. Supp. 3d 440 (E.D.N.Y. Mar. 25, 2015) ..................................................................... 9

*Benner v. Becton Dickinson & Co.*,

    214 F.R.D. 157 (S.D.N.Y 2023) .......................................................................................... 28

*Black v. Occidental Petroleum Corp.*,

    No. 22-8040, 2023 WL 3856038 (10th Cir. June 7, 2023) ................................................... 2

*Borgese v. Baby Brezza Enters. LLC*,

    No. 20 CIV. 1180 (VM), 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) ................................ 17

*Cacciola v. Selco Balers, Inc.*,

    127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) ........................................................................ 14

*Carr v. Johnson & Johnson Consumer Inc.*,

    No. 21-CV-6557(EK)(JRC), 2023 WL 3504662 (E.D.N.Y. May 17, 2023) ....................... 8, 21

*Comcast v. Behrend*,

    569 U.S. 27 (2013) ............................................................................................ 7

*Cruz v. FXDirectDealer*, LLC,

    720 F.3d 115 (2d Cir. 2013) .......................................................................... 25

*Farina v. Metro. Transportation Auth.*,

    409 F. Supp. 3d 173 (S.D.N.Y. 2019) .......................................................... 20

*Georgine v. Amchem Prods.*,

    83 F.3d 610 (3d Cir. 1996) ............................................................................ 24

*Greene v. Gerber Products Co.*,

    262 F. Supp. 3d 79 (E.D.N.Y. 2017) ..................................................... 13, 18

*Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*,

    No. 96 CV 8414 KMW, 2013 WL 4647190 (S.D.N.Y. Aug. 29, 2013) ................................... 22

*Haley v. Medtronic, Inc.*,

    169 F.R.D. 643 (C.D. Cal. 1996) .................................................................. 28

*Hughes v. Ester C Co.*,

    No. 12-CV-0041 (PKC), 2016 WL 6092487 (E.D.N.Y. Sept. 30, 2016) ................................. 19

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,

    No. 13 CIV. 7789 (LGS), 2022 WL 3971006 (S.D.N.Y. Aug. 31, 2022) ............................... 28

*In re Fosamax Prods. Liab. Litig.*,

    248 F.R.D. 389 (S.D.N.Y. 2008 ) .................................................................. 24

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,

    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .............................................. 26

*In re Fyre Festival Litig.*,

    2020 WL 7318276 (S.D.N.Y. 2020) ...................................................................... 24

*In re Grand Theft Auto Video Games Consumer Litig.*,

    251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................................... 19

*In re Libor-Based Financial Instruments Antitrust Litig.*,

    11 MDL 2262 (NRB), 2016 WL 2851333 (S.D.N.Y. May 13, 2016) ...................................... 8

*In re LILCO Secs. Litig.*,

    111 F.R.D. 663 (E.D.N.Y. 1986) ........................................................................ 13

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,

    241 F.R.D. 435 (S.D.N.Y. 2007) ........................................................................ 24

*In re Nassau Cty. Strip Search Cases*,

    461 F.3d 219, 225 (2d Cir. 2006) .................................................................... 2, 27

*In re Nigeria Charter Flights Cont. Litig.*,

    233 F.R.D. 297 (E.D.N.Y. 2006) ........................................................................ 16

*In re Rezulin Prods. Liab. Litig.*,

    210 F.R.D. 61 (S.D.N.Y. 2002) ......................................................................... 24

*In re Scotts EZ Seed Litig.*,

    304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................ 23

*Ivie v. Kraft Foods Global, Inc.*,

    961 F.Supp.2d 1033 (N.D. Cal. 2013) ................................................................... 24

*Jacob v. Duane Reade, Inc.*,

    293 F.R.D. 578 (S.D.N.Y. 2013) ........................................................................ 27

*Kassman v. KPMG LLP,*

    925 F. Supp. 2d 453 (S.D.N.Y. 2013)..................................................................... 7, 11

*Kaufman v. Sirius XM Radio, Inc.,*

    751 F. Supp. 2d 681 (S.D.N.Y. 2010)..................................................................... 26

*Kurtz v. Kimberly-Clark Corp.,*

    321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................................ 12

*Langan v. Johnson & Johnson Consumer Companies, Inc.,*

    897 F.3d 88 (2d Cir. 2018).................................................................................. 16, 22

*Lazard Freres & Co. v. Protective Life Ins. Co.,*

    108 F.3d 1531 (2d Cir.1997).................................................................................... 14

*Mason v. Reed's Inc.,*

    515 F. Supp. 3d 135 (S.D.N.Y. 2021)..................................................................... 10

*Monbo v. Nathan,*

    623 F. Supp. 3d 56 (E.D.N.Y. 2022) ...................................................................... 14

*Niles v. Arizona Beverages USA LLC,*

    No. CV191902GRBARL, 2021 WL 7906562 (E.D.N.Y. July 19, 2021) ................ 16

*Nnebe v. Daus,*

    No. 06-CV-4991 (RJS), 2022 WL 615039 (S.D.N.Y. Mar. 1, 2022)...................... 27

*Oscar v. BMW of N. Am., LLC,*

    274 F.R.D. 498 (S.D.N.Y. 2011) ............................................................................ 19

*Parker v. Time Warner Ent. Co., L.P.,*

    331 F.3d 13, 15 (2d Cir. 2003)............................................................................ 1, 10

*Pilgrim v. Universal Health Card LLC*,

    660 F.3d 943 (6th Cir. 2011) ............................................... 18

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,

    No. 06 Civ. 6198(LAK)(JCF), 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) ............................ 11

