# UNITED STATES DISTRICT COURT
# FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LORI OSTENFELD, DEBORAH GESCHWIND, MARGARET MURPHY, and JUDY STILWILL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE LAUNDRESS, LLC,<br><br>Defendant. | Case No. 1:22-cv-10667-JMF<br><br>HONORABLE JESSE M. FURMAN |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

**WINSTON & STRAWN LLP**
Ronald Y. Rothstein
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Jared R. Kessler (*pro hac vice*)
200 S. Biscayne Blvd. Suite 2400
Miami, FL 33131
jrkessler@winston.com
Telephone: (305) 910-0654
Facsimile: (305) 910-0505

Lisa Coutu
200 Park Avenue
New York, NY 10166
lcoutu@winston.com
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

ATTORNEYS FOR DEFENDANT

i

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ...................................................................................................................... 1

      A.    The Law of Plaintiffs' Home States Governs Their Common-Law Claims ........... 1
      B.    Plaintiffs' Claims Based on The Laundress's Product Packaging Are Moot ......... 2
      C.    Plaintiffs Fail to State Claims Under NY or CA Consumer Protection Statutes ................................................................................................................... 3

           1.    Plaintiffs do not plausibly allege an affirmative misrepresentation ............ 3
           2.    Plaintiffs ignore The Laundress's knowledge *at the time* of their purchases ..................................................................................................... 4
           3.    Plaintiffs fail to allege that their transactions *occurred* in New York and thus cannot establish NYGBL standing ..................................... 6

      D.    Plaintiffs Fail to State a Claim for Breach of Warranty ......................................... 7
      E.    Plaintiffs Fail to State Their Product-Defect Claims .............................................. 8

           1.    Plaintiffs do not plausibly allege proximate cause ..................................... 8
           2.    Plaintiffs' failure-to-warn claim must be dismissed .................................. 9

      F.    Plaintiffs are not entitled to equitable relief ............................................................ 9
      G.    Plaintiffs' Remaining Claims and Requests for Remedies Fail ........................... 10

III.  CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adam v. Barone*,
  41 F.4th 230 (3d Cir. 2022) ..................................................................................................3

*In re Big Heart Pet Brands Litig.*,
  2019 WL 8266869 (N.D. Cal. Oct. 4, 2019).........................................................................6

*BK Trucking Co. v. Paccar, Inc.*,
  2016 WL 3566723 (D.N.J. June 30, 2016) ...........................................................................7

*Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*,
  655 F. App'x 9 (2d Cir. 2016) ..............................................................................................1

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016)..............................................................................................................3

*Cooper v. Anheuser-Busch LLC*,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021).....................................................................................8

*Cotiviti, Inc. v. Deagle*,
  501 F. Supp. 3d 243 (S.D.N.Y. 2020)...................................................................................2

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)..................................................................................................6

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
  921 F. Supp. 2d 197 (S.D.N.Y. 2013)...................................................................................4

*Fargas v. Cincinnati Mach., LLC*,
  986 F. Supp. 2d 420 (S.D.N.Y. 2013)...................................................................................2

*Fishon v. Peloton Interactive, Inc.*,
  2021 WL 2914820 (S.D.N.Y. July 12, 2021) .......................................................................6

*In re Gen. Motors LLC Ignition Switch Litig.*,
  2016 WL 3920353 (S.D.N.Y. July 15, 2016) .......................................................................6

*Gordon v. Kaleida Health*,
  847 F. Supp. 2d 479 (W.D.N.Y. 2012)..................................................................................9

*Kinsey v. N.Y. Times Co.*,
  91 F.3d 171 (2d Cir. 2021)....................................................................................................1

*Kowalsky v. Hewlett-Packard Co.*,
    2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ..................................................................6

*Langner v. Boston Sci. Corp.*,
    492 F. Supp. 3d 925 (D. Neb. 2020)................................................................................8

