IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ASHLEY SITES & GABRIEL YIBALE as | : | CIVIL ACTION |
| Administrators & Administrators | : | NO.: 1:22-cv-10667-JMF |
| *Ad Prosequendum* on behalf of the | : | |
| ESTATE OF ELLIANA DIEM YIBALE, | : | |
| | : | |
| Plaintiffs, | : | AMENDED COMPLAINT |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| UNILEVER UNITED STATES, INC., | : | |
| THE LAUNDRESS, LLC, and | : | |
| ABC CORP. #1-50 (fictitious names), | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **INTRODUCTION**

1. This case arises out of fatally defective laundry and household cleaning products, The Laundress products, which were marketed, sold, manufactured, and distributed by Defendants Unilever United States, Inc. and The Laundress, LLC (collectively, "Defendants") which proximately caused the death of Plaintiffs' minor child, Elliana.

2. The Laundress products marketed, sold, manufactured, and distributed by Defendants were at all relevant times contaminated with lethal bacteria which proximately caused the death of Plaintiffs' minor child, Elliana.

3. Plaintiffs bring this action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

**JURISDICTION**

4. Jurisdiction is conferred upon this Court by diversity under 28 U.S.C. § 1332 which provides original jurisdiction for Plaintiffs' claims as all parties are citizens of different states and the amount in controversy exceeds $75,000.

5. This Court has supplemental jurisdiction over Plaintiff's remaining state law claim pursuant to 28 U.S.C. § 1367 because the state claim forms part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because there is no district in which this action may otherwise be brought.

**PARTIES**

7. Plaintiff Ashley Sites is the surviving mother and next of kin of Elliana, a minor, who died intestate on November 27, 2021.

8. Plaintiff Gabriel Yibale is the surviving father and next of kin of Elliana, a minor, who died intestate on November 27, 2021.

9. At the time of Elliana's death, Plaintiffs and Elliana resided together in Roanoke, VA.

10. On March 1, 2023, Plaintiffs were appointed co-administrators and co-administrators *ad prosequendum* of Elliana's Estate by the Roanoke City Circuit Court.

11. Defendant Unilever United States, Inc. is a Delaware Corporation with its principal place of business in Englewood Cliffs, NJ ("Unilever").

12. Defendant Unilever is part of the Unilever Group, an international consumer goods company that is comprised of two parent companies, Unilever N.V. in Rotterdam, Netherlands and Unilever PLC in London, United Kingdom. The Unilever Group operates in the United States under Unilever United States, Inc.

13. Defendant The Laundress, LLC is a is a Delaware Corporation with its principal place of business in New York, NY ("The Laundress).

14. On or about January 28, 2019, Unilever acquired The Laundress for $100,000,000.

15. Defendant ABC Corp. #1-50 (fictitious names) are corporations, partnerships, sole proprietorships, or other business entities, however many in number, who designed, manufactured, tested, labeled, marketed, sold, supplied and/or distributed The Laundress products from 2019 to 2022.

## FACTS

I. **The Laundress Products and Defendants' Marketing and Distribution**

16. The Laundress was founded in 2004 and offered "a collection of fabric-specific products scented with sophisticated fragrances that extend the lifespan of clothing and eliminate the chemicals and cost of dry cleaning."

17. The Laundress portfolio consists of 85 "eco-friendly" laundry and household cleaning products, which include, but are not limited to, detergents, stain solutions, all-purposes bleach alternatives, and fabric conditioners.

18. The Laundress portfolio also includes a line of "just for baby" products which are marketed as "dermatologist tested" and "[p]erfect for baby clothing."

19. In January 2019, Unilever acquired The Laundress.

20. Since January 2019, Unilever has marketed, sold, manufactured, and distributed The Laundress products.

21. One of The Laundress's co-founders described its products as providing "a highly effective, non-toxic line of fabric care and home cleaning products."

3

22. Defendants market The Laundress products to consumers looking for non-toxic and eco-friendly alternatives to other cleaning brands.

23. The Laundress products are offered for sale online at TheLaundress.com, Amazon.com, and additional websites, as well as in stores at The Laundress, Bloomingdales, the Container Store, Saks Fifth Avenue, Target, Nordstrom, Jenni Kayne, Kith, Peruvian Connection, N.Peal, Brooklinen, and other major retailers nationwide.

