IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ASHLEY SITES & GABRIEL YIBALE as Administrators & Administrators *Ad Prosequendum* on behalf of the ESTATE OF ELLIANA DIEM YIBALE, | : : : : : | CIVIL ACTION NO.: 1:22-cv-10667-JMF |
| Plaintiffs, | : : | SECOND AMENDED COMPLAINT |
| v. | : : | JURY TRIAL DEMANDED |
| THE LAUNDRESS, LLC, and ABC CORP. #1-50 (fictitious names), | : : : | |
| Defendants. | : : | |

## INTRODUCTION

1. This case arises out of fatally defective laundry and household cleaning products marketed, sold, manufactured, and distributed by Defendant The Laundress, LLC and ABC Corp. #1-50 (collectively, "Defendants") which proximately caused the death of Plaintiffs' minor child, Elliana.

2. Defendant's products were at all relevant times contaminated with lethal bacteria which proximately caused the death of Plaintiffs' minor child, Elliana.

3. Plaintiffs bring this action under the laws of the Commonwealth of Virginia.

## JURISDICTION

4. Jurisdiction is conferred upon this Court by diversity under 28 U.S.C. § 1332 which provides original jurisdiction for Plaintiffs' claims as all parties are citizens of different states and the amount in controversy exceeds $75,000.

5. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state claim forms part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because there is no district in which this action may otherwise be brought.

## PARTIES

7. Plaintiff Ashley Sites is the surviving mother and next of kin of Elliana, a minor, who died intestate on November 27, 2021.

8. Plaintiff Gabriel Yibale is the surviving father and next of kin of Elliana, a minor, who died intestate on November 27, 2021.

9. At the time of Elliana's death, Plaintiffs and Elliana resided together in Roanoke, VA.

10. On March 1, 2023, Plaintiffs were appointed co-administrators and co-administrators *ad prosequendum* of Elliana's Estate by the Roanoke City Circuit Court.

11. Defendant The Laundress, LLC is a is a Delaware Corporation with its principal place of business in New York, NY ("Defendant" or "The Laundress").

12. Defendant ABC Corp. #1-50 (fictitious names) are corporations, partnerships, sole proprietorships, or other business entities, however many in number, who designed, manufactured, tested, labeled, marketed, sold, supplied and/or distributed The Laundress products from 2019 to 2022.

**FACTS**

I. **The Laundress Products and Defendant's Marketing and Distribution**

13. The Laundress was founded in 2004 and offered "a collection of fabric-specific products scented with sophisticated fragrances that extend the lifespan of clothing and eliminate the chemicals and cost of dry cleaning."

14. The Laundress portfolio consists of 85 "eco-friendly" laundry and household cleaning products, which include, but are not limited to, detergents, stain solutions, all-purposes bleach alternatives, and fabric conditioners.

15. The Laundress portfolio also includes a line of "just for baby" products which are marketed as "dermatologist tested" and "[p]erfect for baby clothing."

16. One of The Laundress's co-founders described its products as providing "a highly effective, non-toxic line of fabric care and home cleaning products."

17. The Laundress markets its products to consumers looking for "nontoxic," "green," and "eco clean" alternatives to other cleaning brands.

18. The Laundress products are offered for sale online at TheLaundress.com, Amazon.com, and additional websites, as well as in stores at The Laundress, Bloomingdales, the Container Store, Saks Fifth Avenue, Target, Nordstrom, Jenni Kayne, Kith, Peruvian Connection, N.Peal, Brooklinen, and other major retailers nationwide.

II. **Plaintiffs' Purchases of Defendant's Products & Elliana's Death**

19. On January 25, 2016, Plaintiffs gave birth to a baby girl, Elliana, who was born with multiple illnesses and disabilities including but not limited to congenital microcephaly and autoimmune disorders.

20. Due to Elliana's compromised immune system and medical conditions, Plaintiffs meticulously researched brands and ingredient labels to ensure that she was protected from harmful germs, chemicals, and toxins.

21. Plaintiffs' careful research led them to discover Defendant's products which appeared to meet all of their needs as they were advertised as plant-based, non-toxic, ecofriendly, and promised to deliver the same results as the more toxic alternatives.

22. Although the products were expensive, ranging from approximately $15 to $100 per product, Plaintiffs believed them to be worth the price for their daughter's safety and quality of life.

