# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
          :
ASHLEY SITES & GABRIEL YIBALE as   :   Civil Action No. 1:22-CV-10667-JMF
Administrators & Administrators *Ad*   :
*Prosequendum* on behalf of the ESTATE OF  :
ELLIANA DIEM YIBALE,         :
          :   HONORABLE JESSE M. FURMAN
       Plaintiffs,   :
          :
    v.        :
          :
THE LAUNDRESS, LLC, and ABC CORP. #1– :
50 (fictitious names),      :
       Defendants.
———————————————————— x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

**WINSTON & STRAWN LLP**

Ronald Y. Rothstein
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Jared R. Kessler (*pro hac vice*)
200 S. Biscayne Blvd.
Suite 2400
Miami, FL 33131
jrkessler@winston.com
Telephone: (305) 910-0654
Facsimile: (305) 910-0505

Lisa M. Coutu
200 Park Avenue
New York, NY 10166
lcoutu@winston.com
Telephone: (212) 294-6639
Facsimile: (212) 294-4700

ATTORNEYS FOR DEFENDANT THE
LAUNDRESS, LLC

## <u>TABLE OF CONTENTS</u>

**PAGE**

I.      **INTRODUCTION**.................................................................................................................. **1**

II.     **BACKGROUND** ................................................................................................................. **3**

III.    **LEGAL STANDARD** ........................................................................................................ **4**

     A.      Rule 12(b)(6) ..................................................................................................... 4

IV.    **ARGUMENT** ...................................................................................................................... **5**

     A.      Plaintiffs' Claims Fail to Plausibly Plead Proximate Cause .................................. 5

     B.      Plaintiffs' Product Liability Claims Should Be Dismissed..................................... 6

         1.      Plaintiffs' Design-Defect Claim Fails............................................................ 7

         2.      Plaintiffs' Failure-to-Warn Claim Fails ......................................................... 8

     C.      Plaintiffs' Consumer-Fraud Claim Fails Under Rule 9(b) and Should Be
             Dismissed ........................................................................................................... 9

         1.      Plaintiffs Fail to Plead with Particularity the Alleged Fraudulent
                 Statements ................................................................................................ 9

         2.      Plaintiffs Fail to Plead Intent .................................................................... 10

         3.      There Was No Duty to Disclose ................................................................. 11

     D.      Plaintiffs' Warranty Claims Fail ....................................................................... 12

         1.      Plaintiffs' Express-Warranty Claim Should Be Dismissed ...................... 12

         2.      Plaintiffs' Implied-Warranty Claims Should Be Dismissed..................... 13

     E.      Plaintiffs' Wrongful-Death Claims Must Be Dismissed ..................................... 15

     V.      Punitive Damages Are Inadequately Pleaded ....................................................... 15

VI.    **CONCLUSION** ............................................................................................................. **17**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*56th St. Investors, LLC v. Worthington Cylinders Miss., LLC*,
  2014 WL 1685922 (E.D. Va. Apr. 16, 2014) .......................................................................22

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ..............................................................................................15, 16

*Adams v. NaphCare, Inc.*,
  No. 2:16-CV-229, 2016 WL 10455885 (E.D. Va. Dec. 19, 2016), *report and
  recommendation adopted*, 232 F. Supp. 3d 866 (E.D. Va. 2017)...........................................21

*Allen v. FCA US LLC*,
  No. 6:17-CV-00007, 2017 WL 1957068 (W.D. Va. May 10, 2017)......................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................5

*Baker v. Elam*,
  883 F. Supp. 2d 576 (E.D. Va. 2012) ...................................................................................13

*Ball v. Takeda Pharms. Am., Inc.*,
  963 F. Supp. 2d 497 (E.D. Va. 2013) .....................................................................................9

*Bank of Montreal v. Signet Bank*,
  193 F.3d 818 (4th Cir. 1999) ...........................................................................................16, 17

*Bayliner Marine Corp. v. Crow*,
  257 Va. 121 (1999) ...............................................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................5

*BHR Recovery Cmtys., Inc. v. Top Seek, LLC*,
  355 F. Supp. 3d 416 (E.D. Va. 2018) ...................................................................................14

*Bly v. Otis Elevator Co.*,
  713 F.2d 1040 (4th Cir. 1983) ..............................................................................................19

*Boyle v. United Techs. Corp.*,
  792 F.2d 413 (4th Cir. 1986) ..................................................................................................7

*CitiSculpt, LLC v. Advanced Com. Credit Int'l (ACI) Ltd.*,
  No. 6:17-CV-69-BHH, 2017 WL 660833 (D.S.C. Feb. 17, 2017).........................................13

*Collier v. Rice*,
   356 S.E.2d 845 (Va. 1987)....................................................................................................17

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)....................................................................................................1

*Dodson v. C.R. Bard, Inc.*,
   No. 3:20CV596 (DJN), 2020 WL 7647631 (E.D. Va. Dec. 23, 2020)....................................9

*El-Meswari v. Wash. Gas Light Co.*,
   785 F.2d 483 (4th Cir. 1986) ..........................................................................................13, 14

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*,
   375 F.3d 168 (2d Cir. 2004).......................................................................................14, 15, 16

