UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                       :

LORI OSTENFELD, *individually and on behalf of all*
*others similarly situated*, et al.,              :

                           :

                  Plaintiffs,        :

                           :

ASHLEY SITES, *as Administrator & Administrator Ad*
*Ad Prosequendum on behalf of the Estate of Elliana Diem*
*Yibale*, et al.,                  :        22-CV-10667 (JMF)

                           :        OPINION AND ORDER

              Consolidated Plaintiffs,  :

                           :

          -v-                   :

                           :

THE LAUNDRESS, LLC et al.,        :

                           :

                  Defendants.     :

                           :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In 2022, The Laundress, LLC, a manufacturer and distributor of luxury cleaning and

laundry products, recalled approximately eight million units of its products, citing potential

contamination with harmful bacteria. These two consolidated cases (and others) followed.[1] In

one, Plaintiffs Lori Ostenfeld, Judy Stilwill, Deborah Geschwind, and Margaret Murphy

(together, the "Class Plaintiffs") bring a putative class action against The Laundress, raising

federal and state claims arising out of the marketing and sale of its products. *See* ECF No. 16

---

[1]     Since Defendant filed the motions at issue here, two additional cases have been
consolidated with 22-CV-10667: *Marrero v. The Laundress, LLC*, No. 24-CV-814 (JMF)
(S.D.N.Y. transferred Feb. 5, 2024), and *Safran v. The Laundress, LLC*, No. 24-CV-865 (JMF)
(S.D.N.Y. transferred Feb. 6, 2024). Defendant anticipates filing motions to dismiss in these
newly consolidated cases. *See* ECF No. 81. On March 4, 2024, a third case was transferred to
this Court (from the District of Maryland) and accepted by the undersigned as related: *Nixon v.*
*The Laundress, LLC*, No. 24-CV-1630 (JMF) (S.D.N.Y. transferred Mar. 4, 2024).

("Class Compl.").  In the second, Plaintiffs Ashley Sites and Gabriel Yibale (together, the "Sites Plaintiffs"), parents of Elliana Diem Yibale, bring claims against The Laundress relating to and arising from Elliana's death in November 2021.  *See* ECF No. 46 ("Sites Compl.").[2]  Defendant now moves, pursuant to Rules 12(f) and 23 of the Federal Rules of Civil Procedure, to strike the class allegations in the Class Complaint, *see* ECF No. 19; and, pursuant to Rules 9(b) and 12(b), to dismiss most or all of the claims in both cases, *see* ECF Nos. 17, 47.  For the reasons that follow, the Court DENIES Defendant's motion to strike and GRANTS in part and DENIES in part the motions to dismiss.

## BACKGROUND

The following facts, taken from either or both the Class Plaintiffs' Complaint (the "Class Complaint") and the Sites Plaintiffs' Complaint (the "Sites Complaint"), are assumed to be true for the purposes of this motion.  *See Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).  The Laundress manufactures, distributes, markets, and sells luxury cleaning and laundry products, with an emphasis on "natural, non-toxic, eco-friendly, and green cleaning products that do not contain, or contain minimal, chemicals and allergens."  Class Compl. ¶¶ 29, 32; *see* Sites Compl. ¶ 13.  Defendant marketed and labeled its products as "non-toxic," Class Compl. ¶¶ 32- 38, Sites Compl. ¶¶ 16-17, claiming, for example, that its products provide an alternative to "toxic dry cleaning chemicals," Class Compl. ¶ 33.  On November 17, 2022, Defendant posted on its social media pages and other "promotions channels" a safety notice, which informed consumers that it

---

[2]    The Sites Plaintiffs also name as Defendants unspecified entities with the "fictitious names" of "ABC Corp. #1-50," but refer exclusively to "The Laundress" and "Defendant" in their pleadings.  *See generally* Sites Compl.  The Court therefore does the same in this Opinion and Order.  The Sites Plaintiffs had named Unilever United States, Inc. ("Unilever") as a Defendant in their original Complaint, but they dropped Unilever from the operative Complaint. Accordingly, the Clerk of Court is directed to terminate Unilever as a party.

had "identified the potential presence of elevated levels of bacteria" in some of its products and directed them "to immediately stop using all The Laundress products." *Id.* ¶ 79; *see* Sites Compl. ¶ 36.

On December 1, 2022, Defendant went one step further and recalled approximately eight million units of its products, noting that they might be contaminated by three kinds of bacteria harmful to human health: *Burkholderia cepacia* complex, *Klebsiella aerogenes,* and various species of *Pseudomonas*. Class Compl. ¶ 80; Sites Compl. ¶ 38. *Burkholderia cepacia* "causes lung infections, rapid lung decline, and pneumonia, particularly in immunocompromised individuals with underlying lung disease." Class Compl. ¶ 47. *Klebsiella aerogenes* "can infect the respiratory tract, urinary tract, and even the central nervous system," and is also known for its high resistance to antibiotics and the danger it poses to immunocompromised people. Sites Compl. ¶¶ 46-47; Class Compl. ¶ 48. Finally, *Pseudomonas* is known as a "highly toxic bacteria that can cause serious infections, severe tissue damage, pneumonia, septicemia, and even death." Sites Compl. ¶ 42; *see* Class Compl. ¶ 42. The bacteria "poses particular dangers for immunodeficient individuals," and is known to be resistant to antibiotics. Class Compl. ¶¶ 43-45; *see* Sites Compl. ¶¶ 43, 45.

In its recall notice, Defendant stated that those with "weakened immune systems, external medical devices, and underlying lung conditions who are exposed to the bacteria face a risk of serious infection that may require medical treatment." Class Compl. ¶ 80. Defendant also revealed that it was "aware of 11 consumers" who had "reported *Pseudomonas* infections." *Id.* Defendant offered consumers a refund of the purchase price upon "either proof of direct purchase off Defendant's website, a receipt, and/or a picture of the Product's UPC and date code with initials." *Id.* ¶ 83.

3

**A.  The Class Complaint**

According to the Class Complaint, Defendant's products "were contaminated or at risk of contamination long before Defendant's recall and Defendant knew of those risks."  *Id.* at 15 (capitalization altered).  That is because Defendant is "subject to regulatory and internal quality assurance programs that . . . should identify existing and emerging risks to its Products and consumers," *id.* ¶ 52; its products' "unique attributes make them particularly susceptible to bacterial contamination" of the kind that occurred, *id.* ¶ 56, *see also id.* at 16 n.13; it was "receiving reports of *Pseudomonas* infection from consumers," *id.* ¶ 71, *see also id.* ¶¶ 7, 60; and it announced a recall only when the Consumer Product Safety Commission ("CPSC") intervened, *see id.* ¶ 7.  The Class Plaintiffs further allege that the bacterial contamination could have been prevented by "adopting a reasonable alternative design, including adding a preservative or antimicrobial or biocidal agent such as isothiazolones, bronopol, aldehydes, and carboxylic acids."  *Id.* ¶ 64.

