UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                             :

IN RE LAUNDRESS MARKETING AND PRODUCT   :
LIABILITY LITIGATION                            :

                             :

                             :          22-CV-10667 (JMF)

                             :

*This Document Relates To:*                   :          <u>OPINION AND ORDER</u>
*Safran v. The Laundress, LLC*, No. 24-CV-865 (JMF)   :
*Nixon v. The Laundress, LLC*, No. 24-CV-1630 (JMF)   :
*Macha v. The Laundress, LLC*, No. 24-CV-2108 (JMF)   :

                             :

------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In 2022, The Laundress, LLC, a manufacturer and distributor of luxury cleaning and

laundry products, recalled approximately eight million units of its products, citing potential

contamination with harmful bacteria. Several lawsuits against The Laundress, since

consolidated, followed, including a putative class action brought by Lori Ostenfeld, Judy Stilwill,

Deborah Geschwind, and Margaret Murphy (the "Class Action"), *see* ECF Nos. 16, 19; and a

case brought by Ashley Sites and Gabriel Yibale (the "Sites Action"), *see* ECF Nos. 46, 47. In

an Opinion and Order entered March 5, 2024, this Court granted in part and denied in part The

Laundress's motions to dismiss the claims in those cases. *See Ostenfeld v. Laundress, LLC*, No.

22-CV-10667 (JMF), 2024 WL 967124 (S.D.N.Y. Mar. 5, 2024) (ECF No. 86) ("*Laundress I*").

      Now pending are The Laundress's motions to dismiss, pursuant to Rules 9(b) and 12(b)

of the Federal Rules of Civil Procedure, three other consolidated cases: one brought by Plaintiff

David Safran, *see* 24-CV-865 (the "Safran Action"); the second brought by Plaintiff Stephanie

Michelle Nixon, *see* 24-CV-1630 (the "Nixon Action"); and the third brought by Plaintiffs Olga

Macha and Lauris Macs (collectively, the "Macha Plaintiffs") on behalf of their minor child,

A.S., *see* 24-CV-2108 (the "Macha Action").  *See* ECF Nos. 104, 106, 137.[1]  The Court assumes familiarity with the background and its prior Opinion and Order.  For the reasons that follow, the Court GRANTS in part and DENIES in part all three motions to dismiss.

## DISCUSSION

As noted, The Laundress moves to dismiss pursuant to Rules 9(b) and 12(b)(6).  The latter requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Further, if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed."  *Id.* at 570.

With respect to Plaintiffs' claims sounding in fraud, Rule 9(b) imposes a heightened pleading standard.  *See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320 (S.D.N.Y. 2012).  Specifically, such claims must "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  To satisfy that standard, a complaint must "allege facts that give rise to a strong inference of fraudulent intent."  *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir.

---

[1]    As discussed below, the Nixon Action is brought against The Laundress *and* its parent company, Conopco, Inc. ("Unilever"), which joins in the motion to dismiss.

1995).  That is, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted).  Failure to satisfy Rule 9(b) is grounds for dismissal.  *See, e.g.*, *id.* at 293; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

Mindful of these standards, the Court will address each argument in turn.  As the parties agree, Illinois law governs Safran's claims, *see* ECF No. 105, at 4 ("Safran Def.'s Mem."); ECF No. 124 ("Safran Opp'n"), at 8; Maryland law governs Nixon's claims, *see* ECF No. 107 ("Nixon Def.'s Mem."), at 4; ECF No. 117 ("Nixon Opp'n"), at 7; and Florida law governs Macha's and Macs' claims, *see* ECF No. 138 ("Macha Def.'s Mem."), at 4; ECF No. 140 ("Macha Opp'n"), at 6.  *See In re AXA Equitable Life Ins. Co. COI Litig*., 595 F. Supp. 3d 196, 238 (S.D.N.Y. 2022) (discussing New York case law regarding choice of law in tort cases).

