UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In Re Laundress Marketing and Product Liability Litigation* | Master Docket No.: 1:22-cv-10667-JMF |
| This Document Relates to: | *Ostenfeld, et al. v. The Laundress, LLC*, No.: 1:22-cv-10667-JMF |

**PLAINTIFF DEBORAH GESCHWIND'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

FACTUAL BACKGROUND .......................................................................................3

    A. Before and During the Class Period, The Laundress Knew About Systemic
       Qualify Control and Bacterial Contamination Issues Plaguing its Products ...............3

    B. During the Class Period, Bacterial Contamination Impacted All Products .................5

    C. In December 2022, The Laundress Recalls All Products Due to Bacterial
       Contamination...........................................................................................................6

    D. Ms. Geschwind and Class Members Suffered Economic Injury By Purchasing
       Contaminated Products That Were Recalled .............................................................7

    E. Class Definition, Appointment of Representatives and Counsel, and Class
       Claims ......................................................................................................................8

ARGUMENT .............................................................................................................9

    A. Standard for Rule 23 Certification ..........................................................................9

    B. Rule 23(a) .............................................................................................................10

        1. Numerosity ......................................................................................................10

        2. Commonality....................................................................................................10

        3. Typicality .........................................................................................................11

        4. Adequacy .........................................................................................................12

        5. Ascertainability ................................................................................................13

    C. Predominance (Rule 23(b)(3)) ..............................................................................14

        1. GBL§§ 349-50 .................................................................................................14

          a. Out-of-State Class Members Have Statutory Standing........................................14

          b. GBL §§ 349-50 Liability Can Be Established for Each Class Member
            Using Generalized Proof......................................................................................15

2. Breach of Implied Warranty ...................................................................17

    a. Substantive New York Law Governs the Implied Warranty Claim ..................17

    b. Class-Wide Breach Can Be Established Using Generalized Proof ....................18

3. MMWA ...........................................................................................20

4. Class-Wide Damages .........................................................................21

    a. Ms. Geschwind and the Class Have Standing and Unremedied Damages .........21

    b. Ms. Geschwind Has Proposed an Adequate Class-Wide Damages
       Method ..................................................................................23

5. Superiority......................................................................................25

CONCLUSION.......................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .... 17

*Adam v. Barone*, 41 F.4th 230 (3d Cir. 2022).................................................................................. 21

*Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373 (E.D.N.Y. 2022)...................................... 9, 14

*Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) ............................................................ 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)............................................ 23

*Andrews v. Sazerac Co., Inc.*, No. 23-CV-1060 (AS), 2025 WL 1808797 (S.D.N.Y. July 1, 2025)
............................................................................................................................................... 12

*Bardsley v. Nonni's Foods LLC*, No. 20 CIV. 2979 (NSR), 2023 WL 3570550, at *5 (S.D.N.Y.
May 18, 2023)........................................................................................................................ 24

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)................................................................. 21

*Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002)............................... 11

*Campbell-Ewald Co. v. Gomez* , 577 U.S. 153 (2016) ................................................................. 23

*Cliffstar Corp. v. Elmar Indus., Inc.,* 254 A.D.2d 723, 678 N.Y.S.2d 222 (4th Dep't 1998) ....... 20

*Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628 (S.D.N.Y. 2016).................................. 15

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........................................................................... 23

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ....................................... 10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 99 (2d Cir. 2007) 12

*Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) ...................................... 24

*Cruz v. FXDirectDealer*, LLC, 720 F.3d 115 (2d Cir. 2013) ...................................................... 14

*Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019) ..................................... 24

*Denny v. Ford Motor Co.*, 662 N.E.2d 730 (N.Y. 1995) .............................................................. 18

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)..................................................................................... 20

*Dial Corp. v. News Corp.*, 314 F.R.D. 108 (S.D.N.Y. 2015) ................................................ 12, 23

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561(S.D.N.Y. 2014) ............................................... 13, 17

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) ........................................... 13

*Famular v. Whirlpool Corp.*, No. 16 CV 944 (VB), 2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019)
............................................................................................................................................... 24

*Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) ....................................................... 10

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374 (S.D.N.Y. 2016)
............................................................................................................................................... 17

*Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021).... 19

*Guariglia v. Procter & Gamble Co.*, No. 215CV04307ADSSIL, 2018 WL 1335356 (E.D.N.Y.
Mar. 14, 2018)....................................................................................................................... 16

*Gutierrez v. Lemonade, Inc.*, No. 21-CV-7070 (JGK), 2022 WL 3214852 (S.D.N.Y. Aug. 9,
2022) ...................................................................................................................................... 15

*Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019) ........................... 9, 12, 14, 16

*Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989 (C.D. Cal. 2024)....................... 21

*Hill v. City of New York*, 136 F. Supp. 3d 304 (E.D.N.Y. 2015))................................................ 10

*Hughes v. The Ester C Co.*, 317 F.R.D. 333 (E.D.N.Y. 2016) .................................................... 11

*In re Agent Orange Prod. Liab.*, 818 F.2d 145 (2d Cir. 1987).................................................... 10

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) .............................................. 23

*In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 238 (S.D.N.Y. 2022) (Furman, J.) ....................................................................................................................................... 18

*In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28 (1st Cir. 2022)/ . 23

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ............................................. 9

