**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Laundress Marketing and Product Liability Litigation | |
| *This Document Relates To:* | Case No. 1:22-cv-10667-JMF |
| *Ostenfeld, et al. v. The Laundress LLC*, No. 1:22-cv-10667-JMF | |

**DEFENDANT THE LAUNDRESS, LLC'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF DEBORAH GESCHWIND'S MOTION FOR CLASS CERTIFICATION**

WINSTON & STRAWN LLP

Ronald Y. Rothstein
300 N. LaSalle Drive
Chicago, IL 60654-3406
Telephone: (312) 558-7464
Facsimile: (312) 558-5700
rrothste@winston.com

Jared R. Kessler (*pro hac vice*)
200 S. Biscayne Boulevard
Suite 2400
Miami, FL 33131
Telephone: (305) 910-0654
Facsimile: (305) 910-0505
jrkessler@winston.com

*Counsel for Defendant
The Laundress, LLC*

### <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    BACKGROUND ............................................................................................. 2

    A.    The Laundress, LLC. ......................................................................... 2

    B.    The Laundress Discovers Potential Bacterial Contamination in Certain Lots of Products Manufactured by FMI, Leading to the December 1, 2022 Recall. ...... 3

    C.    The Refund Program for Recalled Products. ..................................... 4

    D.    The Class Action Complaint and The Laundress's Motion to Dismiss. ............... 5

    E.    Plaintiff Seeks to Certify a Class Based on Only an Alleged Omission. ................ 6

    F.    The Plaintiff. ...................................................................................... 8

III.   LEGAL STANDARD ..................................................................................... 8

IV.   ARGUMENT ................................................................................................ 11

    A.    Plaintiff's Motion Fails under Rule 23(a)(4) or 23(b)(3)—She Already Received a Refund and Is Misaligned with the Putative Class. ........................... 11

    B.    Plaintiff Cannot Satisfy Rule 23(a) Commonality or 23(b) Predominance. .......... 12

        1.    Plaintiff cannot demonstrate classwide injury. .......................... 14

            i.    A recall is insufficient to show a classwide defect. ..................... 14

            ii.   There is no evidence of universal contamination. ........................ 14

            iii.  "Risk" of contamination is not enough. ........................................ 19

            iv.  Neither material misrepresentation, omission, nor causation can be shown classwide—all require individualized proof. ......... 19

            v.   Standing. ............................................................................................ 21

            vi.  Isolated quality-control issues do not establish The Laundress's knowledge under Plaintiff's omission theory. .......... 23

            vii. Plaintiff's proposed nationwide class raises insurmountable territoriality, choice-of-law, and manageability problems. ........... 26

            viii. Privity issues doom the implied warranty and MMWA claims. .... 33

            ix.  There Is No Reliable, Admissible Evidence of Damages. ............. 34

               a.    Macartney's Models Fail under Comcast. ........................ 35

               b.    Macartney's hedonic regression and conjoint analyses fail. ......................................................................................... 39

    C.    Plaintiff's claims are not typical. ..................................................... 42

    D.    The putative class is not ascertainable. ............................................. 42

i

V.    CONCLUSION.............................................................................................................. 43

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  2017 WL 2559615 (C.D. Cal. June 7, 2017) ........................................................21

*Adkins v. Morgan Stanley*,
  307 F.R.D. 119 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 555 (2d Cir. 2016) ...........................13

*Allegra v. Luxottica Retail N. Am.*,
  341 F.R.D. 373 (E.D.N.Y. 2022) ...............................................................37

*Allen v. City of New York*,
  2022 WL 4133132 (S.D.N.Y. Sep. 12, 2022) .........................................................9

*In re Aluminum Warehousing Antitrust Litig.*,
  336 F.R.D. 5 (S.D.N.Y. 2020) ................................................................34

*Apple, Inc. v. Samsung Elecs. Co.*,
  2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ........................................................42

*In re Aqua Dots Products Liability Litig.*,
  654 F.3d 748 (7th Cir. 2011) .........................................................11, 12, 19

*Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*,
  51 A.D.3d 1114 (N.Y. App. Div. 2008) .........................................................11, 33

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ..................................................................18

*Ault v. J.M. Smucker Co.*,
  310 F.R.D. 59 (S.D.N.Y. 2015) ...............................................................36

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Pracs. Litig.*,
  2015 WL 5730022 (S.D.N.Y. Sep. 30, 2015) ........................................................43

*Benefield v. Pfizer Inc.*,
  103 F. Supp. 3d 449 (S.D.N.Y. 2015) ...........................................................32

*Bozick v. Conagra Foods, Inc.*,
  2022 WL 4561779 (S.D.N.Y. 2022) ..............................................................26

*Brandner v. Abbott Lab'ys, Inc.*,
  No. CIV.A. 10-3242, 2012 WL 195540 (E.D. La. Jan. 23, 2012) .........................................14

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)................................................................................43

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) ........................................................................32

*Brown v. Town of Amherst*,
    2024 WL 4308310 (W.D.N.Y. Sep. 26, 2024) ................................................33

*Bustamante v. KIND, LLC*,
    100 F.4th 419 (2d Cir. 2024) ...........................................................................13

*Bynum v. Fam. Dollar Stores, Inc.*,
    592 F. Supp. 3d 304 (S.D.N.Y. 2022)..............................................................10

*In re Canon Cameras*,
    237 F.R.D. 357 (S.D.N.Y. 2006) ........................................................15, 17, 18

*Cerqua v. Stryker Corp.*,
    2013 WL 1752284 (S.D.N.Y. Apr. 23, 2013)..................................................14

*Choi v. Tower Rsch. Cap. LLC*,
    2022 WL 4484485 (S.D.N.Y. Sep. 27, 2022)..................................................30

*City of Philadelphia v. Bank of Am. Corp.*,
    2023 WL 6160534 (S.D.N.Y. Sep. 21, 2023) ..................................................18

*Cline v. TouchTunes Music Corp.*,
    211 F. Supp. 3d 628 (S.D.N.Y. 2016)........................................................28, 29

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)....................................................................................*passim*

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)........................................................................28, 29

*Cruz v. Zucker*,
    116 F. Supp. 3d 334 (S.D.N.Y. 2015)........................................................28, 30

*DeCoursey v. Murad, LLC*,
    673 F. Supp. 3d 194 (N.D.N.Y. 2023)..............................................................34

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..............................................................................22

*DiMuro v. Clinique Lab'ys, LLC*,
    572 F. App'x 27 (2d Cir. 2014) .......................................................................22

*Eng. v. Danone N. Am. Pub. Benefit Corp.*,
  678 F. Supp. 3d 529 (S.D.N.Y. 2023) ................................................................27

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ..................................................................20, 35

*In re Ford Motor Co. Ignition Switch Litig.*,
  194 F.R.D. 484 (D.N.J. 2000) ................................................................31

*In re Frito-Lay N. Am., Inc. All Nat. Litig*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ....................................5, 15, 29, 31

*Garrido v. Money Store*,
  649 F. App'x 103 (2d Cir. 2016) ..............................................................9

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration*, 2017 WL
  3443623 (S.D.N.Y. Aug. 9, 2017) ............................................................15

*In re Gen. Motors LLC Ignition Switch Litig.*,
  407 F. Supp. 3d 212 (S.D.N.Y. 2019) ..................................................40, 42

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) ..............................................................22

*Goldin v. Smith & Nephew, Inc.*,
  2013 WL 1759575 (S.D.N.Y. Apr. 24, 2013) ................................................14

*Gonzalez v. Corning*,
  885 F.3d 186 (3d Cir. 2018) ....................................................................19

*Gordon v. Sonar Cap. Mgmt., LLC*,
  92 F. Supp. 3d 193 (S.D.N.Y. 2015) ........................................................42

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (N.Y. 2002) ..............................................................10, 27

*In re Grand Theft Auto Video Game Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................30, 31, 32

*Gutierrez v. Lemonade, Inc.*,
  2022 WL 3214852 (S.D.N.Y. Aug. 9, 2022) ............................................28, 29

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
  729 F. Supp. 3d 989 (C.D. Cal. 2024) ......................................................33

*Himber v. Intuit, Inc.*,
  2012 WL 4442796 (E.D.N.Y. Sep. 25, 2012) ..............................................38

v

*Hughes v. The Ester C. Co.*,
    317 F.R.D. 333 (E.D.N.Y. 2016) ............................................................36

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) ....................................................................10

*In re Int. Rate Swaps Antitrust Litig.*,
    2023 WL 8675625 (S.D.N.Y. Dec. 15, 2023) ..........................10, 13, 18

*Johnson v. Panetta*,
    953 F. Supp. 2d 244 (D.D.C. 2013) ........................................................33

*Kaczmarek v. Int'l Bus. Machs. Corp.*,
    186 F.R.D. 307 (S.D.N.Y. 1999) ............................................................32

*Khasin v. R. C. Bigelow, Inc.*,
    2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) ........................................37

*Kurtz v. Kimberly-Clark Corp.*
    321 F.R.D. 482 (E.D.N.Y. 2017) ....................................................15, 16

*Leyse v. Lifetime Ent. Servs., LLC*,
    679 F. App'x 44 (2d Cir. 2017) ..............................................................43

*Lojewski v. Grp. Solar USA, LLC*,
    708 F. Supp. 3d 342 (S.D.N.Y. 2023) ....................................................21

*Mack v. FCA US LLC*,
    2025 WL 2403393 (E.D.N.Y. Aug. 19, 2025) ........................................20

*Marshall v. Hyundai Motor Am.*,
    334 F.R.D. 36 (S.D.N.Y. 2019) ........................................10, 18, 19, 21

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds* ....................29

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    713 F. Supp. 3d 660 (N.D. Cal. 2024) ....................................................41

*Morales v. Kimberly-Clark Corp.*,
    2020 WL 2766050 (S.D.N.Y. May 27, 2020) ........................................10

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ..................................................................10

*Oscar v. BMW of N. Am.*,
    274 F.R.D. 498 (S.D.N.Y. 2011) ..................................................21, 30, 32

*Pagan v. Abbott Lab'ys, Inc.*,
  287 F.R.D. 139 (E.D.N.Y. 2021) ............................................................... *passim*

*Passman v. Peloton Interactive, Inc.*,
  671 F. Supp. 3d 417 (S.D.N.Y. 2023), *vacated on other grounds by,* 2025 WL
  1284718 (S.D.N.Y. May 2, 2025)................................................................13, 37, 42