*Reynolds v. Lifewatch, Inc.*,

    136 F. Supp. 3d 503 (S.D.N.Y. 2015) ......................................................... 13, 22, 25

*Roach v. T.L. Cannon Corp.*,

    778 F.3d 401, 405 (2d Cir. 2015) ............................................... 21

*Sealock v. Covance, Inc.*,

    No. 17-CV-5857 (JMF), 2018 WL 2290698 (S.D.N.Y. May 18, 2018) .................................... 8

*See v. Gov't Emps. Ins. Co.*,

    No. 21CV00547PKCJMW, 2022 WL 2467695 (E.D.N.Y. Mar. 22, 2022) ............................ 10

*Seijas v. Republic of Argentina*,

    606 F.3d 53 (2d Cir.2010) ............................................... 21

*Shady Grove Orthopedic Association, P.A. v. Allstate Insurance Co.*,

    559 U.S. 393 (U.S. 2010) ............................................... 26

*Siani v. State Univ. of N.Y. at Farmingdale*,

    7 F. Supp. 3d. 304 (E.D.N.Y. 2014) ............................................... 8

*Steinberg v. Nationwide Mut. Ins. Co.*,

    224 F.R.D. 67 (E.D.N.Y.2004) ............................................... 16

*Szymczak v. Nissan N. Am.*,

    No. 10 CV 7493(VB), 2011 WL 7095432 (S.D.N.Y Dec. 16, 2011) ...................................... 19

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,

    308 F.R.D. 630 (N.D. Cal. 2015) ............................................................................ 28

*Travis v. Navient Corp.*,

    460 F. Supp. 3d 269 (E.D.N.Y. 2020) .................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes,*

    564 U.S. 338 (2011)) ............................................................................................... 20

*Wang v. Tesla, Inc.*,

    338 F.R.D. 428 (E.D.N.Y. 2021) ............................................................................ 18

*Zehel-Miller v. Astrazenaca Pharms., LP,*

    223 F.R.D. 659 (M.D. Fla. 2004) ............................................................................ 24

## INTRODUCTION

In its motion to strike, Defendant the Laundress, LLC ("Laundress") improperly asks the Court to preemptively terminate the class aspects of this case based solely on the Complaint and without allowing discovery and full class certification briefing, an approach that Second Circuit courts have almost universally rejected. *E.g.*, *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 15 (2d Cir. 2003) ("The difficulty we have with these conclusions is that they are based on assumptions of fact rather than on findings of fact. The District Court precluded any class discovery and even the filing of a motion for class certification.").

Second Circuit courts have established a near insurmountable burden for Laundress on its motion to strike. Laundress must show that the Court should strike Plaintiffs' class claims for reasons that would not later be considered as part of a class certification motion, or Laundress must show, based on the Complaint alone, that certification would be impossible even with further discovery. Despite recognizing these high standards, Laundress—relying primarily on decisions addressing class certification motions and without any support beyond its say-so—contends that Plaintiffs cannot meet the substantive requirements of Rule 23. The Court should deny Laundress's motion and defer the class certification analysis until Plaintiffs can file a motion for class certification supported by discovery.

To the extent the Court considers Laundress's substantive arguments at this early stage of the case (it should not), Laundress's arguments are simply wrong. For example, Laundress improperly calls on the Court to make a decisive choice-of-law analysis based solely on the Complaint's allegations without allowing Plaintiffs to gather discovery to determine whether New York law may apply to some or all of the class claims or, assuming out-of-state law applies, to gather discovery demonstrating that variations in out-of-state law do not preclude class

certification. The Court should not strike Plaintiffs' allegations when the choice of law analysis is uncertain and Plaintiffs have not had an opportunity to demonstrate that class certification is appropriate based on a factual record, potential choice of law issues notwithstanding.

Laundress also fails to show that proving predominance under Rule 23(b)(2) would be impossible with further discovery. As detailed in the Complaint, Plaintiffs and each class member suffered injuries after purchasing and using Laundress's cleaning and detergent Products containing various life-threatening bacteria, including *Burkholderia cepacian* complex, *Klebsiella aerogenes*, and multiple different species of *Pseudomonas*. Because Plaintiffs and each class member's claims derive from this common core of facts and the same legal theories, Laundress cannot demonstrate that class certification would be impossible with further discovery, particularly where individualized damage inquiries are not a *per se* roadblock to class certification and the Second Circuit has expressly endorsed the use of Rule 23(c)(4) issue certification. *See In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006); *accord Black v. Occidental Petroleum Corp.*, No. 22-8040, 2023 WL 3856038, at *16 (10th Cir. June 7, 2023) ("But nearly all other circuits that have interpreted Rule 23(c)(4) agree issue class certification is appropriate when the issue class itself satisfies the requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).").

Laundress's other arguments also fail, particularly at this stage of the litigation. Plaintiffs have plausibly alleged that New York General Business Law ("NYGBL") has extraterritorial application because Laundress has its principal place of business and the transactions at issue in this case occurred in New York, meaning nationwide certification of the NYGBL claims is possible with further discovery. Likewise, it is universally recognized that Plaintiff Murphy's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") claims are well-suited to

class certification precisely because those statutes do not require proof that each individual class member relied on the challenged misrepresentations, directly contradicting Laundress's argument.

The Court should deny Laundress's motion to strike and should direct the parties to move forward with discovery so that Plaintiffs can present a motion for class certification supported by a factual record.

## FACTUAL ALLEGATIONS

### A.  Laundress Misleadingly Promoted the Products

Laundress set itself apart through widespread marketing emphasizing its purported natural, non-toxic, and eco-friendly cleaning Products, including uniform labels stating "Non-toxic, biodegradable, and allergen-free." ¶ 32. Laundress's branding as the premium, non-toxic, and natural alternative was found on its labeling (¶¶ 32, 35-38), its website (¶¶ 30, 33), on social media (¶ 33, 34), and other promotional channels (¶ 30-31). Laundress's marketing allowed it to charge super-premium prices for Products, with one gallon of Laundress Signature Detergent costing approximately $94 per unit versus one gallon of Tide Original laundry detergent, which sells for approximately $37. ¶ 29.

Despite its marketing campaign, Laundress well-understood that its Products—which lack preservatives and contain unique blends of organic materials—were highly susceptible to bacterial contamination. ¶¶ 49, 50, 52-57. Despite understanding the peculiar and substantial risks to its Products, Laundress knowingly failed to implement adequate Product designs and manufacturing processes to ameliorate bacterial contamination risk, and ignored consumer reports of bacterial infection, knowingly placing eight million contaminated, or likely contaminated, Products into the market without regard to consumer safety and health. ¶¶ 3-6, 58-73. Laundress misled consumers

regarding its Products and failed to disclose the contamination risk to selfishly protect its bottom line and to avoid a Product design and manufacturing overhaul. ¶¶ 4-6, 72-73, 77.