*Lightner v. Medtronic Inc.*,
    No. CV20-10942MWF(PDx), 2021 WL 4731351 (C.D. Cal. May 10, 2021) .........................9

*Moran v. Edgewell Personal Care, LLC*,
    2022 WL 3046906 (N.D. Cal. Aug. 2, 2022) ...................................................................8

*Next Gen. Tech., Inc. v. Jaddou*,
    2023 WL 2570643 (S.D.N.Y. March 18, 2023) ...............................................................3

*Podany v. Robertson Stephens, Inc.*,
    350 F. Supp. 2d 375 (S.D.N.Y. 2004)..............................................................................8

*Porsch v. LLR, Inc.*,
    380 F. Supp. 3d 418 (S.D.N.Y. 2019)..............................................................................3

*Riva v. Pepsico*,
    82 F. Supp. 3d 1015 (N.D. Cal. 2015) ...........................................................................10

*Robinson v. J. M. Smucker Co.*,
    No. 18-CV-04654-HSG, 2019 WL 2029069 (N.D. Cal. May 8, 2019).....................................9

*Rugg v. Johnson & Johnson*,
    2018 WL 3023493 (N.D. Cal. June 18, 2018) ..................................................................4

*In re Sling Media Slingbox Advert. Litig.*,
    202 F. Supp. 3d 352 (S.D.N.Y. 2016)..............................................................................4

*Sloan v. Gen. Motors LLC*,
    No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) .....................................4

*Smith v. Railworks Corp.*,
    2011 WL 2016293 (S.D.N.Y. May 17, 2011) ...................................................................2

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..........................................................................................9

*Speedmark Transp., Inc. v. Mui*,
    778 F. Supp. 2d 439 (S.D.N.Y. 2011)..............................................................................2

*Theer v. Philip Carey Co.*,
    628 A.2d 724 (N.J. 1993)..............................................................................................10

*Thomas v. Atl. Express Corp.*,
    2009 WL 856993 (S.D.N.Y. March 31, 2009) ...................................................................3, 7

*Tomassini v. FCA U.S. LLC*,
    2015 WL 3868343 (N.D.N.Y. June 23, 2015) ..........................................................................6

**Statutes**

New York General Business Law ("NYGBL") ....................................................................... *passim*

NYGBL § 349 ..............................................................................................................................1, 4

NYGBL § 350 ..............................................................................................................................1, 4

**Other Authorities**

Rule 9 ................................................................................................................................................5

**MEMORANDUM OF LAW**

I.  **INTRODUCTION**

Plaintiffs' Opposition to The Laundress's Motion to Dismiss (the "Opposition") ignores and misstates inquiries critical to their claims. For example, with respect to their claim under New York General Business Law ("NYGBL") ¶¶ 349 and 350, Plaintiffs attempt to contort the statutory standing analysis—focused on the *location* of a transaction—into one of The Laundress's contacts with New York. Similarly, regarding their omission-based and failure-to-warn claims, Plaintiffs ignore the timing of The Laundress's alleged knowledge of potential bacterial contamination in its Products and instead make generic allegations about irrelevant industries and water-based products. Each of Plaintiffs' other claims suffer similar infirmities. Despite their asking for it repeatedly in their Opposition, the Court should not indulge the Plaintiffs' plea for discovery to support their ill-pled claims. Plaintiffs have the burden of making plausible allegations of fact. The Opposition does not overcome their failure to do so, and their Complaint should be dismissed.