**II.**     **Plaintiffs' Purchases of The Laundress Products & Elliana's Death**

24.  On January 25, 2016, Plaintiffs gave birth to a baby girl, Elliana, who was born with multiple illnesses and disabilities including but not limited to congenital microcephaly and autoimmune disorders.

25. Due to Elliana's compromised immune system and medical conditions, Plaintiffs meticulously researched brands and ingredient labels to ensure that she was protected from harmful germs, chemicals, and toxins.

26. Plaintiffs' careful research led them to discover The Laundress products which appeared to meet all of their needs as they were advertised as plant-based, toxin-free, and promised to deliver the same results as the more toxic alternatives.

27. Although the products were expensive, ranging from approximately $15 to $100 per product, Plaintiffs believed them to be worth the price for their daughter's safety and quality of life.

28. Plaintiffs purchased their first The Laundress product in December 2020 and were pleased with its effectiveness.

29. Thereafter, Plaintiffs regularly purchased The Laundress products from December 2019 through December 2021.

30. Plaintiffs purchased The Laundress products directly from The Laundress's website, as well as through other retailers.

31. The following are examples of some of The Laundress products that Plaintiffs purchased and regularly used in their household:

- Scented Vinegar

- Delicate Baby Wash

- Fabric Conditioner

- Whites Detergent

- Baby Fabric Conditioner

- Signature Detergent Aromatherapy

- Stain Solution

- Fabric Fresh

- Fabric Conditioner

- All Purpose Cleaning Concentrate

- Le Labo Santal Signature Detergent

- Sport Detergent

- All Purpose Bleach Alternative

- Aromatherapy Collaboration Deep Relax Detergent

- Baby Detergent & Fabric Conditioner Duo

- Classic Signature Detergent

- Artisan Detergent

- Seasonal Whites Duo

- Delicate Wash

32. Plaintiffs used The Laundress products to clean numerous surfaces and fabrics throughout their household including but not limited to bedding, blankets, pillows, clothing, bed frames, and dressers.

33. Plaintiffs also used The Laundress products to clean the surfaces of Elliana's medical equipment including but not limited to her portable suction machine, oxygen concentrator, CPAP, pulse oximeter, airway clearance vest system, and automatic cough assist.

34. Sometime after Plaintiffs began using The Laundress products, Elliana inexplicably developed rashes, eyelid infections/inflammation, pneumonia, ear infections, and was diagnosed with Blepharitis.

35. Elliana's decline was caused by *Pseudomonas* and *Klebsiella aerogenes* bacterial infections.

36. Elliana received intramuscular antibiotic shots, steroid injections, and special nebulized antibiotics to treat her bacterial infections; however, these treatments were ineffective.

37. Plaintiffs did not know the cause of Elliana's decline, but continued their practice of sanitizing everything in their household with The Laundress products.

38. In October 2021, Plaintiffs made the heart-wrenching decision to place Elliana on hospice care.

39. On November 27, 2021, Elliana, only five-years-old, tragically succumbed to her infection.

40. Plaintiffs subsequently learned that The Laundress products they believed were protecting Elliana from sickness and infection caused her bacterial infection and death.

**III.**    **The Recall**

41. On November 17, 2022, Defendants posted a "safety notice" on The Laundress's website and social media pages with the following message:

> This safety notice is to inform you to immediately stop using all The Laundress products in your possession. We have identified the potential presence of elevated levels of bacteria in some of our products that present a safety concern.
>
> Based on our investigation to date, we are not aware of any adverse health impacts related to this issue.
>
> Your safety and the quality of our products is our top priority. We are working closely with our suppliers to ensure that our products meet our standards and expectations.
>
> We apologize for this situation and appreciation your attention to this notice.
>
> We will communicate an update about the products impacted and how to obtain a reimbursement or replacement as soon as possible.
>
> The Laundress Team

42. However, Defendants failed to directly notify its customers who purchased The Laundress products through their website of this emergent discovery despite having their contact information.