23. Plaintiffs first purchased Defendant's products in December 2020 and were pleased with their effectiveness.

24. Thereafter, Plaintiffs regularly purchased Defendant's products from December 2019 through December 2021.

25. Plaintiffs purchased Defendant's products directly from its website, as well as through other retailers.

26. The following are examples of some of Defendant's products that Plaintiffs purchased and regularly used in their household:

- Scented Vinegar
- Delicate Baby Wash
- Fabric Conditioner
- Whites Detergent
- Baby Fabric Conditioner
- Signature Detergent Aromatherapy

- Stain Solution

- Fabric Fresh

- Fabric Conditioner

- All Purpose Cleaning Concentrate

- Le Labo Santal Signature Detergent

- Sport Detergent

- All Purpose Bleach Alternative

- Aromatherapy Collaboration Deep Relax Detergent

- Baby Detergent & Fabric Conditioner Duo

- Classic Signature Detergent

- Artisan Detergent

- Seasonal Whites Duo

- Delicate Wash

27. Plaintiffs used Defendant's products to clean numerous surfaces and fabrics throughout their household including but not limited to bedding, blankets, pillows, clothing, bed frames, and dressers.

28. Plaintiffs also used Defendant's products to clean the surfaces of Elliana's medical equipment including but not limited to her portable suction machine, oxygen concentrator, CPAP, pulse oximeter, airway clearance vest system, and automatic cough assist.

29. Sometime after Plaintiffs began using Defendant's products, Elliana inexplicably developed rashes, eyelid infections/inflammation, pneumonia, ear infections, and was diagnosed with Blepharitis, an inflammation of the eyelid.

30. Elliana's decline was caused by strains of *Pseudomonas* and *Klebsiella aerogenes* bacterial infections.

31. Elliana received intramuscular antibiotic shots, steroid injections, and special nebulized antibiotics to treat her bacterial infections; however, these treatments were ineffective.

32. Plaintiffs did not know the source of Elliana's bacterial infections, but continued their practice of sanitizing everything in their household with Defendant's products.

33. In October 2021, Plaintiffs made the heart-wrenching decision to place Elliana in hospice care.

34. On November 27, 2021, Elliana, only five-years-old, tragically succumbed to her bacterial infections.

35. Plaintiffs subsequently learned that The Laundress products that they believed were protecting Elliana from sickness and infection caused her bacterial infections and death.

### III.   The Recall

36. On November 17, 2022, Defendant posted a "safety notice" on its website and social media pages with the following message:

> This safety notice is to inform you to immediately stop using all The Laundress products in your possession. We have identified the potential presence of elevated levels of bacteria in some of our products that present a safety concern.
>
> Based on our investigation to date, we are not aware of any adverse health impacts related to this issue.
>
> Your safety and the quality of our products is our top priority. We are working closely with our suppliers to ensure that our products meet our standards and expectations.
>
> We apologize for this situation and appreciation your attention to this notice.

> We will communicate an update about the products impacted and how to obtain a reimbursement or replacement as soon as possible.
>
> The Laundress Team

37. However, Defendant failed to directly notify its customers who purchased its products through its website of this emergent discovery despite having their contact information. Further, Defendant did not immediately issue a recall of its products, but continued to introduce them into the stream of commerce despite knowing that they were contaminated with toxic, and potentially lethal, bacteria.

38. A few weeks later, on December 1, 2022, Defendant recalled approximately 8 million of its products that were contaminated with bacteria such as *Burkholderia cepacia* complex, *Klebsiella aerogenes*, and various species of *Pseudomonas*.

39. These recalled products were identified by lot codes. *See* https://www.cpsc.gov/Recalls/2023/The-Laundress-Recalls-Laundry-Detergent-and-Household-Cleaning-Products-Due-to-Risk-of-Exposure-to-Bacteria.

40. The Laundress products that Plaintiffs purchased and used match the recalled lot codes.

41. Still, Defendant failed to directly notify its customers who purchased its products through their website of this recall despite having their contact information.

42. *Pseudomonas* are known to be highly toxic bacteria that can cause serious infections, severe tissue damage, pneumonia, septicemia, and even death.

43. *Pseudomonas* are known as a "superbug" due to their high mutation rate and antibiotic resistance characteristics.

44. *Pseudomonas* can survive on inanimate surfaces for months and can be transmitted through airborne exposure and skin contact.

7

45. *Pseudomonas* are especially dangerous and life-threatening to immunocompromised individuals, especially in the context of inhalation and skin ingestion.

46. *Klebsiella aerogenes* is an opportunistic bacterium that can infect the respiratory tract, urinary tract, and even the central nervous system.

47. *Klebsiella aerogenes* have antibiotic resistant characteristics and can be spread through airborne exposure and skin contact.