*Evans v. NACCO Materials Handling Grp., Inc.*,
   295 Va. 235 (2018) .........................................................................................................9, 19

*Farish for Farish v. Courion Indus. Inc.*,
   754 F.2d 1111 (4th Cir. 1985) ...............................................................................................19

*Farley v. Bank of Am. N.A.*,
   No. 3:14-CV-568, 2015 WL 3651165 (E.D. Va. June 11, 2015), *aff'd*, 615 F.
   App'x 804 (4th Cir. 2015) ...............................................................................................16, 17

*Featherall v. Firestone Tire & Rubber Co.*,
   219 Va. 949 (1979) .........................................................................................................10, 19

*Fields v. Jobar Int'l, Inc.*,
   2014 WL 1513289 (E.D. Va. Apr. 16, 2014) ............................................................9, 10, 11

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) .............................................................................................6

*Hartwell v. Danek Med., Inc.*,
   47 F. Supp. 2d 703 (W.D. Va. 1999) ......................................................................................7

*Higgins v. Forest Labs*,
   48 F. Supp.3d 878 (W.D. Va. 2014) ......................................................................................19

*Hitachi Credit Am. Corp. v. Signet Bank*,
   166 F.3d 614 (4th Cir. 1999) .................................................................................................17

*Hughes v. Moore*,
   214 Va. 27 (1973) ..................................................................................................................13

*Johnson v. Flowers Indus., Inc.*,
   814 F.2d 978 (4th Cir. 1987) ...................................................................................................6

*Johnson v. Priceline.com, Inc.*,
　711 F.3d 271 (2d Cir. 2013)........................................................................................5

*JTH Tax, LLC v. Shahabuddin*,
　477 F.Supp.3d 477 (E.D. Va. 2020) .........................................................................22

*Keffer v. H.K. Porter Co.*,
　872 F.2d 60 (4th Cir. 1989) .......................................................................................6

*Knapp v. Zoetis Inc.*,
　No. 3:20CV191, 2022 WL 989015 (E.D. Va. Mar. 31, 2022) ..................................9

*Logan v. Montgomery Ward & Co.*,
　216 Va. 425 (1975) .....................................................................................................7

*Mark Andrew of Palm Beaches, Ltd. v. CMAC Comm. Mortg. Corp.*,
　265 F. Supp. 2d 366 (S.D.N.Y. 2003).........................................................................5

*Miller v. United States*,
　932 F.2d 301 (4th Cir. 1991) ....................................................................................21

*Morgen Indus., Inc. v. Vaughan*,
　252 Va. 60 (Va. 1996)..........................................................................................12, 19

*Morris v. Taylor Commc'ns Secure & Customer Sols., Inc.*,
　513 F. Supp. 3d 694 (W.D. Va. 2021) .....................................................................14

*Norfolk Coating Servs., LLC v. Sherwin-Williams Co.*,
　No. 2:14CV188, 2014 WL 5860533 (E.D. Va. Nov. 12, 2014) ...............................20

*Owens v. Bourns, Inc.*,
　766 F.2d 145 (4th Cir. 1985) .....................................................................................7

*Owens-Corning Fiberglas Corp. v. Watson*,
　243 Va. 128 (1992) ..............................................................................................10, 11

*Parkman v. Elam*,
　No. 3:08-CV-690, 2009 WL 736067 (E.D. Va. Mar. 17, 2009).............................22

*Porter v. DePuy Orthopaedics, Inc.*,
　No. 3:19CV007 (REP), 2019 WL 3979656 (E.D. Va. Aug. 6, 2019) .....................20

*Powell v. Diehl Woodworking Mach., Inc.*,
　198 F. Supp. 3d 628 (E.D. Va. 2016) ...................................................................9, 12

*Rash v. Stryker Corp.*,
　589 F. Supp. 2d 733 (W.D. Va. 2008) .....................................................................14

iv

*Sanyal v. Toyota Motor N. Am., Inc.*,
   2015 WL 3650725 (E.D. Va. 2015)..................................................................7

*Shara v. Maine-Endwell Cent. Sch. Dist.*,
   46 F. 4th 77 (2d Cir. 2022) ...............................................................................8

*Sisson v. Piedmont Reg'l Jail Auth.*,
   No. 3:19-CV-602-HEH, 2020 WL 1307858 (E.D. Va. Mar. 19, 2020) ................21

*Smith v. Town of S. Hill*,
   611 F. Supp. 3d 148 (E.D. Va. 2020) ...........................................................20, 21

*Snell v. Reid*,
   No. 3:21-CV-24, 2022 WL 2812056 (W.D. Va. July 18, 2022) ........................15

*Sutherlin v. Lowe's Home Ctrs., LLC*,
   No. 3:14-CV-368, 2014 WL 7345893 (E.D. Va. Dec. 23, 2014) ......................12

*Torkie–Tork v. Wyeth*,
   757 F. Supp. 2d 567 (E.D. Va. 2010) ..............................................................12

*United States v. Bestfoods*,
   524 U.S. 51 (1998)............................................................................................6