Between January 2021 and September 2022 (the "Class Period"), each of the four Class Plaintiffs purchased and used Defendant's products in reliance on Defendant's marketing and labeling of the products as "non-toxic."  *Id.* ¶¶ 92, 95, 98, 101.  After using the products, Murphy, a citizen of California, and her family experienced "respiratory infections, skin infections, rashes, and hives," *id.* ¶¶ 17, 96; Ostenfeld, a citizen of New Jersey, experienced "skin irritation and persisting respiratory problems (including difficulty breathing, wheezing, and congestion, and shortness of breath), requiring ongoing medical attention," *id.* ¶¶ 15, 99; and Stilwill, a citizen of Nebraska, suffered "severe sinus congestion and infection," eventually requiring "surgery to open and drain [her] sinuses," *id.* ¶¶ 18, 102.  In Stilwill's case, the infection was "subsequently cultured and shown to be *Pseudomonas aeruginosa*."  *Id.*

Geschwind, a citizen of New York, did not suffer any physical injuries but "disposed of hundreds of dollars' worth of hangers and containers used to store contaminated clothing" and, "due to the persistent nature of the bacteria . . . , is still at risk of contamination and infection." *Id.* ¶¶ 16, 93-94.

In May 2023, the Class Plaintiffs brought their putative class action.  The Class Complaint raises claims on behalf of (1) an "Economic Injury Class" composed of all United States residents who purchased Defendant's products during the Class Period, *id.* ¶ 107; (2) a "Physical Injury Class" composed of all United States residents who suffered physical injuries after using or being exposed to the products during the Class Period, *id.* ¶ 108; and (3) a "California Subclass" composed of all California residents who purchased the products during the Class Period, *id.* ¶ 109.  All four Class Plaintiffs, on behalf of themselves and the putative Economic Injury Class, bring claims for deceptive acts and false advertising in violation of New York General Business Law ("GBL") Sections 349 and 350; claims for breaches of express and implied warranties; a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*; and a claim for unjust enrichment.  Class Compl. ¶¶ 124-67, 207-15.  Murphy, Ostenfeld, and Stilwill, on behalf of themselves and the putative Physical Injury Class, bring strict product liability claims for design defect, manufacturing defect, and failure to warn.  *Id.* ¶¶ 168-206.  Finally, Plaintiff Murphy, on behalf of herself and the California Subclass, brings claims for unlawful, unfair, and fraudulent conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and False Advertising Law ("FAL"), *id.* § 17500 *et seq.*  Class Compl. ¶¶ 216-38.

## B.  The Sites Complaint

The Sites Complaint alleges that Elliana was born on January 25, 2016, "with multiple

5

illnesses and disabilities including but not limited to congenital microcephaly and autoimmune disorders." Sites Compl. ¶ 19. After her birth, the Sites Plaintiffs "meticulously researched brands and ingredient labels to ensure that she was protected from harmful germs, chemicals, and toxins." *Id.* ¶ 20. Based on their research, they concluded that Defendant's products would "meet all of their needs as [the products] were advertised as plant-based, non-toxic, [and] ecofriendly," and they purchased them even though the products cost much more than the alternatives. *Id.* ¶¶ 21-22, 26. From December 2019 through December 2021, the Sites Plaintiffs used Defendant's products to "clean numerous surfaces and fabrics throughout their household including . . . bedding, blankets, pillows, clothing, bed frames, and dressers." *Id.* ¶¶ 24-27. They also used Defendant's products to "clean the surfaces of Elliana's medical equipment including but not limited to her portable suction machine, oxygen concentrator, CPAP, pulse oximeter, airway clearance vest system, and automatic cough assist." *Id.* ¶ 28.

"Sometime after" the Sites Plaintiffs began using these products, Elliana "inexplicably developed rashes, eyelid infections/inflammation, pneumonia, [and] ear infections, and was diagnosed with Blepharitis, an inflammation of the eyelid." *Id.* ¶ 29. This decline, the Sites Complaint alleges, "was caused by strains of *Pseudomonas* and *Klebsiella aerogenes* bacterial infections." *Id.* ¶ 30. Despite "intramuscular antibiotic shots, steroid injections, and special nebulized antibiotics," Elliana eventually had to be placed in hospice care. *Id.* ¶¶ 31-33. On November 27, 2021, she passed away at the age of five. *Id.* ¶ 34. Her parents "subsequently learned that The Laundress products that they believed were protecting Elliana from sickness and infection caused her bacterial infections and death." *Id.* ¶ 35.

In March 2023, the Sites Plaintiffs sued Defendant, bringing product liability claims for manufacturing defect, design defect, and failure to warn; a claim under the Virginia Consumer

Protection Act ("VCPA"), Va. Code Ann. § 59.1-196 *et seq.*; and claims for breaches of express and implied warranties and wrongful death. Sites Compl. ¶¶ 57-127. In June 2023, the Court granted all parties' joint motion to consolidate the Class Plaintiffs' case and the Sites Plaintiffs' case. *See* ECF No. 26. But the Court allowed briefing for any pending or future motions to dismiss to proceed on "separate tracks." *Id.*; *see also Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018) (holding that consolidated cases "retain their separate identities at least to the extent that a final decision in one is immediately appealable by the losing party"). As noted, Defendant now moves to strike the class allegations in the Class Complaint and to dismiss most or all of the claims in the two cases.

## MOTION TO STRIKE

The Court begins with Defendant's motion to strike. At the outset, the Class Plaintiffs "will not pursue class certification pursuant to Rule 23(b)(1)(A)-(B)" of the Federal Rules of Civil Procedure, ECF No. 23 ("Class Pls.' MTS Opp'n"), at 10 n.3, so the motion is denied as moot insofar as it challenges the viability of the class allegations under those subsections of Rule 23. As for the remainder of Defendant's motion, this Court has held that "a motion to strike class claims is considered premature if the issues raised are the same ones that would be decided in connection with determining the appropriateness of class certification under Rule[] . . . 23(b)." *Sealock v. Covance, Inc.*, No. 17-CV-5857 (JMF), 2018 WL 2290698, at *1 (S.D.N.Y. May 18, 2018) (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013)); *see also Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012). That is the case here, as Defendant argues that certification is impossible under Rule 23(b)(3) because choice-of-law rules and member-by-member factual discrepancies would render the class action "unmanageable." ECF No. 20 ("Def.'s MTS Mem."), at 8-16. Underscoring this point, the vast

majority of the authorities Defendant cites are decisions concerning motions for class

certification.  *See id.*

Defendant's arguments are "certainly not preposterous."  *Reynolds v. Lifewatch, Inc.*, 136

F. Supp. 3d 503, 517 (S.D.N.Y. 2015) (internal quotation marks omitted).  Defendant's

objections with respect to certain claims — for example, the physical injury claims and fraud

claims, as to which the individualized issues of causation, reliance, and damages are especially

likely to predominate over common issues — are especially "well-taken."  *Carr v. Johnson &*

*Johnson Consumer Inc.*, No. 21-CV-6557 (EK), 2023 WL 3504662, at *4 (E.D.N.Y. May 17,

2023).  "Well-taken, but still premature,", *id.*, as these objections are "exactly the sort[s] of

issue[s] that would be litigated and decided in the context of a motion for class certification,"

*Chen-Oster*, 877 F. Supp. 2d at 117.  For that reason, courts routinely deny motions to strike

class allegations in these circumstances.  *See Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 148

(S.D.N.Y. 2021) (denying the defendant's motion to strike class allegations based on "variations

in state law across the country"); *Niles v. Ariz. Beverages USA LLC*, No. 19-CV-1902 (GRB)

(ARL), 2021 WL 7906562, at *14 (E.D.N.Y. July 19, 2021) (same), *report and recommendation*

*adopted*, No. 19-CV-1902 (Aug. 30, 2021); *Reynolds*, 136 F. Supp. 3d at 515-19 (explaining that

it is "too early to determine . . . whether those issues can be addressed by the use of

subclasses . . . or other case management methods").