## A.  Claims Against Unilever

As a threshold matter, Unilever is easily dismissed as a Defendant in the Nixon Action. Nixon fails to "distinguish [Unilever's] conduct . . . to give adequate notice . . . as to what [it] did wrong," *Appalachian Enters., Inc. v. Epayment Sols. Ltd.,* No. 01-CV-11502 (GBD), 2004 WL 2813121, at *6 (S.D.N.Y. 2004), beyond making broad and conclusory allegation that Unilever "manufactures, markets, designs, promotes, and/or distributes The Laundress Products" since acquiring the company in 2019, *see* 24-CV-1630, ECF No. 1 ("Nixon Compl."), ¶ 10.[2] Furthermore, under Maryland law, it is well established that a parent corporation is generally not

---

[2]    That dooms Nixon's claims against Unilever, but it does not follow, as The Laundress suggests, that Nixon's Complaint should be dismissed in its entirety on account of group pleading.  *See* Nixon Def.'s Mem. 5.  As Defendants themselves argue, the problem with the Nixon Complaint is that it fails to make allegations that are specific to *Unilever*, not The Laundress.  *See id.*

liable for the actions of its subsidiary unless certain narrow exceptions are met.  *See Dixon v. Process Corp.*, 38 Md. App. 644, 654 (1978) ("[T]he [subsidiary's] corporate entity will be disregarded only when necessary to prevent fraud or to enforce a paramount equity."); *Dolan v. Kent Rsch. & Mfg. Co.*, 63 Md. App. 55, 67 (1985) (declining to hold the parent company liable because "[n]either situation" identified in *Dixon* applied, and the parent company did not "exercise[] sufficient control to render [the subsidiary] a mere instrumentality").  Here, Nixon makes no allegations from which the Court can draw "the reasonable inference" that The Laundress was a "mere instrumentality" of Unilever.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (first quotation).  Accordingly, the claims against Unilever must be and are dismissed in the Nixon Action.  That leaves The Laundress as the sole Defendant in all three actions.

## B.  Strict Liability and Negligence

Next, The Laundress raises various arguments — some recycled from its earlier motion to dismiss and some new — to dismiss the strict liability and negligence claims in all three actions.  As an initial matter, one of The Laundress's arguments for dismissing the Macha Plaintiffs' strict liability and negligence claims for manufacturing defect and design defect is easily rejected.  The Laundress argues that these claims must be dismissed because the Macha Plaintiffs "plead no facts whatsoever as to how the Products allegedly deviated from their manufacturing specifications," and "simply claim that 'the Products were contaminated and unreasonably dangerous for use'" rather than "alleged any 'defect.'"  Macha Def.'s Mem. 8-9; *see also* ECF No. 141 ("Macha Def.'s Reply"), at 3-6.  Under Florida law, however, the Macha Plaintiffs are not even required to "plead[] specifically that the defect in the product came from its design or, instead, its manufacture . . . to make the claim a strict liability claim."  *McConnell v. Union Carbide Corp.*, 937 So.2d 148, 152 (Fla. Dist. Ct. App. 2006) (citing *Ford Motor Co. v.*

*Hill*, 404 So.2d 1049, 1052 (Fla. 1981)). Instead, it is enough that they allege that The Laundress's products, "due to [their] design, [were] dangerous at the time of" their use, *id.*, in "consideration of the normal public expectation of danger," *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999) (internal quotation marks omitted), and despite the Macha Plaintiffs' "normal usage of the product," *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224 (M.D. Fla. 2009); *see* Macha Opp'n 7-9; ECF No. 136 ("Macha Compl."), ¶¶ 33, 47(a), 47(d), 51-52. Suffice it to say, bacterial contamination counts as such a "defect" in cleaning products and detergents.

Beyond that, The Laundress's instant motions recycle two of its arguments for dismissal of the strict liability and negligence claims in the Class Action and the Sites Action: (1) failure to allege proximate cause and (2) failure to allege The Laundress's knowledge of contamination. The Court will consider these arguments in turn.