*In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581 (S.D.N.Y. 2021) ................. 9, 11

*In re Magnetic Audiotape Antitrust Litig.*, No. 99-CV-1580, 2001 WL 619305 (S.D.N.Y. June 6, 2001) ........................................................................................................................................... 23

*In re Mattel*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008) .................................................................. 22

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) ......... 23

*In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) .............................................................. 13

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ................................................ 9, 17

In re Visa  check/MasterMoney Antitrust Litig., 280 F.3d 124 (2d Cir. 2001) ............................. 9

*Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647 (JS)(SIL), 2017 WL 8813132 (E.D.N.Y. Dec. 28, 2017) ........................................................................................................................................... 10

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (N.Y. 2012) .......................................... 16

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017) ................................... 12, 14, 17

*Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622 (7th Cir. 2017) ........................................ 21

*Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir.1997) ................ 17

*Leonard v. Abbott Lab'ys, Inc.*, No. 10-CV-4676 ADS WDW, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ..................................................................................................................................... 22

*Makaeff v. Trump Univ.*, LLC, 309 F.R.D. 631 (S.D. Cal. 2015) ............................................... 24

*Maroney v. Woodstream Corp.*, No. 19-CV-8294 (KMK), 2023 WL 6318226 (S.D.N.Y. Sept. 28, 2023) ..................................................................................................................................... 20

*O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511 (S.D.N.Y. 2018) .......................... 21

*Ostenfeld v. Laundress, LLC*, No. 22-CV-10667 (JMF), 2024 WL 967124 (S.D.N.Y. Mar. 5, 2024) ................................................................................................................................. 1, 20, 21

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995). .................................................................................................................................................... 16

*Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ........................................................................................................................................... 20

*People ex rel. Spitzer v. Applied Card Sys., Inc.*, 41 A.D.3d 4 (3d Dep't 2007) ........................ 24

*Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38 (S.D.N.Y. 2018) ............................... 9

*Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418 (S.D.N.Y. 2019) ....................................................... 21

*Potts v. Johnson & Johnson Consumer Inc.*, No. CV 20-10406 (FLW), 2021 WL 2177386 (D.N.J. May 28, 2021) ............................................................................................................... 22

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F. 3d 234 (2d Cir. 2011) .......................... 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ........................................................ 10

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014) ......................................... 15

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015) ................................... 16

## **INTRODUCTION**

Founded in 2004, The Laundress, LLC ("The Laundress") set itself apart from its competitors by purporting to sell luxury cleaning and laundry products using safer, non-toxic, organic-based formulations that do not present the health risks supposedly posed by competitors' products that use synthetic chemicals. Based on this powerful branding, The Laundress was able to sell its products at premium prices. The founders of The Laundress eventually sold the company to Unilever in 2019 for $100 million.

████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████

████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████ On

December 1, 2022, The Laundress recalled all 8 million of its cleaning products in the marketplace

sold after January 2021 (the, "Products"). In the Recall, The Laundress instructed consumers to

dispose of all Products without opening them or discarding the contents, indicating total

contamination and severe physical dangers even through limited exposure.

████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████████ *See* Declaration

of Stephen J. Fearon, Jr. in Support ("Fearon Declaration") and the Declaration of Gareth MacCartney, Ph.D. ("MacCartney Declaration").

Plaintiff Deborah Geschwind (a New York resident) purchased recalled and contaminated Products based on The Laundress's misleading advertising and omissions, suffering economic injuries. *See* the accompanying Geschwind Declaration. She is seeking to bring class-wide claims against The Laundress for violating New York General Business Law ("GBL") §§ 349-50, for breach of implied warranty, and for violating the Magnuson-Moss Warranty Act. These claims are well suited for certification based on the nature of the law and, and as set forth in the accompanying Fearon Declaration, the generalized proof that Ms. Geschwind will submit to support the claims.

Ms. Geschwind satisfies each requirement of Rule 23(a) and shows that, under Rule 23(b)(3), common issues of law and fact predominate over issues affecting individual members of the Class, and that a class action is a superior method to adjudicate these claims. The Court should grant Ms. Geschwind's Motion for Class Certification.

## FACTUAL BACKGROUND

**A.     Before and During the Class Period, The Laundress Knew About Systemic Quality Control and Bacterial Contamination Issues Plaguing Its Products**

The Laundress set itself apart from competitors by marketing its cleaning and laundry Products as luxurious, natural, non-toxic, and allergen-free. The Laundress's branding was found on labeling, its website, on social and other promotional channels. ¶¶ 5, 99 -104, 107, 111.[1]

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1]     Paragraph references ("¶__") and Exhibit references ("Exh.__") are to the Fearon Declaration unless otherwise noted.



**B.**     **During the Class Period, Bacterial Contamination Impacted All Products**





**C.    In December 2022, The Laundress Recalls All Products Due to Bacterial Contamination**

By November 2022, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Laundress began implementing a series of actions to remove <u>all Products</u> from the marketplace and to cease sales <u>worldwide</u> until it could rectify the manufacturing issue and bacterial contamination.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on November 17, 2022, The Laundress issued a "Safety Notice" via social media, instructing consumers "to immediately stop using <u>all</u> The Laundress products in [their] possession" due to "elevated levels of bacteria in some of [its] products." ¶¶ 64 - 66.