*Patton v. Topps Meat Co.*,
  2010 WL 9432381 (W.D.N.Y. 2012) ....................................................................12

*In re Petrobras Secs.*,
  862 F.3d 250 (2d Cir. 2017)....................................................................................13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  MDL No. 1869, 934 F.3d 619 (D.C. Cir. 2019) ...................................................18

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
  97 F. 4th 525 (7th Cir. 2024)..................................................................................22

*Reitman v. Champion Petfoods USA, Inc.*,
  2019 WL 7169792 (C.D. Cal. Oct. 30, 2019), *aff'd*, 830 F. App'x 880 (9th
  Cir. 2020) ...............................................................................................................37

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of
  N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014)....................................................................................23

*In re Rock'n Play Sleeper Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2022 WL 22922234 (W.D.N.Y. June 2, 2022).......................................................34

*Romero v. Flaum Appetizing Corp.*,
  2011 WL 812157 (S.D.N.Y. Mar. 1, 2011) ...........................................................42

*Saleem v. Corp. Transp. Grp.*,
  2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013)........................................................13

*Singleton v. Fifth Generation, Inc.*,
  2017 WL 5001444 (N.D.N.Y. Sep. 27, 2017) .................................................20, 40

*In re Sling Media Slingbox Advert. Litig.*,
  202 F. Supp. 3d 352 (S.D.N.Y. 2016)...............................................................24, 26

*Solomon v. Bell Atl. Corp.*,
  9 A.D.3d 49 (N.Y. App. Div. 2004) .......................................................................21

*People ex rel. Spitzer v. Direct Revenue, LLC*,
  2008 WL 1849855 (Sup. Ct. Mar. 12, 2008).........................................................27

vii

*Tolbert v. Queens Coll.*,
    242 F.3d 58 (2d Cir. 2001)............................................................................33

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) .......................................................41

*Valcarcel v. Ahold U.S.A., Inc.*,
    577 F. Supp. 3d 268 (S.D.N.Y. 2021).....................................................15, 30

*Velez v. Lasko Prods., LLC*,
    2025 WL 1865165 (S.D.N.Y. July 7, 2025) .................................................38

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................................9

*Ward v. TheLadders.com, Inc.*,
    3 F. Supp. 3d 151 (S.D.N.Y. 2014)........................................................28, 29

*Wedra v. Cree, Inc.*,
    2022 WL 2116760 (S.D.N.Y. June 13, 2022) .............................................18

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010)...............................22, 33, 39, 43

*Weisblum v. Prophase Labs, Inc.*,
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) (Furman, J.)........................................33

*Wheeler v. Topps Co.*,
    652 F. Supp. 3d 426 (S.D.N.Y. 2023)..........................................................28

*Wynn v. N.Y.C. Hous. Auth.*,
    314 F.R.D. 122 (S.D.N.Y. 2016) ..................................................................12

## Statutes

N.Y. Gen. Bus. Law 349...........................................................................1, 8, 28

N.Y. Gen. Bus. Law § 349(a) ............................................................................27

N.Y. Gen. Bus. Law § 350.........................................................................1, 20, 28

N.Y. Gen. Bus. Law § 350(a) ............................................................................27

## Other Authorities

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 23(a) ....................................................................................9, 12

Fed. R. Civ. P. 23(a)(3)................................................................................................42

Fed. R. Civ. P. 23(a)(4)..................................................................................11, 12, 19

Fed. R. Civ. P. 23(b).................................................................................................9

Fed. R. Civ. P. 23(b)(3).................................................................................... *passim*

**TABLE OF EXHIBITS[1]**

| Exhibit No. | Document Name |
|---|---|
| 1 | Gareth Macartney Dep. |
| 2 | Schlievert Decl. |
| 3 | McGinley Decl. |
| 4 | Ginsberg Decl. |
| 6 | Kivetz Decl. |
| 8 | TL-000004229-32 |
| 9 | GESCHWIND001-015 |
| 10 | Pl. Geschwind's Resp. to Def.'s First Set of Interrogs. to Pl. |
| 61 | Yokoji Decl. |
| 65 | 51 Jurisdiction Survey |
| 66 | Geschwind Dep. |
| 67 | Stilwill Dep. |
| 68 | Laundress's Resp. to Contention Interrogatory |

[1] All exhibit references are to the Declaration of Ronald Y. Rothstein in Support of Defendant's Opposition to Plaintiff Motion for Class Certification.

x

## I.    INTRODUCTION

Far from the rigor Rule 23 demands, Deborah Geschwind's ("Plaintiff" or "Geschwind") Motion for Class Certification (the "Motion") lacks specificity and detail and relies almost entirely on an improper factual declaration from her lawyer which is loaded with argument, misstatements, and incorrect citations to documents, and an undeveloped, unreliable, and inadmissible damages expert declaration. This is a false advertising case, but the Motion fails to offer classwide proof concerning any specific advertising or product labels. Faced with an insurmountable burden, Plaintiff made the strategic gambit of making her Motion and supporting materials so vague and lacking in evidence, required detail, and specificity that she seemingly hopes Defendant, The Laundress, LLC ("The Laundress," "Laundress," or "Defendant"), and this Court, might grant her a pass. But it is axiomatic that the Court must receive enough evidence, by affidavits, documents, or testimony, to conduct a rigorous analysis showing that each Rule 23 requirement has been met. Plaintiff's Motion fails this exacting standard.

Plaintiff's Motion rests on blatant factual misunderstandings and the misapplication and complete absence of relevant law. She seeks to certify a nationwide class for claims brought under New York General Business Law ("GBL") Sections 349 and 350, breach of implied warranty of merchantability, and the Magnuson-Moss Warranty Act ("MMWA") consisting of all 8 million[2] products purchased on or after January 1, 2021 (the "Class Period") and subject to Laundress's December 1, 2022 recall (collectively, the "Products"). Even though her theory of deception rests entirely upon an alleged omission, not once does she, her expert, or her lawyer/declarant ever specifically define that omission. It seems she believes that by keeping this information secret until

---

[2] Despite references herein and in Plaintiff's Motion to "8 million" products, the actual number of Products subject to the recall is ███████. *See* Ex. 4, Ginsberg Decl. ¶22.

a later stage in the litigation, she can avoid the need to specify exactly what language Defendant should, on her theory, have included on every Product label—regardless of whether the Product was actually contaminated. Nor does she make any attempt to demonstrate how any element of her causes of action could be satisfied with common evidence. Worse still, she proposes a classwide remedy that would leave putative class members worse off than if they simply participated in The Laundress's highly publicized, full-refund recall program. That program was available throughout the entirety of this litigation and remains available today.

Plaintiff's false advertising theory ultimately rests on her ill-defined omission-based claim that "every Product purchased by [herself] and the Class omitted material information about bacterial contamination and was included in Laundress's recall based on bacterial contamination." Mot. at 12 (emphasis in original). But, with no evidence of universal contamination, her case rests entirely on the mere existence of the recall. That may have satisfied the permissive standard at the pleading stage, but it cannot carry Plaintiff's burden to establish by a preponderance of the evidence that Rule 23's requirements are met. They are not. Fatal to her Motion is irrefutable record evidence that the vast majority of Products were not contaminated, Plaintiff's admission that she has never tested any Laundress Product, and well-reasoned caselaw holding the existence of a recall alone does not show a universal product defect. Because she cannot satisfy the elements of Rule 23, Plaintiff's Motion should be denied.

## II.    BACKGROUND

### A.    The Laundress, LLC.

The Laundress was founded in 2004 as a premium fabric care brand, offering detergents, fabric conditioners, stain treatments, household cleaners, and specialty garment-care products. *See* Ex. 61, Yokoji Decl. (including a detailed background and discussion of the history of The

Laundress incorporated herein by reference). ████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████. *See* Ex. 3, McGinley Decl. ¶4. ████████

███████████████████████████████████████████████████████████

██████████████████████████████████. *Id.* ¶¶4–8.

The Laundress's products were sold through many channels, including online, in brick-and-mortar stores, or through third-party subscription services. *See* Ginsberg Decl. ¶4. Laundress sold directly to consumers through its website, TheLaundress.com. *Id.* ¶5. Its products were also sold nationwide in approximately 400 boutiques and through numerous third-party retailers such as Amazon.com, Bloomingdale's, The Container Store, Saks Fifth Avenue, Target, Nordstrom, and others. *Id.* ¶4. They were also sold through subscription services such as FabFitFun. *Id.* It is undisputed that Laundress's sales occurred nationwide, not just in New York. *Id.*

**B.** **The Laundress Discovers Potential Bacterial Contamination in Certain Lots of Products Manufactured by FMI, Leading to the December 1, 2022 Recall.**

████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████, it

proactively issued a product withdrawal on November 17, 2022 (Ex. 8, TL-000004229-32) to stop

the sale of Laundress products at all retail locations. *See* Ginsberg Decl. ¶9. That was followed by

the recall on December 1, 2022 which stated "the recalled products can contain bacteria." *See id.*

¶10. In total, the recall covered 250 Laundress Products. *See id*.

### C.    The Refund Program for Recalled Products.

As part of its December 1, 2022 recall coordinated with CPSC, The Laundress offered a

widely publicized refund program to consumers. *See id.* ¶12. Refund were offered to all consumers

who showed, using a flexible set of documentation options, that they purchased recalled Laundress

Products, regardless of whether they purchased a Product that was found to contain bacterial

contamination. *See id.* ¶14. The principal pathway for a refund, approved by CPSC, allowed

consumers to submit a photograph of their bottle (or bottles, if multiple Products). *Id.* For

consumers who purchased directly from The Laundress's website, the program authorized refunds

based merely on submission of the email address used at the time of purchase, without requiring a

product photo. *Id*. ¶13. Consumers could also submit a purchase receipt for a Product covered by

the recall. *Id*. ¶14.

The recall and refund program was widely disseminated. It was publicized on CPSC's

website (*see id.* ¶10) and emailed to all consumers who purchased Products on The Laundress's

website. *See id.* ¶19. It was also distributed through Amazon.com, where many consumers

purchased Laundress Products. *Id*. ¶¶4–5. Many national media outlets also reported on the recall, including ABC, USAToday, CBS, Fox59, and consumerreports.org. *See id*. ¶10. This sweeping notification to Laundress consumers yielded a substantial number of reimbursement requests. *See id*. ¶20. The success of the refund program is plainly evident, as The Laundress paid approximately ███████████ in reimbursements to U.S. consumers through October 2024. *See id*. ¶21. ███ ███████████████████████████████████████████████████████████. *Id*.