In December 2022, Laundress could no longer conceal the catastrophic issues plaguing its Products, resulting in a massive recall and intervention by the United States Consumer Product Safety Commission ("CSPC"). ¶¶ 7, 79-82, 90.

**B.**      **Laundress Recalled Products Contaminated with Deadly Bacteria**

In December 2022, Laundress recalled approximately eight million Products. Laundress revealed the Products can contain deadly, antibiotic resistant bacteria (*Burkholderia cepacia* complex, *Klebsiella aerogenes* and multiple different species of *Pseudomonas*) and further revealed it had received eleven reports of *Pseudomonas* infections. ¶ 80. Laundress admitted that the contamination impacted Products Laundress had manufactured between January 2021 and September 2022, yet Laundress recalled every existing Product (even Products produced before that time), also halting all sales of its Products. *Id.*

Laundress's recall was too little, too late and did not prevent physical injuries or provide an adequate remedy for Laundress's knowing misconduct. ¶¶ 83-88. Among other things, the recall required proof of purchase (even though most of the Products would have been previously discarded) and did not provide compensation for physical injuries or remediation efforts. *Id.*

**C.**      **Plaintiffs and Class Members Were Damaged and Injured After Purchasing the Products**

Plaintiffs suffered injuries and damages after purchasing and using contaminated Products. ¶ 5. Prior to purchase, Plaintiffs reviewed and relied on Laundress's misleading advertising, including labels stating that the Products were "nontoxic," as well as omissions regarding contamination. ¶¶ 8-12, 92-101. After using the Products, Plaintiffs Ostenfeld, Murphy, and Stilwill suffered physical injuries to their skin, sinuses, and respiratory symptoms. ¶¶ 95-101.

Other Laundress customers describe similar physical injuries. ¶¶ 104-06. Although Plaintiff Geschwind has not experienced physical injuries at this time, she—like the other Plaintiffs and Economic Injury Class members—was duped into buying worthless, dangerous Products. ¶¶ 92-94. Ms. Geschwind and many others also spent time and money remediating the potential contamination. ¶¶ 84-87, 93.

**D.    The Claims and Proposed Classes**

Based on the foregoing misconduct, Plaintiffs bring claims against Laundress for violating NYGBL §§ 349-50; breach of express warranty; breach of implied warranty (not substantively disputed by Laundress for Plaintiffs Ostenfeld and Stilwill); violating the Magnuson-Moss Warranty Act ("MMWA"); Design Defect; Manufacturing Defect; Failure to Warn; unjust enrichment; violating California's UCL; and violating California's FAL. ¶ 13.

Plaintiffs Ostenfeld, Murphy, and Stilwill assert their Design Defect, Manufacturing Defect, and Failure to Warn claims (Counts V-VII) against Laundress on behalf of the "Physical Injury Class:"[1]

> All United States residents who suffered physical injuries after using Products or being exposed to Products that were purchased during the Class Period (with certain exclusions).

¶¶ 108, 110, 169, 185, 196.

All Plaintiffs assert the NYGBL §§ 349-50, breach of express and implied warranty, MMWA, and unjust enrichment claims (Counts I-IV, VIII) on behalf of the "Economic Injury Class:"

---

[1]    In the Complaint, the Physical Injury Class is sometimes referred to as the Personal Injury Class. ¶¶ 112, 169, 185, 196. In this brief, Plaintiffs maintain the "Physical Injury Class" naming convention.

> All United States residents who suffered physical injuries after using
> Products or being exposed to Products that were purchased during
> the Class Period (with certain exclusions).

¶¶ 109-10, 125, 136, 146, 157, 208.[2] Plaintiffs collectively refer to the Physical Injury Class, Economic Injury Class, and the California Subclass as the "Classes."

The Complaint alleges that there are more than one hundred members in each of Classes (¶ 112), and it sets forth: Laundress's common course of conduct in misleadingly marketing the Products (¶¶ 29-40); the generally applicable life-threatening dangers of the bacteria contaminating the Products (¶¶ 41-49); Laundress's generally applicable knowledge of the contamination or risk of contamination, active concealment, superior knowledge, and duty to disclose (¶¶ 67-73); Laundress's generally applicable systemic Product design and manufacturing defects, including reasonable alternative designs and likely manufacturing issues (¶¶ 50-66); Laundress's failure to warn and plausible warnings that would have prevented injuries(¶¶ 9, 40, 203-05); and Laundress's generally applicable and deficient attempts to recall and remedy consumers' physical injuries and economic damages. ¶¶ 27-66. In other words, the Complaint alleges a common core of salient facts relevant to each class member's claims.

## LEGAL STANDARD

"Before certifying a class, a court must engage in a 'rigorous analysis' to determine whether the Rule 23(a) prerequisites have been satisfied, which 'will frequently entail overlap with the merits of the plaintiff's underlying claim' because 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 391 (E.D.N.Y. 2022) (citing *Comcast*

---

[2]     Plaintiff Murphy brings her California statutory claims under the UCL and FAL claims (Counts IX-XI) on behalf of California residents who purchased Products during the Class Period ("California Subclass").

*v. Behrend*, 569 U.S. 27, 33-34 (2013)). "A court must 'make a definitive assessment of Rule 23 requirements, . . . , must resolve material factual disputes relevant to each Rule 23 requirement, and must find that each requirement is established by at least a preponderance of the evidence.'" *Id.* (citing *In re U.S. Foodservice Inc. Pricing Litig*., 729 F.3d 108, 117 (2d Cir. 2013)).

In the Second Circuit, courts view motions to strike class allegations with disfavor and infrequently grant such motions because they require a reviewing court "to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (Furman, J.) (citation omitted). "Whether Rule 23 requirements are met is more properly deferred to the class certification stage, when the court has before it a more complete factual record from which to make its determination." *Carr v. Johnson & Johnson Consumer Inc.*, No. 21-CV-6557(EK)(JRC), 2023 WL 3504662, at *2 (E.D.N.Y. May 17, 2023).

Limited exceptions to that general principle exist in instances where: (1) the motion to strike addresses issues separate and apart from the issues that will be decided on the class certification motion, *Sealock v. Covance, Inc*., No. 17-CV-5857 (JMF), 2018 WL 2290698, at *1 (S.D.N.Y. May 18, 2018) (citation omitted), or (2) the defendant demonstrates from the face of the complaint "that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintffs may be able to obtain during discovery." *In re Libor-Based Financial Instruments Antitrust Litig.*, 11 MDL 2262 (NRB), 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (modifications in original).