II.  **ARGUMENT**

  A.  **The Law of Plaintiffs' Home States Governs Their Common-Law Claims**

Plaintiffs' objections aside, a choice-of-law analysis is appropriate—and necessary—at this stage of the litigation and dictates that the law of Plaintiffs' home states applies to their common-law claims.[1] Courts in this district routinely make choice-of-law determinations at the motion-to-dismiss stage, and the Court should not hesitate to do so here.[2] *See Kinsey v. N.Y. Times*

---

[1] Plaintiffs' request that the Court defer this analysis "until discovery" creates an impossible situation—they ask the Court to evaluate the sufficiency of the pleadings for claims involving different elements depending on which state law applies, without first deciding which state law applies. For example, whether Plaintiff Murphy has stated a claim for breach of express warranty will depend on whether California or New York law applies, as one state includes a pre-suit notice requirement and the other does not. *See* Mot. at 16.
[2] Plaintiffs' cases on this point are easily distinguished. *See Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (involving a complicated international dispute and

1

*Co.*, 91 F.3d 171, 175–78 (2d Cir. 2021) (affirming district court's decision to apply New York law at the motion-to-dismiss stage); *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 426–27 (S.D.N.Y. 2013) (applying choice-of-law analysis at the motion-to-dismiss stage); *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 255 (S.D.N.Y. 2020) (same).

### B. Plaintiffs' Claims Based on The Laundress's Product Packaging Are Moot

Plaintiffs' statutory, warranty, and unjust-enrichment claims (Counts I, II, III, IV, VIII, IX, X, and XI) are based on the theory that, through either misrepresentations or material omissions, The Laundress's Product packaging is deceptive. *See* Compl. ¶¶ 132; 137; 148; 161; 214; 220; 229; 235. In each of these claims, Plaintiffs allege they suffered damages by virtue of buying or overpaying for The Laundress's Products. *See id*. ¶ 20. But it is undisputed that The Laundress, as part of its recall, offered to Product purchasers (including Plaintiffs) full refunds. *See id*. ¶ 83.

Trying to sidestep the mootness issue, Plaintiffs argue that their claims[3] based on The Laundress's product labels allow for damages for physical, emotional, pecuniary, or reputational harm. *See* Pls.' Opp'n at 8. But no Plaintiff alleges that she suffered physical, emotional, or reputational harm as a result of The Laundress's packaging. *See generally* Compl. And Plaintiffs do not explain in their Opposition how the potential availability of damages categories they do not seek somehow thwarts the mootness of their claims. Plaintiffs' request for attorneys' fees and

---

a question of whether the parties intended to invoke Indian law); *Smith v. Railworks Corp.*, 2011 WL 2016293, at *6 (S.D.N.Y. May 17, 2011) (declining to address the choice-of-law question because it was not addressed in the parties' briefing); *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (requiring a fact-intensive "center of gravity" analysis due to individualized employment contracts for employees in the United States and China).

[3] Plaintiffs identify only their NYGBL claims (Count I) as a basis for these allegedly available remedies. Although they suggest that consequential damages would be available for their breach-of-warranty claims (Counts II and III), they do not seek consequential damages in the Complaint. Left unexplained (and not pled) is what additional relief "far beyond" the purchase price would be available under their UCL, FAL, warranty, unjust enrichment, or MMWA claims (Counts II, III, IV, VIII, IX, X, and XI).

statutory and treble damages also does not avoid mootness. A request for an award of attorneys' fees and costs or "any and all other relief the court could grant" cannot create a live controversy where none exists on the merits. *Next Gen. Tech., Inc. v. Jaddou*, 2023 WL 2570643, at *7 n.4 (S.D.N.Y. March 18, 2023).

Plaintiffs' reliance on *Campbell-Ewald Co*. is misplaced. *Campbell* did not involve a product recall—it involved a rejected settlement offer for the full amount of plaintiff's claim made before the class certification stage, but long after litigation was filed. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 157 (2016). The other cases Plaintiffs cite are similarly inapposite. *See Adam v. Barone*, 41 F.4th 230, 235 n.4 (3d Cir. 2022) (declining to apply *Campbell*); *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) (discussing damages for lost time-value of money, a type of harm Plaintiffs do not allege here). Plaintiffs do not plausibly allege injuries beyond monies spent buying (or overpaying for) the Products. These damages are moot considering The Laundress's recall. Plaintiffs' claims for damages arising from The Laundress's Product packaging (Counts I, II, III, IV, VIII, IX, X, and XI) should be dismissed.