43. A few weeks later, on December 1, 2022, Defendants recalled approximately 8 million The Laundress products that were contaminated with bacteria such as *Burkholderia cepacia* complex, *Klebsiella aerogenes*, and multiple different species of *Pseudomonas*.

44. The recalled The Laundress products were identified by lot codes.

45. The Laundress products that Plaintiffs purchased and used match the recalled lot codes.

46. Again, Defendants failed to directly notify its customers who purchased The Laundress products through their website of this recall despite having their contact information.

7

47. *Pseudomonas* are known to be highly toxic bacteria that can cause serious infections, severe tissue damage, pneumonia, septicemia, and even death.

48. *Pseudomonas* are known as a "superbug" due to their high mutation rate and antibiotic resistance characteristics.

49. *Pseudomonas* can survive on inanimate surfaces for months and can be transmitted through airborne exposure and skin contact.

50. *Pseudomonas* are especially dangerous and life-threatening to immunocompromised individuals, especially in the context of inhalation and skin ingestion.

51. *Klebsiella aerogenes* is an opportunistic bacterium that can infect the respiratory tract, urinary tract, and even the central nervous system.

52. *Klebsiella aerogenes* have antibiotic resistant characteristics and can be spread through airborne exposure and skin contact.

53. Defendants, on their recall website www.thelaundressrecall.com, expressly acknowledge that "[p]eople with weakened immune systems, external medical devices, and underlying lung conditions who are exposed to the bacteria fact a risk of serious infection that may require medical treatment."

54. Defendants had exclusive knowledge of The Laundress products' contamination and knew or should have known that their products purported to be "non-toxic" were the exact opposite.

55. Defendants knew or should have known that their targeted consumer base, including Plaintiffs, sought out its "non-toxic" products due to specific health-related concerns.

56. Defendants knew or should have known that by distributing their toxic products to consumers caring for immunocompromised individuals, such as Plaintiffs, fatal consequences would result which occurred in this case.

57. Defendants knew or should have known that consumers, such as Plaintiffs, would continuously use their products throughout their households, including but not limited to on their clothes, on their dishes, on their bedding, and on their external medical devices, increasing the likelihood that someone would come into close proximately and/or direct contact with the toxic bacteria.

58. Defendants' conduct as described above was malicious and egregious in that they intentionally concealed knowledge of toxins contained in their products from consumers, including Plaintiffs.

59. Defendants acted, as described above, in wanton and willful disregard of consumers' rights, including Elliana's, in that they had actual knowledge that a high degree of probability of harm could result to consumers who were immunocompromised, such as Elliana, when the "non-toxic" organic products they marketed were infected with lethally toxic bacteria.

60. Immunocompromised consumers, such as Elliana, were foreseeable consumers of The Laundress products in that they comprised Defendants' targeted consumer group.

61. Thus, Defendants' acts or omissions and reckless indifference to the consequences of their acts and omissions constitutes willful and wanton conduct.

## CAUSES OF ACTION

## COUNT I: PRODUCT LIABILITY – MANUFACTURING DEFECT

62. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

63. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

64. Between 2019 and 2022, Defendants designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed The Laundress household cleaning products, which were marketed as luxury, non-toxic cleaning products.

65. As described in more detail above, Plaintiffs purchased The Laundress household cleaning products, and used them for their intended purposes.

66. Unbeknownst to Plaintiffs, the manufacturing process used to manufacture The Laundress household cleaning products was defective in that it contaminated the products with fatal bacteria as described in more detail above, thus rendering the products defective, and unreasonably dangerous and hazardous.

67. The contaminated The Laundress products were then sold, supplied, and/or distributed to Plaintiffs by Defendants.

68. The defective condition during the manufacturing process existed when The Laundress products left the Defendants' possession.

69. Defendants are strictly liable to Plaintiffs for this manufacturing defect pursuant to New York common law.

70. Defendants are also liable for the negligent manufacturing defect pursuant to Virginia common law.

71. As a foreseeable direct and proximate result of the products being in a defective condition, unreasonably dangerous as described above, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT II: PRODUCT LIABILITY – DESIGN DEFECT

72. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

73. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

74. Between 2019 and 2022, Defendants designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed The Laundress household cleaning products, which were marketed as luxury, non-toxic cleaning products.