48. Defendant, on its recall website, www.thelaundressrecall.com, expressly acknowledge that "[p]eople with weakened immune systems, external medical devices, and underlying lung conditions who are exposed to the bacteria fact a risk of serious infection that may require medical treatment."

49. Defendant had exclusive knowledge of its products' contamination and knew or had reason to know that their products purported to be "non-toxic" were the exact opposite.

50. Defendant knew or had reason to know that its targeted consumer base, including Plaintiffs, sought out its "non-toxic" products due to specific health-related concerns.

51. Defendant knew or had reason to know that by distributing its toxic products to consumers caring for immunocompromised individuals, such as Plaintiffs, that fatal consequences would result which occurred in this case.

52. Defendant knew or had reason to know that consumers, such as Plaintiffs, would continuously use its products throughout their households, including but not limited to on their clothes, on their dishes, on their bedding, and on their external medical devices, increasing the likelihood that someone would come into close proximately and/or direct contact with the toxic bacteria.

53. Defendant's conduct as described above was malicious and egregious in that it intentionally concealed knowledge of toxins contained in its products from consumers, including Plaintiffs.

54. Defendant acted, as described above, in wanton and willful disregard of consumers' rights, including Elliana's, in that it had actual knowledge that a high degree of probability of harm could result to consumers who were immunocompromised, such as Elliana, when the "non-toxic" organic products that it marketed were contaminated with lethally toxic bacteria.

55. Immunocompromised consumers, such as Elliana, were foreseeable consumers of Defendant's products in that they comprised Defendant's targeted consumer group.

56. Thus, Defendant's acts or omissions and reckless indifference to the consequences of their acts and omissions constitutes willful and wanton conduct.

## CAUSES OF ACTION

## COUNT I: PRODUCT LIABILITY – MANUFACTURING DEFECT

57. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

58. Plaintiffs bring this cause of action under the laws of the Commonwealth of Virginia.

59. Between 2019 and 2022, Defendant designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed its household cleaning products, which were marketed as luxury, but more importantly, non-toxic cleaning products.

60. As described in more detail above, Plaintiffs purchased Defendant's household cleaning products, and used them for their intended purposes.

61. Unbeknownst to Plaintiffs, Defendant's manufacturing process used to manufacture its household cleaning products was defective in that it contaminated or allowed for the contamination

of the products with fatal bacteria as described in more detail above, thus rendering the products defective, and unreasonably dangerous and hazardous.

62. Defendant's contaminated products were then sold, supplied, and/or distributed to Plaintiffs by Defendant. The defective condition during the manufacturing process existed when Defendant's products left its possession and were placed into the stream of commerce.

63. The contamination of the product with potentially lethal toxic bacteria was due to the Defendant's failure to manufacture its products in accordance with good manufacturing processes and/or a failure of Defendant to have in place or practice adequate quality assurance (QA) processes to discover and/or prevent and/or correct defects in the manufactured products before releasing them into the stream of commerce where they would foreseeably be used by consumers like Plaintiffs.

64. Defendant is liable for the negligent manufacturing defect pursuant to Virginia common law.

65. As a foreseeable direct and proximate result of Defendant's products being in a defective condition, unreasonably dangerous as described above, Elliana suffered severe illness, from which she ultimately died and otherwise sustained damages compensable under the laws of the Commonwealth of Virginia.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## **COUNT II: PRODUCT LIABILITY – DESIGN DEFECT**

66. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

67. Plaintiffs bring this cause of action under the laws of the of the Commonwealth of Virginia.

68. Between 2019 and 2022, Defendant designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed its household cleaning products, which were marketed as luxury, and more importantly, non-toxic cleaning products.

69. As described in more detail above, Plaintiffs purchased Defendant's household cleaning products, and used them for their intended purposes.

70. Defendant's products were unreasonably dangerous in design, in that they posed a potentially fatal health hazard to consumers, and were not reasonably fit, suitable, or safe for their intended purpose.

71. The design of Defendant's products was defective due to, among other things, the failure to conduct an adequate hazard analysis to identify and correct for foreseeable risks, including but not limited to, potential contamination of the product in the manufacturing process which could evade detection and allow for the product to enter the stream of commerce in a defective and dangerous condition.

72. Defendant's products are defective in design in that they pose a greater likelihood of injury and are more dangerous than other available household cleaning products.

73. If the design defects were known at the time of manufacture, a reasonable person would have concluded that the utility of Defendant's products as designed did not outweigh its serious risks.