*Valley Proteins, Inc. v. Mid-South Steam Boiler & Eng'g Co.*,
   No. 2:17cv19, 2017 WL 11507175 (E.D. Va. 2017)........................................12

*Winkler v. Medtronic, Inc.*,
   No. PX 18-865, 2018 WL 6271055 (D. Md. Nov. 29, 2018)............................21

*Youngman v. Robert Bosch LLC*,
   923 F. Supp. 2d 411 (E.D.N.Y. 2013) ..............................................................5

**Statutes**

Va. Ann. Code § 8.2-313 ...............................................................................17, 18

Va. Ann. Code § 8.2-313(2)..................................................................................18

Va. Ann. Code § 8.2-318 ......................................................................................17

Virginia Consumer Protection Act........................................................................14

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................14, 15, 23

Fed. R. Civ. P. 12(b)(6).....................................................................................5, 23

The Laundress, Safety Notice and Recall (Dec. 1, 2022),
    https://www.thelaundressrecall.com/.................................................................................1, 6, 8

Restatement (Second) of Torts § 12, cmt. a...................................................................................11

## I.    INTRODUCTION

This is Plaintiffs' third bite at the apple. Although their Second Amended Complaint (the "Complaint" or "SAC") drops five causes of action—impliedly conceding they were meritless—the claims that remain must also be dismissed.

Plaintiffs' lawsuit comes on the heels of a Safety Notice and voluntary recall by The Laundress LLC ("The Laundress"), prompted by the discovery that a portion of its cleaning products (the "Products") were potentially contaminated with *Burkholderia cepacia* complex, *Klebsiella aerogenes*, and species of *Pseudomonas* (the "Bacteria"). Many of the Bacteria "are environmental organisms found widely in soil [and] water;" "some may also be found in humans."[1] The Laundress's Safety Notice and recall were coordinated with the Consumer Product Safety Commission ("CPSC") and relate to Products manufactured between January 2021 and September 2022. The Laundress advised that Products with specific lot calls were subject to the recall, advised all purchasers to "stop using the recalled products," and offered a full refund.

Plaintiffs allege that their daughter, who was born with multiple illnesses and disabilities "including but not limited to" congenital microcephaly and autoimmune disorders, suffered physical injuries and ultimately passed away "sometime after" using the Products. Yet Plaintiffs do not allege which Products they bought were actually subject to the recall or when they bought them. Nor do they allege how or when they used those Products, or facts from which it can be inferred that they caused the purported injuries. Rather, Plaintiffs allege that they used nineteen

---

[1] https://www.thelaundressrecall.com/. The Court may consider The Laundress's Safety Notice and recall because Plaintiffs have incorporated by reference those documents in the Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

The Laundress Products, some of which are not subject to the recall, at some point starting either in December 2019 or a year later, in December 2020 (either of which would include products outside the recall) and continued to use the Products, at an unknown frequency, through December 2021. *See* Second Amended Complaint ("SAC") ¶¶ 23, 24, 26. They allege, without specifics, that at some point after they began using The Laundress products, their daughter developed various physical ailments and ultimately died as a result of these injuries on November 27, 2021. *See* SAC ¶¶ 19, 29–30, 34.

The death of Plaintiffs' daughter is undoubtedly a tragedy. But to draw a plausible connection between her death, when she was already very ill, and Products that may have contained "environmental organisms found widely" in nature, requires much more than Plaintiffs' Second Amended Complaint can offer.

With The Laundress's voluntary recall as a backdrop, Plaintiffs accuse The Laundress of a sweeping campaign of deception. Plaintiffs claim that The Laundress falsely and deceptively marketed the Products as "luxury, non-toxic cleaning products." *See, e.g.*, SAC ¶¶ 59, 68, 79, 89, 103, 113. Plaintiffs make claims against The Laundress ("Defendant") for (Count I) manufacturing defect, (Count II) design defect, (Count III) failure to warn, (Count IV) consumer fraud, (Count V) breach of express warranty, (Count VI) breach of implied warranty, and (Count VII) wrongful death. Despite this being Plaintiffs' third attempt at pleading, each of these claims fails to state a cause of action and should be dismissed.

To start, Plaintiffs fail to plausibly plead, under any theory of liability, that the alleged defective Products were the cause of their daughter's injuries.

Plaintiffs' claim for design defect (Count II) should be dismissed as they fail to plausibly allege how Defendant should have designed the Products differently. Plaintiffs' warning defect

claim (Count III) also fails because they do not plausibly allege Defendant's knowledge of a defect when the Products were designed, manufactured, or sold to them.

Plaintiffs' consumer fraud claim (Count IV) must be dismissed, as Plaintiffs fail to plausibly plead (i) with particularity the alleged fraudulent statements, (ii) Defendant's intent to defraud, and (iii) a duty to disclose.

So too should Plaintiffs' claims for breach of express warranty (Count V) and breach of implied warranty (Count VI) be dismissed. Any description of the Products as "luxury" is a mere opinion or commendation of the product. Plaintiffs' claim for implied warranty of merchantability is duplicative of Plaintiffs' negligence-based product liability claims, and Plaintiffs fail to plausibly allege any use of the Products beyond their ordinary use.