Nor are the supposed defects in the class allegations so plain "from the face of the

complaint that it would be impossible to certify the alleged class regardless of the facts the

plaintiffs may be able to obtain during discovery."  *In re Libor-Based Fin. Instruments Antitrust*

*Litig.*, No. 11-MDL-2262 (NRB), 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (cleaned

up).  Most significantly, Defendant argues that class certification with respect to claims under

New York General Business Law Sections 349 and 350 must fail because these claims require proof that the relevant transaction occurred in New York.  Def.'s MTS Mem. 16.  That argument is not without force, but it is not "impossible" that Class Plaintiffs will be able to show through common evidence that all members of the putative class were, in fact, "injured by conduct in New York."  *People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 1009 (N.Y. App. Div. 3d Dep't 2003); *see Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002) (holding that, "to qualify as a prohibited act under [Sections 349 and 350], the deception of a consumer must occur in New York," but clarifying that this "does not turn on the residency of the parties"); *see also, e.g.*, *Reynolds*, 136 F. Supp. 3d at 519-20 (rejecting arguments much like Defendant's here in denying a motion to strike class claims under New York General Business Law Sections 349 and 350, explaining that the court was "not able to conclude at this stage that, from the face of the Amended Complaint, . . . it would be impossible to certify the alleged class regardless of the facts Plaintiff may be able to obtain during discovery" (internal quotation marks omitted)).

For the foregoing reasons, the Court denies Defendant's motion to strike the Class Plaintiffs' allegations with respect to certification of a Rule 23(b)(3) class.  For similar reasons, Defendant's challenge to the Class Plaintiffs' allegations with respect to Rule 23(c)(4) is premature.  As the Class Plaintiffs point out, certification under Rule 23(c)(4) is often used as a tool to address "manageability concerns [under Rule 23(b)] . . . by certifying the class as to" discrete issues only.  *Nnebe v. Daus*, No. 06-CV-4991 (RJS), 2022 WL 615039, at *9 (S.D.N.Y. Mar. 1, 2022); *see* Class Pls.' MTS Opp'n 22-24.  If it is too early to rule out class certification under Rule 23(b), then it follows that it is also too early to rule out certification of one or more issue classes under Rule 23(c)(4).  Accordingly, Defendant's motion to strike is DENIED.

**MOTIONS TO DISMISS**

Next, Defendant moves to dismiss most of the claims alleged in the Class Complaint and all of the claims raised in the Sites Complaint. The Court will begin with the legal standards that apply to Defendant's motions and then address each motion in turn.

**A. Legal Standards**

Defendant moves, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss some of the Class Plaintiffs' claims for lack of subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Defendant also moves to dismiss certain claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556).  When ruling on a Rule 12(b)(6) motion, a court must accept the

factual allegations set forth in the complaint as true and draw all reasonable inferences in favor

of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  A complaint

that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of

action will not do."  *Twombly*, 550 U.S. at 555.  Further, if the plaintiff has not "nudged [its]

claims across the line from conceivable to plausible, [those claims] must be dismissed."  *Id.* at

570.

Finally, with respect to the Class Plaintiffs' and the Sites Plaintiffs' claims sounding in

fraud, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard.

*See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320 (S.D.N.Y. 2012).  Specifically, such

claims must "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P.

9(b).  To satisfy that standard, a complaint must "allege facts that give rise to a strong inference

of fraudulent intent."  *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995).  That is, "the

complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)

(internal quotation marks omitted).  Failure to satisfy the Rule 9(b) standard is grounds for

dismissal.  *See, e.g.*, *id.* at 293; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

## B.  The Class Complaint

Defendant moves to dismiss all of the Class Plaintiffs' claims save, it appears, Murphy's

UCL claim insofar as it is brought under the "unfair" prong of the statute.  *See* ECF No. 22

("Class Pls.' MTD Opp'n"), at 10 n.9.[3]  In their briefing, the parties quarrel over what law

should be applied in resolving Defendant's motion.  *Compare id.* at 6-7, *with* ECF No. 18

("Def.'s Class MTD Mem."), at 18 n.14.  Choice-of-law issues may indeed loom large as this

case proceeds, but many courts in this Circuit have concluded that "choice-of-law determinations

are fact-intensive inquiries that [are] premature to resolve at the motion-to-dismiss stage."

*Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.,* 655 F. App'x 9, 13 (2d Cir. 2016) (collecting

cases); *see, e.g.*, *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011)

("[A] choice-of-law determination is premature on this motion to dismiss, since the record lacks

facts necessary to conduct the context-specific 'center of gravity' or 'grouping of contacts'

analysis required by New York's choice-of-law principles.").  Following these courts' leads, the

Court will, for purposes of this motion, apply New York law — except as to Murphy's UCL,

FAL, and implied warranty claims (as to which the Court will apply California law) and as to

Defendant's arguments about pre-suit notice for Stilwill's and Geschwind's warranty claims (as

to which the Court will apply the New York law and Nebraska law, respectively).  The Court can

and will revisit choice-of-law issues later in the case.

### 1.  Standing and Mootness

As a threshold matter, Defendant argues that the Court lacks subject-matter jurisdiction

over the Class Plaintiffs' claims under the GBL, MMWA, UCL, and FAL and their warranty and

unjust enrichment claims because Defendant's offer of refunds rendered these claims moot.  *See*

---

[3]      For the same reason, the Court rejects Defendant's argument that the Class Plaintiffs'
GBL claims must be dismissed for failure to satisfy the statute's territorial requirement.  *See* ECF
No. 18 ("Def.'s Class MTD Mem."), at 13-14.  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115,
122 (2d Cir. 2013) ("[T]he appropriate test in this case is to focus on the location of the
transaction, and in particular the strength of New York's connection to the allegedly deceptive
transaction, rather than on the residency of the parties." (internal quotation marks omitted)).

Def.'s Class MTD Mem. 6.  Properly framed, however, the issue is really one of standing, not

mootness.  "Standing and mootness are interrelated concepts, but are not to be confused.

Standing relates to whether a litigant has a personal stake at the commencement of an action,

while mootness ensures that the litigant's interest exists 'throughout the life of the lawsuit.'"