### 1. Proximate Cause

The Laundress argues that Plaintiffs in all three actions fail to allege proximate causation, which is a required element for strict liability and negligence claims in Illinois, Maryland, and Florida. *See* Safran Def.'s Mem. 5; Nixon Def.'s Mem. 6; Macha Def.'s Mem. 4-7. But it is well established in all three states, as it is in New York, that "proximate cause may be determined as a matter of law only where *no reasonable person* could find causation based on the facts alleged in the complaint." *Laundress I*, 2024 WL 967124, at *9 (quoting *Candelaria v. Conopco, Inc.*, No. 21-CV-6760 (FB), 2023 WL 2266047, at *2 (S.D.N.Y. Feb. 28, 2023)); *see Brady v. Walmart, Inc.*, No. 21-CV-1412 (AAQ), 2022 WL 2987078, at *13 (D. Md. July 28, 2022) (citing *Segerman v. Jones*, 256 Md. 109, 135 (1969)); *Fitzgibbon v. Nat'l Broad. Co.*, 732 N.E.2d 64, 65 (Ill. App. Ct. 2000) (citing *First Springfield Bank & Trust v. Galman*, 720 N.E.2d

1068, 1071 (Ill. 1999)); *Seminole Lakes Homeowner's Ass'n, Inc. v. Esnard*, 263 So. 3d 56, 58

(Fla. Dist. Ct. App. 2018) (citing *Nat'l Airlines, Inc. v. Edwards*, 336 So. 2d 545, 547 (Fla.

1976)).  Here, all three Complaints allege that The Laundress's products contained three types of

harmful bacteria, *see* Safran Compl. ¶ 17; Nixon Compl. ¶¶ 29-30; Macha Compl. ¶ 26; that

Plaintiffs purchased and used those products, *see* Safran Compl. ¶¶ 44-47; Nixon Compl. ¶¶ 22-

23; Macha Compl. ¶¶ 15-17; and that, thereafter, Safran, Nixon, and A.S. were medically

diagnosed to have been affected by one or more of the three types of bacteria, *see* Safran Compl.

¶ 48; Nixon Compl. ¶¶ 23-29; Macha Compl. ¶¶ 20-21.  The Laundress's contention that

Plaintiffs merely allege that "there is a *potential* for contamination, not that all Products subject

to the recall are in fact contaminated," thus verges on the frivolous.  Macha Def.'s Mem. 6; *see*

*also* Nixon Def.'s Mem. 7; Safran Def.'s Mem. 6.  At this stage in the litigation, Plaintiffs may

rely primarily on The Laundress's own recall notice rather than, for example, their own scientific

analyses of The Laundress's products.  *See Rosser v. Sanofi-Aventis*, No. 17-CV-2396 (VSB),

2018 WL 4080351, at *5 n.8 (S.D.N.Y. Aug. 26, 2018).  In short, all in all, "[a]lthough

somewhat thin," Plaintiffs' allegations are sufficient at this stage to plead proximate causation

under the laws of all three states.  *Laundress I*, 2024 WL 967124, at *9; *see Pittway Corp. v.*

*Collins*, 973 A.2d 771, 786-77 (Md. 2009); *Fitzgibbon*, 732 N.E.2d at 65-66; *Ruiz v. Tenet*

*Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 981-82 (Fla. 2018).

      None of The Laundress's other arguments to the contrary are persuasive.  First, with

respect to the Macha Action in particular, The Laundress emphasizes that Florida law requires "a

party [to] plead the 'but for' test to satisfy the proximate cause requirement."  Macha Def.'s

Mem. 5 (quoting *Jones v. Utica Mut. Ins.*, 463 So. 2d 1153, 1156 (Fla. 1985)); *see also* Macha

Def.'s Reply 2.  But that does not necessarily set the bar higher in Florida.  Under Florida law,

"the phrase 'but for' is meant to convey the principle that a defendant's actions must, 'more likely than not,' have been 'a substantial factor' in producing the injury." *Cohen v. Philip Morris USA, Inc.*, 203 So. 3d 942, 950 (Fla. Dist. Ct. App. 2016) (quoting *Whitney v. R.J. Reynolds Tobacco Co.*, 157 So. 3d 309, 312-14 (Fla. Dist. Ct. App. 2014)).  In any case, any distinction would not matter at this stage of the litigation, as the Macha Plaintiffs sufficiently allege that The Laundress's products were the "bur for" cause of A.S.'s disease for the reasons discussed above.  *See, e.g.*, Macha Compl. ¶¶ 42-45 (alleging that The Laundresss' manufacturing and sale of "products that were contaminated with potentially lethal bacteria . . . resulted in [A.S.'s] significant and painful bodily injuries" and that the Macha Plaintiffs "did not misuse or materially alter the products").  Tellingly, The Laundress does not even raise this point in its motion to dismiss the Nixon Action — even though Maryland law does *in fact* apply the "but for" test as it is traditionally understood.  *See Pittway Corp.*, 973 A.2d at 786-87.