On December 1, 2022, The Laundress issued its first of three recall notices informing consumers that the Products could contain *Burkholderia cepacia* complex, *Klebsiella aerogenes*

and multiple different species of *Pseudomonas* (deadly, antibiotic-resistant bacteria) and further revealing The Laundress had received eleven reports of infection. ¶¶ 73 -75.

In the recall, The Laundress informed consumers to stop using <u>all</u> Products; to "dispose of the product[s] by closing the bottle[s] tightly and placing it in household trash[;]" and that consumers should "not empty the product prior to disposal," suggesting that the Products were so dangerous that a consumer could not even risk very limited exposure or opening the bottle. Fearon ¶ 77. The Laundress also instructed customers, particularly consumers with a compromised immune system, to use alternative products to rewash clothing, dishes, and surfaces that had previously been cleaned with The Laundress Products. Geshwind Decl. ¶ 7.

As part of the recall, The Laundress retained consultants to overhaul its product designs and manufacturing process by developing a "decisive and comprehensive safety program" that would modify formulas, and implement "Good Manufacturing Processes," including microbiological testing. ¶ 116; Exh. BU. In July 2023, The Laundress resumed sales, with new CEO Clemens Herrmann suggesting that "<u>extraordinary effort</u>" was needed to resolve the safety issues. <u>Id.</u>

**D.    Ms. Geschwind and Class Members Suffered Economic Injury By Purchasing Contaminated Products That Were Recalled**

Ms. Geschwind purchased and used contaminated Products and suffered economic injuries as a result. *See* Declaration of Deborah Geschwind in Support at ¶¶ 3, 13 ("Geschwind Decl."). Between April 10 and September 5, 2022, Ms. Geschwind—a New York resident and citizen—purchased various Laundress Products from The Laundress's website, including the Classic Signature Detergent. *Id.* at ¶¶ 3, 13. Prior to her purchases, Ms. Geschwind reviewed and relied on The Laundress's misleading advertising, including labels omitting the contamination. *Id.* at ¶¶ 5,

10-12. Until the recall, Ms. Geschwind extensively used Products throughout her home, including using Fabric Fresh Spray on clothes and in closets and storage containers. *Id.* at ¶ 6.

After the recall, Ms. Geschwind ███████████████████████████ attempted to remediate the bacterial contamination, including discarding hangars and storage bins with fabric lining that could not be cleaned ($400); purchasing replacement hangars and storage items ($575); purchasing alternative cleaning products ($275); and discarding luxury clothing that were destroyed during cleaning efforts ($3,300). Geschwind Decl. at ¶¶ 7-9; The Laundress provided Ms. Geschwind with a $284 refund, which did not cover these costs or even the cost of the recalled Products ($307).

Like Ms. Geschwind, Class Members either participated or had the opportunity to receive refunds. However, The Laundress provided no refunds for approximately 78% of Products sold (████████████████████████). The Laundress's refunds did not cover shipping and tax; provide compensation for remediation expenses (even though The Laundress instructed consumers to rewash surfaces and items); statutory damages; or attorneys' fees. ¶ 87.

**E.     Class Definition, Appointment of Representatives and Counsel, and Class Claims**

Ms. Geschwind seeks to certify the following Class:

> All United States consumers who purchased Products on or after January 1, 2021 (the, "Class Period").[2]

Ms. Geschwind seeks to assert claims against The Laundress on behalf of the Class for: violating NYGBL §§ 349-50; breach of implied warranty of merchantability; and for violating the

---

[2]     Plaintiff modifies the Class definition in the Complaint to clarify that the Class is on behalf of consumers, not distributors or retailers. The Complaint defined the Class to include United States "residents". [ECF No. 268 ¶ 103] During discovery, The Laundress's documents and testimony revealed that the company distinguishes between "consumers" (people who purchase the company's products) and "customers" (retailers and distributors). Plaintiff now seeks to certify a class of consumers, not retailers or distributors.

The Class excludes any judge or magistrate assigned to this case, The Laundress, The Laundress's officers, directors, legal representatives, successors, and assigns, and any entity in which The Laundress has a controlling interest.

Magnuson Moss Warranty Act ("MMWA"). Ms. Geschwind also seeks to be appointed as the Class Representative and seeks to have her counsel, Squitieri & Fearon, LLP ("S&F"), appointed as Class Counsel.

## **ARGUMENT**

### A.    **Standard for Rule 23 Certification**

To certify a class, a plaintiff must show, by a preponderance of evidence, that each of Rule 23(a)'s requirements are satisfied and that the Class fits into one of Rule 23(b)'s categories. *See Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 43 (S.D.N.Y. 2018) (Furman, J.). "The party seeking 'class certification must affirmatively demonstrate . . . compliance with the Rule,' and a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 404 (S.D.N.Y. 2015). A court should consider merits issues to the extent they concern Rule 23's requirements, but "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Id.* at 43 (*citing In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (internal quotations omitted).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 392 (E.D.N.Y. 2022) (citing *Hasemann v. Gerber Prods. Co*., 331 F.R.D. 239, 254 (E.D.N.Y. 2019)). "Accordingly, 'if there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" *Allegra*, 341 F.R.D. at 392 (citing *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 593 (S.D.N.Y. 2021).