### D.    The Class Action Complaint and The Laundress's Motion to Dismiss.

Plaintiffs Ostenfeld, Geschwind, Murphy, and Stilwill filed a Consolidated Class Action Complaint on May 2, 2023. *See* Dkt.No. 16. They alleged that from "at least January 2021 until November 2022," The Laundress "failed to disclose that [its] Products contained dangerous bacteria or were at unreasonable risk of containing dangerous bacteria[.]" *Id*. ¶3. On this theory, Plaintiffs (except Geschwind) raised product liability claims for personal injury, individually and on behalf of a putative "Personal Injury Class," claiming design, manufacturing, and warning defects in Laundress's Products. *See* Dkt.No. 16 (Counts V, VI, and VII). Plaintiffs (including Geschwind) also raised claims, individually and on behalf of a putative "Economic Injury Class," under the GBL, for breach of express and implied warranty, unjust enrichment, and under the MMWA. *See id.* (Counts I–V, VIII).

The Laundress moved to dismiss and strike Plaintiffs' class allegations. *See* Dkt.Nos. 18, 20. The Court dismissed all claims premised on packaging statements that the Products were "allergen-free" and "biodegradable." Dkt.No. 86 at 31. The Court accepted—at the pleading stage—that consumers could plausibly understand the term "non-toxic" to mean the Products should not contain bacteria and allowed only this single theory of misrepresentation to proceed. *Id.* The Court permitted Plaintiff's omission theory to survive solely because the Court was

5

required to draw all inferences in Plaintiff's favor and because the alleged internal knowledge of contamination (if any) would be within the company's exclusive possession. *Id.* at 19–20. But the Court acknowledged that there was "some force" to the argument that Plaintiff failed to adequately allege pre-recall knowledge of contamination, which rested on speculative inferences—none of which Plaintiff has developed in discovery—about "the products' unique attributes," generalized assumptions about quality-assurance processes, and a small number of consumer reports. *Id*.

### E.    Plaintiff Seeks to Certify a Class Based on Only an Alleged Omission.

Although this Court allowed only the statement "non-toxic" to proceed, Plaintiff does not seek certification based on any express misrepresentation. *See generally* Mot. This is for good reason, since the non-toxic[3] statement was removed from Product labels and all advertising beginning in late 2019. *See* McGinley Decl. ¶¶10–34. Instead, Plaintiff seeks certification based solely on an omission theory. *See* Mot. at 11 ("Geschwind's claims, like the claims of each Class member, arise from The Laundress's failure to disclose the Products' bacterial contamination[.]"). Plaintiff's Motion, however, fails to provide the Court with a clear statement of what, exactly, was omitted.

Plaintiff has waffled around throughout this case without ever explaining what specific language was omitted from The Laundress's advertising and Product labels. In her Second Amended Complaint ("SAC") (Dkt.No. 268), discovery responses, Motion, and supporting declarations (from herself, her attorney, and a damages expert), she provides at least 11 markedly different statements characterizing her amorphous omission theory. She shifts from concealing

---

[3] Plaintiff makes two vague references to "non-toxic" in the introduction to her Motion, but does not connect them to any Laundress advertising or labeling, or any of her causes of action. Her abandonment of affirmative misrepresentation is also evident from her choice not to pursue her express-warranty claim.

reports of injury, failing to disclose bacterial contamination, failing to disclose the risk of bacterial contamination, and flaws in design and manufacturing, to claiming that the Products did not contain sufficient preservatives. In her SAC, she complained that The Laundress did "not disclose that the Products contained bacteria (in the ingredient section or otherwise)," "did not disclose the risk of bacterial contamination due to systemic Product design and/or manufacturing defects," and "provided no warnings or instructions regarding the risk of bacterial contamination, the presence of bacteria, or the signs of, and what to do if a user suspected, an infection." SAC ¶9. She also references "undisclosed flaws in Product design and manufacturing that made the products unreasonably susceptible and unreasonably at risk of bacterial contamination." *Id*. ¶38. Her interrogatory responses state that the "products should have disclosed that they were unsafe to use" and that The Laundress "omitted to accurately disclose the risks of the products or that the products contained dangerous bacteria or disclose that products did not contain sufficient preservatives to keep the product safe." *See* Ex. 10, Pl. Geschwind's Resp. to Def.'s First Set of Interrogs. to Pl. No. 8. Her Motion claims The Laundress did not "disclose the contamination risk" and that unspecified advertising "omit[ted] the contamination." *See* Mot. at 6–7. Her Declaration claims there was no warning about "bacteria," "the risk of bacterial contamination," or "dangers of the products." *See* Geschwind Decl. ¶11 (Dkt.No. 338-8). Her attorney claims The Laundress did not "warn consumers about the contamination" or disclose on its Product labels "that the products had bacteria, including Pseudomonas, in them[.]" Fearon Decl. ¶¶43, 109 (Dkt.No. 338-1). And her damages expert references generic "material omissions" and "products labelled as unharmful, or omitting information about the risk of the products," and asserts The Laundress "fail[ed] to disclose material facts by marketing and selling unsafe and toxic Products contaminated, or potentially contaminated, with harmful bacteria[.]" Macartney Decl. ¶7 (Dkt.No. 338-7).

7

### F.    The Plaintiff.

Geschwind lives in New York and purchased Products from TheLaundress.com. *See* Ex.
66, Geschwind Dep. 111:9–10, 118:8–13. She bought 16 Products between April 2022 and
September 2022. *See* Geschwind Decl. ¶13. She produced no evidence that any of the Products
she purchased were contaminated and admitted that she never tested any Product she purchased
for the presence of bacteria. *See* Geschwind Dep. 155:9–12 (Q: "Did you ever test any of the
products that you purchased?" A: "No. Tested for toxic ingredients or bacteria? No."). Geschwind
participated in The Laundress's recall program and received a refund for her Product purchases in
the amount of $284 dated January 26, 2023. *See* Geschwind Dep. 192:2–5; *see also* Ex. 9,
GESCHWIND008. Finally, she testified she was "happy" with the Products and "they did the job."
Geschwind Dep. 233:15-25 (Q. "were you happy with The Laundress products?" A. "Yeah, they
worked fine as far as cleaning my clothes and I was happy with the products, yeah." Q. "And did
you feel like they did the jobs that they were promoted to do?" A. "Yeah, I feel like they did the
job.").

Geschwind seeks to certify a single nationwide economic-injury class under GBL §§ 349
and 350, for breach of the implied warranty of merchantability and under the MMWA of "[a]ll
United States consumers who purchased Products on or after January 1, 2021," which would
consist of all "8 million of its cleaning products in the marketplace sold after January 2021 (the
'Products')." Mot. at 2. Her proposed class includes every purchaser of a recalled Product no
matter where the transaction took place, whether the product was contaminated, or the mode of
purchase (e.g., from The Laundress or a third-party, online, at a brick-and-mortar retailer, or a
subscription service).

## III.    LEGAL STANDARD

**Class Certification.** "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To come within that exception, a party "seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* Plaintiff "must first show, by a preponderance of the evidence, that the requirements of Rule 23(a)—namely, numerosity, commonality, typicality, and adequacy or representation—are satisfied." *Allen v. City of New York*, 2022 WL 4133132, at *1 (S.D.N.Y. Sep. 12, 2022) (Furman, J.) (denying certification where plaintiffs failed to satisfy their burden under Rule 23(a) and (b)). But what "matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Plaintiff must also "demonstrate that the proposed class fits within Rule 23(b)." *Allen*, 2022 WL 4133132, at *1. She is proceeding under Rule 23(b)(3), requiring that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy[.]" *See id*. "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Garrido v. Money Store*, 649 F. App'x 103, 105 (2d Cir. 2016) ("Summary Order").

The Court must make a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues" and "resolve[] factual disputes relevant to each Rule 23 requirement[.]" *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Indeed, the Court must "assess all of the relevant evidence [including expert testimony and reports,] at the

class certification stage[.]" *Id.* at 42. The Court must also consider potential defenses in assessing whether to certify a class. *Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010). And "disputes between experts must be resolved if necessary to the Rule 23 analysis." *In re Int. Rate Swaps Antitrust Litig.*, 2023 WL 8675625, at *6 (S.D.N.Y. Dec. 15, 2023).

**GBL, Implied Warranty and MMWA.** To prove her claim under the GBL, Plaintiff must show that The Laundress engaged in an act or practice "that is deceptive or misleading in a material way and that Plaintiff has been injured by reason thereof." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (N.Y. 2002). The "allegedly deceptive acts, representations or omissions must be misleading to 'a reasonable consumer.'" *Id.* "Deception alone," however, "cannot constitute 'actual injury' under [the] GBL[.]" *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019). An omissions-based GBL claim, like Plaintiff's here, requires more. Plaintiff must prove that the defendant alone possessed the material information that is relevant to the consumer and failed to provide this information. *Morales v. Kimberly-Clark Corp.*, 2020 WL 2766050, at *5 (S.D.N.Y. May 27, 2020). "Deceptive acts or practices" as used in the GBL is "not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer[.]" *Goshen*, 98 N.Y.2d at 325.

Plaintiff's claim for breach of the implied warranty of merchantability requires a showing that the at-issue product is "unfit for the ordinary purposes for which such goods are used." *Bynum v. Fam. Dollar Stores, Inc*., 592 F. Supp. 3d 304, 315 (S.D.N.Y. 2022). And her claim under the MMWA rises or falls with her implied warranty claim. *See Arthur Glick Leasing, Inc. v. William J. Petzold, Inc*., 51 A.D.3d 1114, 1117 (N.Y. App. Div. 2008) ("The MMWA defines 'implied warranty' as 'an implied warranty arising under [s]tate law'" and "does not alter state law provisions regarding the existence of implied warranty claims").

10

## IV.    ARGUMENT

### A.    Plaintiff's Motion Fails under Rule 23(a)(4) or 23(b)(3)—She Already Received a Refund and Is Misaligned with the Putative Class.

Plaintiff has not shown that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As part of its December 1, 2022 recall, The Laundress offered (and offers to this day) full refunds to U.S. consumers. *See* Ginsberg Decl. ¶11. This program has been highly successful, leading to over ███████ in refunds to consumers, including Geschwind herself. *See* Geschwind Dep. 192:2–5 (Q. "you received a check in the amount of $284 on or shortly after January 26, 2023; is that right?" A. "I did."). The full-refund remedy Plaintiff currently seeks for the putative class is identical to the remedy already available to all putative class members. In fact, if Plaintiff succeeds, class members will be worse off because they will not receive the full refund that they would have obtained under The Laundress's refund program, but instead will receive a reduced amount by virtue of the cost of attorneys' fees and notice to the class. *See* Ex. 7, Jain Decl. ¶35.