Whether to grant or deny a motion to strike class allegations "is vested in the trial court's sound discretion." *See Abbott Lab'ys v. Frank*, No. 17CV6002CBALB, 2018 WL 10529808, at *2

(E.D.N.Y. July 3, 2018) (citation omitted). "The party moving to strike 'bears a heavy burden' as Second Circuit courts 'generally disfavor motions to strike.'" *Id*; *see also Belfiore v. Proctor & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. Mar. 25, 2015) (noting that a "motion to strike class allegations under Rule 12(f) is even more disfavored"). Here, the Court should deny Defendant's request to strike class allegations for procedural and substantive considerations.

## ARGUMENT

### A.    Laundress's Motion to Strike Is Premature and Procedurally Improper

Second Circuit courts almost uniformly deny motions to strike class allegations because class certification issues are complex and because it is premature to consider class-related issues based solely on assumptions drawn from a complaint, before discovery, and before the Court is presented with a fully developed class certification motion. This body of authority effectively precludes striking class allegations except in the rare instance where the complaint demonstrates that it would be impossible to certify a class no matter what discovery the plaintiff obtains (such as striking class action allegations where the named plaintiff is undisputedly bound by an arbitration provision and class action waiver).

In *Parker*, the Second Circuit strongly cautioned against cutting class actions short without a factual record and prior to discovery, reversing and remanding the District Court's decision granting the defendant's motion to deny class certification of claims (an outmoded procedural tool similar to a motion to strike) based on a purported lack of superiority:

> The difficulty we have with these conclusions is that they are based on assumptions of fact rather than on findings of fact. The District Court precluded any class discovery and even the filing of a motion for class certification. Thus, it remains unknown what class Parker would have sought to certify and the numbers of potential class members in that proposed class . . . . Absent at least limited discovery concerning the composition of the class, the District Court

had no evidence regarding the size of the recovery that Time Warner
might face if the class claims were successful.

***

Because the District Court decided Time Warner's motion without
the factual support necessary to support its legal conclusions, the
decision to deny Rule 23(b)(3) class certification is vacated and this
matter is remanded for further proceedings. Once it has the benefit
of Parker's motion to certify and the evidence relevant to that
motion, the District Court will be in a position to exercise its
informed discretion regarding the factors affecting Rule
23(b)(3) certification.

331 F.3d at 21-23.

The principles set forth in *Parker* are rooted in the procedural structure and requirements
of Rule 23 and are echoed in hundreds of decisions in the Second Circuit and throughout the
country denying motions to strike based on arguments focused on predominance or variations in
state law. *E.g.*, *See v. Gov't Emps. Ins. Co.*, No. 21CV00547PKCJMW, 2022 WL 2467695, at *13
(E.D.N.Y. Mar. 22, 2022) ("Most of Defendants' arguments center around Plaintiffs' ability to
satisfy the class certification requirements of Rule 23[.] Such arguments, however, are premature
because they mirror the class certification inquiry . . . under Rules 23(a) and 23(b).") (internal
citations and omissions omitted); *Mason v. Reed's Inc*., 515 F. Supp. 3d 135, 148 (S.D.N.Y. 2021)
("The defendant argues that the Court should strike the class allegations in the complaint due to
the variations in state law across the country. However, '[c]ourts in this circuit hesitate to strike
class allegations before a class certification motion is filed.'"); *Travis v. Navient Corp*., 460 F.
Supp. 3d 269, 286 (E.D.N.Y. 2020) ("Navient principally argues that Travis will be unable to
'demonstrate commonality, predominance, or superiority, . . . Since it would be premature to
decide this fact-specific argument at this juncture, Navient's motion to strike Travis' class
allegations is denied.") (internal citation omitted).

Here, like the defendants in the foregoing cases, Laundress's motion fails because it raises "the same [issues] that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." *Kassman*, 925 F. Supp. 2d at 464 (citing *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198(LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)). Laundress's motion exclusively challenges issues more appropriately raised on a motion for class certification following discovery, including Plaintiffs' ability to satisfy Rule 23(b)(2) (Def. Br. at 5-7); Plaintiffs' ability to demonstrate superiority based on purported differences in state law (*id.* 8-12); predominance of common issues (*id.* at 12-16); the nationwide applicability of NYGBL §§ 349-50 (*id.* at 16); and the propriety of Rule 23(c)(4) issue certification. *Id.* at 17-18. As a result, the Court should reject Laundress's procedurally improper attempt to expound on complex certification issues based solely on its own speculation and without an evidentiary record and full briefing.

**B.    Laundress Has Failed to Demonstrate That Rule 23(b)(3) Class Certification Is Impossible with Further Discovery[3]**

As detailed above, Laundress cannot demonstrate that class certification would be impossible without prematurely resorting to arguments that would be raised to oppose a motion for class certification. However, should the Court address Laundress's substantive arguments, the Complaint demonstrates that Laundress falls far short of meeting its very heavy burden to show that it would be impossible to certify any of the proposed Classes under Rule 23(b)(3), which "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 547 (E.D.N.Y. 2017) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).

---

[3]      Plaintiffs will not pursue class certification pursuant to Rule 23(b)(1)(A)-(B).

### 1. Laundress Fails to Show That Choice-of-Law Issues Make Certification Impossible

Based solely on the Complaint, Laundress suggests that a class action cannot be a superior method for adjudicating Plaintiffs' claims under Rule 23(b)(3), primarily citing purported variations in state law that will overwhelm common issues or make a class action unmanageable. *See* Def. Br. 8-12. Rule 23(b)(3)'s superiority analysis focuses on several fact-based considerations, including: the class members' interests in individually controlling the prosecution of separate actions; the extent and nature of any litigation concerning the controversy already begun by class members; the desirability or undesirability of concentrating the litigation of the claims in the forum; and the likely difficulties in managing a class action. *See Reynolds v. Lifewatch, Inc*., 136 F. Supp. 3d 503, 517 (S.D.N.Y. 2015) ("The Second Circuit has also made clear, however, that 'failure to certify an action . . . on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'") (citations omitted).