### C. Plaintiffs Fail to State Claims Under NY or CA Consumer Protection Statutes

#### 1. Plaintiffs do not plausibly allege an affirmative misrepresentation.

Plaintiffs abandon their sweeping attack on The Laundress's Product labels and ignore in their Opposition The Laundress's argument that they fail to state a claim based on its "biodegradable" or "allergen-free" representation. Their silence concedes the issue and is reason enough for the Court to dismiss their claims under NYGBL, FAL, and UCL to the extent they are based on The Laundress's "biodegradable" or "allergen-free" representations. *See generally* Pls.' Opp'n; *Thomas v. Atl. Express Corp.*, 2009 WL 856993, at *2 (S.D.N.Y. March 31, 2009) (claim was abandoned based on failure to respond to defendant's argument for dismissal).

Instead, Plaintiffs focus on the "nontoxic" representation appearing on The Laundress's Products' labels.[4] *See, e.g.*, Pls.' Opp'n at 4, 16, 17. But these claims too must be dismissed because Plaintiffs do not plausibly allege that The Laundress's "nontoxic" statement is false or misleading. *See* Mot. at 9–10. Plaintiffs offer in the Opposition—for the first time—five (5) ways in which a "reasonable consumer could interpret" the "non-toxic" representation. Notwithstanding that Plaintiffs cannot supplement their pleading through their Opposition,[5] the Complaint lacks any allegation that any Plaintiff purchased a Product containing (as opposed to having a *risk of* containing) bacteria and Plaintiffs do not allege what levels of bacteria would render the Products toxic (under any of Plaintiffs' newfound definitions of the term). *See* Pls.' Opp'n at 11–12. Without plausible allegations, as opposed to arguments in their Opposition, that the term "nontoxic" is false or misleading, Plaintiffs' claims (Counts I, IX, X, and XI) must be dismissed. *See, e.g.*, *Rugg v. Johnson & Johnson*, 2018 WL 3023493, at *2 (N.D. Cal. June 18, 2018).

### 2. Plaintiffs ignore The Laundress's knowledge *at the time* of their purchases.

The key to an omission-based claim under both NYGBL §§ 349/350 and California's UCL and FAL is an allegation that the defendant knew of the omitted material information **at the time of sale**. *See In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (NYGBL claims); *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *5 (N.D. Cal. Aug. 1, 2017) (UCL and FAL claims). Because Plaintiffs ignore this crucial timing requirement their omission-based claims (Counts I, IX, X, and XI) must be dismissed.

---

[4] To the extent Plaintiffs base their claims on The Laundress's marketing and social media campaigns, those claims must be dismissed. Plaintiffs do not plausibly allege in the Complaint a single instance of reliance on those campaigns. *See* Pls.' Opp'n at 11 n.10; Mot. at 8 n.5.
[5] *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss").

Rather than take up the relevant inquiry, in their Complaint Plaintiffs make, and repeat in their Opposition, generic allegations aimed at the manufacturing industry (not The Laundress). They argue that the "risks of bacterial contamination have been known and extensively studied in the manufacturing industry long before the contamination here" and that "all products containing water and organic/inorganic compounds . . . are exposed to microbial contamination." Compl. ¶¶ 53, 54. And Plaintiffs allege that decades of recalls in the United States and Europe affecting companies (other than The Laundress) in the sterile drug, cosmetic, and food manufacturing industries somehow put The Laundress on notice that its Products were at risk of containing *Burkholderia cepacian* complex, *Klebsiella aerogenes*, and *Pseudomonas*. Compl. ¶ 55.