75. As described in more detail above, Plaintiffs purchased The Laundress household cleaning products, and used them for its intended purposes.

76. The Laundress products were unreasonably dangerous in design, in that they posed a potentially fatal health hazard to consumers, and were not reasonably fit, suitable, or safe for their intended purpose.

77. The Laundress products are defective in design in that they pose a greater likelihood of injury and are more dangerous than other available cleaning products.

78. If the design defects were known at the time of manufacture, a reasonable person would have concluded that the utility of The Laundress products as designed did not outweigh its serious risks.

79. The defective condition of The Laundress products renders them unreasonably dangerous and/or unsafe, and the product was in this defective condition as the time it left the possession and/or control of Defendants.

80. Defendants are strictly liable to Plaintiffs for this design defect pursuant to New York common law.

81. Defendants are also liable for the negligent design defect pursuant to Virginia common law.

82. As a foreseeable direct and proximate result of the products being in a defective condition, unreasonably dangerous as described above, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT III: PRODUCT LIABILITY – FAILURE TO WARN

83. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

84. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

85. Between 2019 and 2022, Defendants designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed The Laundress household cleaning products, which were marketed as luxury, non-toxic cleaning products.

86. As described in more detail above, Plaintiffs purchased The Laundress household cleaning products, and used them for its intended purposes.

87. Defendants failed to properly and adequately warn and instruct Plaintiffs as to all of the ingredients in The Laundress products as well as the potential hazardous and fatal risks and health consequences of using those products.

88. Defendants are strictly liable to Plaintiffs for this failure to warn pursuant to the New York common law.

89. Defendants are also liable for the negligent failure to warn pursuant to Virginia common law.

90. As a foreseeable direct and proximate result of the products being in a defective condition, unreasonably dangerous as described above, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT IV: NEGLIGENCE

91. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

92. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

93. Between 2019 and 2022, Defendants designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed The Laundress household cleaning products, which were marketed as luxury, non-toxic cleaning products.

94. As described in more detail above, Plaintiffs purchased The Laundress household cleaning products, and used them for its intended purposes.

95. Defendants had a duty to provide safe, non-toxic cleaning products to Plaintiffs as they expressly marketed.

96. Unbeknownst to Plaintiffs, Defendants breached that duty when it was negligent in the manufacturing and/or design of The Laundress household cleaning products and permitted the products to become contaminated with hazardous bacteria as described in more detail above.

97. As a foreseeable direct and proximate result of Defendants' negligence as described above, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT V: NEGLIGENT MISREPRESENTATION

98. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

99. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

100. Defendants had a duty to accurately and truthfully represent to consumers, including Plaintiffs, that The Laundress products were "non-toxic"; however, the representations made by

Defendants were false in that The Laundress products contained hazardous bacteria as described in more detail herein.

101. Defendants failed to exercise ordinary care in the representations concerning The Laundress Products while they were involved in their design, manufacturing process, testing, quality assurance, quality control, labeling, marketing, sales process, and/or supply and distribution since they negligently misrepresented the hazardous bacteria present in the products as described in more detail herein.

102. Defendants breached their duty in representing to consumers, including Plaintiffs, that The Laundress products were "non-toxic", when they in fact were just the opposite.

103. As a foreseeable, direct, and proximate result of the negligent misrepresentation of Defendants as set forth herein, Defendants knew, and had reason to know, that The Laundress products had been insufficiently tested, or had not been tested at all, and that they lacked adequate and accurate warnings, and that it created a high risk of fatal health hazards.

104. As a direct and proximate result of the negligent misrepresentations described above, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT VI: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

105. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

106. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

107. Defendants carelessly and negligently manufactured, designed, developed, tested, labeled, marketed, sold, and distributed The Laundress products, carelessly and negligently concealed the fatal and hazardous risks associated with The Laundress products, and carelessly and negligently misrepresented the quality, safety, and non-toxic characteristics of The Laundress products.

108. Plaintiffs were directly impacted by Defendants' carelessness and negligence, in that Plaintiffs have sustained, and will continue to sustain, severe emotional distress, as a result of their decision to purchase and use The Laundress products.