74. The defective condition of Defendant's products render them unreasonably dangerous and/or unsafe, and the product was in this defective condition as the time it left the possession and/or control of Defendant.

75. Defendant is also liable for the negligent design defect pursuant to Virginia common law.

76. As a foreseeable direct and proximate result of Defendant's products being in a defective condition, unreasonably dangerous as described above, Elliana suffered severe illness, from which she ultimately died and otherwise sustained damages compensable under the laws of the Commonwealth of Virginia.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

### **COUNT III: PRODUCT LIABILITY – FAILURE TO WARN**

77. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

78. Plaintiffs bring this cause of action under the laws of the Commonwealth of Virginia.

79. Between 2019 and 2022, Defendant designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed its household cleaning products, which were marketed as luxury, non-toxic cleaning products.

80. As described in more detail above, Plaintiffs purchased Defendant's household cleaning products, and used them for its intended purposes.

81. Defendant failed to properly and adequately warn and instruct Plaintiffs as to all of the ingredients in its products as well as the potential hazardous and fatal risks and health

consequences of using those products particularly when contaminated before being released into the stream of commerce.

82. Defendant knew, or had reason to know, that its products were contaminated with toxic, and potentially lethal, bacteria before being released into the stream of commerce but failed to warn consumers of the dangers of the use of the product in a contaminated and defective condition.

83. The first notice that Defendant provided to the consuming public about the contamination of its products with toxic, and potentially lethal, bacteria was its announcement of a product recall in December 2022.

84. Defendant knew, or had reason to know, of the existence of the contamination of its products with the potential to harm foreseeable consumers before it issued the recall but failed to warn consumers of the hazard and continued to market, distribute and sell contaminated product in a defective and dangerous condition without adequate warnings to consumers.

85. Defendant is liable for the negligent failure to warn pursuant to Virginia common law.

86. As a foreseeable direct and proximate result of Defendant's products being in a defective condition, unreasonably dangerous as described above, Elliana suffered severe illness, from which she ultimately died and otherwise sustained damages compensable under the laws of the Commonwealth of Virginia.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

**COUNT IV: CONSUMER FRAUD**

87. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

88. Plaintiffs bring this cause of action under the laws of the Commonwealth of Virginia.

89. Between 2019 and 2022, Defendant designed, manufactured, developed, tested, labeled, marketed, sold, supplied and/or distributed its household cleaning products, which were marketed as luxury, non-toxic cleaning products.

90. As described in more detail above, Plaintiffs purchased Defendant's products, and used them for its intended purposes.

91. Defendant knew or had reason to know that its products did not or would not conform to their representations and warranties because the product was defective as described herein.

92. Defendant concealed knowledge of the serious risks associated with its defective products, concealed testing and research data, and concealed the fact that its products were defective.

93. Defendant's representations, actions, and conduct regarding its products were in or affecting commerce.

94. Defendant obtained money from Plaintiffs for its products under false pretenses since it advertised, marketed, and represented that its products were safe and "non-toxic."

95. Unfair or deceptive acts or practices include representing that goods have characteristics or ingredients or uses or benefits or qualities that they do not have; advertising goods with the intent not to sell them as advertised; and engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

96. The Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.* provides, in pertinent part that it is unlawful for a supplier in connection with a consumer transaction to, among other things "[m]isrepresent[] that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" or [m]isrpresent[] that goods or services are of a particular standard, quality, grade, style, model." Va. Code Ann. § 1.59-200A.5, 6.

97. Defendant had a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, manufacturing, development, testing, labeling, marketing, sale, supply and/or distribution of its household products as hereinbefore set forth.

98. Had Defendant not engaged in the deceptive conduct described herein, Plaintiffs would not have purchased and/or paid for its products and would not have incurred related medical expenses and damages.

99. Defendant's actions and conduct as described herein constitute consumer fraud in violation of Va. Code Ann. § 59.1-196, *et seq.*

100. As a foreseeable, direct, and proximate result of Defendant's unfair and deceptive conduct in violation of the Virginia Consumer Protection act, as described above, Elliana suffered severe illness, and died.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, interest, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT V: BREACH OF EXPRESS WARRANTY

101. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

102. Plaintiffs bring this cause of action under the laws of the Commonwealth of Virginia.

103. Between 2019 and 2022, Defendant designed, manufactured, tested, labeled, marketed, sold, supplied and/or distributed its products, which were marketed as luxury, non-toxic household cleaning products.

104. As described in more detail above, Plaintiffs purchased Defendant's products, and used them for their intended purposes.