Plaintiffs' wrongful death claim (Count VII) is not a separate cause of action, and as it is premised on the same alleged conduct as their product liability claims, this claim must fail as well. Finally, Plaintiffs' request for punitive damages should be dismissed, as they do not, and cannot, plausibly plead malice or negligence that is so willful or wanton as to evince a conscious disregard of the rights of others.

## II.    BACKGROUND

Plaintiffs Ashley Sites and Gabriel Yibale are the surviving mother and father of Elliana, a minor, who died in November 2021. SAC ¶¶ 7, 8. Plaintiffs were living in Roanoke, Virginia, at the time of her death. SAC ¶ 9. In March 2023, Plaintiffs were appointed co-administrators and co-administrators *ad prosequendum* of Elliana's Estate by the Roanoke City Circuit Court. SAC ¶ 10.

Plaintiffs claim they purchased at least nineteen different The Laundress products, and that these products were subject to The Laundress's recall. *See* SAC ¶¶ 26, 35, 40. However, Plaintiffs also purchased products *not* subject to or otherwise encompassed by The Laundress's recall. *See*

SAC ¶¶ 26, 48.[2] Plaintiffs do not precisely disclose when they purchased these products and are contradictory about when they initially began purchasing any of The Laundress's products. SAC ¶¶ 23, 24. Plaintiffs allege that they used The Laundress products to "clean numerous surfaces and fabrics throughout their household," and used the products to clean their daughter's "medical equipment." *See* SAC ¶¶ 27–28. Plaintiffs do not specify which products they used to clean their home or the medical equipment, or whether they used the products in combination. *Id.*

According to Plaintiffs, "[s]ometime after [they] began using Defendant's products, Elliana inexplicably developed rashes, eyelid infections/inflammation, pneumonia, ear infections, and was diagnosed with Blepharitis, an inflammation of the eyelid." SAC ¶ 29. Plaintiffs contend the products they purchased contributed to the physical decline of their daughter, who was born with "multiple illnesses and disabilities." SAC ¶¶ 19, 29–35. Plaintiffs allege that their daughter's decline "was caused by strains of *Pseudomonas* and *Klebsiella aerogenes* bacterial infections." SAC ¶ 30. Plaintiffs allege that their daughter was placed in hospice in October 2021 and that she succumbed to her infection in November 2021. SAC ¶¶ 33–34.

## III.      LEGAL STANDARD

### A.      Rule 12(b)(6)

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[a] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[2] Plaintiffs refer to The Laundress's recall website, which identifies the recalled products. Items such as "Scented Vinegar," while allegedly purchased by Plaintiffs, are not a recalled product.

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

## IV.    ARGUMENT

### A.    Plaintiffs' Claims Fail to Plausibly Plead Proximate Cause

Under any theory of tortious injury, one requisite element of a claim is a "causal connection between defendant's conduct and plaintiff's injury." *Hartwell v. Danek Med., Inc.*, 47 F. Supp. 2d 703, 707–08 (W.D. Va. 1999) (quoting *Owens v. Bourns, Inc.*, 766 F.2d 145, 151 (4th Cir. 1985)). "The law of products liability in Virginia does not permit recovery where responsibility is conjectural."[3] *Boyle v. United Techs. Corp.*, 792 F.2d 413, 415 (4th Cir. 1986) (citing *Logan v. Montgomery Ward & Co.*, 216 Va. 425 (1975)). "To succeed on a products liability claim, the plaintiff must demonstrate that a product defect is the only reasonable explanation or cause of the complained-of injury." *Sanyal v. Toyota Motor N. Am., Inc.*, 2015 WL 3650725 (E.D. Va. 2015).

Throughout the SAC, Plaintiffs lodge elemental recitations, without support, that the Products proximately caused the death of their daughter. *See, e.g.*, SAC ¶¶ 1–2, 65, 76, 86, 100, 110, 120, 125. Merely reciting the elements of their causes of action is insufficient to plausibly plead proximate cause. Plaintiffs generally allege that their daughter, who was born with multiple illnesses and disabilities, at some unspecified time after Plaintiffs began using The Laundress products (including products that were not subject to the recall), developed rashes, eyelid infections/inflammation, pneumonia, and ear infections and was diagnosed with blepharitis. *See*

---

[3] Plaintiff brings this action under the laws of the Commonwealth of Virginia. SAC ¶ 3.

SAC ¶¶ 19, 26, 29. Of note, Plaintiffs do not allege that these specific ailments that Elliana allegedly developed after Plaintiffs began using the Products were caused by the Bacteria potentially present in the Products or that those ailments were not caused by some other source, despite admitting the Bacteria "are environmental organisms found widely in soil, water, and some may also be found in humans."[4] *See* SAC ¶ 34. Instead, Plaintiffs only vaguely allege that "Elliana's decline was caused by strains of *Pseudomonas* and *Klebsiella aerogenes* bacterial infections." SAC ¶ 30. Plaintiffs also do not specify which of the alleged The Laundress Products they used were ones actually subject to the recall, when those specific products were purchased, when those products were used, or how those Products subject to the recall were used in relation to Elliana. *See* SAC ¶¶ 23, 24, 26.