*Samele v. Zucker*, 324 F. Supp. 3d 313, 327 (E.D.N.Y. 2018) (quoting *Comer v. Cisneros*, 37

F.3d 775, 797-98 (2d Cir. 1994)); *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC),*

*Inc.*, 528 U.S. 167, 189 (2000) ("[T]he doctrine of mootness can be described as the doctrine of

standing set in a time frame: The requisite personal interest that must exist at the commencement

of the litigation (standing) must continue throughout its existence (mootness)." (internal

quotation marks omitted)).  Here, Defendant argues that the Court lacks subject-matter

jurisdiction over any claims "seeking damages for buying, or overpaying for, Products they

would not have purchased but for [Defendant's] alleged misrepresentations and omissions"

because the Class Plaintiffs were offered a full refund *before* the initiation of this lawsuit.  Def.'s

Class MTD Mem. 6.  That is a standing argument, not a mootness argument.

   To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  So "[i]f someone

has been fully compensated for an injury, they may lack standing."  *Sholopa v. Turk Hava*

*Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 262 (S.D.N.Y. 2022).  Significantly, "'[t]hat a suit may

be a class action' — as this one is — 'adds nothing to the question of standing, for even named

plaintiffs who represent a class must allege and show that they personally have been injured, not

that injury has been suffered by other, unidentified members of the class to which they belong

and which they purport to represent.'"  *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424,

432 (S.D.N.Y. 2015) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  Translating Defendant's mootness argument into a standing one, there is no dispute that the Class Plaintiffs sufficiently allege injuries in fact that are "fairly traceable" to the challenged conduct.  Instead, Defendant argues that the Class Plaintiffs' injuries are not redressable by a favorable judicial decision because the offer of a refund already provided that redress.  But Defendant provides no evidence that any of the four Class Plaintiffs participated in the recall program and obtained a refund; it merely points to the allegation in the Class Complaint that Defendant "recalled all existing Products," Class Compl. ¶ 3, and explains that the "recall included a standing offer of a full refund to consumers," Def.'s Class MTD Mem. 6.[4]  Defendant does not cite, and the Court has not found, any case holding that a mere offer of a refund, even if unaccepted, is enough to extinguish a plaintiff's standing where all the other requirements of standing have been met.

In any event, the Class Plaintiffs establish that their injuries — ranging from harms to their health to property damage, *see* Class Compl. ¶¶ 92-103 — are "likely to be redressed by a favorable judicial decision" that awards them not only the cost of the defective products, but also "actual, statutory, and treble damages," "compensation for property damage and personal injury," and/or injunctive relief.  Class Pls.' MTD Opp'n 8; *see* Class Compl. at 55.  The GBL and the MMWA allow for actual damages, the FAL provides for civil penalties, and the warranty claims could lead to consequential damages.  Meanwhile, the UCL provides only for equitable remedies.  In other words, any of the relevant claims may result in damages or other remedies in

---

[4]      In fact, if anything, "tak[ing] all facts alleged in the complaint as true," *Morrison*, 547 F.3d at 170, the Court can infer that Defendant's recall program was not broad or robust enough to redress the Class Plaintiffs' alleged injuries because it required consumers to present "proof of purchase, [whether] proof of direct purchase off Defendant's website, a receipt, and/or a picture of the Product's UPC and date code with initials" in order to receive a refund, long after many consumers "used and discarded [the] Products," Class Compl. ¶ 83.

addition to or other than the cost of the defective products.  Therefore, even if the Class Plaintiffs obtained refunds through the recall program — and there is no evidence they did — their injuries are "likely to be redressed by a favorable judicial decision."  *Spokeo, Inc.*, 578 U.S. at 338.

Finally, even assuming that Defendant is, in fact, raising a mootness argument based on any refund that was offered or provided *after* this case was filed, the relevant claims still survive. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), such that "it is impossible for a court to grant any effectual relief whatever to the prevailing party," *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted).  The "heavy burden of persuasion rests with the party asserting mootness."  *Lamberty v. Conn. State Police Union*, No. 21-1275, 2022 WL 319841, at *2 (2d Cir. Feb. 3, 2022) (summary order) (cleaned up).  Here, Defendant fails to satisfy this burden for the reasons explained above.  That is, it does not show that the Class Plaintiffs participated in the recall program or that any refund redressed their alleged injuries.  And to the extent Defendant argues that the mere *offer* of a refund extinguishes any remaining interest in a claim, the Court is not persuaded.  For one thing, as already discussed, the relevant claims, if successful, could entitle the Class Plaintiffs to remedies other than the cost of the defective products.  Second, even if that were not the case, "there is no bar preventing [t]he plaintiffs from forgoing compensation through a voluntary refund program in order to pursue their claims in a consumer class action."  *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 523–24 (S.D.N.Y. 2018) (quoting *Leonard v. Abbott Lab'ys,* No. 10-CV-4676 (ADS), 2012 WL 764199, at *26 (E.D.N.Y. Mar. 5, 2012)); *see also Reynolds*, 136 F. Supp. 3d at 513-14.  In short, because Defendant has not shown that its recall program "completely and irrevocably eradicated the effects of the alleged violation," its refund

15

offer did not render the Class Plaintiffs' claims moot. *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004).

### 2.  Claims for Misrepresentation and Breach of Warranty

Turning to the merits, the Court begins with Defendant's challenges to the Class Plaintiffs' misrepresentation and breach-of-warranty claims, the first three of which are more technical in the nature.  To begin, Defendant argues that Stilwill and Geschwind failed to provide pre-suit notice of their warranty claims, as required by Nebraska law and New York law, respectively.  *See* Def.'s Class MTD Mem. 16-17.  This argument is contradicted by the Class Complaint, which alleges that, after Defendant issued warnings and recall notices in 2022 and 2023, "Plaintiffs . . . provided Laundress's counsel with notice via electronic and certified mail on April 12, 2023" — approximately three weeks before the Class Plaintiffs first raised their breach-of-warranty claims in the operative Consolidated Complaint.  Class Compl. ¶¶ 60, 70, 141.  According to the Class Complaint, this notice "outlin[ed] the nature of Laundress's warranties and breaches and ma[de] a demand for relief."  *Id.* ¶ 141.  That allegation suffices for present purposes.  *See, e.g.*, *Maroney v. Woodstream Corp.*, No. 19-CV-8294 (KMK), 2023 WL 6318226, at *8 (S.D.N.Y. Sept. 28, 2023) (providing that where a plaintiff alleges "the date and method" by which she "sent a pre-suit notice," the "sufficiency and timeliness of the notice is generally a question for the jury"); *see Langer v. Bos. Sci. Corp.*, 492 F. Supp. 3d 925, 935 (D. Neb. 2020); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 282-83 (E.D.N.Y. 2021).

Next, Defendant argues that Murphy's UCL and FAL claims must be dismissed because "she fails to plead her claims with the specificity required by Rule 9(b)."  Def.'s Class MTD Mem. 14.  As outlined above, Rule 9(b) requires plaintiffs alleging fraud to "(1) detail the

statements (or omissions) that the plaintiff[s] contend[] are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).  The Class Complaint satisfies these requirements by alleging that each Class Plaintiff, including Murphy, purchased certain of Defendant's relevant products after reviewing and relying on specific instances of Defendant's labeling and advertising of its products as "non-toxic," only to discover later that those products were contaminated with harmful bacteria.  *See* Class Compl. ¶¶ 3-6, 29-40, 95-97.  Because the Class Complaint "states with particularity the statements it alleges are misleading and the reasons why these statements are fraudulent," Murphy's UCL and FAL claims are adequately pleaded under Rule 9(b).  *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 147 (2d Cir. 2021).