Second, The Laundress argues that the product liability claims in the Nixon and Macha Actions suffer from the same issues that befell their counterparts in *Thomas v. Ethicon, Inc.*, No. 20-CV-3729 (GLR), 2021 WL 6126300 (D. Md. Dec. 28, 2021), and *Sparks v. Medtronic, Inc.*, No. 20-CV-3074 (SCB), 2021 WL 2649235 (M.D. Fla. June 28, 2021), both product liability cases concerning surgical mesh.  In those cases, the plaintiffs' product liability claims were dismissed on the ground that they failed to allege a causal link between their injury and the alleged product defect.  *See* Nixon Def.'s Mem. 6-7 (citing *Thomas*, 2021 WL 6126300, at *6); Macha Def.'s Mem. 2-3 (citing *Sparks*, 2021 WL 2649235, at *2).  These cases, however, are easily distinguished.  For starters, unlike the plaintiff in *Sparks*, the Macha Plaintiffs *do* allege that The Laundress's products were "*inherently dangerous* to consumers, including Plaintiffs." Macha Compl. ¶¶ 33-34 (emphasis added).  And the fact that Nixon's *pseudomonas aeruginosa*

and A.S.'s acute bacterial pneumonia were caused by the same exact type or types of bacteria with which The Laundress's products were contaminated after Nixon and A.S. consistently used those products is enough to allege that Nixon's and A.S.'s injuries were caused by The Laundress's products.  *See* Nixon Compl. ¶¶ 3,4; Macha Compl. ¶¶ 21, 26.

      Accordingly, the strict liability and negligence claims in all three actions are sufficiently pleaded to overcome The Laundresss' proximate cause challenge at this stage.

### 2.  The Laundress's Knowledge of Contamination

      Next, The Laundress argues that Safran's and the Macha Plaintiffs' claims for failure to warn must be dismissed, primarily because they fail to allege that The Laundress "knew or had reason to know about the potential risk of contamination before [it] issued the Safety Notice on November 17, 2022, or initiated its recall on December 1, 2022."  Safran Def.'s Mem. 7; *see* Macha Def.'s Mem. 11.  This argument is without merit.  To begin, contrary to The Laundress's argument that the Safran Complaint "mimics the [conclusory] allegations" in the Sites Action, Safran Def.'s Mem. 7; *see also Laundress I*, 2024 WL 967124, at *12, Safran alleges that the "[p]roducts' unique attributes make them particularly susceptible to bacterial contamination" because they contain "ingredients . . . that greatly promote bacterial growth," Safran Compl. ¶ 36; that The Laundress decided not to include adequate amounts of "preservatives or biocidal or antimicrobial agents" even though the "use of preservatives and biocidal or microbial agents and treatments are ubiquitous throughout the cleaning product industry," *id.* ¶¶ 55-56; and that, "[a]t least since January 2021," The Laundress was "on notice" of the contamination given the "eleven (11) consumer reports of injuries caused by the Products' bacterial contamination," *id.* ¶ 53.  These allegations are closer to the allegations in the Class Action Complaint, which the Court deemed sufficient to allege prior knowledge under California law in *Laundress I.  See*

2024 WL 967124, at *9.  They also pass muster under Illinois law because they are enough to support a reasonable inference that, "at the time of manufacture," The Laundress "knew or should have known of the hazard." *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1160 (Ill. 2011); *see also Daniels v. ArvinMeritor, Inc.*, 146 N.E.3d 655, 676 (Ill. App. Ct. 2019) (noting that "industry standards, i.e., state of the art" may be "an aid to the jury in determining the feasible practices and what defendant knew or should have known").  Because that disposes of The Laundress's only argument for dismissing Safran's failure-to-warn claim, The Laundress's motion to dismiss the Safran Complaint is and must be denied as to that claim.