**B.**    **Rule 23(a)**

    **1.**    **Numerosity**

To proceed as a class action, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of [forty] members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "A plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts." *Jie Zhang v. Wen Mei, Inc.*, No. 14-CV-1647 (JS)(SIL), 2017 WL 8813132, at *15 (E.D.N.Y. Dec. 28, 2017) (citing *Hill v. City of New York*, 136 F. Supp. 3d 304, 353 (E.D.N.Y. 2015)).

Here, Laundress sold approximately ███████████████████████████████ ███████████████████████████ ¶¶ 81 - 85. Based on this evidence, the Court may infer that joinder would be impracticable. Therefore, Ms. Geschwind has established numerosity.

    **2.**    **Commonality**

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question is common if "a determination[] of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Even a single common legal or factual question will suffice[.]" *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006) (citing *In re Agent Orange Prod. Liab.*, 818 F.2d 145, 166-67 (2d Cir. 1987)).

Ms. Geschwind and the Class share common questions, including whether The Laundress knew about the bacterial contamination before the Class Period, January 1, 2021, and whether The Laundress's omissions about the bacterial contamination were materially misleading. As set forth

in the Fearon Declaration, these questions can be answered using generalized proof according to a common legal framework and will establish The Laundress's liability to Ms. Geschwind and to the Class. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. As a result, Ms. Geschwind satisfies the commonality prong of Rule 23(a).

### 3.    Typicality

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F. 3d 234, 252 (2d Cir. 2011). "Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D 581, 595 (S.D.N.Y. 2021) (quoting *Bolanos v. Norwegian Cruise Lines Ltd*., 212 F.R.D. 144, 155 (S.D.N.Y. 2002)).

In this case, Ms. Geschwind's claims, like the claims of each Class member, arise from The Laundress's failure to disclose the Products' bacterial contamination through any communication channel (including Product labeling), as well as The Laundress's sale of nonmerchantable Products. Ms. Geschwind "allege[s] a common pattern of wrongdoing," and "will present the same evidence" to prove her claims and the claims of every Class member. *See Hughes v. The Ester C Co*., 317 F.R.D. 333, 348 (E.D.N.Y. 2016). Therefore, Ms. Geschwind has established that her claims are typical of the claims of the Class

The Laundress may assert that Ms. Geschwind's claims are not typical because there are Product and purchase variations between Ms. Geschwind and the Class. However, courts have repeatedly found that "[d]ifferences in amounts and characteristics of the class representatives'

purchases do not defeat typicality." *Andrews v. Sazerac Co., Inc.*, No. 23-CV-1060 (AS), 2025 WL 1808797, at *5 (S.D.N.Y. July 1, 2025); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 269 (E.D.N.Y. 2019) ("That Plaintiffs purchased different amounts of different GSG products, does not defeat typicality"); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 535 (E.D.N.Y. 2017) (class representative's claims typical even "though he did not buy every . . . product at issue"); *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015) ("Differences in amounts or characteristics of the class representatives' purchases do not defeat typicality") (citation omitted)).

In this case, <u>every</u> Product purchased by Ms. Geschwind and the Class omitted material information about bacterial contamination and was included in The Laundress's recall based on bacterial contamination. ¶¶ 99- 110. Given that this central characteristic of the Products can be established on a class-wide basis, other Product and purchase variations do not preclude a typicality finding.

### 4.    Adequacy

Rule 23(a)(4) provides that a class action is appropriate if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determination of adequacy typically entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interest of other members of the class and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 99 (2d Cir. 2007).

Here, Ms. Geschwind's interests align with the interests of the Class. Ms. Geschwind has greatly assisted in investigating and pursuing the claims, has provided written discovery responses, and testified at her deposition. Geschwind Decl., ¶ 8. Ms. Geschwind has been in consistent contact with counsel regarding case milestones and understands the nature of the claims and her

responsibilities. *Id.* at ¶¶ 17 -22. Ms. Geschwind has been, and will be, a zealous advocate for the Class, and is an adequate representative under Rule 23.

Regarding Rule 23(a)(4)'s second requirement, Ms. Geschwind has retained qualified attorneys whose interests align with the Class. Squitieri & Fearon, LLP has vigorously prosecuted this action on behalf of the Class, including working to organize and conduct consolidated discovery; to investigate the claims; to drafting pleadings; to oppose Defendants' motions to strike, dismiss, and compel; to obtain and review voluminous documents; and to depose and defend numerous fact-witness depositions. ¶¶117 - 119. As a result, Squitieri & Fearon, LLP will adequately represent the Class.[3]

### 5.    Ascertainability

Rule 23 impliedly requires that the class be ascertainable. *See In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (citation omitted). This "modest" requirement "asks the court to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." *Id.* at 269. Certification will only be precluded "if a proposed class definition is indeterminate in some fundamental way." *Id.*; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014).