The Seventh Circuit considered an almost identical situation in *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011). There, the defendant, after learning of the problem with its products, recalled them and provided full refunds. *Id.* at 750. The court held that, given the defendant's widespread recall and refunds, the plaintiff failed to meet the requirements of Rule 23(a)(4). It explained that "[a] representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests." *Id.* at 752. The Court explained that a class action where a full refund was already offered, and notice widely disseminated, would only increase costs, to the detriment of class members. *Id.* Here, Plaintiff's damages models, at best, offer class members a refund for their purchase price, which will be eaten

into by attorneys' fees and notice costs. *See* Jain Decl. ¶35.

Courts in this Circuit have declined to certify classes in similar circumstances (although generally under Rule 23(b)(3)'s superiority prong). For example, in *Pagan v. Abbott Laboratories, Inc.*, the court found a class action was not superior, explaining "[t]he wisdom of the Plaintiffs' decision to forgo the Recall program is questionable, particularly in light of the number of cases that have denied class certification in consumer class actions because a voluntary recall and/or refund program provided a superior method of compensating the putative class members." 287 F.R.D. 139, 151 (E.D.N.Y. 2021). This is because "[w]here available refunds afford class members a comparable or even better remedy than they could hope to achieve in court, a class action would merely divert a substantial percentage of the refunds' aggregate value to the class lawyers." *Id.*; *see also Patton v. Topps Meat Co.*, 2010 WL 9432381, at *10 (W.D.N.Y. 2012) (refund program superior under Rule 23(b)(3) when it "provide[d] purchasers of the subject products with full refunds"). Given the continued availability of the refund program, the Court should deny certification, either under Rule 23(a)(4) or 23(b)(3).

### B.    Plaintiff Cannot Satisfy Rule 23(a) Commonality or 23(b) Predominance.

The inquiries "into commonality . . . and predominance overlap" and are often considered together. *See Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016). Commonality under Rule 23(a) requires "questions of law or fact common to the class." *Saleem v. Corp. Transp. Grp.*, 2013 WL 6061340, at *4–6 (S.D.N.Y. Nov. 15, 2013) (Furman, J.) (denying certification when commonality was lacking). "Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority." *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 141 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 555 (2d Cir. 2016). Assessing predominance requires consideration of "(1) the 'elements of the claims and defenses to be

12

litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief.'" *Id*. at 142. Predominance lacks where "individualized questions permeate the litigation . . . [and] 'make use of the class-action device inefficient or unfair.'" *In re Petrobras Secs.*, 862 F.3d 250, 270 (2d Cir. 2017). It is Plaintiff's "burden to show" that the alleged conduct "impacted 'all or virtually all' class members." *Rate Swaps*, at *10. "What will doom a class, however, is the determination that common issues will be overwhelmed by individual issues." *Adkins*, 307 F.R.D. at 142.

Plaintiff puts forth no evidence—because none exists—showing bacterial contamination affected all Products purchased by the putative class. Nor does Plaintiff include any other hallmark evidence normally seen in connection with a false advertising claim at class certification—no consumer surveys, relevant market research, or other evidence establishing consumer perception, price impact, materiality, causation, or deception. *See Bustamante v. KIND, LLC*, 100 F.4th 419, 430–32 (2d Cir. 2024) (plaintiff failed to "present any cohesive definition of what a reasonable consumer would expect from" the at-issue labels statement, such as through relevant, admissible consumer surveys that provided "useful information about how a reasonable consumer understands [the at-issue term]"). She likewise fails to provide the specific language she alleges is omitted or any evidence of how consumers would likely react to it. *See Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 439–40 (S.D.N.Y. 2023), *vacated on other grounds by,* 2025 WL 1284718 (S.D.N.Y. May 2, 2025) ("It would not be 'enough for a plaintiff to assert, based on his or her own subjective belief that [defendant]'s statement . . . conveyed the alleged implied [false] message,' if there were not also evidence that the same understanding was shared by a reasonable

consumer."). These failures require denial of her Motion.

### 1.    Plaintiff cannot demonstrate classwide injury.

#### i.    A recall is insufficient to show a classwide defect.

Contrary to Plaintiff's suggestion, the mere fact of The Laundress's recall is insufficient to show a classwide defect. Mot. at 5–6; *see Pagan*, 287 F.R.D. at 148 (not enough to merely show class members purchased recalled products; Plaintiff must demonstrate that class members purchased products that were actually contaminated). Here, the recall notice merely stated, "the recalled products can contain bacteria." Ginsberg Decl. ¶10. Courts hold that where the recall notice states there is only a possibility that some recalled products are contaminated, that is not an admission that every unit contained the defect and requires that the court "undertake an individualized inquiry as to whether each plaintiff purchased a defective product." *Brandner v. Abbott Lab'ys, Inc.*, 2012 WL 195540, at *8 (E.D. La. Jan. 23, 2012); *Cerqua v. Stryker Corp.*, 2013 WL 1752284, at *5 (S.D.N.Y. Apr. 23, 2013) ("[R]ecall alone cannot raise a triable issue of fact as to whether the particular [product] at issue was defective."); *Goldin v. Smith & Nephew, Inc.*, 2013 WL 1759575, at *4 (S.D.N.Y. Apr. 24, 2013) (the fact of a voluntary recall does not suffice to prove a defect).

#### ii.    There is no evidence of universal contamination.

***Proof of contamination requires a unit-by-unit inquiry***. Neither Plaintiff nor any putative class member suffered injury in this case (under any cause of action) if the Products they purchased were not contaminated. *See Pagan*, 287 F.R.D. at 148 (commonality and predominance could not be satisfied in a case involving potential contamination of recalled products because GBL claims require plaintiff to "demonstrate an actual injury," and evidence suggested most products were not contaminated); *In re Canon Cameras*, 237 F.R.D. 357, 359–60 (S.D.N.Y. 2006*)* (denying

certification of implied warranty and GBL claim because "proof of malfunction is a prerequisite to any of plaintiffs' claims, and yet they do not meaningfully contest that the class they seek to certify likely consists in overwhelming measure of owners of cameras that did not malfunction at all."); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429 (S.D.N.Y. 2017) (Furman, J.), *modified on reconsideration*, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) (New York law requires "manifested defect" for plaintiff to recover under GBL); *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021) (MMWA incorporates implied warranty claim standards).

Plaintiff relies on *Kurtz v. Kimberly-Clark Corp*. 321 F.R.D. 482 (E.D.N.Y. 2017), but that case actually supports Defendant. The *Kurtz* court noted that *Pagan* and *Canon Cameras* related to consumer claims spawning from a manufacturer's failure to disclose a product defect. *Id*. But *Kurtz* distinguished *Pagan* and *Canon Cameras*, explaining that "here, by contrast, the injury is the price premium on every [flushable wipe] sold, not the purchase of some defective products sold among many without defect." *Kurtz*, 321 F.R.D. at 532.

Plaintiff developed no evidence during discovery, and developed no method of classwide proof, showing that *all* Laundress Products subject to the recall were contaminated with bacteria.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

███████████████████

Plaintiff's purchase history illustrates the burdensome individual inquiries that will be needed for each putative class member's Product purchase(s). She bought 16 different Products consisting of 17 bottles. *See* Geschwind Decl. ¶ 13. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ 86.

But the individualized inquiry does not stop there. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ 60. Determining whether a consumer purchased a contaminated unit will require a bottle-by-bottle analysis that is the very type of individualized inquiry that defeats predominance. *See Pagan*, 287 F.R.D. at 151 (no predominance when individual inquiries were required to determine "who among the class members actually purchased" the defective product).

████████████████████████████████ *is not evidence of classwide contamination*. ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

16

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

    Moreover, since Products were used and the bottles discarded when empty, it is likely impossible to determine whether those millions of units contained any bacteria at all. There were no widespread indications of Products failing in the marketplace due to contamination and Plaintiff testified she was "happy" with the Products and "they did the job." ████████████████████

████████████████████████████████████████████

████████. Plaintiff has thus offered no method to evaluate on a classwide basis how a determination of bacterial contamination can be made without the need for individualized inquiries.

    *Individualized questions of contamination defeat predominance*. Without evidence of a

---

[4]████████████████████████████████████████████
████████████████████████████████████████████.

17

classwide injury, individual issues predominate, and certification is impossible. *See Wedra v. Cree, Inc.*, 2022 WL 2116760, at *6 (S.D.N.Y. June 13, 2022) (denying certification, holding "unless plaintiff establishes a cognizable classwide defect, the truth or falsity of defendant's representations 'could be proven *only* on the basis of individual evidence[.]'"). It is Plaintiff's "burden to show" that the alleged conduct "impacted 'all or virtually all' class members," which she has failed to do. *Rate Swaps*, at *10. This Court has recognized that "[d]istrict courts in this and other Circuits have held that a class may [only] be certified so long as a *de minimis* number of class members were uninjured or, conversely, virtually all class members were injured," and that the number of uninjured putative class members cannot exceed "5% to 6%." *City of Philadelphia v. Bank of Am. Corp.*, 2023 WL 6160534, at *8 (S.D.N.Y. Sep. 21, 2023) (Furman, J.).[5] Consequently, where only some at-issue products within the class definition manifested a defect, courts universally deny certification of GBL, implied warranty, and MMWA claims. *See, e.g.*, *Canon Cameras*, 237 F.R.D. at 359 (denying certification of GBL, implied warranty, and MMWA claims when putative class "likely consist[ed] in overwhelming measure of owners of cameras that did not malfunction"); *Marshall*, 334 F.R.D. at 57 (denying certification when "only a fraction of the approximately 67,000 cars included in the class actually experienced brake issues"); *Pagan*, 287 F.R.D. at 151 (predominance not met when "individual inquiries will be required" to determine "who among the class members actually purchased recalled Similac that [manifested

---

[5] Furthermore, this Court acknowledged that the number of uninjured plaintiffs in other cases at 10% and 12.7% exceeded this *de minimis* consensus. *Id.*, at *11 (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 934 F.3d 619, 623 (D.C. Cir. 2019) (affirming denial of class certification and finding 12.7% of the proposed class was uninjured and thus more than *de minimis*), and *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54 (1st Cir. 2018) (finding "ten percent" more than *de minimis* as the "need to identify those individuals will predominate and render an adjudication unmanageable")).

the alleged defect]").[6] ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

### iii.    "Risk" of contamination is not enough.

Surely recognizing the impossibility of showing contamination on a classwide basis, Plaintiff suggests, without support, that a classwide "risk" alone is sufficient. Mot. at 18–19 (claiming the Products "posed an unreasonable risk of bacterial contamination[.]"). But "Plaintiff[] cite[s] no case in which exposure to risk, standing alone, entitles [her] to recovery under GBL[.]" *Marshall*, 334 F.R.D. at 59. To the contrary, a "risk exposure" theory is foreclosed by black-letter law and is rejected by courts. *See id.* ("[E]ven if a 'risk exposure' theory were not foreclosed by black letter law, Plaintiffs 'chose expressly to confine the relief sought solely to monetary recoupment[,]' and so are not entitled to claim damages resulting from the risk of physical injury."); *Gonzalez v. Corning*, 885 F.3d 186, 196, 199 (3d Cir. 2018) (affirming denial of certification where alleged defect impacted only some, but not all, at-issue roof shingles, rejecting argument that "customers had unknowingly entered a 'shingle' lottery," holding plaintiff's "novel" invitation "to equate the existence of a defect with the mere possibility that one might exist" had "no support in Rule 23 or caselaw for class certification").