Like the other issues raised by Laundress, the Court should not make a definitive choice of law assessments based solely on the pleadings without further factual development and full briefing. As explained by the Court in *Reynolds*, "it is . . . too early to determine just how intractable the state common law claims will be, and whether those issues can be addressed by the use of subclasses . . .  or other case management methods, and whether or not the class claims predominate." *Id.* at 518-19; *Greene v. Gerber Products Co.*, 262 F. Supp. 3d 79 (E.D.N.Y. 2017) ("Before discovery into the class, it is impossible for the Court to determine how many states' laws are implicated in this action, how many of those laws vary, and how many variances are material to the factors the Court will consider in deciding whether to certify the class."); *In re LILCO Secs. Litig*., 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("The spectre of having to apply different substantive law does not warrant refusing to certify a class on . . . common-law claims."). As this authority

demonstrates, a choice of law analysis should be considered on a motion for class certification following discovery and based on a full evidentiary record. As a result, the Court should deny Laundress's argument as procedurally improper.

.       Laundress's argument relies on the Court prematurely determining that adjudicating class members' claims will require the application of the laws of each class member's home-state. Def. Br. at 8-9. However, at this stage of the case, and based on Plaintiffs' allegations regarding the connections between their claims and New York (Laundress's principal place of business), the application of out-of-state law is not a foregone conclusion. For warranty claims, New York courts apply a "center of gravity" analysis. *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1539 (2d Cir.1997).[4] For products liability claims, "New York courts apply an 'interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied[.]'" *Cacciola v. Selco Balers, Inc*., 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001). [5] For an unjust enrichment claim, a court must decide whether to apply the "center of gravity" or the "interest analysis" test, depending on whether the claim sounds in tort or contract. *Monbo v. Nathan*, 623 F. Supp. 3d 56, 110 (E.D.N.Y. 2022) (internal citation omitted).

The choice of law rules governing Plaintiffs' claims involve numerous, fact-intensive

---

[4]      "Under this approach, courts may consider . . . the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. New York courts may also consider public policy 'where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests.' [T]he places of contracting and performance, are given the heaviest weight in this analysis." *Lazard Freres & Co.*, 108 F.3d at 1539 (internal citations omitted).

[5]      "This interest analysis requires the court to determine whether the purpose of the legal standards at issue is to regulate conduct or to allocate losses, and to identify the significant contacts among the parties and the states involved." *Cacciola*, 127 F. Supp. 2d at 184. "This interest analysis is fact intensive and 'flexible.' While the place where the injury was felt is an important factor, it is not conclusive." *Abu Dhabi Inv. Auth. v. Citigroup, Inc.*, No. 12 CIV. 283 GBD, 2013 WL 789642, at *6 (S.D.N.Y. Mar. 4, 2013) (internal citations and quotation omitted).

considerations. Plaintiffs allege substantial contacts between their claims and New York, including that "Laundress created and/or authorized the false and misleading representations and omissions from New York," and Laundress—from its New York headquarters—developed, manufactured, distributed, and recalled the Products. ¶ 23-24. The Complaint establishes that Laundress's misconduct originated from in New York with oversight by Laundress's management.  As a result, New York law may uniformly apply to all or some of the class claims, precluding the need to engage in the "class-member-by-class-member choice of law analysis" Laundress anticipates. Defs. Br. at 9. At the very least, the common application of New York law is plausible and precludes a finding that certification of all of Plaintiffs' claims would be impossible, especially at the pleadings phase of the case.

Even if out-of-state law applies to class members' claims (which is not clear), the Court should still refrain from concluding that class certification would be impossible. While the law governing Plaintiffs' claims varies from state to state, what matters for class certification purposes is <u>material</u> variations in state law. It is far from certain that there are material variations in state law precluding certification of Plaintiffs' claims or whether material variations (if they exist) cannot be addressed through the certification of subclasses or other case management methods. *See In re U.S. Foodservice Inc. Pricing Litig*., 729 F.3d 108, 127 (2d Cir. 2013); Fed. R. Civ. P. 23(c)(5). It is incumbent on Plaintiffs to demonstrate that variations in state law do not overwhelm common issues or undermine superiority based on an evidentiary record and full briefing, not for Laundress to peremptorily make that determination based on speculations gleaned from the Complaint. *See Langan v. Johnson & Johnson Consumer Companies, Inc.,* 897 F.3d 88, 97 (2d Cir. 2018).

Laundress's fifty-state law surveys purporting to show state law variations for Plaintiffs'

claims do not merit striking Plaintiffs' class allegations. *See* Def. Br. at 10. "[T]he Court has the ability to adjudicate a class action litigation that could involve the application of numerous states' laws. As other courts have noted, even if 'choice of law rules required a court to apply the law of all fifty states, this would not render the trial per se unmanageable' and it is certainly possible to apply the laws of many states in a single class action.'" *In re Nigeria Charter Flights Cont. Litig*., 233 F.R.D. 297, 305 (E.D.N.Y. 2006) (citing *Steinberg v. Nationwide Mut. Ins. Co*., 224 F.R.D. 67, 79 (E.D.N.Y.2004)); *Niles v. Arizona Beverages USA LLC*, No. CV191902GRBARL, 2021 WL 7906562, at *14 (E.D.N.Y. July 19, 2021) ("The defendants urge the Court to strike the class claims at this time because . . . fifty individual state laws govern the plaintiffs' class claims. While the defendants may ultimately prevail on this issue, the undersigned finds this argument to be premature and recommends that the defendants' motion to strike the class claims be denied with leave to review at the class certification stage.").

Here, Laundress characterizes state law variations as dispositive relying primarily on its premature and self-serving surveys, but that conclusion cannot be drawn strictly from the Complaint. As just one example, Laundress's design defect survey purports to show variations in the "standard for identifying defect," with most jurisdictions either applying the "consumer-expectation tests" or the "risk-utility test." Defs. Br., Ex. 1. However, Plaintiffs plausibly allege that the Products were defective under both tests and the existence of a reasonable alternative design, demonstrating that variations in the design defect claim are immaterial. ¶¶ 172-81. Laundress similarly calls for haphazardly striking all of Plaintiffs' class claims based on conjecture and its surveys without a careful analysis of whether Laundress's self-identified variations are material. The Court should reject Laundress's preemptive choice of law analysis and instead defer consideration of that fact-intensive analysis for a later stage of the case.