Shifting from vague allegations about industries unrelated to The Laundress's Products, Plaintiffs point to the "timing of the December 2022 recall," the "breadth of [The Laundress's] recall and CPSC involvement," The Laundress's "recall stemming from ethylene oxide contamination,"[6] and that The Laundress has not yet resumed Product sales as evidence of The Laundress's knowledge of potential contamination. *See* Pls.' Opp'n at 14. But these allegations fall short on the ***timing***. The Laundress does not dispute that it issued a voluntary recall of its Products when it discovered the potential for contamination, or that its recall was done in connection with the CPSC. But Plaintiffs' allegations about The Laundress's recall or post-recall events do not support a plausible inference that The Laundress knew of a potential for bacterial contamination in its Products ***at the time*** Plaintiffs made their purchases. This is the critical inquiry, and Plaintiffs ignore it in their Opposition. *See* Pls.' Opp'n at 12–15.

---

[6] The Laundress's recall based upon the potential presence of ethylene oxide in a small subset of its products, its Fabric Conditioner products, does not underpin any cause of action raised by Plaintiffs in the Consolidated Complaint.

Though Rule 9 permits Plaintiffs to allege knowledge generally, those allegations must still be plausible. Here, Plaintiffs fail to plausibly allege The Laundress's knowledge of potential bacterial contamination at or before the time of their purchases. Plaintiffs' case law does not overcome this deficiency. Each case Plaintiffs cite involves plausible factual allegations permitting an inference of knowledge *at the time of sale*. For example, in *Big Heart Pet Brands*, the plaintiffs relied in part on allegations of incidents involving contamination from the defendant's supplier *before the sale* that should have raised red flags; in *General Motors*, knowledge was imputed via former employees and documents from *before the sale*; in *Tomassini*, the plaintiff provided dates that clearly established an inference of knowledge *before the plaintiff purchased* his vehicle; and in *Kowalsky*, the plaintiffs included statements from the defendants about testing that took place on the products *prior to release into the marketplace*. *See* Pls.' Opp'n at 14 (citing *In re Big Heart Pet Brands Litig.*, 2019 WL 8266869, at *20 (N.D. Cal. Oct. 4, 2019); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *20 (S.D.N.Y. July 15, 2016); *Tomassini v. FCA U.S. LLC*, 2015 WL 3868343, at *7 (N.D.N.Y. June 23, 2015); *Kowalsky v. Hewlett-Packard Co.*, 2011 WL 3501715, at *5 (N.D. Cal. Aug. 10, 2011)). Here, Plaintiffs do not plausibly allege any facts making this key temporal connection. Their omission-based claims must be dismissed.

### 3. Plaintiffs fail to allege that their transactions *occurred* in New York and thus cannot establish NYGBL standing.

NYGBL governs transactions that occur in New York. *See* Mot. at 13–14. In arguing for application of NYGBL to their Product purchases, Plaintiffs misstate the relevant inquiry—i.e., the location of their respective transactions—by focusing on The Laundress's alleged contacts with New York. But contacts with New York is not the test for statutory standing under NYGBL. The inquiry is the location of the allegedly deceptive transaction. *Fishon v. Peloton Interactive, Inc.*, 2021 WL 2914820, at *3–5 (S.D.N.Y. July 12, 2021).

6

It is Plaintiffs' burden to establish standing by alleging that the transactions giving rise to their claims *occurred* in New York, regardless of the Parties' respective locations. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) ("the appropriate test in this case is to focus on the location of the transaction . . . rather than on the residency of the parties"). Despite Plaintiffs' suggestion to the contrary, it is irrelevant to the NYGBL standing analysis where The Laundress keeps its books and records or where its recall took place. *See* Pls.' Opp'n at 15. Plaintiffs do not—because they cannot—cite any case supporting their argument that such factors are relevant to address the question of where a consumer transaction occurred. They are not. Plaintiffs must plead facts to give rise to a plausible allegation that the at-issue transaction *occurred* in New York. They fail to do so and their NYGBL claim (Count I) must be dismissed.