109. As a direct and proximate result of Defendants' negligence described above, Elliana suffered severe illness, from which she ultimately died. Plaintiffs directly witnessed the suffering of their daughter as a result of her exposure to those defective and toxic products and suffered emotional distress as a foreseeable, direct, and proximate result.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT VII: FRAUDULENT CONCEALMENT

110. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

111. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

112. Between 2019 and 2022, Defendants knew that The Laundress products were defective and unreasonably safe for its intended purposes.

113. Defendants fraudulently concealed from and/or failed to disclose to or warn consumers, including Plaintiffs, that The Laundress products were defective, unsafe, unfit for the purposes intended, and not of merchantable quality.

114. Defendants owed a duty to Plaintiffs to disclose and warn of the defective nature of The Laundress products, which they failed to do.

115. The facts concealed and/or not disclosed by Defendants to consumers, including Plaintiffs, were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use The Laundress products.

116. Defendants intentionally concealed and/or failed to disclose the true defective nature of The Laundress products so that consumers, including Plaintiffs, would continue to purchase those products.

117. Plaintiffs justifiably relied on, to their detriment, the concealed and/or non-disclosed facts as evidenced by their purchase and use of The Laundress products.

118. As a foreseeable, direct, and proximate cause of Defendants' fraudulent concealment, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT VIII: CONSUMER FRAUD

119. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

120. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

121. Between 2019 and 2022, Defendants designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed The Laundress household cleaning products, which were marketed as luxury, non-toxic cleaning products.

122. As described in more detail above, Plaintiffs purchased The Laundress products, and used them for its intended purposes.

123. Defendants knew or should have known that their products did not or would not conform to their representations and warranties because the product was defective as described herein.

124. Defendants concealed knowledge of the serious risks associated with the defective The Laundress products, concealed testing and research data, and concealed the fact that The Laundress products were defective.

125. Defendants' representations, actions, and conduct regarding The Laundress products were in or affecting commerce.

126. Defendants obtained money from Plaintiffs for The Laundress products under false pretenses since they advertised, marketed, and represented that the products were safe and "non-toxic."

127. Unfair or deceptive acts or practices include representing that goods have characteristics or ingredients or uses or benefits or qualities that they do not have; advertising goods with the intent not to sell them as advertised; and engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

128. Defendants had a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, manufacturing, development, testing, labeling, marketing, sale, supply and/or distribution of The Laundress products.

129. Had Defendants not engaged in the deceptive conduct described herein, Plaintiffs would not have purchased and/or paid for The Laundress products and would not have incurred related medical expenses and damages.

130. Defendants' actions and conduct as described herein constitute consumer fraud in violation of N.Y. Gen. Bus. Law § 349 and Va. Code Ann. § 59.1-196, *et seq.*

131. As a foreseeable, direct, and proximate result of Defendants' unfair and deceptive conduct described above, Elliana suffered severe illness, and died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT IX: BREACH OF EXPRESS WARRANTY

132. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

133. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

134. Between 2019 and 2022, Defendants designed, manufactured, tested, labeled, marketed, sold, supplied and/or distributed The Laundress products, which were marketed as luxury, non-toxic cleaning products.

135. As described in more detail above, Plaintiffs purchased The Laundress products, and used them for its intended purposes.

136. At all relevant times hereto, Defendants expressly warranted that The Laundress products were "non-toxic" and safe for use by consumers, that they were of merchantable quality, and that they were adequately tested and fit for their intended use.

137. Defendants breached those express warranties in that The Laundress products contained toxic bacteria and were not safe for use by consumers, were not of merchantable quality, and were not adequately tested or fit for their intended use.

138. Plaintiffs relied upon Defendants' express warranties when they purchased and used The Laundress products as intended.

139. At the time of making such express warranties, Defendants knew or should have known that The Laundress products did not conform to those express representations because The Laundress products were not safe and were contaminated with hazardous bacteria.

140. Defendants' conduct constitutes breach of express warranties under N.Y. UCC § 2-313 as well as Va. Code Ann. § 8.2-318, *et seq.*

141. As a foreseeable, direct, and proximate cause of the Defendants' conduct described above, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT X: BREACH OF IMPLIED WARRANTY

142. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

143. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

144. Between 2019 and 2022, Defendants designed, manufactured, tested, labeled, marketed, sold, supplied and/or distributed The Laundress products, which were marketed as luxury, non-toxic cleaning products.