105. At all relevant times hereto, Defendant expressly warranted that its products were "non-toxic" and safe for use by consumers, that they were of merchantable quality, and that they were adequately tested and fit for their intended use.

106. Defendant breached those express warranties in that its products contained toxic bacteria and were not safe for use by consumers, were not of merchantable quality, and were not adequately tested or fit for their intended use.

107. Plaintiffs relied upon Defendant's express warranties when they purchased and used its products as intended.

108. At the time of making such express warranties, Defendant knew or should have known that its products did not conform to those express representations because its products were not safe and were contaminated with hazardous bacteria.

109. Defendant's conduct constitutes breach of express warranties under Va. Code Ann. § 8.2-318, *et seq.*

110. As a foreseeable, direct, and proximate cause of the Defendant's conduct described above Elliana suffered severe illness from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

### COUNT VI: BREACH OF IMPLIED WARRANTY

111. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

112. Plaintiffs bring this cause of action under the laws of the Commonwealth of Virginia.

113. Between 2019 and 2022, Defendant designed, manufactured, tested, labeled, marketed, sold, supplied and/or distributed its products, which were marketed as luxury, non-toxic household cleaning products.

114. As described in more detail above, Plaintiffs purchased Defendant's products, and used them for their intended purposes.

115. At all relevant times hereto, Defendant impliedly warranted that its products were safe for use by consumers, that they were of merchantable quality, and that they were adequately tested and fit for their intended use.

116. Defendant breached those implied warranties in that its products contained toxic bacteria and were not safe for use by consumers, were not of merchantable quality, and were not adequately tested or fit for their intended use.

117. Plaintiffs relied upon Defendant's implied warranties when they purchased and used Defendant's products as intended.

118. Defendant knew or should have known that its products did not conform to those implied warranties because its products were not safe and were contaminated with hazardous bacteria.

119. Defendant's conduct was a breach of the implied warranty of fitness for a particular purpose under Va. Code Ann. § 8.2-318, *et seq*.

120. As a foreseeable, direct, and proximate cause of Defendant's conduct described above Elliana suffered severe illness from which she ultimately died.

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## COUNT VII: WRONGFUL DEATH

121. Plaintiffs repeat and reallege each and every paragraph of this Complaint as if fully set forth herein.

122. Plaintiffs bring this cause of action under the laws of the Commonwealth of Virginia.

123. Plaintiffs' decedent, Elliana, left surviving as her heirs-at-law her mother, Ashley Sites, and her father, Gabriel Yibale.

124. This action has been commenced within two (2) years after the death of Elliana and is brought by virtue of the Virginia Wrongful Death Act, VA Code Ann. § 8.01-24*, et. seq*.

125. As a foreseeable, direct, and proximate result of Defendant's conduct as set forth above, Plaintiffs' decedent suffered fatal injuries.

126. Said decedent, Elliana, leaves surviving her mother and father who have sustained pecuniary losses resulting from Elliana's severe injuries and illnesses, which lead to her death, including but not limited to significant medical and funeral expenses as well as other damages compensable under the law of the Commonwealth of Virginia.

127. Plaintiffs, as co-administrators of the Estate of Elliana Diem Yibale, bring this action to recover all damages under the Virginia Wrongful Death Act, Va. Code Ann. § 8.01-24, *et. seq.*

WHEREFORE, Plaintiffs demand judgment against Defendant for damages, interest, attorney's fees, costs, and such other relief this Court deems equitable and just, plus costs of suit.

## **DAMAGES**

128. Plaintiffs seek compensation for the following damages that resulted from the actions and inactions described herein:

   a. Past and future mental anguish;

   b. Past and future physical pain and suffering;

   c. Medical expenses Plaintiffs have incurred;

   d. Loss of earning capacity;

   e. Costs of suit;

   f. Reasonable and necessary attorney's fees to the extent provided for under the law;

   g. Punitive damages; and

   h. Any and all other relief this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiffs hereby demand trial by jury on all issues set forth herein.

                                                Respectfully submitted,

                                                **WILLIAMS CEDAR LLC**

                                                /s/ Dylan T. Hastings
                                                Dylan T. Hastings, Esquire
                                                Attorney I.D. No. 166672016
                                                One South Broad Street
                                                Suite 1510
                                                Philadelphia, PA 19107
                                                Phone: 215-557-0099
                                                Facsimile: 215-557-0673
                                                dhastings@williamscedar.com
                                                *Attorneys for Plaintiffs*

Dated: August 25, 2023