Elliana's death is heart-wrenching, but her death alone does not support a plausible inference that the Products were the proximate cause of her death. Other than boilerplate allegations of causation, Plaintiffs allege no specific facts connecting the dots between the alleged defects in the Products they used and Elliana's injuries. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F. 4th 77, 82 (2d Cir. 2022) (noting a plaintiff must provide "more than a 'formulaic recitation of the elements of a cause of action'"). The Court should thus dismiss each of Plaintiffs' product liability claims, under both negligence and warranty theories, for failing to plead facts sufficient to establish proximate causation.

### B. Plaintiffs' Product Liability Claims Should Be Dismissed

"A manufacturer does not insure its product's safety, and need not supply an accident-proof product." *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 505 (E.D. Va. 2013) (internal citations omitted). "Virginia has not adopted a strict liability regime for products liability." *Evans*

---

[4] https://www.thelaundressrecall.com/.

*v. NACCO Materials Handling Grp., Inc.*, 295 Va. 235, 246 (2018). Rather, to recover under a products liability claim, Plaintiffs must show that "(1) the [product] was unreasonably dangerous for the use to which it would ordinarily be put or for some other reasonably foreseeable purpose, [and] (2) the unreasonably dangerous condition existed when the [product] left the defendant's hands." *Ball*, 963 F. Supp. 2d at 505. "Virginia products liability law recognizes three negligence-based causes of action: (1) negligent manufacture, (2) negligent design and (3) negligent failure to warn." *Dodson v. C.R. Bard, Inc.*, No. 3:20CV596 (DJN), 2020 WL 7647631, at *3 (E.D. Va. Dec. 23, 2020).

### 1.     Plaintiffs' Design Defect Claim Fails

An actionable negligent design claim must allege the nature of the defect, that the defect existed when the product left the defendant's hands, and how such defect was the proximate cause of the plaintiff's injuries. *See, e.g.*, *Fields v. Jobar Int'l, Inc.*, 2014 WL 1513289, at *3 (E.D. Va. Apr. 16, 2014). "To state a claim of negligent design, [p]laintiff must contend that the [d]efendant could have designed the product differently before putting it into the stream of commerce, 'or that such a design is even feasible.'" *Dodson v. C.R. Bard, Inc.*, No. 3:20-CV-596-DJN, 2020 WL 7647631, at *5 (E.D. Va. Dec. 23, 2020) (quoting *Ball*, 963 F. Supp. 2d at 505). Likewise, a plaintiff "must state facts showing that an alternative design is safer overall than the design used by the manufacturer." *Knapp v. Zoetis Inc.*, No. 3:20CV191, 2022 WL 989015, at *5 (E.D. Va. Mar. 31, 2022) (internal quotations and citation omitted); *see also Powell v. Diehl Woodworking Mach., Inc.*, 198 F. Supp. 3d 628, 634 (E.D. Va. 2016) (granting a motion to dismiss a design defect claim where the plaintiff failed to plead a reasonable alternative design).

Plaintiffs' design defect claim fails because Plaintiffs have not alleged that Defendant could have "designed the product differently before putting it into the stream of commerce," or that "an alternative design is safer overall than the design used" by Defendant. In fact, Plaintiffs' Complaint

is entirely devoid of allegations in this regard. Rather, Plaintiffs' design defect allegations are vague legal conclusions. *See* SAC ¶¶ 70 ("Defendant's products were unreasonably dangerous in design, in that they posed a potentially fatal health hazard to consumers, and were not reasonably fit, suitable, or safe for their intended purpose."), 72 ("Defendant's products are defective in design in that they pose a greater likelihood of injury and are more dangerous than other available household cleaning products."). Plaintiff alleges that the Products' design was defective due to "failure to conduct an adequate hazard analysis to identify and correct foreseeable risks … to potential contamination of the product in the manufacturing process," but that is an allegation as to the manufacturing of the Products, not the design of the Products themselves. *See* SAC ¶ 71. Plaintiffs do not plead how Defendant could have designed The Laundress Products differently before putting them into the stream of commerce, such that no adverse events would occur, or that such a design is even feasible.

## 2.     Plaintiffs' Failure to Warn Claim Fails

A "manufacturer has a duty to warn only if it knows or has reason to know that its product is dangerous." *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 134–35 (1992) (citing *Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 962 (1979)); *see also Fields*, 2014 WL 1513289. A manufacturer is subject to liability for failure to warn when it (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts that make it likely to be dangerous. *See Owens-Corning Fiberglas Corp.*, 243 Va. at 134. Fundamental to a failure-to-warn claim is that the defendant "either knew or had reason to know" that the product was dangerous. *Fields*, 2014 WL 1513289, at *4 (citing *Featherall*, 219 Va. at 962).