Defendant's final technical contention is that Murphy's implied warranty claim fails under California law for lack of privity because she alleges that she purchased the relevant products from third-party e-commerce stores.  *See* Def.'s Class MTD Mem. 17.  Under California law, an action for breach of an implied warranty generally requires that the plaintiff be in vertical privity with the defendant.  *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  There is "some ambiguity in the case law" — apparently stemming from dicta in *Clemens* itself — as to whether or when an "exception to vertical privity based on written labels or advertisements of a manufacturer can apply to breach of implied warranty claims."  *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 669 n.24 (C.D. Cal. 2014).  Indeed, this Court previously held, in reliance on *Clemens*, that "privity is not required under California law for . . . breach of warranty claims where, as here, 'the plaintiff relies on written labels or advertisements of a manufacturer.'"  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y.

2015).  In the years since, however, California courts appear to have course-corrected and reaffirmed the California Supreme Court's holding in *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682 (1954), that the "written labels and advertisements" exception "[is] applicable *only* to express warranties," *id.* at 696 (emphasis added); *see Allen*, 300 F.R.D. at 669; *Lee v. Nature's Path Food, Inc.*, No. 23-CV-751 (MLH), 2023 WL 7434963, at *5 n.4 (S.D. Cal. Nov. 9, 2023); *Goldstein v. Gen. Motors LLC*, No. 19-CV-1778 (LL), 2022 WL 484995, at *9 (S.D. Cal. Feb. 16, 2022); *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-CV-2335 (GPC), 2018 WL 6300479, at *11 n.8 (S.D. Cal. Nov. 29, 2018).  The Court now follows suit.  Accordingly, Murphy's implied warranty claim must be and is dismissed.

Defendant's more substantive arguments for dismissal of the Class Plaintiffs' misrepresentation and false advertising claims all fall short.  First, Defendant argues that the Class Plaintiffs' claims under the GBL, UCL, and FAL, and their claim for breach of express warranty must be dismissed because Plaintiffs fail to "allege what levels of bacteria would render the Products toxic such that the statement 'non[-]toxic' was false or misleading."  Def.'s Class MTD Mem. 9; *see also id.* at 15 (arguing that the Class Plaintiffs' express warranty claims fail because Defendant never stated that its products "did not contain bacteria . . . on the Products or elsewhere").  But as the Class Plaintiffs point out, "the [Class] Complaint is unequivocal that the Products should not contain, or be at substantial risk of containing, *any* detectable levels of" the three kinds of bacteria found in Defendant's products.  Class Pls.' MTD Opp'n 12 (emphasis added).  This understanding of "non-toxic" accords not only with dictionary definitions of the word, but also with relevant case law.  *See, e.g.*, *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-CV-3184 (HSG), 2021 WL 3191733, at *7-9 (N.D. Cal. 2021) (discussing dictionary definitions and ordinary meaning of the word "non-toxic"); *Rivera v. S.C. Johnson &*

*Son, Inc.,* No 20-CV-3588 (RA), 2021 WL 4392300, at *4 (S.D.N.Y. Sept. 24, 2021) (deeming

plausible that the plaintiffs understood labels containing the word "non-toxic" to mean "that the

Products will not be harmful to people").  Thus, the Class Plaintiffs sufficiently allege that

Defendant's labeling and advertisement of its products as "non-toxic" was "likely to mislead a

reasonable consumer" for purposes of their claims under the GBL, UCL, and FAL, and that

Defendant made an "affirmation of fact or promise" — namely, that its products were not

contaminated by harmful bacteria — for purposes of their claim for breach of express warranty.

Class Pls.' MTD Opp'n 17; *see Rivera*, 2021 WL 4392300, at *3-4.[5]

Second, Defendant argues that the Class Plaintiffs' omission-based claims under the GBL

and UCL and their product liability claims for failure to warn must be dismissed because

Defendant was not "aware at the time of sale" that the products contained harmful bacteria.

Def.'s Class MTD Mem. 10-13.  This argument has some force, but drawing all inferences in

favor of the Class Plaintiffs, as the Court must, it falls short.  To begin, failure-to-warn claims

brought "under strict tort liability" do not require plaintiffs to prove "that the defendant knew or

should have known of the harmful character of the product without a warning."  *Assam v. Deer

Park Spring Water, Inc.*, 163 F.R.D. 400, 406 (E.D.N.Y. 1995) (internal quotation marks

omitted).  As for the omission-based claims brought under the GBL and the UCL, the Class

Plaintiffs allege that Defendant had prior knowledge of the "contamination or contamination

risk," Class Pls.' MTD Opp'n 13, based on, among other things, the products' "unique attributes

---

[5]     The Class Plaintiffs appear to have abandoned any GBL, UCL, and FAL claims and any
express warranty claims based on Defendant's representations that its products were "allergen-
free" and "biodegradable."  *See* ECF No. 30 ("Def.'s Class MTD Reply"), at 3; *compare* Def.'s
Class MTD Mem. 9-10, 15-16, *with* Class Pls.' MTD Opp'n 11-12, 17 (focusing exclusively on
Defendant's representations that their products are "non-toxic").  Any such claims are therefore
dismissed.

[that] make them particularly susceptible to bacterial contamination," Class Compl. ¶ 56; eleven consumer reports of *Pseudomonas* infections, *id.* ¶¶ 3-4, 7; the fact that Defendant is "subject to regulatory and internal quality assurance programs that . . . should identify existing and emerging risks" in its products, *id.* ¶ 52; and the timing of the recall, which suggests that Defendant recalled the products only when the CPSC became involved and its competitors were likely to disclose the risk of bacterial contamination in similar products, *id.* ¶ 7. These allegations are sufficient for the claims brought under the GBL and UCL — especially where, as here, the relevant facts are exclusively in Defendant's possession. *See Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 (NGG), 2015 WL 5686507, at *11 (E.D.N.Y. Sept. 25, 2015) (GBL); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1302-03 (S.D. Cal. 2020) (UCL); *see also, e.g.*, *In re GM Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 3920353, at *20 (S.D.N.Y. July 15, 2016) (explaining that allegations of "knowledge imputed from Old GM employees and documents" about the relevant product defect were sufficient for the class plaintiffs' UCL and FAL claims to survive a motion to dismiss).

In conclusion, the Court upholds the Class Plaintiffs' express warranty claims and their claims under the GBL, the UCL, and the FAL with respect to Defendant's representations that its products were "non-toxic." By contrast, Defendant's motion to dismiss is granted as to Murphy's claim for a breach of an implied warranty and as to any claims with respect to Defendant's representations that its products were "allergen-free" and "biodegradable."