The Laundress's arguments for dismissing the Macha Plaintiffs' failure-to-warn claims are even more easily rejected.  For starters, the Macha Plaintiffs allege that The Laundress failed to alert them of the potential contamination *after* The Laundress issued its recall notice and therefore already knew about the potential defects in its products.  *See* Macha Compl. ¶¶ 28-29 (alleging that the Macha "Plaintiffs did not learn about the safety notice and the recall" even though they "maintained their account with The Laundress on-line store" and The Laundress "certainly knew [the Macha] Plaintiffs' contact information including, but not limited to, their mailing address and email").  Undeterred, The Laundress also argues that the Macha Plaintiffs' failure-to-warn claim fails because they fail to "plead the content of the warning label or otherwise describe the manner in which the warning was inadequate."  Macha Def.'s Mem. 10-11 (quoting *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1338 (S.D. Fla. 2020)).  But while the Macha Complaint makes no specific reference to a "warning label," the Macha Plaintiffs have "otherwise described the manner in which the warning was inadequate by alleging that [The Laundress] failed to warn [them] that [they] could get a bacterial infection from using" the products.  *Packer v. Kimberly-Clark Worldwide, Inc.*, No. 22-CV-930 (WFJ), 2022 WL

4355734, at *2 (M.D. Fla. Sept. 20, 2022).  Accordingly, The Laundress's motion to dismiss the Macha Plaintiffs' strict liability and negligence claims for failure to warn must be and is denied.

## C.  Safran's Claim Under the Illinois Consumer Fraud Statute

Next, The Laundress contends that Safran's claim for violation of the Illinois Consumer Fraud Statute ("ICFS"), 816 Ill. Comp. Stat. 505/2, must be dismissed for either of two reasons. The first — that Safran "does not plausibly allege The Laundress had knowledge of potential contamination at any time before it issued its Safety Notice and initiated a recall" — falls short for the reasons discussed above.  Safran Def.'s Mem. 9.  The second — that Safran fails to meet Rule 9(b)'s pleading standard for fraud claims — is just as easily rejected.  *See id.* at 7-8. Contrary to The Laundress's contention that Safran fails to "point[] to specific, allegedly deceptive language (or omissions) that were allegedly fraudulent" and fails "to identify where and when the allegedly deceptive statements (or omissions) [were] made or to explain why the statements were fraudulent," *id.*, Safran specifically alleges that The Laundress labeled the relevant products as "[n]on-toxic," Safran Compl. ¶¶ 11, 20, 45; that The Laundress "highlighted [its] Products on social media as non-toxic," *id.* ¶ 12; that The Laundress "did not disclose that the Products contained bacteria (in the ingredient section or otherwise)," *id.* ¶ 44; that The Laundress so marketed the relevant products "[f]rom at least January 2021 until November 2022," *id.* ¶ 18; and that the products were in fact "contaminated with, or were at unreasonable risk of being contaminated with, a highly toxic cocktail of bacteria," contrary to The Laundress's labeling and the social media marketing, *id.* ¶ 20.  As the Court held with respect to substantially similar (if not sparser) allegations in the Class Action and the Sites Action, these allegations suffice under Rule 9(b).  *See Laundress I*, 2024 WL 967124, at *8, 12.  They are also enough

under the ICFS.  *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593-95 (Ill. 1997).

Thus, The Laundress's motion to dismiss Safran's ICFS claim must be and is denied.