Here, Ms. Geschwind has defined the Class to include individuals who purchased Products after January 1, 2021. That is a discrete and identifiable class. In fact, a substantial portion of Class members brought Products directly from The Laundress on its website and The Laundress has detailed records of those purchases. ¶¶ 111.  Class members can also be reached through

---

[3]    The Court should also appoint Squitieri & Fearon, LLP as Class Counsel under Rule 23(g). The Court "must consider (i) the work counsel has done[;] (ii) counsel's experience[;] (iii) counsel's knowledge[;] and (iv) the resources that counsel will commit to representing the class." Here, S&F has diligently prosecuted this case, investigated claims, engaged in extensive motion practice, obtained and reviewed voluminous document discovery, and conducted depositions of key witnesses. ¶ 119. Squitieri & Fearon, LLP has significant experience in class litigation and will continue to expend the resources necessary to prosecute this case. *Id.* S&F's experience and work merit appointing it as Class Counsel.

publication methods and can attest to their Product purchases by affidavit, a permissible method of ascertaining class membership in the Second Circuit. *Hasemann*, 331 F.R.D. at 270-72 (collecting cases). As a result, the Class satisfies the *Petrobras* threshold and is ascertainable.

## C.    Predominance (Rule 23(b)(3))

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Kurtz v. Kimberly-Clark Corp*., 321 F.R.D. 482, 547 (E.D.N.Y. 2017) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997)). Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d108, 118 (2d Cir. 2013) (citation omitted). Certification may be proper when "one or more of the central issues in the action are common to the class and can be said to predominate, . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Allegra*., 341 F.R.D. at 406.

As set forth below, common questions of fact and law predominate for the Claims that Ms. Geschwind seeks to assert on behalf of the Class.

### 1.    GBL §§ 349-50

#### a.    Out-of-State Class Members Have Statutory Standing

Ms. Geschwind, a New York resident, can assert GBL §§ 349-50 claims on behalf of the nationwide Class because aspects of each Product purchase transaction occurred in New York. In *Cruz v. FXDirectDealer*, LLC, 720 F.3d 115 (2d Cir. 2013), the Second Circuit determined that when a transaction takes place across jurisdictions, GBL §§ 349's territorial requirement is

14

satisfied as long as "some part of" the transaction occurred in New York even if the plaintiff resides in another state, including payments and communications being sent to the defendant in New York." *Cruz*, 720 F.3d at 123.

Based on *Cruz*, courts have allowed out-of-state plaintiffs to assert GBL claims against New York-based defendants, like The Laundress, where part of the challenged transactions occurred in New York, such as on The Laundress's website. *Ward v. TheLadders.com, Inc*., 3 F. Supp. 3d 151 (S.D.N.Y. 2014) ("relevant communications and transactions with the defendant . . . occurred on or through the website itself, which is equivalent to communicating or transacting directly with a New York address."); *Gutierrez v. Lemonade, Inc*., No. 21-CV-7070 (JGK), 2022 WL 3214852, at *3 (S.D.N.Y. Aug. 9, 2022) ("the transactions were consummated on a website and application operated by a New York company."); *see also Cline v. TouchTunes Music Corp*., 211 F. Supp. 3d 628, 634 (S.D.N.Y. 2016) ("In the cases of App and credit card users TouchTunes apparently 'processes customer payments' in New York where it is based.").

Here, all Product purchases had a connection to New York, The Laundress's principal place of business. ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ As a result, non-New York Class members may assert GBL claims because a portion of their Purchase transactions occurred in New York.

**b.  GBL §§ 349-50 Liability Can Be Established for Each Class Member Using Generalized Proof**

GBL §§ 349-50 claims are well-suited for class-wide resolution. Under NYGBL § 349 and § 350, a defendant must have engaged in (1) "consumer-oriented" conduct that is (2) materially misleading and (3) causes injury to the plaintiff. *See Koch v. Acker, Merrall & Condit Co*., 18

15

N.Y.3d 940, 941 (N.Y. 2012). NY GBL §§ 349 and 350 standards are "substantively identical" except GBL § 350 applies to false advertising, including labeling. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (Furman, J.); GBL § 350-a.1.

"The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Hasemann.*, 331 F.R.D. at 257–58. Omissions are actionable "where the business alone possesses material information that is relevant to the consumer and fails to provide this information[,]" *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26(1995), or "when the Defendant actively conceals a material fact from the Plaintiff." *Guariglia v. Procter & Gamble Co.*, No. 215CV04307ADSSIL, 2018 WL 1335356, at *9 (E.D.N.Y. Mar. 14, 2018).

Critical for class certification, GBL §§ 349 and 350 claims do not include a scienter, viewing, or reliance requirement, "nor do they require individual determination of how a particular advertisement affected each putative class member." *See Haseman*, 331 F.R.D at 264-67. Instead, it suffices that misleading conduct was "sufficiently uniform" and common questions concerning "whether a given product's advertising is misleading" and "the materiality of potentially deceptive representations" are subject to objective standards and common proof. *Id.* at 274. "To satisfy the causation requirement [under the GBL], nothing more is required than that a plaintiff suffer a loss because of defendants' deceptive act." *Id*.