### iv.    Neither material misrepresentation, omission, nor causation can be shown classwide—all require individualized proof.

Under the GBL, the at-issue alleged misrepresentation or omission must be deceptive or misleading in a material way, meaning it was "likely to mislead a reasonable consumer acting

---

[6] The only recall case cited in Plaintiff's Motion is *Aqua Dots*, but there the defect was universal, as it involved a Chinese manufacturer substituting an adhesive, in all products, that was toxic when ingested. 654 F.3d at 749. Nonetheless, the Court denied class certification pursuant to Rule 23(a)(4) as discussed above.

reasonably under the circumstances." *Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *17 (N.D.N.Y. Sep. 27, 2017). Plaintiff fails this task because she does not identify what was specifically misrepresented or omitted from The Laundress's advertising and labeling.

The "primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). Here, while the non-toxic statement survived the motion to dismiss, Plaintiff does not seek to certify a class based on that statement. She proceeds on a generic global omission theory offering more than 11 variants, but fails to offer classwide proof of how any omission connects with a particular advertisement or label and how it is materially misleading to a reasonable consumer. Her lawyer, Fearon, ran into the same problem in a case he lost at class certification and summary judgment just months ago. *See Mack v. FCA US LLC*, 2025 WL 2403393, at *23 (E.D.N.Y. Aug. 19, 2025) (dismissing GBL § 350 claim when plaintiffs "d[id] not identify a false advertisement"). In *Mack*, the court explained, "Plaintiffs cannot wish away the elements of falsity and causation under a generic global theory that [defendant] advertised the cars at issue and no advertisement mentioned its knowledge of the gearshift defect." *Id.* Here, Plaintiff's damages expert's generic discussion of a purported consumer preference for "unharmful products" (Macartney Decl. ¶¶16–21) reinforces this shortcoming, as he admitted he did not consider any specific Laundress advertising or label statements in conducting his analysis. *See* Ex. 1, Macartney Dep. 101:6–7 (admitting his opinions "do not hinge, if you like, on specific language").

Plaintiff also falls short of offering the type of common evidence of materiality that could support her omission theory. *See Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 53 (N.Y. App. Div.

2004) ("[C]lass certification is not appropriate where the 'plaintiffs do not point to any specific advertisement or public pronouncement by the [defendants] . . . which was undoubtedly seen by all class members[.]'"); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) (denying certification when plaintiffs had "not offered sufficient evidence of materiality across the class" when there was no "consumer survey or other market research to indicate how consumers reacted" to the alleged misstatements). She offers no common evidence that reasonable consumers were misled by any supposed omission. And without evidence showing that reasonable consumers would respond to Plaintiff's myriad omission theories in the same manner (such as a survey, market research, or other expert analysis), Plaintiff fails to meet her burden to show that the materiality of any omission is supported by classwide proof.

Similarly, without a survey or other classwide evidence demonstrating how reasonable consumers would react to any purported omission, Plaintiff fails to demonstrate causation. *See Marshall*, 334 F.R.D. at 59 (GBL requires causation); *Lojewski v. Grp. Solar USA, LLC*, 708 F. Supp. 3d 342, 364 (S.D.N.Y. 2023) (implied warranty claim requires causation). Without such evidence, "the link between the defendant's alleged deception and the injury suffered by plaintiffs is too attenuated and requires too much individualized analysis." *Oscar v. BMW of N. Am.*, 274 F.R.D. 498, 512–13 (S.D.N.Y. 2011) (denying certification where plaintiff "adduced absolutely no evidence that he could demonstrate on a class-wide bases that consumers would have paid less for their [vehicles] if they had known that the tires were susceptible to puncture"); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) (denying certification because plaintiff had not demonstrated through a "reliable methodology" that consumers would have based purchasing decisions on the labeling at issue).

        **v.**      **Standing.**

21

In this Circuit, "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–65 (2d Cir. 2006). Standing requires a concrete and particularized injury; *risk* alone is insufficient. *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F. 4th 525, 529 (7th Cir. 2024) (no standing where plaintiffs merely alleged "a risk" of contamination). Here, at least ███ of the FMI samples tested showed no contamination, and the purchasers of uncontaminated Products were uninjured. Plaintiff's injury is not particularized because she has offered no proof that the Products she bought were contaminated, relying instead on her doomed risk theory. *See id*. While she admits she was already reimbursed through the recall, she presents no evidence that the Products she purchased were contaminated, and several were not even included in the recall, but were reimbursed nonetheless. She even testified she was "happy" with the Products and "they did the job."

Moreover, it is well-settled in this Circuit that "Plaintiffs lack class standing to bring claims for . . . products that they did not purchase." *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 28 (2d Cir. 2014) ("Summary Order") (no standing for products not purchased because "each of the seven different products have different ingredients, and [defendant] made different advertising claims for each product"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 391 (S.D.N.Y. 2016) (no classwide standing for unpurchased products because "each Named Plaintiff only has standing on behalf of others with regard to products they actually purchased"). The "class standing inquiry echoes some of the considerations of the predominance inquiry of Rule 23(b)(3)." *Id*. (Plaintiffs lacked standing as to unpurchased products because they "cannot demonstrate that the claims involving their 18 products are the same in *all essential respects* to the claims absent members would have for the other 72 products (the questions of proof are product specific)"); *see also Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank*

*of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) (no classwide standing because "alleged misconduct [had to] be proven loan-by-loan and trust-by-trust").

Setting aside her failures under the contamination (potential or otherwise) and harmful versus unharmful constructs, Plaintiff cannot survive standing scrutiny for unpurchased Products she asserts on behalf of the putative class. Plaintiff purchased 16 Laundress Products (comprising 17 bottles). *See* Geschwind Decl. ¶13. Of those 17, ███████████████████████████████ (*see* McGinley Decl. ¶14), and therefore included in the recall. *See* Ginsberg Decl. ¶10. ███ ████████████████████████████████████ nd may or may not have been included in the recall. Only a product-by-product inquiry can resolve that issue. Thus, Plaintiff did not purchase at least 237 and perhaps up to 248 Products she seeks to certify. Indeed, the 250 recalled Products consist of several different Product types, including Laundry Detergents (such as Signature, Darks, Whites, Delicate Wash, Wool & Cashmere Shampoo, Activewear, and Baby Detergent), Fabric Conditioners, Stain Treatment products (including the Stain Solution and All-Purpose Bleach Alternative), Fabric Sprays (such as the Classic and Wool & Cashmere sprays), Home Cleaning products (including Surface Cleaners and All-Purpose Cleaning Concentrate), Dish Detergents, and Glass & Mirror Cleaners. Each Product has different ingredients, claims, and labeling. *See* McGinley Decl. ¶¶9–13, 16–35 (providing detailed description of those differences). Plaintiff offers no evidence that her claims based on the few recalled Products she purchased implicate the same set of concerns as claims of the putative class covering the Products she did not buy. She thus lacks standing on behalf of the putative class for claims against unpurchased Products.

### vi. Isolated quality-control issues do not establish The Laundress's knowledge under Plaintiff's omission theory.

The key to a GBL omission claim is that "the defendant 'possess' the information that the plaintiff claims it improperly withheld." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp.

23

3d 352, 359 (S.D.N.Y. 2016). Furthermore, Plaintiff's omission-based claim requires that The Laundress was aware at the time of sale of the allegedly omitted information. *See id.* Though Fearon identifies isolated quality-control incidents with The Laundress products in 2020 and 2021 (*see* Fearon Decl. ¶¶13-14, 17-18, 20, 22–24), Plaintiff offers no evidence from any witness or expert that those limited incidents have any connection to the limited contamination at FMI that led to The Laundress's December 2022 recall. They do not.



█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

██████████████████

Neither individually nor collectively do these isolated quality issues establish the requisite knowledge for Plaintiff's GBL claim. *See Sling Media*, 202 F. Supp. 3d at 359; *Bozick v. Conagra Foods, Inc*., 2022 WL 4561779, at *3 (S.D.N.Y. 2022) (that defendant received complaints regarding its product "does not, alone, give rise to an inference that [d]efendant failed to disclose material information"). Nor would any of these one-offs lead The Laundress to make sweeping changes to its product labels or advertising, as Plaintiff suggests through her omission-based claim. *See* McGinley Decl. ¶36. Rather, the evidence shows that, in the rare instances The Laundress detected a quality issue with any Products, it took steps to investigate and remove impacted Products from the market. *See id.* And, true to form, that is precisely what The Laundress did when it learned of the bacterial contamination leading to its December 1, 2022 recall that is the subject of this case.

### vii.    Plaintiff's proposed nationwide class raises insurmountable territoriality, choice-of-law, and manageability problems.

Plaintiff seeks to certify a nationwide class, but falls short of her burden to demonstrate with classwide evidence how such a class could proceed under the GBL with its threshold territorial requirements, or on her claims for breach of implied warranty and violation of the MMWA, which will require application of 51 jurisdictions' laws. *See* Mot. at 14, 17.