14

*Borgese v. Baby Brezza Enters. LLC*, No. 20 CIV. 1180 (VM), 2021 WL 634722, at *5 (S.D.N.Y. Feb. 18, 2021) is not instructive. Defs. Br. at 10. There, although the Court recognized that the "product-defect claim could be subject to generalized resolution," it found that the plaintiff had not alleged Rule 23's requirements where the class included "all purchasers" of the formula mixer but no further allegations regarding purchasers who may have had similar malnutrition issues with the product. 2021 WL 634722, at *6-7. Due in part to the proposed class's vagueness in *Borgese*, the court found it could not adequately determine class membership or, in turn, whether variations in state law precluded certification. *Id.* at *4. In essence, *Borgese*'s proposed class had an overbreadth or vagueness issue that is not present in this case.[6]

Moreover, the *Borgese* court's effort to conduct a state law analysis based solely on the complaint and without full briefing runs falls far afield of other Second Circuit courts, which near-uniformly hold that a choice of law analysis under Rule 23 should await discovery and full motion practice. *See, e.g.*, *Greene*, 262 F. Supp. 3d at 79 ("Before discovery into the class, it is impossible for the Court to determine how many states' laws are implicated in this action, how many of those laws vary, and how many variances are material to the factors the Court will consider in deciding whether to certify the class."). *Borgese* is procedurally and factually distinguishable from this case, and the Court should reject Laundress's reliance on *Borgese* given that it is an outlier regarding the propriety of determining choice of law issues on a motion to strike class allegations based only on the pleadings.[7]

---

[6]     Procedurally, the *Borgese* federal complaint was nearly identical to a state court complaint the *Borgese* plaintiff had filed in New York state court two days prior to filing the federal action, resulting in the Court staying the action under the *Colorado River* abstention doctrine. *See* 2021 WL 634722, at *7. The procedural posture of *Borgese* likely contributed to the court striking the class allegations.

[7]     Laundress's other cases supposedly supporting a premature choice of law analysis are also distinguishable. Defs. Br. at 10-11. In *Pilgrim v. Universal Health Card LLC*, 660 F.3d 943 (6th

Laundress cannot demonstrate, at this early stage of the case, that choice of law issues render class certification impossible. The Court should follow the overwhelming weight of authority and defer choice of law issues until Plaintiffs have had an opportunity to conduct discovery and file a motion for class certification.

### 2. Laundress Fails to Show That Predominance Issues Make Certification Impossible for the Classes

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (citation omitted). When one or more of the central issues in the action are common to the class and said to predominate, it is immaterial that other, important matters will have to be tried

---

Cir. 2011), the Sixth Circuit, applying Ohio choice of law principles, found that the consumer protection laws of the states where absent class members purchased and used the service governed their claims and that the district court did not abuse its discretion in determining that variations between the applicable consumer protection laws prevented certification. The Sixth Circuit also expressed skepticism that Ohio courts would allow extra-territorial application of Ohio's consumer protection statute. *Id.* at 945-50. Here, Second Circuit courts would allow the choice of law analysis to play out according to the class certification process, and unlike the Ohio's consumer protection statute, NYGBL §§ 349-50 has extraterritorial application when the challenged consumer-oriented transactions take place in New York (discussed further below in Section C.); *see also Wang v. Tesla, Inc*., 338 F.R.D. 428, 437-8 (E.D.N.Y. 2021) (denying leave to amend to assert class claims arising from Tesla autopilot car accident and point of purchase oral misrepresentations but recognizing that the "proposed class, as defined, may have a common legal claim: that the Teslas had a product defect that caused an accident.");  *Szymczak v. Nissan N. Am.*, No. 10 CV 7493(VB), 2011 WL 7095432, at *14 (S.D.N.Y Dec. 16, 2011) (Unlike this case, where Plaintiffs allege close ties between their claims and New York, Laundress's principal place of business (¶¶ 21-24), the *Szymczak* plaintiffs "did not allege any actions occurring in Tennessee[,]" the defendant's principal of business); *see also, e.g.*, *In re Grand Theft Auto Video Games Consumer Litig*., 251 F.R.D. 139 (S.D.N.Y. 2008) (decertification of settlement class); *Oscar v. BMW of N. Am.*, LLC, 274 F.R.D. 498 (S.D.N.Y. 2011) (motion for class certification); *Hughes v. Ester C Co*., No. 12-CV-0041 (PKC), 2016 WL 6092487, at *14–15 (E.D.N.Y. Sept. 30, 2016) (same).

separately, such as damages or some affirmative defenses peculiar to some individual class members. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 1036, 453-54 (2016).

Here, setting aside that Second Circuit courts overwhelming refuse to consider untested speculation regarding predominance as a basis to strike class allegations (*E.g.*, *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019)), Plaintiffs allege a predominating common course of misconduct towards all class members and numerous common questions of fact shared by Plaintiffs and each class member, focusing on the source of the Products' bacterial contamination, Laundress's knowledge of the contamination, Laundress's misleading labeling and marketing and lack of warnings (and plausible alternative warnings), consumer safety expectations and reasonable alternative designs, and commonly applicable design and manufacturing defects. ¶ 114. Even at this early stage of the case, it is readily apparent that those factual issues will apply to each class member's claims; would drive the resolution of the litigation; and will effectively establish liability for each class member's claims. As a result, Plaintiffs plausibly allege that common issues will predominate and the Court should not determine otherwise without additional discovery, expert opinions, and motion practice.

Even so, Laundress argues that certification would be impossible for the Physical Injury Class by prematurely attacking Plaintiffs' ability to establish causation and damages for each class member. *See* Def. Br. at 12-14. However, in the same way raising common questions– "even in droves"—cannot establish commonality on a motion for class certification (*see Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)), raising individual questions (real or perceived) cannot establish that class certification would be impossible on a motion to strike. The Rule 23(b)(3) inquiry involves a fact-intensive calculus and the careful weighing of common questions versus individual ones. At this early stage of the case, Laundress fails to show that any of the individual

issues it identifies eclipse the common questions Plaintiffs identify. *See Carr*, 2023 WL 3504662, at *4 ("Defendants' points regarding the distinct challenges to certifying a products-liability class are therefore well-taken. Well-taken but still premature: in each of the *Fosamax*, *Rezulin*, and *MTBE* cases, the court's refusal to certify the products-liability class came on a motion for class certification—after the parties had the benefit of discovery and the opportunity to fully brief the Rule 23 issues.").