**D.     Plaintiffs Fail to State a Claim for Breach of Warranty**

Plaintiffs' breach-of-warranty claims (Counts II and III) must be dismissed.[7] First, with respect to the alleged express warranty that The Laundress's Products "did not contain bacteria," Plaintiffs fail to identify any instance in which The Laundress made such a representation. *See* Pls.' Opp'n at 17. Instead, Plaintiffs insist that a reasonable consumer would understand this promise to be implicit in The Laundress's representation that its Products are "nontoxic." *See id*. But *implicit* promises are not *express* warranties. *See, e.g.*, *BK Trucking Co. v. Paccar, Inc.*, 2016 WL 3566723, at *5 (D.N.J. June 30, 2016) ("To state a claim for breach of express warranty, a plaintiff must show: "(1) that [the defendant] made an affirmation, promise or description about the product"). Second, as to The Laundress's alleged express warranty that its Products are "nontoxic," Plaintiffs do not plausibly allege a breach of this warranty for the same reasons as their

---

[7] Plaintiffs incorrectly assert that The Laundress does not move to dismiss Plaintiffs Ostenfeld and Stilwill's implied-warranty claims. *See* Pls.' Opp'n at 2. The Laundress seeks dismissal of these claims as moot due to its offer of a full refund. *See* Mot. at 6; Section II.B *infra*.

7

failure to plead that the statement is an affirmative misrepresentation. *See* Section II.C.1 *infra*.

Turning to implied warranty, Plaintiffs' arguments about pre-suit notice and privity fare no better. As for pre-suit notice, Plaintiffs Geschwind and Stilwill provide no case law from the relevant jurisdictions (New York and Nebraska) to support their argument that providing notice several months after a lawsuit was filed can constitute pre-suit notice. The rule in those states clearly requires notice before the *initiation* of the lawsuit—anything less defeats the purpose behind the notice requirement. *See Langner v. Boston Sci. Corp.*, 492 F. Supp. 3d 925, 935–36 (D. Neb. 2020); *Cooper v. Anheuser-Busch LLC*, 553 F. Supp. 3d 83, 112 (S.D.N.Y. 2021). Finally, Plaintiff Murphy ignores that the California Supreme Court has made clear that the privity exception for reliance on labels or advertisements only applies to express warranties. *See Moran v. Edgewell Personal Care, LLC*, 2022 WL 3046906, at *6 (N.D. Cal. Aug. 2, 2022).

### E.     **Plaintiffs Fail to State Their Product-Defect Claims**

#### 1.     **Plaintiffs do not plausibly allege proximate cause.**

Plaintiffs' product-defect claims (Counts V, VI, and VII) should be dismissed because they do not plausibly allege proximate causation between The Laundress's alleged actions and Plaintiffs' injuries. *See* Mot. at 18–20.[8] Other than repeating the sparse factual allegations in their Complaint—that Plaintiffs suffered injuries sometime "after" using "contaminated Products"—Plaintiffs' Opposition fails to identify facts supporting an inference of causation, such as which Products injured them, or whether they purchased Products during the relevant recall period. *See* Pls.' Opp'n at 21; Mot. at 19–20. Plaintiffs' products-liability claims must be dismissed.

---

[8] Plaintiffs need discovery, they concede, to fill the "information gap" in their pleadings. *See* Pls.' Opp'n at 21–22. But the Court should not indulge Plaintiffs' overt request for a fishing expedition. Discovery is reserved for parties to develop facts in a lawsuit for which they have cognizably stated a claim, not to find out whether they have such a claim. *See Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004).

### 2. Plaintiffs' failure-to-warn claim must be dismissed.

Plaintiffs' failure-to-warn claim (Count VII) fails for similar reasons as their omission-based statutory claims, *see* Section II.C.2 *infra*—they have ignored the crucial timing requirement that triggers a duty to warn. Plaintiffs must allege knowledge at the time of manufacture or sale to state a duty to warn that could be breached. *See* Mot. at 20–21. Instead of rebutting The Laundress's arguments about timing, Plaintiffs ask the Court to engage in classic Monday-morning quarterbacking by concluding that The Laundress's decision to recall its Products and halt sales post-recall, *see* Pls.' Opp'n at 22, somehow means that The Laundress knew about the alleged contamination ***at the time*** the Products were manufactured. This inferential leap is unsupported by Plaintiffs' allegations of fact and their duty-to-warn claim must be dismissed.