145. As described in more detail above, Plaintiffs purchased The Laundress products, and used them for its intended purposes.

146. At all relevant times hereto, Defendants impliedly warranted that The Laundress products were safe for use by consumers, that they were of merchantable quality, and that they were adequately tested and fit for their intended use.

147. Defendants breached those implied warranties in that The Laundress products contained toxic bacteria and were not safe for use by consumers, were not of merchantable quality, and were not adequately tested or fit for their intended use.

148. Plaintiffs relied upon Defendants' implied warranties when they purchased and used The Laundress products as intended.

149. Defendants knew or should have known that The Laundress products did not conform to those implied warranties because The Laundress products were not safe and were contaminated with hazardous bacteria.

150. Defendants' conduct was a breach of the implied warranty of fitness for a particular purpose under N.Y. UCC § 2-314-15 and Va. Code Ann. § 8.2-318, *et seq.*

151. As a foreseeable, direct, and proximate cause of the Defendants' conduct described above, Elliana suffered severe illness, from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT XI: WRONGFUL DEATH

152. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

153. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

154. Plaintiffs' decedent, Elliana, left surviving as her heirs-at-law her mother, Ashley Sites, and her father, Gabriel Yibale.

155. This action has been commenced within two (2) years after the death of Elliana and is brought by virtue of the New York Wrongful Death Statute, N.Y. EPTL § 5-4.1, *et seq.*, and the Virginia Wrongful Death Act, VA Code Ann. § 8.01-24*, et. seq.*

156. As a foreseeable, direct, and proximate result of Defendants' conduct as set forth above, Plaintiffs' decedent suffered fatal injuries.

157. Said decedent, Elliana, leaves surviving her mother and father who have sustained pecuniary losses resulting from Elliana's severe injuries and illnesses, which lead to her death, including but not limited to significant medical and funeral expenses.

158. Plaintiffs, as co-administrators of the Estate of Elliana Diem Yibale, bring this action to recover all damages under the New York Wrongful Death Statute, N.Y. EPTL § 5-4.1, *et seq.*, and the Virginia Wrongful Death Act, VA Code Ann. § 8.01-24*, et. seq.*[1]

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

---

[1] Plaintiffs reserved the right to assert claims under the Grieving Families Act, NY State Assembly Bill A6698, upon its signing into law.

## COUNT XII: SURVIVORSHIP ACTION

159. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

160. Plaintiffs bring this cause of action under the laws of the State of New York and the laws of the Commonwealth of Virginia.

161. Pursuant to the New York Survivorship Statute, N.Y. EPTL § 11-3.3, *et seq* and VA Code Ann. § 8.01-25, Plaintiffs, as co-administrators of the Estate of Elliana Diem Yibale, are authorized to bring this action on behalf of the Estate, and on behalf of her heirs-at-law.

162. As a foreseeable, direct, and proximate result of the conduct of defendants, as hereinbefore set forth, decedent Elliana suffered conscious pain and suffering prior to her death as well as other injuries compensable under the laws of this State and/or the Commonwealth of Virginia.

WHEREFORE, Plaintiffs demand judgment against defendants, individually, jointly, severally and in the alternative, for damage, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## DAMAGES

163. Plaintiffs seek compensation for the following damages that resulted from the actions and inactions described herein:

a. Past and future mental anguish;

b. Past and future physical pain and suffering;

c. Medical expenses Plaintiffs have incurred;

d. Loss of earning capacity;

e. Costs of suit;

f.   Reasonable and necessary attorney's fees to the extent provided for under the law;

g.   Punitive damages; and

h.   Any and all other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs hereby demand trial by jury on all issues set forth herein.

Respectfully submitted,

**WILLIAMS CEDAR LLC**

/s/ Dylan T. Hastings
Dylan T. Hastings, Esquire
Attorney I.D. No. 166672016
One South Broad Street
Suite 1510
Philadelphia, PA 19107
Phone: 215-557-0099
Facsimile: 215-557-0673
dhastings@williamscedar.com
*Attorneys for Plaintiffs*

Dated: July 14, 2023