Plaintiffs' failure to warn claim fails as a matter of law because Plaintiffs do not allege that Defendant had any knowledge that the products were defective such that a duty to warn would be triggered. *See* SAC ¶¶ 77–86. Like each pleading before it, Plaintiffs do not plausibly allege in the SAC that Defendant knew or had a reason to know about the potential risk of contamination before The Laundress issued the Safety Notice on November 17, 2022, or initiated its recall on December 1, 2022. *See* SAC ¶¶ 36, 38. Rather, Plaintiffs only conclusorily allege that "Defendant had exclusive knowledge of its products' contamination and knew or had reason to know that their products purported to be "non-toxic" were the exact opposite." SAC ¶ 49; *see also* SAC ¶¶ 82–84 (conclusory pleading that "Defendant knew, or had reason to know," that its products were contaminated). This is insufficient.

### C.   Plaintiffs' Consumer Fraud Claim Fails Under Rule 9(b) and Should Be Dismissed

#### 1.   Plaintiffs Fail to Plead with Particularity the Alleged Fraudulent Statements

Plaintiffs' consumer fraud claim (Count IV) sounds in fraud but fails to meet Rule 9(b)'s specific pleading standard. *See BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) (applying Rule 9(b) to VCPA claims). Under Rule 9(b)'s particularity requirement, the plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 187 (2d Cir. 2004).

Plaintiffs fail to identify the statements (or omissions) that were allegedly fraudulent. Further, Plaintiffs fail to meet that standard here, as they do not identify the speaker, state where and when the statements (or omissions) were made, or explain why the statements (or omissions) are fraudulent, instead pleading only in generalities. *See, e.g.*, SAC ¶¶ 16 ("described its products

as providing a "highly effective, non-toxic line of fabric care and home cleaning products""), 17 ("The Laundress markets its products to consumers looking for "non-toxic," "green," and "eco-clean" alternatives to other cleaning brands"), 21 ("advertised as plant-based, non-toxic, ecofriendly, and promised to deliver the same results as the more toxic alternatives"), 94 ("[Defendant] advertised, marketed, and represented that the products were safe and "non-toxic.""). These generalities are insufficient to meet the heightened Rule 9(b) standard.

## 2.      Plaintiffs Fail to Plead Intent

Plaintiffs also fail to adequately plead scienter for fraudulent concealment and consumer fraud claims. *See Snell v. Reid*, No. 3:21-CV-24, 2022 WL 2812056, at *8 (W.D. Va. July 18, 2022) (fraudulent concealment); *Allen v. FCA US LLC*, No. 6:17-CV-00007, 2017 WL 1957068, at *3 (W.D. Va. May 10, 2017) (VCPA). Although "malice, intent, knowledge and other condition of mind of a person may be averred generally," Fed. R. Civ. P. (9)(b), this leeway is not a "license to base claims of fraud on speculation and conclusory allegations." *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187 (internal quotation marks and citation omitted) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent," which may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (internal quotation marks and citation omitted) (quoting *Acito*, 47 F.3d at 52).

Here, yet again, Plaintiffs' claims are solely based on speculation and conclusory allegations of fraudulent intent. *See, e.g.*, SAC ¶¶ 53 ("[Defendant] intentionally concealed knowledge of toxins[.]"), 92 ("Defendant concealed knowledge of the serious risks associated with its defective products, concealed testing and research data, and concealed the fact that its products were defective."). Plaintiffs have not alleged any facts that give rise to a strong inference of

fraudulent intent by Defendant, as Plaintiffs do not plausibly plead either (a) that Defendant had

both motive and opportunity to commit fraud, or (b) any facts that constitute strong circumstantial

evidence of conscious misbehavior or recklessness. *See Eternity Glob. Master Fund Ltd.*, 375 F.3d

at 187.

### 3.    There Was No Duty to Disclose

Finally, Plaintiffs fail to plausibly plead that Defendant had a duty to disclose the alleged

fraudulently concealed facts to Plaintiffs. While concealment of a material fact by one who knows

that the other party is acting upon the assumption that the fact does not exist constitutes actionable

fraud, "silence does not constitute concealment in the absence of a duty to disclose." *See Farley v.*

*Bank of Am. N.A.*, No. 3:14-CV-568, 2015 WL 3651165, at *7 (E.D. Va. June 11, 2015), *aff'd*, 615

F. App'x 804 (4th Cir. 2015) (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir.

1999)) (applying Virginia law). "A duty to disclose does not normally arise when parties are

engaged in an arm's length transaction." *See id.* "A duty may arise (1) if the fact is material and

the one concealing has superior knowledge and knows the other is acting upon the assumption that

the fact does not exist; or (2) if one party takes actions which divert the other party from making

prudent investigations (e.g., by making a partial disclosure)." *Bank of Montreal*, 193 F.3d at 829.

Here, Plaintiffs have not plausibly alleged that Defendant had a duty to disclose to Plaintiffs

at the (unspecified) time of Plaintiffs' alleged purchases. Plaintiffs have not plausibly alleged that

Defendant had superior knowledge of the possibility of contamination in the Products, or even

knew about the possibility of contamination at all, at the time of Plaintiffs' alleged purchases of

the Products such that a duty to disclose would arise. Finally, Plaintiffs have not pleaded any facts

that Defendant took actions, through either partial disclosures or otherwise, to divert Plaintiffs

from making prudent investigations. To the contrary, The Laundress publicly notified purchasers

of the potential for contamination upon learning of the potential risk, and voluntarily recalled the

Products. *See* SAC ¶¶ 36, 38.