### 3. Product Liability Claims

Defendant moves to dismiss the Class Plaintiffs' strict product liability claims on the additional ground that the Class Complaint does not adequately allege proximate causation. *See* Def.'s Class MTD Mem. 18-20. But "[c]ourts are loath to dismiss claims for lack of proximate

cause at the pleading stage," and "proximate cause may be determined as a matter of law only where *no reasonable person* could find causation based on the facts alleged in the complaint" or "without resorting to wild speculation." *Candelaria v. Conopco, Inc.*, No. 21-CV-6760 (FB), 2023 WL 2266047, at *2 (S.D.N.Y. Feb. 28, 2023) (emphasis added). Here, the Class Complaint describes the known health risks of exposure to the three types of bacteria found in Defendant's products, *see* Class Compl. ¶¶ 42-49, alleges that Murphy, Ostenfeld, and Stilwill suffered corresponding physical injuries, *see id.* ¶¶ 95-103, and alleges further that Stilwill's "infection was subsequently cultured and shown to be" one of the three types of bacteria, *see id.* ¶ 102. Although somewhat thin, these allegations are sufficient at this stage to plead proximate causation under New York's "substantial factor" causation test. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 116 (2d Cir. 2013); *Locust Valley Water Dist. v. Dow Jones Chem. Co.*, 465 F. Supp. 3d 235, 240 (E.D.N.Y. 2020) (finding proximate cause on similar alleged facts and noting that the test "recognizes that often many acts can be said to have caused a particular injury, and requires only that defendant's actions be a substantial factor in producing the injury" (internal quotation marks omitted)). Defendant's motion is therefore denied as to the strict product liability claims brought by Murphy, Ostenfeld, and Stilwill.

### 4. MMWA

Next, Defendant argues that the Court lacks subject-matter jurisdiction over the Class Plaintiffs' sole federal-law claim, under the MMWA, because they fail to meet that statute's jurisdictional threshold of 100 "named plaintiffs." Def.'s Class MTD Mem. 17; *see* 15 U.S.C. § 2310(d)(3). As the Class Plaintiffs point out, this Court held in *Weisblum* that where the jurisdictional requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), are satisfied, as is the case here, courts "may exercise subject-matter jurisdiction over a claim under

the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met." 88 F. Supp. 3d at 293-95.  At the time, that decision was consistent with the approach of "every Court of Appeals to address the issue and the vast majority of district courts." *Id.* at 295. But the "trend has shifted away from this view in recent years," and there is now a circuit split on the issue. *Ghaznavi v. De Longhi Am., Inc.*, No. 22-CV-1871 (KPF), 2023 WL 4931610, at *8 (S.D.N.Y. Aug. 2, 2023); *compare Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (unpublished), *with Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1032-35 (9th Cir. 2020), *and Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183-85 (3d Cir. 2023).

There are compelling arguments in support of this contrary view, thoroughly and ably marshaled by Judge Failla in *Ghaznavi*.  *See* 2023 WL 4931610, at *7-10; *see also Smith v. Adidas Am., Inc.*, No. 6:22-CV-788 (BKS), 2023 WL 5672576, at *4 (N.D.N.Y. Sept. 1, 2023) (following *Ghaznavi*).  Nevertheless, for now, the Court adheres to the position it took in *Weisblum*.  For one thing, the MMWA's jurisdictional provision provides that "[n]o claim shall be cognizable *in a suit brought under* paragraph (1)(B)" if its jurisdictional prerequisites are not met.  15 U.S.C. § 2310(d)(3) (emphasis added).  Here, however, the Class Plaintiffs base subject-matter jurisdiction on — and therefore *bring suit* "*under*" — CAFA, not the MMWA. Additionally, although the MMWA was intended to raise the jurisdictional threshold for class actions alleging breach of warranty claims in particular, putting MMWA claims on a different jurisdictional track from all other claims in a class action properly brought under CAFA would do nothing to prevent federal class actions from raising the same issues via breach-of-warranty claims based on state law.  More to the point, in cases like this — where a putative class brings claims under both state warranty laws and the MMWA — it would lead to a counter-intuitive, if not non-sensical, result: piecemeal litigation, with state-law claims proceeding in federal court

and federal-law claims proceeding in state court.  If the law on the relationship between CAFA

and the MMWA develops further — most notably, if the Supreme Court or Second Circuit weigh

in — the Court is prepared to revisit the issue.  But for now, the Court adheres to the view that it

has subject-matter jurisdiction over the Class Plaintiffs' MMWA claim.

### 5.  Unjust Enrichment

The Court need not dwell long on Defendant's challenge to the Class Plaintiffs' unjust

enrichment claims.  Under New York law, an unjust enrichment claim "is available only in

unusual situations when, though the defendant has not breached a contract nor committed a

recognized tort, circumstances create an equitable obligation running from the defendant to the

plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see Samiento v. World

Yacht Inc.*, 10 N.Y.3d 70, 81 (2008); *Alce v. Wise Foods, Inc.*, No. 17-CV-2402 (NRB), 2018

WL 1737750, at *11-12 (S.D.N.Y. Mar. 27, 2018).  It follows that an unjust enrichment claim "is

not available where it simply duplicates, or replaces, a conventional contract or tort claim."

*Corsello*, 18 N.Y.3d at 790.  That is the case here.  Put simply, the Class Plaintiffs' "unjust

enrichment claim is duplicative of their core theory of deception, and if [their] other claims are

defective, an unjust enrichment claim cannot remedy the defects."  *Dashnau v. Unilever Mfg.

(US), Inc.*, 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) (internal quotation marks omitted); *accord

Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021); *Weisblum*, 88 F.

Supp. 3d at 296-97.  Accordingly, the unjust enrichment claims are dismissed.

### 6.  Remedies

Finally, Defendant seeks to "strike" the Class Plaintiffs' request for restitution,

disgorgement, and medical monitoring.  But as the Class Plaintiff correctly point out, "[a] motion

to dismiss is addressed to a 'claim' — not to a form of damages."  *Farina v. Metro. Transp.*

*Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019).  Because damages are not an independent

cause of action, a motion to dismiss these damages is "procedurally premature."  *Okyere v.*

*Palisades Collection, LLC*, 961 F. Supp. 2d 522, 536 (S.D.N.Y. 2013).  The same is true for

requests for equitable relief, such as medical monitoring.  *See Sullivan v. Saint-Gobain*

*Performance Plastics Corp.*, No. 16-CV-125 (GWC), 2017 WL 3726435, at *7 (D. Vt. May 1,

2017); *Patton v. Gen. Signal Corp.*, 984 F. Supp. 666, 674 (W.D.N.Y. 1997).  Defendant is free

to renew its otherwise forceful arguments — namely, that medical monitoring is unavailable to

Stilwill as a remedy under Nebraska law, *see Trimble v. ASARCO Inc.*, 83 F. Supp. 2d 1034,

1041-42 (D. Neb. 1999), and that Geschwind's allegations of property damage are unlikely to

suffice for medical monitoring relief under New York law, *see Benoit v. Saint-Gobain*

*Performance Plastic Corp.*, 959 F.3d 491, 501-02 (2d Cir. 2020) — at a later stage.

\*     \*     \*

In conclusion, Defendant's motion to dismiss the Class Plaintiffs' claims is GRANTED

as to Murphy's claim for breach of implied warranty, any claims based on Defendant's

representations of its products as "allergen-free" and "biodegradable," and the Class Plaintiffs'

unjust enrichment claims, and is otherwise DENIED.