### D.  Breach of Warranty

That leaves The Laundress's arguments for dismissing Nixon's and Safran's warranty claims.  Safran, for his part, altogether fails to address The Laundress's arguments regarding his warranty claims.  Because "[a] party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim," The Laundress's motion to dismiss Safran's warranty claims must be and is granted.  *Bolden v. Amtrak*, No. 21-CV-2068 (CSB), 2021 WL 6104827, at *1 (C.D. Ill. May 24, 2021); *see also Simon v. City of New York*, No. 14-CV-8391 (JMF), 2015 WL 2069436, at *2 (S.D.N.Y. May 4, 2015).  Nixon does address The Laundress's arguments, *see* Nixon Opp'n 12-13, but his warranty claims do not fare much better.  The Laundress argues that Nixon's implied and express warranty claims must be dismissed because Nixon "fails to allege [that] she provided any pre-suit notice to [The Laundress]."  Nixon Def.'s Mem. 8; *see Palmer v. CVS Health*, No. 17-938 (CCB), 2019 WL 6529163, at *6 (D. Md. Dec. 4, 2019) (explaining that a buyer is "barred from any remedy" if she does not notify the seller of breach "within a reasonable time after [s]he discovers or should have discovered any breach" (quoting Md. Code § 2-607(3)(a))).  Nixon all but acknowledges this failure, merely requesting "leave to amend her Complaint to include the dates of notice in order to assuage [The Laundress's] complaints and concerns."  Nixon Opp'n 12.  Accordingly, Nixon's implied and express warranty claims must be and are dismissed on that basis alone.

The Laundress's other argument for dismissal of Nixon's claims nevertheless warrants consideration, if only to determine whether and to what extent allowing Nixon to amend to allege pre-suit notice would be "futile."  *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-

8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019). The Laundress argues that Nixon's express warranty claim must be dismissed for the additional reason that Nixon fails to allege privity with The Laundress, which is a required element under Maryland law. *See* Nixon Def.'s Mem. 8 (citing *H&M Co., Inc. v. Tech. Heat Transfer Servs., Inc.*, No. 14-1518 (TDC), 2015 WL 1472000, at *4 (D. Md. Mar. 30, 2015). Here too, Nixon fails to offer any substantive response and merely "requests leave to amend her Complaint to allege privity as necessary." Nixon Opp'n 12-13. Even assuming (generously) that such a response does not amount to forfeiture of the express warranty claim, *see Simon*, 2015 WL 2069436, at *2, Nixon fails to (and will be unable to amend her Complaint to) allege privity given that she received The Laundress's products through FabFitFun, a subscription box program, *see* Nixon Compl. ¶ 2; *see also H&M Co.*, 2015 WL 1472000, at *4 (dismissing a claim for breach of express warranty where the plaintiff contracted with a third party that, in turn, contracted with the defendant). It follows that repleading Nixon's express warranty claim to allege pre-suit notice would be futile and, thus, leave to amend is denied as to that claim. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (per curiam). By contrast, privity is "not a required element that must be shown independently" for an implied warranty claim. *Ford Motor Co. v. General Accident Ins. Co.*, 779 A.2d 362, 376 (2001). Accordingly, and because The Laundress does not dispute that Nixon did in fact provide pre-suit notice "on December 5, 2022; December 16, 2022; and again on May 11, 2023," Nixon Opp'n 12, the Court grants Nixon leave to amend her implied warranty claims to allege pre-suit notice.

## CONCLUSION

In sum, The Laundress's motions to dismiss the Safran Complaint, the Nixon Complaint, and the Macha Complaint are GRANTED as to Safran's warranty claims (Counts VI and VII)

and Nixon's warranty claims (Counts III, IV, and V), and otherwise DENIED.  In addition, all of Nixon's claims against Unilever are DISMISSED.  Nixon is, however, granted leave to amend her implied warranty claims to allege pre-suit notice.  Any such amended complaint shall be filed **within two weeks of the date of this Opinion and Order.**

Unless and until the Court orders otherwise, The Laundress shall file its Answers to Safran's and the Macha Plaintiffs' remaining claims within **two weeks of the date of this Opinion and Order**.  *See* Fed. R. Civ. P. 12(a)(4)(A).  The Laundress shall file an answer or otherwise respond to Nixon's remaining claims **within four weeks of the date of this Opinion and Order or two weeks of the filing of her amended complaint**, whichever is earlier.

The Clerk of Court is directed to terminate ECF Nos. 104, 106, and 137, and to terminate Conopco, Inc. (Unilever) as a Defendant in the Nixon Action.

SO ORDERED.

Dated: November 13, 2024
New York, New York

_____
JESSE M. FURMAN
United States District Judge