In this case, determining Defendant's class-wide liability under GBL §§ 349 and 350 involves two central, determinative questions in each Class member's case: (1) whether Defendant knew about the bacterial contamination prior to the Class Period; and (2) whether Defendant's failure to disclose that risk, including on every Product label and every other communication

16

channel, was likely to mislead a reasonable consumer acting reasonably. Ms. Geschwind will prove The Laundress's knowledge and misleading conduct using generalized proof, including the evidence set forth in the Fearon Declaration detailing how ███████████████████

███████████████████████████████████████████████

███████████████████████████

     The focus will be on The Laundress's conduct, not individual Class members. Predominating questions are more substantial than individualized questions regarding Product purchases and variations because <u>every</u> Class member was exposed to Product labeling and other advertising and <u>all</u> Product labeling and advertising uniformly omitted information about the bacterial contamination.[4]

### 2.    Breach of Implied Warranty

### a.    Substantive New York Law Governs the Implied Warranty Claim

     Common questions of law predominate over Ms. Geschwind's  class claim for breach of implied warranty because substantive New York law governs the claim for non-New York residents. To determine which law governs a warranty claim, New York courts apply a "center of gravity" analysis. *See Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531 (2d Cir.1997). Under this approach, "courts may consider . . . the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of

---

[4]    Courts routinely certify GBL §§ 349 and 350 claims, in cases like this one, involving labeling that is misleading in a uniform way. *See Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) (discussing the requirement of the GBL and noting that "[a]ssuming the product and its labeling and packaging remains constant and is uniform between consumers, then the only question is how such packaging would have influenced a consumer under the objective test"); *Kurtz*, 321 F.R.D. at 535; *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 403; *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014) ("Here, every class member saw the same representation that [the product] was '100% Pure Olive Oil' because the statement appeared in large letters on the front, back, left, right, and top of the tin."); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *10 (E.D.N.Y. July 18, 2013) (noting that "[i]n the instant case, as plaintiffs repeatedly stress, 'all the products at issue bore the same allegedly misleading claim' " even while acknowledging that "[i]t is not necessary for all of the plaintiffs to have had a 'uniform' experience with respect to the product").

business of the contracting parties. New York courts may also consider public policy 'where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests.' [T]he places of contracting and performance, are given the heaviest weight in this analysis." *Id.* at 1539 (internal citations omitted).[5]

In this case, The Laundress has its principal place of business in New York and The Laundress developed and sold the Products from its New York base of operation ███████ ████████████████████████████████ As a result, contract formation and performance occurred in New York, and New York law should apply to class claims brought by Ms. Geschwind on behalf of herself and non-New York purchasers.[6]

      **b.**    **Class-Wide Breach Can Be Established Using Generalized Proof**

To prevail on a breach of the implied warranty of merchantability claim, a plaintiff must prove that the product was not "fit for the ordinary purposes for which such goods are used." N.Y. U.C.C. § 2-314 (2). An implied warranty claim is well-suited for class certification because it does not include a reliance requirement. Instead, the inquiry "focuses on the expectations or the performance of the product when used in the customary, usual, and reasonably foreseeable manners. The cause of action is one involving true 'strict' liability, since recovery may be had upon a showing that the product was not minimally safe for its expected purpose." *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 736 (N.Y. 1995).

Here, Ms. Geschwind can prove that The Laundress breached the implied warranty of merchantability on a class-wide basis through common proof demonstrating that The Laundress

---

[5]    A federal court sitting in diversity jurisdiction applies the choice of law rules of a court of general jurisdiction in the forum state. *See In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 238 (S.D.N.Y. 2022) (Furman, J.).

[6]    In the alternative, Plaintiffs would seek to assert a Breach of Implied Warranty of Merchantability claim on behalf of a subclass comprised of New York consumers who purchased Products after January 1, 2021.

sold contaminated Products that were not minimally safe for their expected purposes. █████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Ms. Geschwind also will establish the pervasiveness of the problems with The Laundress Products and will demonstrate that the risk was so great that when it issued the recall, The Laundress repeatedly instructed consumers to stop using <u>all</u> Products, to dispose of Products without opening the Products, and to rewash surface and clothes with alternative cleaning products to prevent contamination.

The Laundress may assert that individual questions about notice of warranty breaches preclude a predominance finding. However, "requiring notice is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021). "The notification which saves the buyer's rights ... need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." N.Y. U.C.C. Law § 2–607 (cmt.4).

Here, in April 2021, Ms. Geschwind notified The Laundress on behalf of all Class members that "the Products were not fit for . . . ordinary cleaning purposes and . . . posed an unreasonable risk of bacterial contamination and personal injury" and demanded full refunds for Plaintiffs and the Class, among other forms of individual and class-wide relief. Therefore, the "sufficiency and timeliness" of Ms. Geschwind's notice should not preclude a finding of predominance but, instead, should be considered by the jury. *See Ostenfeld v. Laundress, LLC*, No. 22-CV-10667 (JMF), 2024

WL 967124, at *7 (S.D.N.Y. Mar. 5, 2024) (citing *Maroney v. Woodstream Corp*., No. 19-CV-8294 (KMK), 2023 WL 6318226, at *8 (S.D.N.Y. Sept. 28, 2023).