***GBL's territorial requirements cannot be shown on a classwide basis.*** No instance of a court certifying a nationwide GBL damages claim has been located, Plaintiff did not identify any, and this case should not be the first. Plaintiff fails to provide evidence that the territoriality requirement of her GBL claim is susceptible to classwide proof. The GBL requires that the allegedly "deceptive acts" or "false advertising" occurred in New York. *See* N.Y. Gen. Bus. Law §§ 349(a), 350(a). Plaintiff's principal argument is that this requirement is satisfied because The Laundress has its "principal place of business," oversees its website, keeps records, and makes corporate decisions in New York. Mot. at 15; Fearon Decl. ¶¶113–15. However, the GBL's territorial requirement "does not turn on the residency of the parties" and instead turns on the location where the purchase takes place. *Goshen*, 98 N.Y.2d at 323, 324–25. Courts routinely hold that "where the deception is alleged to have affected consumers nationwide, it is not enough to allege merely that the defendant's principal place of business is in New York . . . or that defendant originated the overall scheme in New York." *People ex rel. Spitzer v. Direct Revenue, LLC*, 2008 WL 1849855, at *7 (Sup. Ct. Mar. 12, 2008) (dismissing GBL claim on territoriality grounds); *see Eng. v. Danone N. Am. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 536 (S.D.N.Y. 2023) ("notwithstanding that defendant's principal place of business is in New York," the "purportedly deceptive transaction occurred in Texas" when the plaintiff "purchased the Product in Texas").

Equally misplaced is Plaintiff's contention that overseeing "website operations" from New York somehow demonstrates a "transaction" in New York. Mot. at 15; Fearon Decl. ¶¶114–115; *see Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 429 (S.D.N.Y. 2023) ("Courts have consistently rejected claims under § 349 and § 350 based solely on an out-of-state customer's interacting with a website controlled in New York."). Plaintiff also ignores the evidence that only ████ of the units purchased by putative class members took place on The Laundress's website or at its physical

27

location in Soho. *See* Macartney Dep. 185:15–20 (Q. ██████████ percent of units that are subject

to your analysis for the sake of conducting a damages analysis here, were sold direct to consumer,

either through the Laundress.com website or at the Prince Street location, is that right?" A. "Yes.").

████████████████████████████ were sold through wholesale channels to consumers.[7]

*See* Macartney Dep. 185:9–13; Ginsberg Decl. ¶22. The Fearon declaration says nothing about

where any putative class member's underlying transaction took place. *See* Fearon Decl. ¶¶111–15.

The GBL's territorial requirements cannot be shown classwide.

  ***Plaintiff's case law is inapposite.*** The cases Plaintiff cites only further demonstrates her

misunderstanding of her burden at the class-certification stage. *Cruz v. FXDirectDealer, LLC*, (and

each of the other cases Plaintiff cites), was a motion-to-dismiss decision, did not apply Rule 23,

and was careful to cabin its analysis with the phrase "at [this] stage." 720 F.3d 115, 124 (2d

Cir. 2013)*; see also Ward v. TheLadders.com, Inc*., 3 F. Supp. 3d 151, 168 (S.D.N.Y. 2014)

(motion to dismiss); *Gutierrez v. Lemonade, Inc*., 2022 WL 3214852, at *1 n.2 (S.D.N.Y. Aug. 9,

2022) (same); *Cline v. TouchTunes Music Corp*., 211 F. Supp. 3d 628, 633 (S.D.N.Y. 2016)

(same).[8] And *Cline* actually supports denial of Plaintiff's motion on predominance grounds. There,

---

[7] Plaintiff Stilwill, for example, lives in Nebraska and purchased multiple products from "The
Container Store" in Nebraska. *See* Stilwill Dep. 94:4–8, 11–15. Similarly, former Plaintiff Murphy
purchased products from third-party "e-commerce stores such as FabFitFun.com." *See* Dkt.No. 16
¶ 95.
[8] The cases are distinguishable. *Cruz* held, at the pleading stage, that the GBL territoriality
requirement was satisfied when plaintiff alleged that (1) defendant was "paid in New York"; (2)
defendant would not release funds until it received certain required forms at its New York office;
(3) all customer communications were sent to New York; (4) the contract with plaintiff specified
that New York law governed all disputes; and (5) all disputes were to be adjudicated in New York
courts. 720 F.3d at 123–24. Here, Plaintiff has not presented, on a classwide basis, there were
payments in New York, forms or communications sent to New York, or contracts specifying New
York law. *See* Fearon Decl. ¶¶ 113–15. Likewise, *Ward* and *Gutierrez* did not consider whether
there was evidence that could prove territoriality on a classwide basis. *Ward*, 3 F. Supp. 3d at 168;
*Gutierrez*, 2022 WL 3214852, at *3.

the court held that plaintiffs failed to "state a legally sufficient [GBL] claim" as to plaintiffs who made purchases outside of New York with "cash" as opposed to another plaintiff who used the defendant's "App" to make her purchase. *Id.* at 635.

This case is at the class certification stage, discovery has concluded, and Plaintiff has failed to present any facts to carry her burden that common issues predominate the territoriality issues under the GBL. *See* Fearon Decl. ¶¶113–15 (failing to identify anything beyond The Laundress's headquarters and generic management functions, such as pricing and the location of corporate records).[9] The Court must reject Plaintiff's invitation to certify a nationwide GBL class because doing so would require overwhelming individualized inquiries into which putative class members did (and did not) purchase Products in New York.[10]

> ***Choice-of-law questions will predominate the implied warranty and MMWA claims.*** This Court must apply "the choice of law rules of the state in which it sits." *In re Frito-Lay N. Am., Inc. All Nat. Litig*, 2013 WL 4647512, at *19 (E.D.N.Y. Aug. 29, 2013). In New York, the first step in any case "presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008). Plaintiff's and the putative nationwide class's claims for breach of implied warranty arise under their respective laws of all 50 states and

---

[9] Fearon testifies that "Laundress maintains transaction records for customers who bought from Laundress," but confuses the location at which records are maintained with the location at which the transaction occurred. *See* Fearon Decl. ¶ 111.

[10] Even if there were some way to determine, on a classwide basis, which putative class members purchased their products in New York, the Court should not certify Plaintiff's proposed nationwide class because it is clear that many class members did not purchase Laundress Products in New York state. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated on other grounds* ("[W]hen a claim cannot succeed as a matter of law, the Court should not certify a class on that issue.").

the District of Columbia.[11] *Id.* at 149 (applying the implied warranty law of the state wherein each putative class member purchased the at-issue product). Plaintiff has "the burden to show that there are not variations in applicable law that cause individualized issues to predominate over common issues." *Choi v. Tower Rsch. Cap. LLC*, 2022 WL 4484485, at *5 (S.D.N.Y. Sep. 27, 2022). She didn't. Plaintiff ignores this first step and thus cannot dispute that there is an actual conflict. *See* Mot. at 17–18; *see generally Cruz v. Zucker*, 116 F. Supp. 3d 334, 349 n.10 (S.D.N.Y. 2015) ("[A]rguments [] not raised in the opening brief, [] were waived").

An actual conflict is present where "the applicable law from each jurisdiction provides different substantive rules." *Grand Theft Auto*, 251 F.R.D. at 147. Here, variations abound among implied warranty laws. *See* Ex. 65, 51 Jurisdiction Survey. For instance, 29 jurisdictions require privity, while 22 do not. *See id*. Thirty-eight have some form of pre-suit notice requirement, and 13 do not. *See id*. The statutes of limitations vary too; one jurisdiction has a three-year period, 43 have a four-year period, two have a five-year period, three have a six-year period, and two jurisdictions have a ten-year period. *See id*. Numerous courts have recognized the significant state-by-state "variances among the interpretation of the elements of an implied warranty of merchantability claim[.]" *Oscar*, 274 F.R.D. at 509 (denying certification of nationwide class on implied warranty claim because "differences in state laws often predominate over common questions"); *Grand Theft Auto*, 251 F.R.D. at 147, 161 (denying certification noting "breach-of-warranty laws in the fifty states differ in relevant respects," resulting in a putative class "plagued by individualized issues"); *In re Ford Motor Co. Ignition Switch Litig.*, 194 F.R.D. 484, 489 (D.N.J. 2000) (collecting cases and declining to certify multistate class bringing implied warranty

---

[11] An MMWA claim "stand[s] or fall[s] with the . . . implied warranty claims under state law." *Valcarcel v. Ahold U.S.A., Inc*., 577 F. Supp. 3d at 283. *See also* Rose Decl. ¶ 10.

of merchantability claims because "such claims vary significantly from state to state"; for example, with respect to each state's definition of merchantability, whether the claim sounds in tort or contract, and whether a state allows waiver of the implied warranty).

Because there are conflicts in the states' implied warranty laws, the inquiry proceeds to the second step, which requires the Court to determine the "jurisdiction with the most significant contacts to this dispute." *Grand Theft Auto*, 251 F.R.D. at 148. The "significant-contacts" test contemplates: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile or place of business of the contracting parties. *Id*. at 149. Plaintiff claims, without any evidence or law, that New York law broadly applies to the putative nationwide class because The Laundress had its "principal place of business," "developed and sold the Products," and "had centralized decision-making by executives in New York." Mot. at 18.

But putative class members purchased Products nationwide. *See* Ginsberg Decl. ¶4. Thus, for every putative member, "the first, second, third, and fourth factors clearly favor the application of the law of the state of purchase, for that is the situs of the parties' contracting, negotiation, and performance . . . and the location of the subject matter of that sales contract." *Grand Theft Auto*, 251 F.R.D. at 149; *Frito-Lay*, 2013 WL 4647512, at *19 (New York's choice-of-law principles dictated application of California law to California plaintiffs who purchase at-issue product in California and application of Florida law to Florida plaintiff who purchased in Florida); *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 457 (S.D.N.Y. 2015) (under New York's choice-of-law analysis Georgia law applied to implied warranty claim when Georgia was "where the [at issue product] was prescribed, purchased, and administered"). Plaintiff Stilwill testified, for example, she made "all of [her] purchases at 'The Container Store'" in Nebraska (*see* Ex. 67, Stilwill Dep. 94:4–8,

31

11–15), so Nebraska is the place of contracting, negotiation, and performance, and the location of the subject matter of the transaction underpinning her implied warranty of merchantability claim. *See Grand Theft Auto*, 251 F.R.D. at 149–50. Because prosecution of Plaintiff's implied warranty claim will require individual choice-of-law determinations and the application of the laws of 51 jurisdictions, individual issues predominate, and the putative nationwide class cannot be certified. *See Oscar*, 274 F.R.D. at 509.