Moreover, contrary to Laundress's contention, potential individual damage inquiries do not shut the door to certification of the Physical Injury Class. Def. Br. 13-14. The Second Circuit has held that the class-wide damages analysis is just one factor to consider as part of the predominance analysis and "that individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (citing *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir.2010). (Individualized damage inquiries are one factor to "consider in deciding whether issues susceptible to generalized proof outweigh individual issues when certifying the case as a whole.") (internal citations omitted). Thus, Laundress fails to show that damages issues make class certification impossible, warranting the denial of its motion to strike.

Laundress's predominance challenge of the Economic Injury Class and California Subclass claims also fails. Def. Br. 14-16. As an initial matter, Laundress's recall does not moot Plaintiffs' claims. *See* Plaintiffs' Opp. to Def. Motion to Dismiss at 7-10. Beyond that consideration, as with the Physical Injury Class, *Roach* conclusively rebuts Laundress's argument that individual damage inquiries for the Economic Injury Class and California Subclass preclude certification. Substantively, Laundress cannot cite its recall as a basis to strike when "it remains unclear how many potential class members have been paid or even contacted as part of the recall campaign."

*Reynolds*, 136 F. Supp. 3d at 515. Likewise, it is not evident at this preliminary stage how many class members will claim remediation expenses and whether that will be an insuperable bar to class certification, particularly when the Second Circuit courts have endorsed self-identifying affidavits (*Langan*, 897 F.3d at 91 n.2) and the potential appointment a special master to address damage inquiries. *See Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, No. 96 CV 8414 KMW, 2013 WL 4647190, at *13 (S.D.N.Y. Aug. 29, 2013) (anticipating the appointment of a special master to address class-wide damage calculations and individual hearings in class action arising from racially discriminatory standardized tests).

Laundress's argument that individual reliance inquiries preclude certification of the California Subclass fails. Defs. Br. at 15-16. "The UCL and FAL do not require individualized proof of 'reliance and injury' to obtain relief, 'so long as the named plaintiffs demonstrate injury and causation.'" *Allegra*, 341 F.R.D. at 395 (citing *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 410 (S.D.N.Y. 2015)). A plaintiff can establish a class-wide presumption of reliance by proof of class-wide exposure to the alleged misrepresentation, which can be inferred under two circumstances: (1) when the misrepresentation appears on the labeling, or (2) when there is a sufficiently extensive advertising campaign that includes the alleged misrepresentation. *Allegra*, 341 F.R.D. at 410-11. As a result, "the objective test for materiality and thus reliance renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Id.* at 396 (internal quote and modification omitted).

Here, Plaintiff Murphy details Laundress's affirmative "nontoxic" and contamination risk labeling claims and omissions. ¶¶ 39-40 ("At least as early as the beginning of the Class Period, [Laundress] failed to disclose on Product packaging and labeling . . . or otherwise that the Products

contained or were at risk of containing highly dangerous and toxic bacteria."). Plaintiff Murphy also alleges an extensive marketing claim by Laundress falsely highlighting, among other things, that the Products were "non-toxic." ¶¶ 29-38. As a result, Plaintiff Murphy plausibly alleges an inference of class-wide exposure under the UCL and FAL (and, in turn, class-wide reliance), and Laundress fails to demonstrate that Plaintiff Murphy's UCL and FAL claims would be impossible to certify based on individual reliance inquiries.[8]

Laundress falls well-short of meeting its very heavy burden to show that further discovery and expert analysis cannot bolster what already amounts to a significant showing of predominance, or that establishing predominance would be impossible based on the pleadings alone. It is particularly alarming that Laundress asks the Court to skip the important fact-based analysis called for in Rule 23 decisions throughout the country by citing cases where courts only denied class certification after carefully reviewing factual records illuminated by class certification briefing. *See* Def. Br. at 12-14.[9]

---

[8]     Laundress's authority does not address UCL and FAL certification issues or involves circumstance where the plaintiffs were unable to establish an inference of exposure based on a labeling claim or widespread campaign. *See In re Fyre Festival Litig*., 2020 WL 7318276, at *7 (S.D.N.Y. 2020) (the plaintiff did not attempt or failed to establish class wide exposure under the FAL and UCL, which were analyzed along with other consumer protection statutes in denying class certification); *Ivie v. Kraft Foods Global, Inc*., 961 F.Supp.2d 1033, 1046 (N.D. Cal. 2013) (analyzing reliance requirements under UCL and FAL for named plaintiff only).

[9]     *See In re Fosamax Prods. Liab. Litig*., 248 F.R.D. 389, 396 (S.D.N.Y. 2008 )(motion for class certification); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig*., 241 F.R.D. 435, 449 (S.D.N.Y. 2007) (motion for class certification granted in part, denied part); *Zehel-Miller v. Astrazenaca Pharms., LP*, 223 F.R.D. 659, 663 (M.D. Fla. 2004) (motion for class certification); *In re Rezulin Prods. Liab. Litig*., 210 F.R.D. 61, 66–68 (S.D.N.Y. 2002) (same); *Georgine v. Amchem Prods*., 83 F.3d 610, 626–27 (3d Cir. 1996) (appeal of motion seeking conditional class certification).

### C.      A Nationwide Class Can Be Certified Under NYGBL §§ 349 and 350

Contrary to Laundress's argument (Def. Br. at 16), NYGBL §§ 349-50 has extraterritorial application and the certification of a nationwide class is possible. In *Cruz v. FXDirectDealer*, LLC, 720 F.3d 115 (2d Cir. 2013), the Second Circuit determined that "a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349." *Id.* at 123. The Second Circuit stated that "section 349 was not intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state," *id.* at 122, and determined that the out-of-state plaintiff had standing to assert NYGBL claims when the allegedly deceptive transactions involved payments and communications being sent to the defendant's New York office. *Id.* at 123-24.