### F. Plaintiffs are not entitled to equitable relief.

Based on The Laundress's purported conduct, Plaintiffs seek, among other things, "actual, statutory, and compensatory damages." Compl. ¶ 239(c). The availability of these legal remedies bars Plaintiffs' request for equitable relief. *See* Mot. at 23. And, as Plaintiffs correctly pointed out, because equity provides the *only* remedy for their UCL, FAL, and unjust enrichment claims,[9] each must be dismissed. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff must establish she "lacks an adequate remedy at law before securing equitable" relief); *Robinson v. J. M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at *6 (N.D. Cal. May 8, 2019) (claim for damages was adequate remedy at law and dismissing claims for equitable relief under the UCL and FAL); *Lightner v. Medtronic Inc.*, No. CV20-10942MWF(PDx), 2021 WL 4731351, at *3 (C.D. Cal. May 10, 2021) (finding an "unjust enrichment claim fails as a matter of

---

[9] *See* Pls.' Opp'n. at 23 (discussing "Plaintiffs request for restitution and disgorgement, which are provided by Plaintiffs' UCL, FAL, and unjust enrichment claims.").

9

law because the [complaint] does not allege the unavailability of an adequate legal remedy."); *Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 500 (W.D.N.Y. 2012) (dismissing unjust enrichment claim when other, statutory claim raised by plaintiff provided adequate remedy at law).

### G. Plaintiffs' Remaining Claims and Requests for Remedies Fail

Plaintiffs' remaining claims for violations of MMWA (Count IV) and unjust enrichment (Count VIII) and their request for the remedy of medical monitoring fail. First, the MMWA and unjust-enrichment claims are moot for the reasons discussed in Section II.B. But Plaintiffs in their Opposition fail to address or distinguish the 2022 jurisprudence that applies to Plaintiffs' MMWA claim and compels dismissal for failure to meet the 100-plaintiff threshold. *See* Mot. at 17. Second, although Plaintiffs in their Opposition repeat their allegations that they were "exposed" to bacteria, they still do not come close to satisfying the high bar required for a medical monitoring award in New Jersey or California. *See Theer v. Philip Carey Co.*, 628 A.2d 724, 732–33 (N.J. 1993) (requiring a distinctive risk of future injury); *Riva v. Pepsico*, 82 F. Supp. 3d 1015 (N.D. Cal. 2015) (applying a five-factor test including an analysis of the toxicity of chemicals and seriousness of disease, among others). And Plaintiff Geschwind provides little response to The Laundress's case law prohibiting medical-monitoring claims where there is no physical injury or property damage. She claims that she has sufficiently alleged a future risk of injury "due to the persistent nature of the bacteria," but provides the Court with no other details that would come close to the level of plausible, and does not rebut The Laundress's point that any of her potentially damaged property has already been thrown away. *See* Compl. ¶¶ 93, 94; Mot. at 25.

### III. CONCLUSION

For the foregoing reasons and as discussed in its motion, The Laundress respectfully requests that this Court grant its Motion to Dismiss.

Dated: July 3, 2023

Respectfully submitted,

*/s /Ronald Y. Rothstein*
Ronald Y. Rothstein

**WINSTON & STRAWN LLP**

Ronald Y. Rothstein
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Jared R. Kessler (*pro hac vice*)
200 S. Biscayne Blvd. Suite 2400
Miami, FL 33131
jrkessler@winston.com
Telephone: (305) 910-0654
Facsimile: (305) 910-0505

Lisa Coutu
200 Park Avenue
New York, NY 10166
lcoutu@winston.com
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

ATTORNEYS FOR DEFENDANT