       **D.**       **Plaintiffs' Warranty Claims Fail**

           **1.**       **Plaintiffs' Express-Warranty Claim Should Be Dismissed**

Under Virginia law, a breach of express warranty requires (1) the existence of a warranty and (2) a breach of that warranty. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Collier v. Rice*, 356 S.E.2d 845, 847 (Va. 1987)). The statutory basis for Plaintiffs' express warranty claim is Virginia Code § 8.2-313,[5] which reads, in pertinent part:

> Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description …

Va. Code § 8.2-313.

To the extent Plaintiffs' claims are based on an alleged express warranty that the Products were "luxury," *see* SAC ¶ 103, this is a mere opinion and therefore cannot qualify as an express warranty. Pursuant to Virginia Code section 8.2-313(2), "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." A statement that something is "luxury" is simply an opinion or commendation concerning the Products' quality and does not describe a specific characteristic or feature of the Products, and therefore does not support a breach of express warranty claim. *See Bayliner Marine Corp. v. Crow*, 257 Va. 121, 128 (1999) (statement by a boat dealer concerning

---

[5] Plaintiffs cite Virginia Annotated Code section 8.2-318, but this statute simply states that lack of privity between plaintiff and defendant shall be no defense in a product liability action.

the quality of the boat's performance did not create an express warranty).

Further, to the extent that Plaintiffs' claims are based on alleged express warranties that the products were "safe for use by consumers, that they were of merchantable quality, and that they were adequately tested and fit for their intended use," *see* SAC ¶ 106, Plaintiffs have not plausibly alleged (1) who made these alleged express warranties, (2) whether they were made orally or in writing, (3) whether these alleged express warranties were on the product packaging, (4) when these alleged express warranties were made, or (5) the context of these alleged warranties. Moreover, to the extent Plaintiffs plead causes of action for merchantability and fitness for a particular purpose, these are implied warranties, not express warranties, and are discussed in detail below.

### 2. Plaintiffs' Implied Warranty Claims Should Be Dismissed.

#### a. Implied Warranty of Merchantability Fails for the Same Reasons as the Negligence Product Liability Claims

"Under Virginia law … manufacturers and sellers of defective products can be held liable on theories of negligence and breach of the implied warranty of merchantability." *Higgins v. Forest Labs*, 48 F. Supp. 3d 878, 884 (W.D. Va. 2014) (citations omitted) (quoting *Bly v. Otis Elevator Co.*, 713 F.2d 1040, 1042 (4th Cir. 1983)), *on reh'g sub nom. Farish for Farish v. Courion Indus., Inc.*, 754 F.2d 1111 (4th Cir. 1985). "The elements of both a negligence and a warranty cause of action are largely identical." *See Higgins*, 48 F. Supp. at 884.

"Whether a plaintiff proceeds under a theory of warranty or negligence, the plaintiff must prove: (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose; and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands." *Evans*, 295 Va. at 246 quoting *Featherall*, 219 Va. at 963–64. "A product is unreasonably dangerous if it is defective in

assembly or manufacture, unreasonably dangerous in design, or unaccompanied by adequate warnings concerning its hazardous properties." *Morgen Indus., Inc.*, *v. Vaughan*, 252 Va. 60, 65 (Va. 1996). For the same reasons that Plaintiffs' causes of action for negligent design and failure to warn fail as discussed above in Section B, Plaintiffs' claim for implied warranty of merchantability also fails as a matter of law.

> **b.      Implied Warranty of Fitness for a Particular Purpose Fails for the Same Reasons as the Negligence Product Liability Claims**

"To recover for breach of the implied warranty of fitness for a particular purpose, a plaintiff must prove that: (1) the seller had reason to know of the particular purpose for which the buyer required the goods, (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods, and (3) the buyer in fact relied upon the seller's skill or judgment." *Porter v. DePuy Orthopaedics, Inc.*, No. 3:19CV007 (REP), 2019 WL 3979656, at *11 (E.D. Va. Aug. 6, 2019). Where a plaintiff fails to plausibly allege facts to support an inference that the defendant had reason to know the plaintiff intended to use the product for a particular purpose that is beyond the ordinary use and purpose of the product, the claim must be dismissed. *See, e.g.*, *Porter*, 2019 WL 3979656, at *11 (dismissing "fitness for particular purpose" claim); *see also Norfolk Coating Servs., LLC v. Sherwin-Williams Co.*, No. 2:14CV188, 2014 WL 5860533, at *4 (E.D. Va. Nov. 12, 2014) (holding that "no implied warranty of fitness for a particular purpose is created when the application was nothing but the ordinary use," and dismissing claim where "Plaintiff has not pleaded a plausible claim to a 'particular purpose'").

Plaintiffs' allegations, at best, describe the ordinary purposes for which the goods were generally used, namely, as cleaning products. *See* SAC ¶¶ 27, 28 (alleging "Plaintiffs used Defendant's products to clean numerous surfaces and fabrics throughout their household" and used the products to clean "the surfaces of Elliana's medical equipment"). In fact, any suggestion

otherwise cannot be reconciled with Plaintiffs' own allegation that Plaintiffs used The Laundress cleaning products for their "intended purposes" and "used The Laundress products as intended." SAC ¶¶ 60, 69, 80, 90, 104, 114. Therefore, Plaintiffs' implied warranty claim should be dismissed.