## C.  The Sites Complaint

Finally, Defendant separately moves to dismiss all of the claims raised in the Sites

Complaint.  For the following reasons, that motion is also granted in part and denied in part.

Specifically, the Court dismisses the Sites Plaintiffs' product liability claim for failure to warn

and their VCPA claim insofar as it is based on concealment.

### 1. Product Liability Claims

Defendant raises several distinct arguments for dismissing the Sites Plaintiffs' product liability claims.  To begin, the Court rejects Defendant's argument that all three product liability claims must be dismissed for failure to plead proximate cause.  *See* ECF No. 48 ("Def.'s Sites MTD Mem."), at 5-6.  "It is a well-established principle of Virginia products liability law that where there is more than one possible cause of an injury, the plaintiff must show, with 'reasonable certainty,' that the defendant caused the injury."  *Stokes v. L. Geismar, S.A.*, 815 F. Supp. 904, 908 (E.D. Va. 1993) (citation omitted).  But "[i]ssues of negligence and proximate causation ordinarily are questions of fact for the jury's determination," and a court decides these issues as a matter of law "only when reasonable persons could not differ."  *Dorman v. State Indus., Inc.*, 292 Va. 111, 122 (2016) (quoting *Atkinson v. Scheer*, 256 Va. 448, 453-54 (1998)).  Here, the Sites Plaintiffs allege that the bacteria found in Defendant's products can infect the "respiratory tract . . . and even the central nervous system," Sites Compl. ¶ 46, and cause "serious infections, . . . pneumonia, . . . and even death," *id.* ¶ 42; that these bacteria are "especially dangerous and life-threatening to immunocompromised individuals," *id.* ¶ 45; and that, upon exposure to the products, Elliana, an immunocompromised child, developed corresponding symptoms such as "rashes, eyelid infections/inflammation, pneumonia, [and] ear infections" and eventually passed away, *id.* ¶¶ 29-34.  Like the Class Plaintiffs' allegations, these allegations supporting causation are thin, but they are enough to survive Defendant's motion.

Second, Defendant argues that the Sites Plaintiffs' design defect claim must be dismissed for failure to allege that Defendant could have "designed the product differently before putting it into the stream of commerce" or that "an alternative design is safer overall than the design used."  Def.'s Sites MTD Mem. 7.  Whether Defendant had a duty to design its products "in a certain

way . . . is a question of law for the court, not the jury, . . . and is informed by three kinds of evidence: (1) governmental safety standards; (2) industry practices; and (3) reasonable consumer expectations." *Knapp v. Zoetis Inc.*, No. 20-CV-191 (MHL), 2022 WL 989015, at *5 (E.D. Va. Mar. 31, 2022). Therefore, "[a] bare allegation of a 'defect' is no more than a legal conclusion," and a plaintiff must allege sufficient facts "indicating how a product 'may have been [designed] improperly.'" *Dodson v. C.R. Bard, Inc.*, No. 20-CV-596 (DJN), 2020 WL 7647631, at *4 (E.D. Va. Dec. 23, 2020). Defendant attempts to overcomplicate this pleading standard by suggesting that the Sites Plaintiffs must put on chemists' hats and suggest a specific alternative design for the laundry and cleaning products at issue. But the Sites Plaintiffs cannot, without discovery, "state a defect in the [products] with granular specificity." *Knapp*, 2022 WL 989015, at *7. It is enough for present purposes that they allege that "other available household cleaning products" do not suffer from the same bacterial contamination. Sites Compl. ¶ 72; *see Knapp*, 2022 WL 989015, at *8 (drawing "a reasonable inference that a safe, alternative design to [the product] exists" from plaintiffs' identification of a similar product without the defect).

Finally, Defendant argues that the Sites Plaintiffs' failure-to-warn claim must be dismissed for failure to adequately allege that "Defendant had any knowledge that the products were defective such that a duty to warn would be triggered." Def.'s Sites MTD Mem. 9. The Court agrees. At this stage, the Sites Plaintiffs "need only allege facts to *plausibly* show that [Defendant] knew or had reason to know of a dangerous condition." *Knapp,* 2022 WL 989015, at *10; *Owens-Coming Fiberglas Corp. v. Watson,* 243 Va. 128, 134-35 (1992). But the allegations contained in the Sites Complaint fail to cross even this low threshold. In contrast to the Class Complaint, which contains more fulsome allegations about Defendant's prior knowledge based on the products' "unique attributes," consumer reports, and quality assurance

programs, *see* Class Compl. ¶¶ 3-7, 52, 56, the Sites Plaintiffs allege only that Defendant

"continued to introduce [its defective products] into the stream of commerce" for almost a month

after issuing a safety notice informing consumers of potential bacterial contamination and

directing them to "immediately stop using all The Laundress products," Sites Compl. ¶¶ 36-37.

Even when this allegation is viewed in the light most favorable to the Sites Plaintiffs, the most

that the Court can reasonably infer is that Defendant was ineffective or inefficient once it

decided to act on its "exclusive knowledge of [the] products' contamination." *Id.* ¶ 49.  The

Sites Plaintiffs therefore fail to plausibly allege that Defendant "knew or had reason to know of"

the bacterial contamination prior to its November safety notice.

Accordingly, Defendant's motion to dismiss is denied as to the Sites Plaintiffs' product

liability claims for design defect and manufacturing defect, but is granted as to their product

liability claim for failure to warn.

### 2.  Consumer Fraud Claim

Next, Defendant seeks to dismiss the Sites Plaintiffs' consumer fraud claim brought

under the VCPA.  *See* Def.'s Sites MTD Mem. 9-11.  When a VCPA claim is founded upon the

nondisclosure of a material fact, plaintiffs must allege "a knowing and deliberate decision not to

disclose that fact." *Allen v. FCA US LLC,* No. 17-CV-7 (NKM), 2017 WL 1957068, at *3 (W.D.

Va. May 10, 2017) (quoting *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 714 (2001)).  By

contrast, "a VCPA claim contains no such requirement" when based on "false representation."

*Fischer v. Fort Belvoir Residential Cmtys. LLC,* No. 22-CV-286 (RDA), 2023 WL 5352297, at

*4 (E.D. Va. Aug. 21, 2023); *accord In re Lumber Liquidators Chinese-Manufactured Flooring

Durability Mktg. & Sales Prac. Litig.*, No. 16-MD-2743 (AJT), 2017 WL 2911681, at *12 (E.D.

Va. July 7, 2017).  Here, as discussed above, the Sites Plaintiffs fail to offer more than

27

conclusory allegations that Defendant "knowingly" failed to disclose that its products were contaminated with harmful bacteria.  Accordingly, the Sites Plaintiffs' VCPA claim must be and is dismissed to the extent it is based on any "conceal[ment]" of knowledge about the contamination.  Sites Compl. ¶ 92.