Ms. Geschwind's warranty breach notice should also suffice for the Class. Ms. Geschwind fulfilled the purposes of N.Y. U.C.C. ¶ 2-607 by notifying Defendant of the basis of the breach of implied warranty claim she now seeks to assert on behalf of the Class and provided Defendant with an opportunity to resolve the Class-wide claims. *Paulino v. Conopco, Inc*., No. 14-CV-5145 JG RML, 2015 WL 4895234, at *2 (E.D.N.Y. Aug. 17, 2015) ("Given the liberal requirements regarding the content of the notice[,] I conclude that this letter and draft complaint provided the requisite notice to Conopco that a nationwide class of plaintiffs objected to the Products' labeling.") (citing *Cliffstar Corp. v. Elmar Indus., Inc.,* 254 A.D.2d 723, 678 N.Y.S.2d 222, 223 (4th Dep't 1998)). Rule 23 allows individuals to assert claims on a representative basis, and nonnamed class members are not considered parties to the litigation, except to the extent they are bound by a judgment. *See Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002). Therefore, requiring absent class members—particularly absent Rule 23(b)(3) class members who have opt-out right (Fed. R. Civ. P. 23(e))—to provide additional warranty breach notice serves no remedial purpose and would needlessly preclude class treatment of warranty claims. The Court should reject this approach.

Likewise, privity is not an individualized issue. As an initial matter, Ms. Geschwind and other Class members bought Products directly from The Laundress on its website, meaning a portion of the Class satisfies the privity requirement outright. Geschwind Decl., ¶ 13. Class members who purchased Products from retailers benefit from the third-party beneficiary doctrine and, therefore, do not need to establish privity with The Laundress. *See Hawkins v. Shimano N.*

20

*Am. Bicycle Inc*., 729 F. Supp. 3d 989, 1025 (C.D. Cal. 2024) (collecting cases).[7]

### 3.    MMWA

"The [MMWA] . . . provides a federal cause of action for state law warranty claims.  The substantive elements under the MMWA are the same as under state warranty law." *Allen v. Hyland's Inc*., 300 F.R.D. 643, 670 (C.D. Cal. 2014) (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)). "Because Plaintiffs have demonstrated that common questions predominate with respect to their state law [implied] warranty claim, the same analysis applies to their MMWA claim." *Id.*

### 4.    Class-Wide Damages

#### a.    Ms. Geschwind  and the Class Have Standing and Unremedied Damages

The Laundress may reassert its argument that Ms. Geschwind or the Class lack Article III standing or were not damaged because The Laundress offered or provided refunds. However, as previously noted by the Court, even if the refunds offered full relief to Ms. Geschwind and the Class (and they do not), "there is no bar preventing [t]he plaintiffs from forgoing compensation through a voluntary refund program in order to pursue their claims in a consumer class action." *Ostenfeld*, 2024 WL 967124, at *7 (citing *O'Neill v. Standard Homeopathic Co*., 346 F. Supp. 3d 511, 523–24 (S.D.N.Y. 2018).[8]

---

[7]    To the extent Class members cannot establish an exception to the privity requirement, the Court should permit Ms. Geschwind to assert implied warranty claims on behalf of Class members who purchased Products from The Laundress's website.

[8]    See also *Adam v. Barone*, 41 F.4th 230, 235 (3d Cir. 2022) (rejection of pre-litigation refund offer does not impact standing.); *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 627 (7th Cir. 2017) (same); *Porsch v. LLR, Inc*., 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("LLR's voluntary refund program does not deprive Porsch of Article III standing."). *Potts v. Johnson & Johnson Consumer Inc*., No. CV 20-10406 (FLW), 2021 WL 2177386, at *7 (D.N.J. May 28, 2021) ("[A] plaintiff's failure to seek or accept a refund does not preclude standing."); *Leonard v. Abbott Lab'ys, Inc*., No. 10-CV-4676 ADS WDW, 2012 WL 764199, at *28 (E.D.N.Y. Mar. 5, 2012); *In re Mattel*, 588 F. Supp. 2d 1111, 1117 (C.D. Cal. 2008) (There is "no authority for the proposition that a defendant can defeat a plaintiff's claim on standing grounds through the unilateral offering of a remedy of the defendant's choosing.").

Even if Ms. Geschwind and the Class were legally required to accept refunds, the refunds here do not provide the full relief available to Ms. Geschwind and the Class through litigation. Setting aside remediation costs and personal injuries (which are not included in the refunds), The Laundress's refund to Geschwind did not even cover the full cost of the recalled Products, with Laundress providing $284 to Ms. Geschwind and the Recalled Products costing her $307. Ms. Geschwind is further entitled to statutory damages under GBL §§ 349-50, which provide the greater of actual damages or $50 or $500 for each Product purchase (as well as potential attorneys' fees and treble actual damages). GBL § 349(h); GBL § 350-e.3. As a result, Ms. Geschwind is entitled to substantial additional statutory damages that were not included in Laundress's refund.

The Class is also entitled to substantial additional relief. During the Class Period, █████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ ¶¶ 81 -87; Macartney Declaration ¶¶ 45 -46. Like Ms. Geschwind, the Class members are entitled to substantial additional statutory damages based on the 8 million individual Products sold. *Nonni's Foods LLC*, No. 20 CIV. 2979 (NSR), 2023 WL 3570550, at *5 (S.D.N.Y. May 18, 2023) (calculating potential damages under NYGBL were $550 per box of allegedly deceptive food product sold).

Ms. Geschwind and the Class have no legal obligation or sensible reason to accept The Laundress's refunds. Instead, Ms. Geschwind and the Class may seek full relief through legal action. *Campbell-Ewald Co. v. Gomez* , 577 U.S. 153, 161 (2016) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig*., 725 F.3d 65, 105 (2d Cir. 2013) ("[A]n identifiable trifle will suffice.").