> ***Applying the laws of 51 jurisdictions is unmanageable.*** Plaintiff makes no attempt to show that applying the laws of 51 jurisdictions would be manageable, because it would not. Prosecuting her implied warranty and MMWA claims on behalf of a putative nationwide class would require this Court to apply a diverse body of law, with differing procedural and substantive elements. Courts routinely deny certification in such a scenario. *See Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 312–13 (S.D.N.Y. 1999) ("The prospect of determining the law of all fifty states and then applying the materially different laws that exist for some of the claims in this case would make this class action too complicated and unmanageable. Common questions of law do not predominate in this case."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."). Certification would be unmanageable here.[12]

---

[12] In a conclusory footnote, Plaintiff requests to assert her implied warranty claim "on behalf of subclass of New York consumers who purchased Products after January 1, 2021." Mot. at 18 n.6. But "[a] footnote in a memorandum of law is not the appropriate place to request affirmative relief from the Court." *Brown v. Town of Amherst*, 2024 WL 4308310, at *8 n.5 (W.D.N.Y. Sep. 26, 2024). Moreover, Plaintiff includes no independent analysis of this subclass, waiving any such request. *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (arguments and issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *see also Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties . . . perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."). Regardless, any such implied

viii.    **Privity issues doom the implied warranty and MMWA claims.**

Under New York law, without "privity of contract between Plaintiff and Defendant, [an implied warranty] claim cannot be sustained . . . except to recover for personal injuries." *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (Furman, J.); *Arthur Glick Leasing*, 51 A.D. 3d at 1117 (MMWA incorporates New York "state law privity requirements"). Plaintiff does not seek recovery for any alleged personal injury. *See* SAC; *see also* Geschwind Decl. Plaintiff's proposed nationwide class thus cannot be certified on the implied warranty or MMWA claims, given that countless putative class members lack privity with The Laundress because they purchased recalled Products from third parties. *See Weiner*, 2010 WL 3119452, at *12 ("Plaintiffs do not allege that putative class members were in privity with Snapple. Accordingly, certification of plaintiffs' implied warranty claim would be improper."). Here, Plaintiff concedes there were putative "[c]lass members who purchased Products from [third-party] retailers" (Mot. at 20–21), amounting to ▮▮▮▮ of units sold. Macartney Dep. 185:3–10.

As a fallback, Plaintiff invokes a California motion to dismiss ruling for the proposition that the privity can be dispensed under the "third-party beneficiary" doctrine. *See Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1025 (C.D. Cal. 2024). This doctrine, however, has never been adopted by any New York state or federal court as an exception to the privity requirement in the context of garden-variety sales of consumer goods. Moreover, Plaintiff entirely ignores her burden to show application of the doctrine: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by

---

warranty New York subclass would not be certifiable for the reasons discussed in Part IV(b)(i)(1-8).

the contracting parties of a duty to compensate [them] if the benefit is lost." *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 214 (N.D.N.Y. 2023) (plaintiff failed to allege "any facts showing the existence of a contract between [defendant] and its authorized retailers, that any such contract was intended for Plaintiffs' benefit, or that any benefit includes that the contracting parties have assumed a duty to compensate Plaintiffs if the benefit is lost"). This requires proof that the parties intended to benefit "the nonparty (in this case, a purchaser or other consumer)." *In re Rock'n Play Sleeper Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 WL 22922234, at *14 (W.D.N.Y. June 2, 2022). Plaintiff does not identify any such proof.[13]

### ix.    There Is No Reliable, Admissible Evidence of Damages.

Plaintiff's burden of establishing predominance under Rule 23(b)(3) requires a showing "that damages are susceptible of measurement across the entire class." *Comcast*, 569 U.S. at 35. "[W]here an expert's model is the basis for a plaintiff's claim of classwide impact and causation, a court is obliged to rigorously examine the soundness of that model at the class certification stage." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 46 (S.D.N.Y. 2020). Critically, Plaintiff's damages methodology must be "consistent with [her] liability case." *Comcast*, 569 U.S. at 35. Plaintiff has not made this showing. Her damages expert, Dr. Gareth Macartney, offers three undeveloped, unexecuted, and inadmissible methods to calculate classwide damages: a full-refund model, hedonic regression analysis, and conjoint analysis in addition to statutory damages. As explained in the Motion to Exclude Macartney (incorporated herein by reference), his opinions are

---

[13] Plaintiff's request, improperly made in a footnote (*see supra* n.12), that the Court should permit her to "assert implied warranty claims on behalf of putative class members who purchased Product from The Laundress's website" remains uncertifiable. Mot. at 21 n.7. It ignores that only ███ of Laundress's unit sales were made directly to consumers. *See* Ginsberg Decl. ¶22. These sales were made nationwide, and any proposed nationwide class of TheLaundress.com purchasers would be overwhelmed by the choice-of-law and manageability issues discussed above. *See supra* Part IV(B)(1)(vii).

unreliable and inadmissible, and they cannot be used to carry Plaintiff's burden of showing common proof of classwide damages.

a.   **Macartney's Models Fail under *Comcast*.**

"The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself." *Fink*, 714 F.3d at 742. Yet, incredibly, Macartney admits that his "analysis and opinions . . . do not hinge [] on specific language" and that he was "not asked to come up with specific language of what legally should have been disclosed." *See* Macartney Dep. 101:6–7, 142:8–10. His models thus fail to meet *Comcast*'s requirement that they be "consistent with [Plaintiff's] liability case." *Comcast*, 569 U.S. at 35.

***Misrepresentations are not at issue***. Macartney fixates on "harmful" and "unharmful" Products, but neither term was mentioned in Plaintiff's SAC or her Motion. Likewise irrelevant to Plaintiff's Motion is Macartney's use of the phrases "non-toxic and toxic products." *See* Macartney Decl. ¶37. Plaintiff's Motion abandons any claim based on the term "non-toxic," which Macartney was never aware of. *See* Macartney Dep. 44:6–10 (Q. "[h]ave you ever read or reviewed the motion seeking class certification?" A. "Not that I recall, no."). Similarly irrelevant are Macartney's "Challenged Claims," which he defines as "natural, non-toxic, and environmentally friendly." Macartney Decl. ¶4. None of these affirmative statements is at issue on class certification or underpins Macartney's opinions. *See* Mot.; Macartney Dep. 101:15–18 ("the analysis and the method for calculating class-wide damages . . . do not hinge on specific labeling language.").

Given that express misrepresentations are not at issue, Macartney's opinions concerning them are irrelevant and cannot be used to model damages on a classwide basis. *See Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 67–68 (S.D.N.Y. 2015) (rejecting damages model under *Comcast* because it made "no attempt to calculate the amount that consumers actually overpaid due to the

35

'All Natural' label."); *Hughes v. The Ester C. Co.*, 317 F.R.D. 333, 355 (E.D.N.Y. 2016) (denying certification when damages models could not "isolate the premium attributable to Plaintiffs' theory of the case, namely, that consumers paid more for the [p]roducts due to the representation 'The Better Vitamin C'").

  ***Macartney has not considered a single specific alleged omission***. Macartney's failure to identify or analyze any alleged omission is fatal to Plaintiff's Motion. He makes no reference in his Declaration or testimony, and even admits he does not know, what specifically was omitted or should have been disclosed in The Laundress's advertising or on its labels. Macartney Dep. 140:12–19. (Q. "Do you identify any specific omission that you believe should have been included on the label?" A. "I've not been asked to come up with some sort of specific language, nor would it be my role in this case to come up with some specific language as to what potentially should have been disclosed[.]").

  Instead, Macartney came up with his own theory concerning The Laundress's alleged failure to "disclose material facts by marketing and selling unsafe and toxic Products contaminated, or potentially contaminated, with harmful bacteria." Macartney Decl. ¶5. He conducts a "harmful" versus "unharmful" analysis, equating "harmful" with "potentially harmful," but he acknowledges those concepts are not the same. *See* Macartney Dep. 146:4–15 (Q. "'Potentially contaminated' means potentially could be contaminated and potentially could not be contaminated, right?" A. "[Y]es, certainly that's what potential means."). His failure to identify a coherent omission that defines what his damages models attempt to measure consistent with Plaintiff's theory of the case violates *Comcast*'s requirement that a "model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory." *Comcast*, 569 U.S. 27, 35 (2013); *see also Passman*, at 468 (denying certification because

36

predominance not met where plaintiff's experts' damages model did not "purport to measure the price impact of Defendant's omission"); *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 459–60 (E.D.N.Y. 2022) (*Comcast* not satisfied with respect to plaintiff's fraudulent-omission claim where proffered damages model did not include "discussion or analysis of the impact of [defendant's] alleged fraudulent omissions on price, or a calculation of damages attributable to these omissions").

*Full refund and statutory damages fail.* Plaintiff has not demonstrated how The Laundress's "alleged deceptive practices caused any injury, let alone the same injury, to the majority of the class members." *Pagan*, 287 F.R.D. at 149. A full-refund model is not appropriate where most of the putative class did not purchase a defective product. *See id.*; Jain Decl. ¶¶38–39; *Reitman v. Champion Petfoods USA, Inc.*, 2019 WL 7169792, at *14 (C.D. Cal. Oct. 30, 2019), *aff'd*, 830 F. App'x 880 (9th Cir. 2020) ("[F]ull refund theory is inappropriate where [] there are inevitably potential class members that did not purchase [the product] with contaminants.").

Here, there are a substantial number of putative class members (comprising at least 71% of units) who would have purchased Products that were not contaminated (and, thus, cannot be said to have received a valueless Product). *See supra* Part IV(B)(1)(v); Jain Decl. ¶37. Accordingly, it is "too implausible to accept" Macartney's assumption that all recalled Products were valueless to putative class members. *See Khasin v. R. C. Bigelow, Inc.*, 2016 WL 1213767, at *3 (N.D. Cal. Mar. 29, 2016) (rejecting full-refund damages model in false-advertising case that "assume[d] consumers gain no benefit . . . from consuming the [at-issue products]").

For the same reason, Plaintiff has not because she cannot offer common evidence supporting classwide statutory damages. *See Pagan*, 287 F.R.D. at 149 (statutory damages not available where "almost all of the class members would have actually purchased non-

contaminated" products). As in *Pagan*, statutory damages fail here under Rule 23 because the "existence of a minimum amount of statutory damages does not assist the Plaintiffs in overcoming the hurdle of affirmatively demonstrating commonality, because . . . the Plaintiffs need to first show that the class members have been injured or harmed in the same way." *Id.*; *Himber v. Intuit, Inc.*, 2012 WL 4442796, at *9 (E.D.N.Y. Sep. 25, 2012) ("[T]he lack of a non-speculative, non-hypothetical injury in this case is not cured by the existence of statutory damages under the [GBL]."); *Velez v. Lasko Prods., LLC*, 2025 WL 1865165, at *5 (S.D.N.Y. July 7, 2025) (despite potential "*availability of statutory damages at the remedies stage*, Plaintiff must still prove that she suffered *actual injury* as a result of Defendant's allegedly false advertising").