In *Reynolds*, the Court denied a motion to strike NYGBL class claims where the defendants argued that NYGBL claims are "unfit for class certification because they cannot be applied to consumers outside of New York State." 136 F. Supp. 3d at 519. While the Court agreed that NYGBL only applies to New York transactions, it also concluded that "a purchaser's citizenship or residency does not affect where a transaction occurs." *Id.* (collecting cases). The *Reynolds* complaint alleged that the plaintiff and certain defendants resided or had their principal place of business in New York but otherwise was silent on "the operations involved in the transactions at issue." *Id.* Even so, the Court declined to strike the NYGBL class allegations because it was not able to conclude "from the face of the Amended Complaint, that 'it would be impossible to certify the alleged class regardless of the facts' Plaintiff may be able to obtain during discovery." *Id.*

21

Here, there is an even stronger basis to deny Laundress's motion to strike the NYGBL nationwide class allegations than in *Reynolds*. Plaintiffs allege that Laundress has its principal place of business in New York; Laundress's sales and financial documents are located in New York; Laundress created and/or authorized the false and misleading representations and omissions in New York; and Laundress collaborated in manufacturing, distributing, and recalling the Products in New York, allegations which apply to every Economic Injury Class member's claims regardless of their residence. ¶¶ 21-24. The Complaint is not silent on where the allegedly deceptive transactions occurred in this case. Instead, it affirmatively alleges a plausible basis that the challenged transactions occurred in New York, permitting extraterritorial application of NYGBL. As a result, the Court should not strike the nationwide NYGBL class allegations but decide the issue after Plaintiffs can develop a factual record regarding the contacts between their NYGBL claims and New York.[10]

### D.     The Court Should Not Strike Plaintiffs' Rule 23(c)(4) Class Allegations

Rule 23(c)(4) allows an action "to be brought or maintained as a class action with respect to particular issues," providing a procedure that courts employ "to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement." *In*

---

[10]     Laundress's authority predates *Cruz* and involves Plaintiffs who did not allege an inference of New York-based transactions permitting the extraterritorial application of NYGBL. *See, e.g., Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681, 688 (S.D.N.Y. 2010) (Unlike Plaintiffs in this case, the plaintiffs in *Kaufman* did not "allege[] sufficient facts from which [the court] could reasonably deduce that [non-New York residents] w[ere] deceived in New York"); *see also In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *17-18 (E.D.N.Y. Aug. 29, 2013) (The plaintiffs did not allege New York-based transactions but, instead, argued that the extraterritorial application of NYGBL was an issue that could only be decided on a motion for class certification and also argued for the misapplication of the United State Supreme Court's then-recent decision in *Shady Grove Orthopedic Association, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (U.S. 2010), which held that Rule 23 preempted NY CPLR 901(b), a New York procedural statute that generally prohibits the recovery of statutory damages in state court class actions).

*re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006). In *In re Nassau Cnty.*, for instance, the Second Circuit held "that a court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement." *See id.* at 226; *Nnebe v. Daus*, No. 06-CV-4991 (RJS), 2022 WL 615039, at *9 (S.D.N.Y. Mar. 1, 2022) (certifying liability class and stating: "manageability concerns are adequately addressed by certifying the class as to liability only and allowing class members to seek compensatory damages through individual proceedings").

Here, the Court should deny Laundress's motion to strike as premature and substantively deficient. However, should the Court find that Rule 23 predominance certification is impossible, it should still deny the motion to strike because Plaintiffs allege various common questions that would "'materially advance' the litigation as a whole" and qualify for issue certification under Rule 23(c)(4). *See Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 593 (S.D.N.Y. 2013). At this stage of the case, and without the benefit of discovery, the Court cannot ascertain that class certification would be impossible for the issues identified in the Complaint or that those issues—which speak directly to Laundress's liability—would not materially advance the litigation for the Classes.

Relying exclusively on class certification motion decisions, Laundress confusingly argues that Plaintiffs are improperly attempting to use Rule 23(c)(4) to "certify issue classes as to the elements of their various causes of action." Def. Br. at 17. Despite Laundress's contention, Plaintiffs are proposing to employ Rule 23(c)(4) for its plain purpose as explained by Second Circuit courts who frequently employ Rule 23(c)(4) to determine liability, i.e., a process which necessarily involves resolving elements of the relevant claims. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2022 WL 3971006, at *6 (S.D.N.Y. Aug. 31, 2022) ("Resolution of Credit Suisse's participation in a conspiracy will materially advance the

resolution of the litigation as a whole. If Plaintiffs succeed at trial, defining the timeline and membership of the conspiracy on a class-wide basis will be more efficient than requiring each class member to do so in later litigation[.]"). If Laundress is correct that Rule 23(c)(4) cannot be used to certify issues germane to the elements of a plaintiff's claims, then Rule 23(c)(4) would serve no purpose at all. To the extent Laundress is arguing that Plaintiffs are seeking to certify too many issues or issues that would not materially advance the litigation, that analysis should await a later date (as demonstrated by Laundress's cited class certification decisions).[11] The Court should reject Laundress's premature attempt to strike Plaintiffs' Rule 23(c)(4) issue class allegations.

## CONCLUSION

For the foregoing reasons, the Court should deny Laundress's motion to strike.

Dated: June 15, 2023

**SQUITIERI & FEARON, LLP**

By: */s/ Stephen J. Fearon, Jr.*
Stephen J. Fearon, Jr.
Paul V. Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**SHENAQ PC**
Amir Shenaq, Esq.*
3500 Lenox Road, Ste. 1500
Atlanta, GA 30326
Tel: (888) 909-9993
amir@shenaqpc.com

**THE KEETON FIRM LLC**
Steffan T. Keeton, Esq.*
100 S Commons Ste 102
Pittsburgh PA 15212
Tel: (888) 412-5291

---

[11] *Benner v. Becton Dickinson & Co*., 214 F.R.D. 157 (S.D.N.Y 2023) (motion for class certification); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc*., 308 F.R.D. 630 (N.D. Cal. 2015) (same); *Haley v. Medtronic, Inc*., 169 F.R.D. 643 (C.D. Cal. 1996) (same).

stkeeton@keetonfirm.com

**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson*
Christopher T. Aumais*
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com
cta@ggallp.com

**ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASSES**

*Pro hac vice forthcoming*

25