### E.  Plaintiffs' Wrongful Death Claims Must Be Dismissed

"Virginia's wrongful death statute does not create a new cause of action, but only a right of action in a personal representative to enforce the decedent's claim for any personal injury that caused death. The statute provides that whenever the death of a person is caused by 'the wrongful act, neglect, or default of any person or corporation' that person or corporation shall be liable for damages." *Sisson v. Piedmont Reg'l Jail Auth.*, No. 3:19-CV-602-HEH, 2020 WL 1307858, at *5 (E.D. Va. Mar. 19, 2020) (internal citations omitted).

As Virginia's wrongful death statute does not create a separate cause of action, Plaintiffs' cause of action for wrongful death is premised on the same alleged conduct as Plaintiffs' negligence and warranty-based product liability claims. *See* SAC ¶ 125. For the same reasons that Plaintiffs' product liability and consumer fraud claims fail as a matter of law, so too must Plaintiffs' wrongful death claim. *See Miller v. United States*, 932 F.2d 301 (4th Cir. 1991) (dismissing wrongful death action when the decedent's claim for personal injury that caused the death was time-barred).

## V.      Punitive Damages Are Inadequately Pleaded

A motion to dismiss claims for punitive damages is cognizable under Rule 12, is and regularly addressed and dismissed by courts. *See, e.g.*, *JTH Tax, LLC v. Shahabuddin*, 477 F. Supp. 3d 477, 482–83 (E.D. Va. 2020); *56th St. Invs., Inc. v. Worthington Cylinders Miss., LLC*, 2014 WL 1685922, at *2 (E.D. Va. Apr. 16, 2014); *Deavers v. Vasquez*, 2014 WL 12917627, at *2–3 (E.D. Va. Oct. 3, 2014).

"[W]here the act or omission complained of is free from fraud, malice, oppression, or other

special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible." *PGI, Inc. v. Rathe Prods., Inc.*, 265 Va. 334, 576 (Va. 2003). Further, punitive damages are generally not allowed for breach of contract claims. *See Wright v. Everett*, 197 Va. 608 (Va. 1956); *see also Kamlar v. Haley*, 224 Va. 699, 707 (1983).

"Because punitive damages are in the nature of a penalty, in the Commonwealth of Virginia, 'they should be awarded only in cases of the most egregious conduct.'" *Parkman v. Elam*, No. 3:08-CV-690, 2009 WL 736067, at *5 (E.D. Va. Mar. 17, 2009). "Tortious conduct supports punitive damages if it demonstrates malice or negligence which is so willful or wanton as to evince a conscious disregard of the rights of others." *Id.* In *Parkman*, the District Court dismissed plaintiff's request for punitive damages pursuant to a motion to dismiss because the complaint failed to assert conduct that would demonstrate "malice or 'negligence which is so willful or wanton as to evince a conscious disregard of the rights of others.'" *Id.* Conclusory statements alleging that Defendant's actions were "intentional, reckless, willful, wanton, and malicious" are insufficient to meet the plausibility requirement necessary to survive a 12(b)(6) motion to dismiss. *56th St. Invs., LLC v. Worthington Cylinders Miss., LLC*, 2014 WL 1685922, at *2–3 (E.D. Va. Apr. 16, 2014); *see also JTH Tax*, 477 F. Supp. 3d 477 (dismissing punitive damages on motion to dismiss where Plaintiff did not allege "facts sufficient for the court to infer that [the Defendant] acted fraudulently, with malice, or with special motives of aggravation."); *Riley v. Barringer*, 337 F. Supp. 3d 647, 656 (W.D. Va. 218) (same).

In the Complaint, Plaintiffs recite that Defendant engaged in "wanton" and "willful" conduct or "malicious and egregious" conduct (SAC ¶¶ 53–54, 56) but allege no facts to support such allegations. Rather, undercutting any inference of malice or conscious disregard is the undisputed fact that The Laundress issued a Safety Notice, alerting its customers and the public

that its products could be contaminated, and initiated a voluntary product recall. *See* SAC ¶¶ 36, 38, 48. The request for punitive damages is unsupported by any factual allegations in the Complaint and should be dismissed.

## VI.     CONCLUSION

For all the reasons discussed above, Plaintiffs fail to state a claim and Plaintiffs' Complaint should be dismissed under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Dated: September 8, 2023

Respectfully submitted,

*/s/ Ronald Y. Rothstein*

Ronald Y. Rothstein
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Jared Kessler (*pro hac vice*)
WINSTON & STRAWN LLP
200 South Biscayne Boulevard
Suite 2400
Miami, FL 33131
jrkessler@winston.com
Telephone: (305) 910-0500
Facsimile: (305) 910-0505

Lisa M. Coutu
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
lcoutu@winston.com
Telephone: (212) 294-6639
Facsimile: (212) 294-4700

ATTORNEYS FOR DEFENDANT
THE LAUNDRESS, LLC