Defendant argues that the Sites Plaintiffs' VCPA claims based on allegedly false representations, *see id.* ¶ 94, must also be dismissed for failure to satisfy the heightened pleading requirements of Rule 9(b).  *See* Def.'s Sites MTD Mem. 9-10.  As relevant here, the VCPA prohibits "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" and "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model," "in connection with a consumer transaction."  Va. Code § 59.1-200 (A)(5)-(6).  The VCPA should be "construe[d] liberally, in favor of the injured party."  *Ballagh v. Fauber Enters. Inc.*, 290 Va. 120, 125 (2015).  Therefore, while the requirements of Rule 9(b) apply to VCPA claims sounding in fraud, *see Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir 2015), "misrepresentations providing the basis of a VCPA claim need not be pled with the same kind of particularity as common law fraud claims," *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 553-54 (E.D. Va. 2001).  Here, the Sites Plaintiffs allege that "[o]ne of The Laundress's co-founders" and the company itself described and marketed its products as "non- toxic"; that these products were "offered for sale online . . . as well as in stores"; and that the products were nevertheless contaminated with harmful bacteria and caused Elliana's death.  Sites Compl. ¶¶ 16-18, 21, 25, 35.  These allegations suffice under both Rule 9(b) and the VCPA at this stage.  *See Blount v. Greenbrier Pontiac Oldsmobile-GMC Trucks Kia, Inc.*, No. 08-CV-622 (MHL), 2009 WL 2431587, at *6 (E.D. Va. Aug. 7, 2009).

### 3. **Warranty Claims**

Defendant's challenges to the Sites Plaintiffs' breach-of-warranty claims can be swiftly rejected. First, Defendant's contention that the Sites Plaintiffs fail to allege any basis for their express warranty claim other than Defendant's marketing of the products as "luxury," Def.'s Sites MTD Mem. 12, is flatly contradicted by the Sites Complaint, which alleges that Defendant expressly warrantied that the products were "'non-toxic' and safe for use by consumers, that they were of merchantable quality, and that they were adequately tested and fit for their intended use." Sites Compl. ¶¶ 103, 105. Next, Defendant appears to argue that the Sites Plaintiffs' claim for breach of the implied warranty of merchantability must be dismissed for failure to allege that the products were "unreasonably dangerous." Def.'s Sites MTD Mem. 13. But, as noted, the Sites Plaintiffs allege that harmful bacteria contained in Defendant's products caused their daughter's death, which suffices. Sites Compl. ¶¶ 29-35. Finally, Defendant argues that the Sites Plaintiffs fail to state a claim for breach of the implied warranty of fitness for a particular purpose under Virginia law because they do not plead a "particular purpose" for which the products were used. Def.'s Sites MTD Mem. 14-15. But the Sites Plaintiffs allege that they used Defendant's products to "clean the surfaces of Elliana's medical equipment including but not limited to her portable suction machine, oxygen concentrator, CPAP, pulse oximeter, airway clearance vest system, and automatic cough assist," Sites Compl. ¶ 28, in addition to more traditional uses of the products to "clean numerous surfaces and fabrics throughout their household including but not limited to bedding, blankets, pillows, clothing, bed frames, and dressers," *id.* ¶ 27. Plaintiffs further allege that Defendant's recall website specifies a higher risk of infection for "[p]eople with weakened immune systems[] [and] external medical devices," *id.* ¶ 48, suggesting that Defendant "had reason to know" that the products were used to clean

external medical equipment for immunocompromised people, *Porter v. DePuy Orthopaedics, Inc.*, No. 19-CV-7 (REP), 2019 WL 3979656, at *11 (E.D. Va. Aug. 6, 2019).  Accordingly, Defendant's motion is denied as to the Sites Plaintiffs' breach-of-warranty claims.

### 4.  Wrongful Death and Punitive Damages

Finally, Defendant seeks to dismiss the Sites Plaintiffs' wrongful death claim and their request for punitive damages.  Defendant's only argument for dismissing the wrongful death claim is that Virginia law does not provide for such a cause of action.  Def.'s Sites MTD Mem. 15.  As the Sites Plaintiffs note, however, the authority that Defendant cites in support of this argument is not relevant to this case.  *See* ECF No. 52, at 17.  Moreover, "[a] wrongful death action is," in fact, "a statutory action created by" Virginia law.  *Kone v. Wilson,* 272 Va. 59, 62 (2006).  Meanwhile, Defendant's motion to dismiss the Sites Plaintiffs' request for punitive damages is — like its motion to dismiss the Class Plaintiffs' requests for relief — premature, as "Rule 12(b)(6) does not allow the dismissal of a request for a remedy."  *Meeks v. Emiabata*, No. 14-CV-534 (EKD), 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015).  The Court therefore "finds that the issue of punitive damages is premature at this point, and that the interests of justice would be better served by considering punitive damages after discovery has been conducted."  *Gentry v. Va. Hosp. Ctr. Arlington Health Sys.*, No. 20-CV-1018 (LO), 2021 WL 5078810, at *7 (E.D. Va. Apr. 28, 2021).  Accordingly, the Court denies Defendant's motion to dismiss the Sites Plaintiffs' wrongful death claim and their request for punitive damages.

*       *       *

In conclusion, Defendant's motion to dismiss the Sites Plaintiffs' claims is GRANTED as to their product liability claim for failure to warn and their VCPA claim based on concealment and is otherwise DENIED.

**CONCLUSION**

In sum, Defendant's motion to strike the class allegations in the Class Complaint is DENIED, whereas its motions to dismiss the Class Complaint and the Sites Complaint are GRANTED in part and DENIED in part.  More specifically, all claims survive other than the following: the Class Plaintiffs' unjust enrichment claim, Murphy's claim for breach of an implied warranty, the Class Plaintiffs' claims based on Defendant's representations that its products were "allergen-free" and "biodegradable," the Sites Plaintiffs' product liability claim for failure to warn, and the Sites Plaintiffs' VCPA claim based on concealment.

That leaves the question of whether the Court should grant leave to amend any of the dismissed claims.  Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007).  Here, leave to amend is not warranted for any of the Class Plaintiffs' dismissed claims because the defects in those claims are substantive (the unjust enrichment claim) or conceded (Murphy's implied warranty claim), or the claims were abandoned (the claims based on Defendant's representations that its products were "allergen-free" and "biodegradable").  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading).  Meanwhile, the more fulsome allegations contained in the Class Complaint suggest that the Sites Plaintiffs may be able to remedy the defects in their pleadings regarding Defendant's prior knowledge of the bacterial contamination.  Accordingly, the Court grants the Sites Plaintiffs leave to amend their product liability claim for failure to

31

warn, as well as their claim under the VCPA insofar as it is based on concealment.  Any such amended complaint shall be filed by **March 19, 2024.**

Unless and until the Court orders otherwise, Defendant shall file its Answer to the Class Plaintiffs' remaining claims within **two weeks** of the date of this Opinion and Order.  *See* Fed. R. Civ. P. 12(a)(4)(A).  Defendant shall file an answer or otherwise respond to the Sites Plaintiffs' remaining claims **within three weeks of March 19, 2024 or the filing by the Sites Plaintiffs of a Fourth Amended Complaint**, whichever is earlier.  By separate Order, the Court will schedule an initial pretrial conference in these and the related cases.

The Clerk of Court is directed to terminate ECF Nos. 17, 19, and 47, and to terminate Unilever United States Inc. as a Defendant.

SO ORDERED.

Dated: March 5, 2024
      New York, New York

JESSE M. FURMAN
United States District Judge