The Laundress may also contend that Ms. Geschwind and the Class cannot establish

standing or damages without evidence showing that their individual Products were contaminated. However, Ms. Geschwind has established a triable issue of fact about total contamination (███████████████████████████████), and courts have concluded that plaintiffs have standing and can suffer economic damage based on the purchase of defective products too dangerous to be used as intended, as here. For instance, in *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011), the Seventh Circuit concluded that the plaintiffs had standing and suffered economic damages based on a toxic defect that rendered the toys at issue too dangerous to use although the plaintiffs' children had suffered no injuries when using the product. *Id.* at 750-51; *see also In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 35–36 (1st Cir. 2022) (finding that plaintiffs overpaid for car seats that were never safety tested as advertised).

>    **b.    Ms. Geschwind Has Proposed an Adequate Class-Wide Damages Method**

At the class certification stage, the plaintiff's burden is not to prove the element of injury, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013), instead it is to show that "class-wide injury or 'impact' is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Dial Corp. v. New Corp.*, 314 F.R.D. 108, 114–15 (S.D.N.Y. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013)). This question is often about the methodology proposed by the plaintiff and its capability to show class-wide impact; it is not about whether there is, in fact, a class-wide impact. *In re Magnetic Audiotape Antitrust Litig.*, No. 99-CV-1580, 2001 WL 619305, at *4 (S.D.N.Y. June 6, 2001).

Ms. Geschwind has retained Gareth J. Macartney, Ph.D., Senior Economist, President and Chief Executive Officer at OnPoint Analytics, Inc., an economic and statistical consulting firm, to first propose a "full refund" class-wide damages methodology in this case. Full refund damages

are available in cases where consumers have "purchase[d] a product or service which they do not ultimately receive or which cannot be used to the extent or for the purpose purchased."[9]

Here, Dr. Macartney opines that:

> The presence of contamination renders the product valueless in the market. Accordingly, its market value is effectively zero, and the entire purchase price constitutes the economic overcharge attributable to the contamination. Under this paradigm, the overcharge suffered is simply that entire purchase price

*See* Macartney Decl., ¶ 31. Dr. Macartney estimates the Class damages, ███████████████

███████████████████████████

Dr. Macartney also opines that statutory damages would be available to the Class under GBL §§ 349-50, which provide for the greater of "actual" or statutory damages of $50 or $500, respectively. *Id.* at ¶¶ 47 - 48; *see also* NYGBL 349(h); NYGBL 350-e.3. Once "actual" damages are established, statutory damages are available on a per-unit-sold basis under GBL §§ 349-50. *See Bardsley*, 2023 WL 3570550, at *5; *see also Cosgrove v. Oregon Chai, Inc*., 520 F. Supp. 3d 562, 572–73 (S.D.N.Y. 2021); *Famular v. Whirlpool Corp*., No. 16 CV 944 (VB), 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019) (The number of units of the product at issue sold in New York multiplied by $550 equaled over $8 million).

Here, Ms. Geschwind can establish the fact of "actual" damages under GBL §§ 349-50 by proving that Ms. Geschwind and the Class are entitled to full refunds for worthless, dangerous and adulterated, and nonmerchantable Products. By proving "actual" damages, Ms. Geschwind and the Class would then be entitled to statutory damages to the extent their "actual" damages are less than

---

[9] *Makaeff v. Trump Univ*., LLC, 309 F.R.D. 631, 642 (S.D. Cal. 2015) (citing *People ex rel. Spitzer v. Applied Card Sys., Inc.,* 41 A.D.3d 4, 9 (3d Dep't 2007); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (stating in case involving adulterated health supplement, that "[w]hen a plaintiff receives a worthless product, his benefit of the bargain damages will be equal to the entire purchase price of the product. The benefit-of-the-bargain theory thus recognizes that a purchaser who acquires a product with significant defects may effectively receive nothing of value.") (citations omitted).

the $50 or $500 statutory amount for each Product purchased. ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████ MacCartney Decl. ¶48. At this stage of the case, Ms. Geschwind has adequately provided a class-wide methodology for determining damages that satisfies the predominance requirement.

### 5.    Superiority

To determine whether a class action is a superior method of adjudicating similar claims, courts consider:  (1) "the class members' interest in individually controlling the prosecution;" (2) "the extent and nature of any litigation concerning the controversy already begun;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, each of these factors weigh in favor of certification. There are tens of thousands, if not hundreds of thousands, of Class members, each of whom purchased nonmerchantable Products based on The Laundress's materially misleading omissions. Class members will be well served by the economies of scale and efficiencies gained by class adjudication rather than thousands of individual suits. Likewise, although a number of individual personal injury actions have been filed against The Laundress, class proceedings will conserve judicial economy by simultaneously adjudicating key aspects of the consumer protection and warranty claims before this Court, which has managed all related actions from when litigation started against The Laundress.

## CONCLUSION

For the foregoing reasons, the Court should grant Ms. Geschwind's Motion for Class Certification.

Dated: October 13, 2025

**SQUITIERI & FEARON, LLP**

By: *_/s/ Stephen J. Fearon, Jr._*
Stephen J. Fearon, Jr.
Paul V. Sweeny
205 Hudson Street, 7th Floor
New York, New York 10013
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**ATTORNEYS FOR PLAINTIFFS**