> ***"Risk" of bacterial contamination is not actionable***. Macartney flip-flops between contaminated and potentially contaminated Products. Where his opinions are premised on an alleged "unreasonable risk of being contaminated" or "potentially contaminated," his models fall apart. *See* Macartney Decl. ¶¶4, 7; *see* Macartney Dep. 111:5–9 (Q. "In your definition of 'harmful,' you are including potentially contaminated products, correct?" A. "Certainly -- yes. Contaminated or potentially contaminated, yes."). As discussed above, a risk theory is not actionable under black-letter law. *See supra* Part IV(B)(1)(v). Thus, it is not surprising that Macartney has never created a damages model based on a risk theory. *See* Macartney Dep. 211:16– 23 (Q. "Have you ever done a damages analysis or prepared a damages model that was based on the risk of a product defect as opposed to an actual product defect?" A. "The risk of a defect, not that I recall with respect to the potential of something[.]"). This case should not be the first.

> ***Macartney does not identify consumers who already received refunds***. None of Macartney's models can identify the many purchasers who have already received refunds through The Laundress's recall program. *See* Macartney Dep. 187:2–7 (admitting he has done no work to

determine how already-refunded consumers might be identified). Nor has Macartney considered whether any of his models would leave putative class members in a better position than if they simply participated in The Laundress's refund program (no model would). *See* Macartney Dep. 286:21–25 (Q. "I'm comparing it to taking advantage of what's already available to consumers right now and has been since December 1, 2022?" A. "Again I've not been asked to analyze that question. I haven't analyzed that."). His simplistic proposal to subtract refunds already paid creates an unjust result: putative class members who already participated in the recall program would be entitled to participate and obtain a double recovery, while eating away at recovery for putative class members who did not participate in the refund program. *See* Jain Decl. ¶39.

        **b.**    **Macartney's hedonic regression and conjoint analyses fail.**

Macartney must provide sufficient detail about his proposed methodologies to permit the Court to determine whether they can model classwide damages. *See Weiner*, 2010 WL 3119452, at *7 (finding expert's proposed hedonic analysis and conjoint study "unreliable" because expert "does not demonstrate in adequate detail how his proposed 'approaches' would be used to" determine a price premium as a result of the alleged misrepresentation). Against this standard, both Macartney's proposed hedonic regression and conjoint analyses fail. *See* Kivetz Decl. ¶¶33–96 (hedonic regression) and ¶¶97–128 (conjoint); Jain Decl. ¶¶40–46 (hedonic regression), ¶¶47–56 (conjoint).

***Hedonic regression***. Macartney admits that he has never run a hedonic regression in the context of an omission case. *See* Macartney Dep. 252:12–14, 23–25 (Q. "Have you ever run [a hedonic regression analysis] in the context of an omission?" A. "[N]ot that I recall, no."). Because Macartney failed to identify *any* specific alleged omission that might be tested through hedonic regression, his model cannot be used to isolate a price premium to such an omission. *See* Macartney

39

Decl. ¶¶32–38; Macartney Dep. 141:16–22 (Q. "nowhere in your report do you identify what exactly the language would be for conducting a hedonic regression analysis[?]" A. "I don't identify the specific language, it's not my role to come up with specific language of what should have been disclosed."); Ex. 6, Kivetz Decl. ¶48. Critically absent from his opinions is any discussion of what "product attributes," or "characteristics," he proposes to control or test in his yet-to-be-conducted hedonic analysis. Macartney fails to disclose critical inputs to his regression model, such as which (if any) Laundress Products would be included in the regression, retail prices, purchase dates, or consumers' method(s) of purchase. *See* Macartney Decl. ¶¶32–38; Kivetz Decl. ¶¶51–60. Without identifying the attributes to be tested in his hedonic regression, his model cannot be used as common evidence of price premium damages. *See Singleton*, 2017 WL 5001444 at *22 (expert's proposed hedonic regression model incapable of estimating damages because expert made "little attempt to identify a relevant set of product attributes to plug into his hedonic regression model").

*Conjoint analysis*. Conjoint analysis is a survey research technique used to attempt to determine how consumers value different attributes of a product. *See also In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 234 (S.D.N.Y. 2019) (Furman, J.) ("Conjoint analysis measures consumer desires by asking survey respondents about their relative preferences for certain combinations of product features."). Macartney admits he has "not designed the conjoint survey" he proposes (Macartney Dep. 128:11–12), but he theorizes it could somehow "elicit the relative value of product features[.]" Macartney Decl. ¶40. He has not identified a single specific product attribute to be used in his theoretical analysis. *See* Macartney Dep. 128:2–5, 11–12 (Q. "[I]s there any specific list of attributes that you would include in the response stimulus in a conjoint survey included in your report?" A. "I haven't designed the survey because I've not been asked to actually implement it[.]").

He does not identify which of the 250 different Product(s) subject to its recall he may use in his conjoint survey. *See* Macartney Dep. 131:19 ("I haven't listed what the specific products would be[.]"). Nor does Macartney disclose—because he has not designed—the structure of his proposed survey. *See* Macartney Decl. ¶¶39–42; Macartney Dep. 128:11. He does not include proposed survey panels or identify the population he will attempt to survey. *See id*. Without identifying any attributes, let alone the attribute at issue in this case (the alleged omission), Macartney's conjoint survey is incapable of carrying Plaintiff's burden to show a classwide price premium. *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1021 (C.D. Cal. 2018) (rejecting damages model and denying certification where "exact statements on the label are at issue" but conjoint model did not include them); *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 679 (N.D. Cal. 2024) ("[F]ailure to isolate the key challenged statements renders the conjoint survey incapable of calculating a reliable price premium.").

Macartney's conjoint analysis also fails because he does not meaningfully account for supply-side factors and thus cannot reliably estimate price premium damages. Macartney simply claims "conjoint analysis can also account for supply-side factors" "by using actual market prices that embody the existing supply conditions in the marketplace." Macartney Decl. ¶41. By essentially ignoring supply, Macartney's proposed conjoint analysis at best measures "the putative class members' willingness to pay, not Defendant's willingness to sell, and thus does not measure the market price in the 'but for' world in which the misleading elements" were not present. *Passman*, at 465; *GM Ignition Switch Litig.*, 407 F. Supp. 3d at 236 (conjoint analysis that measured "consumers' private valuations . . . [did] not measure the *market value*"); *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 976898, at *12 (N.D. Cal. Mar. 6, 2014) (rejecting a conjoint

41

analysis that did "not account for supply at all, much less the real-world intersection of market demand and market supply, which sets the real-world market price," leaving the plaintiff without evidence of a price increase).

### C.    Plaintiff's claims are not typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality turns on whether a plaintiff's claims "arise[] from the same course of events and each class member makes similar legal arguments to prove the defendant's liability," but lacks where the class representative is "subject to unique defenses which threaten to become the focus of the litigation." *Romero v. Flaum Appetizing Corp.*, 2011 WL 812157, at *3 (S.D.N.Y. Mar. 1, 2011).

Plaintiff is atypical because she already participated in the recall and received a refund for the Products she purchased. *See* Geschwind Dep. 192:2–5. This is left unaddressed in the Motion. The existence and scope of Plaintiff's refund raises defenses distinct from class members who neither sought nor received refunds; for example, damage offsets and whether Plaintiff, in fact, suffered any economic loss. *See Gordon v. Sonar Cap. Mgmt., LLC*, 92 F. Supp. 3d 193 (S.D.N.Y. 2015) (named plaintiff suffered no economic loss, rendering him an inappropriate class representative).

### D.    The putative class is not ascertainable.

Plaintiff fails to provide any method for determining which individuals purchased recalled Products on a classwide basis. Ascertainability is an "implied requirement" for class certification under Rule 23. *See Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 47 (2d Cir. 2017) ("Summary Order") (ascertainability not met when plaintiff failed to show "a sufficiently reliable method for identifying the proposed class to avoid 'mini-hearing[s] on the merits of each case'").

"To be ascertainable, the class must be readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." *Weiner*, 2010 WL 3119452, at *12. A class is ascertainable only "when defined by objective criteria that are administratively feasible, and when identifying its members would not require a mini-hearing on the merits of each case." *Id*. Plaintiff offers no objective method to determine class membership aside from class members "attest[ing] to their Product purchases by affidavit" (Mot. at 13–14), but many courts have rejected self-identification as an "inadequate" solution because verifying an "enormous number" of sales would result in an unacceptable "risk of false positives." *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Pracs. Litig.*, 2015 WL 5730022, at *5 (S.D.N.Y. Sep. 30, 2015); *Weiner*, 2010 WL 3119452, at *12 ("[S]oliciting declarations from putative class members regarding their history of [product] purchases would invite them to speculate, or worse."). Because the evidence shows a substantial number of putative class members did not purchase Products contaminated with bacteria, identification of putative class members can be accomplished only through mini-trials examining, among other things, Product purchases and testing. *See supra* Part IV(B)(1)(ii). Denying certification is appropriate where, like here, it is "practically impossible to trace purchases and sales[.]" *Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015).

## V.    CONCLUSION

The Court should deny Plaintiff's Motion.

Dated: January 20, 2026

Respectfully submitted,

/s/ Ronald Y. Rothstein

Ronald Y. Rothstein
WINSTON & STRAWN LLP
300 North LaSalle Drive
Chicago, IL 60654-3406
rrothste@winston.com
Telephone: (312) 558-7464
Facsimile: (312) 558-5700

Jared R. Kessler (*pro hac vice*)
WINSTON & STRAWN LLP
200 South Biscayne Boulevard
Suite 2400
Miami, FL 33131
jrkessler@winston.com
Telephone: (305) 910-0654
Facsimile: (305) 910-0505

ATTORNEYS FOR DEFENDANT
THE LAUNDRESS, LLC

44

## CERTIFICATE OF WORD COUNT

Pursuant to the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that The Laundress's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, exclusive of the caption, table of contents, table of authorities, and signature blocks, contains 13,944 words as measured by the word-processing system used to prepare this brief.


_/s/_ Ronald Y. Rothstein

Ronald Y. Rothstein


Dated: January 20, 2026